## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JACKIE FISHER | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. |
| | § | |
| UNIVERSITY OF TEXAS | § | Jury Demanded |
| MEDICAL BRANCH and | § | |
| DAVID WATSON | § | |
|     Defendants. | § | |

## PLAINTIFF, JACKIE FISHER'S, ORIGINAL COMPLAINT AND JURY DEMAND

**TO THE HONORABLE JUDGE OF SAID COURT:**

**NOW COMES** Plaintiff, Jackie Fisher, complaining of and about Defendant, University of Texas Medical Branch, Department of Correctional Managed Care, and for cause of action shows unto the Court the following:

### PARTIES AND SERVICE

1. Plaintiff, Jackie Fisher (Fisher), is a citizen of the United States and the State of Texas and resides in Walker County, Texas.

2. Defendant, University of Texas Medical Branch (UTMB), is an agency of the State of Texas. UTMB may be served with citation and summons by serving the Texas Secretary of State as provided under FRCP 4 (j)(2) and Texas CPRC §101.102(c).

3. Defendant, David Watson, is a citizen of the United States and State of Texas and may be served by serving him at 3117 Clay Circle, Huntsville, TX 77340-6842

## JURISDICTION

4. The action arises under a federal question as hereinafter more fully appears.

## NATURE OF THE ACTION

5. This is an action under TITLE VII of the CIVIL RIGHTS ACT of 1964 as amended by the CIVIL RIGHTS ACT of 1991, 42 U.S.C. §2000e *et. seq*. to correct unlawful employment practices on the basis of race and retaliation.

6. This is also an action under 42 U.S.C. §1981 as amended by the CIVIL RIGHTS ACT of 1991 to correct unlawful employment practices on the basis of race; and, 42 U.S.C. §1983 (the Civil Rights Act of 1871) as amended to correct unlawful employment practices on the basis of race and to correct Constitutional violations of due process and retaliation for the exercise of free speech.

## VENUE

7. Venue is proper in this district under 28 U.S.C. §1391(b)(2) and 42 U.S.C. §2000e-5(f)(3) because the alleged unlawful employment practices were committed in this district in Huntsville, Texas.

## CONDITIONS PRECEDENT
## EXHAUSTION OF ADMINISTRATIVE PROCEDURES

8. All conditions precedent to jurisdiction have occurred or been complied with: a charge of discrimination was timely filed with the Equal Employment Opportunity Commission within three-hundred days of the acts complained of herein, a determination was issued by the EEOC on November 6, 2007, and the case was forwarded to the United States Department of Justice. Fisher's Complaint is filed within ninety days of Plaintiff's receipt of the U.S. Department of Justice's issuance of a right to sue letter which is attached as *Exhibit A*.

## FACTS

9. Fisher is an employee within the meaning of TITLE VII of the CIVIL RIGHTS ACT of 1964 as amended and belongs to a class protected under the statute, namely she is black. Fisher also exercised her federally protected rights when she complained of racial discrimination against her as well as against other black employees, and complained of sexual harassment perpetrated by her supervisor, and, for so doing so, also a class protected from retaliation under TITLE VII of the CIVIL RIGHTS ACT of 1964 as amended.

10. Defendant, University of Texas Medical Branch, Department of Correctional Managed Care, was at all relevant times, Ms. Fisher's employer under the meaning of TITLE VII of the CIVIL RIGHTS ACT of 1964 as amended.

11. Defendant David Watson, as Huntsville District Nurse Manager, and Fisher's supervisor, was at all relevant times, acting in his official capacity and under color of state law.

12. About August of 2005, a Black subordinate, Ms. Freeman, wanted to transfer within the Huntsville cluster to work under Fisher's supervision.

13. Mr. Watson denied Ms. Freeman the opportunity.

14. Ms. Freeman was the only employee he denied a transfer between August of 2005 and January of 2006.

15. During the same time period, he granted several white employees their requests for transfer within that cluster. Ms. Fisher complained to Watson that he had let white employees transfer, but not Ms. Freeman, a black employee.

