178 F. Supp. 2d 412, \*; 2001 U.S. Dist. LEXIS 21136, \*\*



LEXSEE

In re: REZULIN PRODUCTS LIABILITY LITIGATION (MDL No. 1348) This Document Relates to: All Cases

MASTER FILE 00 Civ. 2843 (LAK)

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

*178 F. Supp. 2d 412; 2001 U.S. Dist. LEXIS 21136*

**December 20, 2001, Decided**

**SUBSEQUENT HISTORY:** Motions ruled upon by, Remanded by, in part *In re Rezulin Prods. Liab. Litig., 2002 U.S. Dist. LEXIS 26723 (S.D.N.Y., Apr. 12, 2002)*

**PRIOR HISTORY:** *In re Rezulin Prods. Liab. Litig., 2001 U.S. Dist. LEXIS 20237 (S.D.N.Y., Dec. 6, 2001)*

**DISPOSITION:** [\*\*1] Motion to quash by Drs. Schwartz and Raskin denied.

**COUNSEL:** For Plaintiffs: Regina L. LaPolla, MILBERG WEISS BERSHAD HYNES & LERACH, LLP.

For Plaintiffs: Arnold Levin, LEVIN, FISHBEIN, SEDRAN & BERMAN.

For Plaintiffs: Charles Mathis, Aileen R. Page, Christopher Tisi, HERMAN, MATHIS, CASEY, KITCHENS & GEREL, LLP.

For Philip Raskin, Sherwyn Schwartz: Mary Hunnel Smith, SMITH & SMITH.

For Warner-Lambert, Defendant: Jay P. Mayesh, Glenn J. Pogust, KAYE SCHOLER, LLP.

**JUDGES:** Lewis A. Kaplan, United States District Judge.

**OPINION BY:** Lewis A. Kaplan

**OPINION**

[\*413] MEMORANDUM OPINION

LEWIS A. KAPLAN, *District Judge.*

Sherwyn Schwartz and Philip Raskin, medical doctors resident in Texas who participated in clinical trials of Rezulin, the drug at issue in this litigation, move to quash subpoenas that seek to compel them to produce medical records pertaining to certain patients who were subjects of those trials. Plaintiffs, who issued the subpoenas, are not interested in the identities of or identifying information concerning the subjects and are amenable to the redaction of the documents to remove that information and to affording confidential treatment to the redacted [\*\*2] documents. Accordingly, the questions boil down to whether the documents are protected by the physician-patient privilege or otherwise and, if so, whether the redaction and confidential treatment of the redacted documents suffices to permit compelled production over the claim of privilege.

I

The witnesses' first argument is that the patients were promised that their health information would be kept confidential. But the argument vastly overstates the reality. The consent forms used in the clinical trials provided in relevant part:

> "Every effort will be made to keep all information about you confidential and your medical records will be maintained to the extent consistent with the law. However, representatives of Sankyo U.S.A. Corporation (the sponsor) and representatives acting on their behalf, the Food and Drug Administration (FDA), and the Clinical Investigations Committee may inspect the research related records at any time. On rare occasions, disclosure to third parties may be required by law. Results of this study may be published in

Case 4:08-cv-01273   Document 26-5   Filed on 04/02/09 in TXSD   Page 2 of 4

Page 2

178 F. Supp. 2d 412, *; 2001 U.S. Dist. LEXIS 21136, **

scientific journals or presented at medical meetings, but you will not be identified." [1]

and

"You will not be identified in any [**3] reports on this study. The records will be kept confidential to the extent provided by federal, state and local law. The U.S. Food and Drug Administration and representatives of Parke-Davis may inspect the records of this study." [2]

Thus, there was no promise of absolute confidentiality. [3]

---

1  LaPolla Aff. Ex. 5, at 6.
2  Id. Ex. 6, at 3.
3  Even if there were, it is doubtful, to say the least, that such an agreement between private individuals would defeat compulsory process of a federal court.

---

As these are diversity cases, the questions presented are governed by state law, [4] in this case that of Texas. The Court [*414] assumes, without deciding, that the records at issue are protected by the Texas physician-patient privilege [5] and that the privilege has not been waived. Hence, the dispositive issue is whether protection of the patients' identities by redaction of identifying information is sufficient to permit production over a claim of privilege.

---

4  See FED. R. EVID. 501.
[**4]
5  See TEX. R. EVID. 509; TEX. OCC. C. § 159.002 (West. 2001).

---

Drs. Schwartz and Raskin argue that it is not. To begin with, they point out that the Texas rule and statute extend the privilege to records "of the identity, diagnosis, evaluation, or treatment of a patient by a physician" [6] and contend that even redaction of identifying information would not protect so much of the records as contains information regarding diagnosis, evaluation or treatment. They rely also on two intermediate appellate decisions, both of which contain broad language indicating that redaction of identifying information would not permit compelled production of records otherwise protected by the physician-patient privilege. [7]

---

6  TEX. R. EVID. 509(c)(2); TEX. OCC. C. § 159.002(b).
7  In re Columbia Valley Regional Medical Center, 41 S.W.3d 797 (Tex. App. Corpus Christi 2001); In re Diversicare General Partner, Inc., 41 S.W.3d 788 (Tex. App. Corpus Christi 2001).

