512 F.3d 184, \*; 2007 U.S. App. LEXIS 29749, \*\*;
27 I.E.R. Cas. (BNA) 162



LEXSEE

**ROBERT EARL PIERCE, Plaintiff-Appellant v. DEPARTMENT OF THE UNITED STATES AIR FORCE, Defendant-Appellee**

No. 06-61050

**UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**

*512 F.3d 184; 2007 U.S. App. LEXIS 29749; 27 I.E.R. Cas. (BNA) 162*

**December 21, 2007, Filed**

**SUBSEQUENT HISTORY:** US Supreme Court certiorari denied by *Pierce v. Dep't of Air Force*, 2008 U.S. LEXIS 3828 (U.S., Apr. 28, 2008)

**PRIOR HISTORY:** [\*\*1]
Appeal from the United States District Court for the Southern District of Mississippi.
*Pierce v. Dep't of the Air Force, 527 F. Supp. 2d 522, 2006 U.S. Dist. LEXIS 74449 (S.D. Miss., 2006)*

**DISPOSITION:** AFFIRMED.

**LexisNexis(R) Headnotes**

*Civil Procedure > Summary Judgment > Appellate Review > Standards of Review*
*Civil Procedure > Summary Judgment > Standards > General Overview*
[HN1] An appellate court reviews a grant of summary judgment de novo, viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. Summary judgment is proper when the evidence reflects no genuine issues of material fact and the nonmovant is entitled to judgment as a matter of law. *Fed. R. Civ. P. 56(c)*. An appellate court may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court.

*Administrative Law > Governmental Information > Personal Information > Enforcement > Grounds > General Overview*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*
[HN2] To establish that an agency failed to comply with the Privacy Act, a plaintiff must demonstrate that (1) the information is a "record" within a system of records; (2) the agency disclosed the information; (3) the disclosure adversely affected the plaintiff; and (4) the disclosure was willful or intentional. *5 U.S.C.S. § 552a(g)*.

*Administrative Law > Governmental Information > Personal Information > Access to Records*
[HN3] The Privacy Act defines "record" as any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a fingerprint or voice print or a photograph. *5 U.S.C.S. § 552a(a)(4)*. The Privacy Act defines "system of records" as a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual. *5 U.S.C.S. § 552a(a)(5)*.

*Administrative Law > Governmental Information > Personal Information > Access to Records*
[HN4] An Office of Management and Budget regulation entitled Guidance on the Privacy Act Implications of "Call Detail" *Programs, 52 Fed. Reg. 12,990-91 (April 20, 1987)*, states that, standing alone, a telephone number, is not a Privacy Act record. To achieve the status of a Privacy Act record, a telephone number must be maintained in a way that links it to an individual's name or some other identifying particular such as a Social Security account number. When an agency assigns a specific phone number to an employee and maintains that information in a way that the name and number are inseparably connected, there is sufficient identification

linkage that a Privacy Act record is created.

*Administrative Law > Governmental Information > Personal Information > Access to Records*
[HN5] To be a Privacy Act record, the information must be both (1) about an individual and (2) linked to that individual by name or identifying particular.

**COUNSEL:** For ROBERT EARL PIERCE, Plaintiff - Appellant: Michael Farrell, Lindsay Green Watts, YoungWilliams, Jackson, MS.

For DEPARTMENT OF THE UNITED STATES AIR FORCE, Defendant - Appellee: Helina S Dayries, Catherine M Maraist, US Attorney's Office, Middle District of Louisiana, Baton Rouge, LA.