16. About February 11, 2005, Fisher complained about to her supervisor, Defendant Watson (white) because he treated her and another black employee who she supervised, Ms. Kelly, differently and more harshly than he treated a similarly situated white employee, Ms. Adams and a white employee she supervised, Ms. Gossett.

17. The complaint was taken to Ms. Sandy Radar, the Huntsville HR Administrator and Denise Box, the Huntsville Sr. Practice Manager.

18. Both Radar and Box stated that Watson handled the situation incorrectly, but nothing was done to address the unequal treatment.

19. In August of 2004, an inmate committed suicide eight days after Fisher spoke to him and six days after the mental health practitioners and psychiatrist evaluated him.

20. Fisher suffered no adverse consequences for her actions in this matter, until after the complaint against Mr. Watson of February 11, 2005.

21. Although it was totally discretionary as to whether or not to report the incident. According to Watson it was referred to Peer Review by the Mortality Review..

22. Mr. Watson also impermissibly influenced the Peer Review by sitting in during the Peer Review Hearing over Fisher's objection.

23. Although Mr. Watson stated that he would not vote, five out of the seven committee members were under his chain of command.

24. Consequently, the matter was referred to the Texas Board of Nurse Examiners (BNE) prior to the year end of 2005.

25. While the matter was pending before the BNE, Fisher still functioned in the position of Nurse Manager until May 6, 2006.

26. About January 4, 2006, Fisher opposed what she perceived to be discrimination and confronted Mr. Watson about his different standards for white and black employees and told him it was not fair.

27. About five days later, about January 9, 2006, Ms. Gotcher, Northen Division Director of Nurses (Watson's Supervisor) and Ms. Melton, Northern Division HR Director, began an on sight investigation of Fisher.

28. There were no written allegations against Fisher to investigate, nor was she given an opportunity to respond. Ms. Fisher was not even apprised of the results of the investigation. Ms. Fisher had to inquire about the findings in an effort to understand why they had a meeting and what resulted from it.

29. Fisher was supervising 42 employees, and even though management encouraged Fisher's staff to be disloyal, only seven employees had disgruntled things to say about Fisher.

30. The employees who stuck up for Fisher were evidently interrogated and felt attacked for sticking up for her.

31. Ms. Gotcher told Fisher the inquisition was conducted against her at Mr. Watson's request.

32. Fisher was verbally told that the investigation was undertaken because of her high turnover and vacancy rate.

33. Fisher exercised her protected right by filing a grievance which pointed out that other white Nurse Managers had higher turnover and vacancy rates than she had and yet they were not subjected to this demeaning and demoralizing investigation.

34. Even though there was good cause to investigate the white Nurse Managers for these same allegations, this was not done.

35. On the same day that Fisher's staff was interviewed, one white Nurse Manger in the building next to Fisher had higher vacancy rates than did Fisher and the white Nurse Manager's

staffing needs were much more critical. Yet the white Nurse Manager's staff was not interviewed and she was not degraded.

36. Shortly afterward, Fisher received what she considered to be a poor performance evaluation.

37. Prior to that point, Fisher's performance evaluations had been outstanding.

38. Around March 7, 2006, Fisher also complained to UTMB of Defendant Watson's unwelcome and inappropriate sexual comments.

39. On April 10, 2006, Fisher grieved alleging discrimination, hostile work environment, and retaliation.

40. On April 11, 2006, Fisher received notice of Mr. Watson's intent to demote her by two ranks to Nurse Clinician III.

41. Around May 6, 2006, Defendant Watson, demoted Fisher to the position of Assistant Nurse Manager.

42. Fisher appealed Mr. Watson's intention and was then only demoted one rank, to Assistant Nurse Manager and reassigned to the Wynne Unit.

43. Though Fisher was demoted in pay, she was still required to function as a Nurse Manager from that time until March 14, 2007, although without the commensurate pay or title.

44. While at the Wynne Unit, the Nurse Manager to whom Fisher then reported left in August of 2006, and no other Nurse Manager assumed duties there until March 14, 2007.

45. About June of 2006 Fisher filed a Charge of Discrimination and retaliation with the EEOC and about April 5, 2007, Fisher amended her charge to include additional claims of retaliation.