[**5] II

---

It is important at the outset to define this Court's role here with respect to Texas law. The Court of course would be obliged to follow a controlling decision of the Texas Supreme Court. But, as all concede, there is no such decision on the point here at issue. Accordingly, the Court is obliged "carefully to predict how the highest court . . . would resolve the uncertainty or ambiguity." [8] And while decisions of intermediate state appellate courts are entitled to substantial deference, this Court need not follow them if there is compelling evidence that they would not be followed by Texas' highest court. [9]

---

8  Travelers Insurance Co. v. 633 Third Assocs., 14 F.3d 114, 119 (2d Cir. 1994).
9  E.g., Hicks on Behalf of Feiock v. Feiock, 485 U.S. 624, 629-30 & n. 3, 99 L. Ed. 2d 721, 108 S. Ct. 1423 (1988) (quoting West v. Am. Tel. & Tel. Co., 311 U.S. 223, 237, 85 L. Ed. 139, 61 S. Ct. 179 (1940)); Pentech Int'l, Inc. v. Wall Street Clearing Co., 983 F.2d 441, 445 (2d Cir. 1993); Deeper Life Christian Fellowship, Inc. v. Sobol, 948 F.2d 79, 84 (2d Cir. 1991).

---

[**6] The Court begins with the language of the Texas statute and rule. As the doctors argue, it speaks of privilege for records of "identity, diagnosis, evaluation, or treatment of a patient." But the conclusion they would draw -- that any record containing a diagnosis, an evaluation or a treatment, even if it cannot be connected with a patient, is privileged -- is not self evident. To be sure, one might argue, as a matter of theory, that the use of the disjunctive in the quoted phrase means that any document containing a patient's identity or diagnosis or evaluation or treatment is privileged -- which in essence is what the doctors argue. Such a construction, however, would lead to preposterous results. A scrap of paper upon which a physician had jotted down a patient's name, or wrote only the word "indigestion" (a diagnosis) or "aspirin" (a treatment) or "malingering" (an evaluation) would, or at least could, be privileged. The legislature and the rulemakers could not possibly have so intended. So we must look elsewhere for a clue to what they meant.

The purposes of the physician-patient privilege in Texas are no different [*415] than anywhere else. As the Texas Supreme Court has made clear, [**7] they are to promote candid and complete communication between doctor and patient in furtherance of competent medical care and to maintain privacy by preventing the disclosure of highly personal information. [10] Once the information cannot be connected with the patient, the risk of embarrassment that might lead a patient to withhold information from a physician and thus interfere with proper treatment, as well as the risk of any invasion of personal privacy, is eliminated. Hence, both the rule and the statute more reasonably are read as extending the

Case 4:08-cv-01273 Document 26-5 Filed on 04/02/09 in TXSD Page 3 of 4

Page 3

178 F. Supp. 2d 412, \*; 2001 U.S. Dist. LEXIS 21136, \*\*

privilege to records relating to diagnosis, treatment or evaluation where they can be connected with a particular patient.

10  *R.K. v. Ramirez*, 887 S.W.2d 836, 840 (Tex. 1994).

The Texas Supreme Court's articulation of the purposes of the privilege is helpful also in considering the two cases upon which the doctors rely.

In *Diversicare*, a female nursing home resident and her daughter sued the nursing home for damages for a sexual assault [\*\*8] allegedly perpetrated on the resident by a male former resident of the same nursing home and sought discovery of medical records of the alleged perpetrator. The *nisi prius* court granted the discovery provided the identity of the alleged perpetrator was redacted from the documents, but the appellate court reversed. After concluding that the records were privileged, it first observed that good cause had not been shown for disclosure of the documents.[11] It then went on to say:

> "Moreover, simply redacting the identity of the resident from the records, when he was a long-time resident of Goliad, and in a case to be tried to a Goliad County jury, will not assure that his identity will not be indirectly disclosed by the production of the records. By using his title and last initial, the parties are simply narrowing down the identity of the resident. This process of redacting the records of identifying information will in no way assure the former resident's privacy, when the balance of his personal and clinical records will be available for public review if the records are ordered released . . . ."[12]

Thus, the quoted paragraph is *dictum*. Further, it is limited to a [\*\*9] far less protective means of redaction than is proposed here. And it cannot be understood without understanding the peculiar circumstances presented by the venue. Goliad County, Texas, according to the 2000 census, had a male population of 3,445, a male population 65 or more years of age of 553,[13] and no doubt a male population that had resided in the particular nursing home during the relevant period of only a small number of people, a figure that would have been narrowed even further by the proposed dissemination of the first initial of the alleged perpetrator's last name. Disclosure of the redacted records would not have protected the patient's privacy. In consequence, *Diversicare* does not seriously suggest that the Texas Supreme Court would hold that appropriate redaction of patient names in the context of this case would not permit compelled disclosure of the remainder of the records.