**JUDGES:** Before DAVIS, BARKSDALE, and PRADO, Circuit Judges.

**OPINION BY:** W. EUGENE DAVIS

**OPINION**

[\*185] W. EUGENE DAVIS, Circuit Judge:

In this appeal, Plaintiff-Appellant Robert Pierce ("Pierce") challenges the district court's summary judgment rendered against him and in favor of Defendant-Appellee Department of the Air Force (the "Air Force") concluding that the Air Force did not violate Pierce's rights under the Privacy Act of 1974, *5 U.S.C. § 552a(b)* (the "Privacy Act"). The district court held that the documents at issue were not "records" contained within a "system of records" for purposes of the Privacy Act and granted summary judgment on that ground. We agree with the district court and affirm.

I.

In February 2001, Col. (Ret.) Joe Bryant ("Bryant"), a former pilot in the 186th Air Refueling Wing of the Mississippi Air National Guard, once [\*\*2] stationed at the Key Field Air National Guard Base in Meridian, Mississippi, filed a complaint that alleged wrongful conduct and improprieties by several officers of his unit. Included in the complaint were allegations against Pierce.[1]

> 1 Bryant alleged that Pierce improperly disposed of government property, cheated on examinations and research papers, wrongfully fraternized with, had an unprofessional relationship with, or sexually harassed a subordinate enlisted female, wrongfully referred one of his subordinate pilots for a mental health evaluation, wrongfully used aircraft for unauthorized flights and funds for improper expenditures, wrongfully received Air Force wings, wrongfully manipulated the merit selection process, wrongfully falsified or failed to update his military medical records and failed to take sick leave, and wrongfully threatened subordinates with unspecified adverse actions if they cooperated with investigators.

In February 2003, Colonel Kenneth Emmanuel ("Emmanuel") was designated by the Air Force Inspector General to investigate some of Bryant's allegations, and he did so over a period of several months. On May 31, 2004, Emmanuel issued his findings in a Report [\*\*3] of Investigation ("ROI"). Additionally, and pursuant to regulation, Emmanuel prepared a Summary [\*186] Report of Investigation ("SROI"), a version of the ROI that omits names and personally-identifying information of individuals in the report. AIR FORCE INSTRUCTION (AFI) 90-301, §§ 2.61, 2.49 (January 30, 2001). In the SROI, Emmanuel did not name the officers against whom Bryant lodged his complaints (including Pierce). Instead, consistent with regulation guidance, he identified them by duty titles. *Id.* § 2.49, Figure 2.6 ("Do not use names in the SROI. Use duty titles . . . ."). Pertinently, Pierce was referred to in the SROI as C-26 Program Manager and Counterdrug Coordinator.[2]

> 2 Pierce was C-26 Program Manager from 1996 to 2001, after which he became a Counterdrug Coordinator.

In July 2004, Colonel Ronnie Rogers ("Rogers") took over and assumed the responsibility for closing the investigation of Bryant's allegations. In the course of closing the investigation, he determined that Bryant was a "complainant" per Air Force regulations. As a "complainant" for the allegations, Bryant was entitled to a final response letter and an SROI. *Id.* § 2.61.4 (Complainant "will receive a final response, [\*\*4] in writing, with the findings of the investigation and a copy of the SROI (if available)."). On October 15, 2004, Rogers sent Bryant the final response letter and a copy of the SROI, in compliance with the Air Force regulations he considered applicable. After receiving the final response letter and the SROI, Bryant or his wife allegedly leaked information contained in those documents and informed the press that Pierce was the individual listed under the duty titles C-26 Program Manager and Counterdrug Coordinator. On October 22, 2004, *The Meridian Star and The Clarion Ledger* reported information from the final response letter and SROI and listed Pierce by name as a subject of the investigation.

Pierce filed suit against the Air Force alleging a violation of the Privacy Act. The parties later filed cross-motions for summary judgment. The district court held

that the final response letter and SROI provided to Bryant were not records protected by the Privacy Act and dismissed the suit. Pierce now appeals.

II.