46. In December of 2006, the BNE noticed UTMB that, as a result of the 2004 incident, which was not reported until 2005, Fisher had agreed to an Order which required her to complete remedial education within one year.

47. Fisher's license was never suspended, nor did the BNE make any stipulation that she could not supervise or hold a managers position.

48. Even with the BNE requirements pending, UTMB still required Fisher to perform in the Nurse Manager position, though they were not paying her to do so, nor had they given her the title of Nurse Manager back.

49. Subsequent to Fisher's February 11, 2005 complaints, Fisher found it necessary to grieve four times totally about the discrimination, hostile environment and retaliation.

50. None of the grievances were answered.

51. About March 9, 2007, Fisher was awarded back pay as "resolution of her complaints of racial discrimination and retaliation filed April 6, 2006."

52. The back pay was awarded from May 6, 2006 but was cut off as of December 15, 2006, although the cut off date was unexplained at the time.

53. Fisher treated the notice as an offer of settlement and rejected the back pay because Fisher still had not been reinstated to her former position as Cluster Nurse Manger.

54. UTMB sent Fisher a letter dated March 11, 2007, which noticed her of its intention to further demote her because of the BNE Agreed Order, of which they had notice since December 2006.

55. Fisher had until March 26, 2007 to respond.

56. On March 26, 2007, Fisher noticed UTMB that all requirements had been completed and that there were no sanctions on her license.

57. Fisher pointed out that other professionals have had board sanctions and have not been demoted, that she had functioned effectively since UTMB had notice from BNE in the position of Nurse Manager and they had not complained when they needed her to do so.

## COUNT I - TITLE VII - DISPARATE TREATMENT

58. The preceding paragraphs 1 through 57 are hereby incorporated by reference.

59. Fisher is black and a member of a protected class of individuals because of her race.

60. Fisher was qualified for her position as Nurse Manager

61. Fisher was subjected to different terms and conditions of employment because of her race.

62. UTMB intentionally discriminated against Fisher because of her race in violation of TITLE VII as amended , 42 U.S.C. SECTION 2000e *et seq.*

## COUNT II - TITLE VII - HOSTILE ENVIRONMENT

63. The preceding paragraphs 1 through 62 are hereby incorporated by reference.

64. Fisher is black and a member of a protected class of individuals because of her race.

65. Fisher was subjected to unwelcome harassment based upon her race.

66. The harassment complained of was severe or pervasive.

67. The harassment complained of affected a term, condition or privilege of her employment.

68. UTMB intentionally discriminated against Fisher by subjecting her to a hostile environment because of her race in violation of TITLE VII as amended , 42 U.S.C. SECTION 2000e *et seq.*

## COUNT III - TITLE VII - RETALIATION

69. The preceding paragraphs 1 through 68 are hereby incorporated by reference.

70. Fisher exercised her federally protected rights and engaged in protected activities when she complained to management of racial discrimination and sexual harassment and also by filing a complaint of discrimination with the EEOC.

71. After her complaints of racial and sexual harassment, Fisher was retaliated against and subjected to a non-objective peer reviewed, turned into the BNE, demoted, and made to perform the same job without commensurate pay.

72. By UTMB's acts of retaliation after Fisher exercised her federally protected rights to complain to her UTMB supervisors and the EEOC, UTMB exhibited conduct that any reasonable individual in Fisher's position would have found materially adverse.

73. Causal links and a close temporal proximity existed between Fisher's protected activities and UTMB's subsequent acts of retaliation.

74. UTMB retaliatory conduct is in violation of TITLE VII as amended, 42 U.S.C. SECTION 2000E (3)(a).

### COUNT IV - 42 U.S.C. §1981 COMPLAINT

75. The preceding paragraphs 1 through 74 are hereby incorporated by reference.

76. Fisher is black and a member of a protected class because of her African American race.

77. Watson intentionally discriminated against Fisher on the basis of race.

78. The right to make and enforce contracts is one of the four enumerated activities of the 42 U.S.C. §1981 statute which protects individuals from racial discrimination.