11  *Diversicare*, 41 S.W.3d at 795.
12  *Id.* at 795-96.
13  U.S. Bureau of the Census, DP-1 Profile of General Demographic Characteristics: 2000, Data Set: Census 2000 Summary File 1 (SF 1) 100-Percent Data, Geographic Area: Goliad County, Texas, available at <http://factfinder.census.gov/bf/\_lang=en\_vt\_name=DEC\_2000\_SF1\_U\_DP1\_geo\_id=05000US48175.html>.

[\*\*10] [\*416] In re *Columbia Valley Regional Medical Center*, a medical malpractice case, is only marginally more persuasive. The plaintiff there sought to establish that a particular nurse, rather than the attending physician, had delivered her child. In an effort to do so, she sought medical records of all deliveries where the nurse in question was present. The hospital asserted the physician-patient privilege of the non-party mothers, but the trial court ordered the records produced, albeit with the names of the non-party mothers redacted. The appellate court, however, reversed. It began by holding that there is no basis in Texas procedure for redacting portions of medical records,[14] thus suggesting that the documents either were producible in their entirety or not at all and, in view of their concededly privileged nature in their complete form, therefore not at all. It then went on to write:

> "Additionally, the redaction of only identifying information does not address the concerns regarding portions of the nonparty medical records relating to diagnosis, evaluation, or treatment. The rule does not limit confidentiality to cover only the identity of the patient. Allowing production of [\*\*11] information regarding diagnosis, evaluation or treatment, would expand the scope of discovery of nonparty medical records, running afoul of the plain language of the privilege statutes."[15]

14  *41 S.W.3d at 801.*
15  *Id.* at 800.

The crux of the *Columbia Valley* decision thus was its conclusion that Texas procedure did not provide for redaction of the documents. But Texas procedural rules do not apply here, and the federal practice in this respect is quite different. And the point made in the language quoted above is unlikely to prove persuasive to the Texas

Case 4:08-cv-01273   Document 26-5   Filed on 04/02/09 in TXSD   Page 4 of 4

Page 4

178 F. Supp. 2d 412, *; 2001 U.S. Dist. LEXIS 21136, **

Supreme Court for the reasons set forth above.

The question whether the discovery of records redacted to eliminate identifying information may be compelled consistent with the privilege has been decided by a number of courts outside of Texas. Almost all have ruled in favor of discovery in such circumstances. [16] Given this heavy weight of authority, the fact that the policies of the privilege as articulated [**12] by the Texas Supreme Court would be served fully by appropriate redaction and production, and the unpersuasiveness for the blanket rule advocated by the doctors of the two lower court decisions upon which they rely, this Court is persuaded that the Texas Supreme Court, if presented with the question, would hold that production of the subpoenaed records after appropriate redaction would be consistent with the Texas physician-patient privilege.

> 16 *See, e.g., Bennett v. Fieser, 152 F.R.D. 641 (D. Kan. 1994); Ziegler v. Superior Court, 656 P.2d 1251, 134 Ariz. 390 (Ariz. App. 1982); Rudnick v. Superior Court, 11 Cal. 3d 924, 523 P.2d 643, 114 Cal. Rptr. 603 (1974); Cmty. Hosp. Ass'n v. District Court, 570 P.2d 243, 244-45, 194 Colo. 98, 100-01 (1977)* (en banc); *Ventimiglia v. Moffitt, 502 So. 2d 14 (Fla. App. 1986); Terre Haute Regional Hosp., Inc. v. Trueblood, 600 N.E.2d 1358, 1360-62 (Ind. 1992); Baptist Mem. Hosp. v. Johnson, 754 So. 2d 1165 (Miss. 2000); State ex rel. Benoit v. Randall, 431 S.W.2d 107 (Mo. 1968); Osterman v. Ehrenworth, 256 A.2d 123, 106 N.J. Super. 515 (N.J. Super. Ct. Law Div. 1969); Hyman v. Jewish Chronic Disease Hosp., 15 N.Y.2d 317, 258 N.Y.S.2d 397, 206 N.E.2d 338 (1965). But see, e.g., Binder v. Superior Court, 242 Cal. Rptr. 231, 196 Cal. App. 3d 893 (Cal. Ct. App. 1987); Parkson v. Central DuPage Hosp., 435 N.E.2d 140, 105 Ill. App. 3d 850, 61 Ill. Dec. 651 (Ill. App. Ct. 1982).*

[**13] III

Accordingly, subject to the parties' entering into a written stipulation providing [*417] for (a) the redaction of identifying information concerning the participants in the clinical trials for which medical records have been subpoenaed, and (b) the confidential treatment of the redacted records, the motion to quash by Drs. Schwartz and Raskin [docket item 210] is denied. The stipulation shall be submitted to the Court on or before January 8, 2002, failing which the Court will formulate its own order.

SO ORDERED.

Dated: December 20, 2001

Lewis A. Kaplan

United States District Judge