A. STANDARD OF REVIEW

[HN1] We review a grant of summary judgment *de novo,* viewing all evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in [**5] that party's favor. *See Crawford v. Formosa Plastics Corp., 234 F.3d 899, 902 (5th Cir. 2000).* "Summary judgment is proper when the evidence reflects no genuine issues of material fact and the non-movant is entitled to judgment as a matter of law." *Id.* (citing *FED. R. Civ. P. 56(c)).* "We may affirm a summary judgment on any ground supported by the record, even if it is different from that relied on by the district court." *Lozano v. Ocwen Federal Bank, FSB, 489 F.3d 636, 641 (5th Cir. 2007)* (quoting *Holtzclaw v. DSC Communs. Corp., 255 F.3d 254, 258 (5th Cir. 2001))* (internal quotation marks omitted).

B. DISCUSSION

[HN2] To establish that an agency failed to comply with the Privacy Act, a plaintiff must demonstrate that: (1) the information is a "record" within a "system of records;" (2) the agency disclosed the information; (3) the disclosure adversely affected the plaintiff; and (4) the disclosure was willful or intentional. *5 U.S.C. § 552a(g);* [*187] *Jacobs v. National Drug Intelligence Center, 423 F.3d 512, 516 (5th Cir. 2005).* The Air Force moved for summary judgment on grounds that the summary judgment record demonstrated that Pierce could not establish prongs one, two, or four. The district [**6] court held that Pierce could not satisfy the first prong because duty titles used in lieu of names were not "identifying particulars," and thus the use of duty titles did not make the final response letter and SROI "records" within a "system of records." ³ Specifically, the district court found that the response that Bryant received did not include Pierce's name and held that a duty title is not unique to an individual because many people have the same or similar duty titles. The district court reasoned that duty titles change over time and that individuals typically have both a predecessor and a successor at any specific duty title. Thus, the district court found that although the newspapers were able to connect Pierce to the allegations against him, the newspapers could not have made such a connection without information found outside of the final response letter and SROI. As such, the final response letter and the SROI were not protected records per the Privacy Act, and Pierce's claim failed to meet the first prong. As discussed below, we agree that the newspapers could not have identified Pierce without additional information not released by the Air Force and that the duty titles [**7] released here are not the equivalent of names of particular individuals.

3 [HN3] The Privacy Act defines "record" as "any item, collection, or grouping of information about an individual that is maintained by an agency, including, but not limited to, his education, financial transactions, medical history, and criminal or employment history and that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a fingerprint or voice print or a photograph." *5 U.S.C. § 552a(a)(4).* The Privacy Act defines "system of records" as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." *Id. § 552a(a)(5).*

Appellant first relies on the plain language of the Privacy Act which states that a "record" is "any item . . . that contains his name, or the identifying number, symbol, or other identifying particular assigned to the individual, such as a finger or voice print or a photograph." *5 U.S.C. § 552a(a)(4).* Appellant argues that this language suggests that duty titles are the equivalent [**8] to the names of particular individuals. We disagree. Although the Privacy Act protects more than just documents that contain a person's name, it does not protect documents that do not include identifying particulars. Here, the district court found that the duty titles were not numbers, symbols, or other identifying particulars. Similarly, the district court found that duty titles were not comparable to captured immutable characteristics such as finger or voice prints or photographs. The district court reached these conclusions because an individual's duty title changes over time, because multiple people can concomitantly have the same or similar duty titles, and because each individual has predecessor and successor holders of the same duty titles. We agree with the reasoning and conclusions of the district court. In circumstances where duty titles pertain to one and only one individual, such as the examples of identifying particulars provided in the statutory text (finger or voice print or photograph), duty titles may indeed be "identifying particulars" as that term is used in the definition of "record" in the Privacy Act. For the reasons detailed by the district court, however, the [**9] duty titles in this [*188] case are not "identifying particulars" because they do not pertain to one and only one individual. *See, e.g., 32 C.F.R. § 806b.45 (2007)* (permitting disclosure of an individual's past and present position title and stateside duty assignments without written consent of that individual); *32 C.F.R. Pt. 505, App. H* (defining "personal identifier" as "name, number, or symbol that is unique to an

512 F.3d 184, *; 2007 U.S. App. LEXIS 29749, **;
27 I.E.R. Cas. (BNA) 162

individual, usually the person's name or SSN"). And the plain language of the Privacy Act does not support the conclusion that duty titles are identifying particulars.