79. Watson discriminated against Fisher taking materially adverse employment action against Fisher and denied her the right to make and enforce contracts including the right to the

performance of a contract and the enjoyment of all the benefits of the contractual relationship under 42 U.S.C. §1981 in violation of 42 U.S.C. §1983, because of her race.

## COUNT V - 42 U.S.C. §1983 DUE PROCESS & EQUAL PROTECTION

80. The preceding paragraphs 1 through 79 are hereby incorporated by reference.

81. Fisher is black and a member of a protected class because of her race.

82. Watson intentionally discriminated against her on the basis of her race.

83. Fisher is entitled to due process and equal protection under the law, without regard for her race. These are federally protected statutory rights and rights guaranteed by the 14TH AMENDMENT to the U.S. CONSTITUTION.

84. Watson denied Fisher the right to due process and to equal protection, rights guaranteed her by the 14TH AMENDMENT to the U.S. CONSTITUTION.

85. Watson acted with deliberate indifference to Fisher's rights by denying her due process and equal protection in the disciplinary process and unfairly demoted her, rights guaranteed her by statute and the 14TH AMENDMENT and in violation of 42 U.S.C. §1983.

86. Watson violated 42 U.S.C. §1983 when he discriminated against Fisher by denying her equal protection and due process, rights guaranteed by the 14TH AMENDMENT to the U.S. CONSTITUTION.

## COUNT VI - 42 U.S.C. §1983 FREE SPEECH

87. The preceding paragraphs 1 through 86 are hereby incorporated by reference.

88. Fisher is black and a member of a protected class because of her race.

89. Fisher exercised her Constitutionally protected right to free speech when she complained of discrimination to the EEOC.

90. Watson's conduct in retaliating against Fisher by unfairly disciplining, demoting, requiring her to work without commensurate pay, and subjecting her to different terms and conditions of employment than the white employees after her Charge of Discrimination was filed was not objectively reasonable.

91. Watson actions were deliberately indifferent to Fisher's Constitutionally protected rights.

92. Watson intentionally discriminated against Fisher in retaliation for her exercise of her right to free speech.

93. Watson violated 42 U.S.C. §1983 when he discriminated against Fisher by retaliating against her for her exercise of free speech, a right guaranteed by the 1ST AMENDMENT to the U.S. CONSTITUTION.

## DAMAGES

94. As a direct and proximate result of Defendants' conduct, Fisher suffered the following injuries and damages:

a. All reasonable and necessary Attorney's fees incurred by or on behalf of Plaintiff;

b. Back pay from the date that Plaintiff was demoted from Cluster Nurse Manager to Assistant Nurse Manager, with all increases not previously recognized, and interest on the back pay in an amount to compensate Plaintiff as the Court deems equitable and just;

c. All reasonable and necessary costs incurred in pursuit of this suit;

d. Emotional pain;

e. Expert fees as the Court deems appropriate;

f. Front pay in an amount the Court deems equitable and just to make Plaintiff whole;

g. Inconvenience;

h. Prejudgment interest;

i. Loss of enjoyment of life;

j. Mental anguish in the past;

k. Mental anguish in the future;

l. Loss of benefits in the past;

m. Loss of benefits in the future; and,

n. exemplary damages.

## ATTORNEY FEES AND COSTS

95. Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k).

## PRAYER

96. **WHEREFORE, PREMISES CONSIDERED**, Plaintiff, JACKIE FISHER, respectfully prays that the Defendants be cited to appear and answer herein, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for damages in an amount within the jurisdictional limits of the Court; exemplary damages, together with interest as allowed by law; attorneys fees and costs of court; and such other and further relief to which the Plaintiff may be entitled at law or in equity.

Respectfully submitted,

By:/s/ *Jo Miller*
JO MILLER
Attorney-in-Charge
Texas Bar No. 00791268
Southern District Bar No: 20385
505 North Main
Carriage House
Conroe, Texas 77301
Tel. (936) 539-4400
Fax: (936) 539-4409
jmiller@jomillerlaw.com
Attorney for Plaintiff
Jackie Fisher

**PLAINTIFF HEREBY DEMANDS TRIAL BY JURY**