Appellant next relies on an Office of Management and Budget regulation to argue that to be a "record" under the Privacy Act, the information does not have to be unique to an individual, only that it be "about" that individual. Guidance on the Privacy Act Implications of "Call Detail" *Programs, 52 Fed. Reg. 12,990-91 (April 20, 1987)*. This regulation was promulgated to provide guidance to agencies creating "call detail programs" that collect and use information relating to their employees' use of long distance telephone systems. *Id. at 12,990.* The regulation provides that call detail records that contain only telephone [**10] numbers are not records under the Privacy Act, but that when linked with a name they become such records. Appellant correctly notes that the Privacy Act's definition of "record" is thus not limited to purely unique or immutable identifying information, as telephone numbers can be protected. *Id. at 12,991.*

The regulation, however, does not support the conclusion that the final response letter and SROI are records protected by the Privacy Act. The regulation states that identifying information alone, unless accompanied by a link between the identifying information and a specific individual, is insufficient to make a record protected. *Id.* ([HN4] "Standing alone, a telephone number, is not a Privacy Act record. To achieve the status of a Privacy Act record, a telephone number must be maintained in a way that links it to an individual's name or some other identifying particular such as a Social Security Account Number. When an agency assigns a specific phone number to an employee and maintains that information in a way that the name and number are inseparably connected, there is sufficient identification linkage that a Privacy Act record is created."). Thus, the regulation confirms what has been [**11] recognized by other courts: [HN5] To be a Privacy Act record, the information must be both (1) "about" the individual and (2) linked to that individual by name or identifying particular. *See, e.g., Tobey v. N.L.R.B., 309 U.S. App. D.C. 213, 40 F.3d 469, 471 (D.C. Cir. 1994)*. The final response letter and SROI sent to Bryant included the allegations and other information "about" Pierce. This satisfies the first prong of the definition of "record." The second prong, however, is unsatisfied. As explained above, the duty titles in this case do not qualify as identifying particulars. As such, the final response letter and SROI did not include the requisite linkage to Pierce by his name or other identifying particular. The final response letter and SROI are thus not Privacy Act records.

In support of the argument that duty titles are not unique to an individual, Appellee points out that at the time the newspaper articles were printed Pierce no longer held the duty title of C-26 Program Manager, his duty title prior to 2001. The newspaper articles were printed on October 22, 2004. At that time Pierce held the duty title of Counterdrug Coordinator, his assignment after his C-26 Program Manager position, and against which [**12] only one allegation from the final response letter and SROI pertained. Thus, Pierce's duty title had changed, and all but one of the eight allegations listed in the October 15, 2004 final response letter pertained to a [*189] duty title he no longer held. As such, Appellee argues that the link to Pierce was not so simple as identifying the current holder of the listed duty titles because that inquiry would not have identified Pierce except for as to one of the allegations. The inclusion of one allegation involving Pierce's then-current duty title does not mean that the report specifically identified only Pierce for this allegation, because a person reading the report would have to know which allegations pertained to military personnel in their current positions instead of their previous positions. Had the report included both duty titles and dates for the allegations, the report very well might have linked specifically to Pierce because only one person could have held his duty title on those dates. But simply listing allegations by duty titles without specifying when the personnel involved held those duty titles is insufficient to turn Pierce's then-current duty title into an "identifying [**13] particular."

To answer this argument, Appellant relies on *Quinn v. Stone, 978 F.2d 126 (3d Cir. 1992).* In *Quinn*, the court determined that data stored in a hunting records database and accessible by the names of the hunters were Privacy Act records, despite the fact that some of the information was out-of-date. *Id. at 132.* ("As this case demonstrates, the meaningful privacy interest in a particular piece of information may be lessened by the passage of time, but such an interest is unlikely to be extinguished. We conclude that this out-of-date home address was meaningful information and was protected by the Privacy Act."). The hunting database stored information regarding where and when the plaintiffs had been hunting. Critically, the stored information in question linked the plaintiffs' names to their phone numbers and addresses. In relying on *Quinn*, Appellant both fails to respond to the relevant Appellee argument and again fails to satisfy the second prong of the definition of "record" under the Privacy Act. Appellee's argument is that duty titles are not identifying particulars because they change over time. In the instant case, the duty title for all but one of the allegations [**14] was no longer temporally accurate. The *Quinn* holding, that an individual may have a privacy interest in an outdated piece of information, does not respond to Appellee's argument. It is true that an individual may have a privacy interest in outdated information, but that privacy interest is limited to instances where the outdated information is linked to the individual by name or identifying particular.

*Id. at 133* (holding that the definition of "record" pertains to "information about an individual that is linked to that individual through an identifying particular"). Thus, Appellant repeats the mistake addressed above and focuses on the first requirement of a Privacy Act record while failing to fulfill the second. It is true that the allegations are "about" Pierce, but the duty titles in this case do not link the allegations to him.

In holding that the documents were not "records," the district court relied on *Fleming v. United States RRB, No. 01-C-6289, 2002 U.S. Dist. LEXIS 2738, 2002 WL 252459 (N.D. Feb. 21, 2002)*. In that case, an agency summary report, which listed the plaintiff by a description of his job rather than by his name, was published on its website listing information regarding an investigation [**15] of whether the plaintiff was conducting his private law practice during official government time. *Id. 2002 U.S. Dist. LEXIS 2738 [WL] at *2*. Importantly, the investigation at issue was the only one described in the report, such that other employees at the agency would have no trouble identifying the subject. *Id.* ("[H]is was the only disciplinary case described in [the] . . . report and . . . fellow employees who had been questioned . . . [*190] knew that plaintiff was being investigated."). The plaintiff claimed that the summary report was a Privacy Act record. The court held that the information did not constitute a "record" because the disclosure was "about" the plaintiff but was not linked to him by his name or identifying particular. *Id.* The *Fleming* court acknowledged that the Privacy Act definition of "record" includes the words "such as" before the list of example identifying particulars (finger or voice print or photograph), which indicates the list is neither exclusive nor exhaustive. The court held, however, that the information in question (plaintiff's job description) "would have identified plaintiff only to an individual who had *other information* that would have caused that individual to *infer* from the report [**16] that plaintiff was the subject of the investigation." *Id.* (emphasis added). *Fleming* supports that information "about" an individual is not a Privacy Act record unless it is linked to that individual by name or identifying particular and that a description of an individual's job is not an identifying particular. *Id.* Thus, even when those with inside knowledge are able "to infer" who an undisclosed individual is, the fact that the insiders have to use "other information" to do so does not justify a conclusion that the released information is a "record."

Appellant argues that *Fleming* is inconsistent with *Dep't of the Air Force v. Rose, 425 U.S. 352, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976)*. In *Rose*, law review editors brought an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to compel disclosure of case summaries of service academy honor and ethics hearings with personal references and other identifying material deleted. *425 U.S. at 355*. The case turned on exemption 6 to FOIA, which exempts "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." *5 U.S.C. § 552(b)(6)* ("Exemption 6"). The district court concluded that [**17] Exemption 6 was inapplicable because

> disclosure of the summaries without names or other identifying information would not subject any former cadet to public identification and stigma, and the possibility of identification by another former cadet could not, in the context of the Academy's practice of distribution and official posting of the summaries, constitute an invasion of personal privacy proscribed [by Exemption 6].

*Rose, 425 U.S. at 357*. The Court of Appeals disagreed with this approach, and held that the district court and the agency must produce the documents in court and redact the records so as to "delete personal references and all other identifying information." *Id. at 358* (citing *Rose v. Department of Air Force, 495 F.2d 261, 267 (2d Cir. 1974))*. The Supreme Court granted certiorari and agreed with the Court of Appeals that the documents should be produced and redacted, and stated, *inter alia,* that "what constitutes identifying information regarding a subject cadet must be weighed not only from the viewpoint of the public, but also from the vantage of those who would have been familiar, as fellow cadets or Academy staff . . . ." *Rose, 425 U.S. at 380*. Appellant argues that [**18] this passage, describing the subjective nature of redaction in an Exemption 6 context, supports the conclusion that there was a Privacy Act violation in the instant case because Bryant's knowledge was not taken into account when the final response letter and SROI were sent to him. Appellant's reliance on *Rose* is unpersuasive.

Most importantly, *Rose* does not apply in the context of the instant Privacy Act case. *Rose* deals with the privacy interest of an individual under a FOIA exemption [*191] that the Supreme Court has stated should be construed narrowly. *See United States Dep't of Justice v. Tax Analysts, 492 U.S. 136, 150-51, 109 S. Ct. 2841, 106 L. Ed. 2d 112 (1989)* ("Congress formulated a system of clearly defined exemptions to the FOIA's otherwise mandatory disclosure requirements . . . . Consistent with the [FOIA] goal of broad disclosure, these exemptions have been consistently given a narrow compass."); *see also Rose, 425 U.S. at 366* (quoting *Vaughn v. Rosen, 173 U.S. App. D.C. 187, 523 F.2d 1136, 1142 (D.C. Cir. 1975))*. While the Privacy Act was designed to provide individuals with more control over the gathering, dissemination, and accuracy of agency information about themselves, FOIA was intended to increase the public's

access to governmental [\*\*19] information and was drafted with a strong presumption for disclosure to allow public scrutiny of government processes. Thus, the language taken from *Rose*, specific to Exemption 6 to FOIA, is not applicable to the Privacy Act, which is an entirely different framework. *See Greentree v. United States Customs Service, 218 U.S. App. D.C. 231, 674 F.2d 74, 76 (D.C. Cir. 1982)* (stating that the Privacy Act and FOIA each "has its own functions and limitations"); *Rojem v. United States Dep't of Justice, 775 F. Supp. 6, 13 (D. D.C. 1991)* ("[T]here are instances in which the FOIA denies access and the Privacy Act compels release. . . . Thus, the Court must evaluate the Plaintiff's Privacy Act claim independently.") (citations omitted); *see also Simon v. United States Dep't of Justice, 752 F. Supp. 14, 22-23 (D. D.C. 1990)* (conducting separate inquiries despite significant overlap of the two statutes). Courts have noted that the two statutes have very different goals which result in different outcomes. *See, e.g., Greentree, 674 F.2d at 78* ("It is readily apparent . . . that the Privacy Act and FOIA substantially overlap. However, it is apparent also that the two statutes are not completely coextensive; each provides [\*\*20] or limits access to material not opened or closed by the other."); *Tobey, 40 F.3d at 472*. With these differences between the statutes in mind, Appellant points to no precedent that supports the use of the *Rose* FOIA Exemption 6 principal in this Privacy Act case.

One court, however, has contemplated applying the Exemption 6 framework in the Privacy Act context. *See Tobey, 40 F.3d at 472; New York Times Co. v. National Aeronautics and Space Administration, 287 U.S. App. D.C. 208, 920 F.2d 1002 (D.C. Cir. 1990)*. When comparing "similar files," the document analog in Exemption 6 to "record" under the Privacy Act, the *Tobey* court stated that there was substantial difference between the meanings of the terms. *Tobey, 40 F.3d at 472*. Specifically, to qualify as a "record" under the Privacy Act, the information must be "about" the individual. *Id.* To qualify as a "similar file" under Exemption 6, on the other hand, the information need only "appl[y]" to the individual. *Id.; see also New York Times, 920 F.2d at 1006* (citing *United States Dep't of State v. Washington Post Co., 456 U.S. 595, 102 S. Ct. 1957, 72 L. Ed. 2d 358 (1982))*. This distinction is crucial because the "latter category is a broad one, encompassing virtually all data that relate to an [\*\*21] individual; the former, however, includes only information that actually describes the individual in some way." *Tobey, 40 F.3d at 472*. This makes sense because under Exemption 6 a broad range of documents are applicable, but there is a limiting second step of weighing the individual's privacy interest versus the interest in public disclosure. *5 U.S.C. § 552(b)(6); see also New York Times, 920 F.2d at 1006*. Under the Privacy Act there is no such second limiting step; instead, documents are filtered by the limitation ingrained in the definition of [\*192] "record" that they be both "about" the individual and include his name or identifying particular. *5 U.S.C. § 552a(a)(4); Tobey, 40 F.3d at 472* ("The Privacy Act notice requirement provides for no comparable bifurcated analysis that would justify a similarly low threshold for defining 'records.'"). This distinction "is necessary given the different functions that [E]xemption 6 and the Privacy Act fulfill" and illustrates why the Exemption 6 approach "does not translate well to the Privacy Act." *Tobey, 40 F.3d at 472*. This difference demonstrates that the two statutes work fundamentally differently and that especially in this context, the determination [\*\*22] of what is a "record" per the Privacy Act, the Exemption 6 framework is inapplicable.

Also, to accept Appellant's reading of *Rose* would eviscerate the entire response framework the Air Force has established with regard to complainants. Complainants will almost certainly know the identity of the person against whom they lodge a complaint. Under Appellant's reading of *Rose*, the Air Force would be required to investigate every complainant as well as the subject of each investigation, to determine whether the complainant could identify the subject before deciding on the response. Using this reasoning, the Air Force should have released little or no information to Bryant because it should have ascertained that Bryant knew Pierce's identity and would likely leak his name to the press. We are satisfied that *Rose* does not mandate this outcome.

Finally, Appellant relies on *United States Department of State v. Ray, 502 U.S. 164, 112 S. Ct. 541, 116 L. Ed. 2d 526 (1991)*, another FOIA case regarding Exemption 6, which held that "invasion of privacy becomes significant when the personal information is linked" to a particular individual. *Id. at 176*. In Ray, the Court held that the names of individuals should be redacted to protect [\*\*23] the privacy interests of those individuals. Even if this FOIA case applied here, it is not helpful to Appellant because the Air Force did not release Pierce's name.

We agree with the district court that the final response letter and SROI released by the Air Force were not "records" within a "system of records" per the Privacy Act. Emmanuel generated the SROI, a type of report specifically designed to omit identifying particulars, pursuant to Air Force regulation. Later, and again pursuant to regulation, Rogers sent the SROI along with a final response letter to Bryant. The fact that the newspapers made the connection to Pierce and identified him does not establish a Privacy Act violation. If we were to accept Appellant's interpretation of the Privacy Act, the Air Force would not have been able to respond to Bryant about the results of its investigation of activities of persons against whom Bryant complained. To be sure, any update regarding the status of the

512 F.3d 184, *; 2007 U.S. App. LEXIS 29749, **;
27 I.E.R. Cas. (BNA) 162

investigation would have allowed Bryant to divulge information to the press about the individuals being investigated. The Air Force, however, followed its regulation and released information it was required to release after omitting [**24] the names and identifying particulars of the subjects of the investigation, and it cannot be held accountable for Bryant's intervening act. The district court correctly granted summary judgment to the Air Force.

III. CONCLUSION

For the foregoing reasons, the decision of the district court is AFFIRMED.

AFFIRMED.