

LEXSEE 41 SW3D 797

IN RE: COLUMBIA VALLEY REGIONAL MEDICAL CENTER

NUMBER 13-00-726-CV

COURT OF APPEALS OF TEXAS, THIRTEENTH DISTRICT, CORPUS CHRISTI

41 S.W.3d 797; 2001 Tex. App. LEXIS 1668

March 8, 2001, Delivered
March 8, 2001, Filed

**DISPOSITION:** [**1] Hospital's petition for writ of mandamus granted.

**COUNSEL:** ATTORNEYS FOR RELATOR: Thomas F. Nye, Linda C. Breck, Brin & Brin, Attorneys at Law, Corpus Christi, TX.

ATTORNEYS FOR REAL PARTIES IN INTEREST: Steven M. Gonzalez, Marshall & Gonzalez, Attorneys at Law, McAllen, TX, Nathan A. Hardee, Attorney at Law, Houston, TX, Peter M. Zavaletta, The Zavaletta Law Firm, Brownsville, TX.

ATTORNEYS FOR AMICUS CURIAE: Matthew T Wall, Austin, Tx, Lee A. Spragler, Donald P. Wilcox, Texas Medical Association, Austin, TX.

**JUDGES:** Opinion by Justice Rodriguez. Dissenting Opinion by Justice J. Bonner Dorsey, joined by Senior Justice Robert J. Seerden.

**OPINION BY:** NELDA V. RODRIGUEZ

**OPINION**

[*798] **On Petition for Writ of Mandamus.**

Before the Court En Banc [1]

    1 The Court en banc also includes Senior Justice Robert J. Seerden assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to TEX. GOV'T CODE ANN. § 74.003 (Vernon 1998).

Opinion by Justice Rodriguez

In this mandamus action, [**2] Columbia Valley Regional Medical Center (the hospital) seeks relief from a trial court's order that requires production of nonparty labor and delivery records, and related nurses notes, in redacted form so that patient identity is not revealed. We hold, under the facts of this case, that the trial court abused its discretion in ordering the production of redacted nonparty medical records. Accordingly, we conditionally grant the petition for writ of mandamus.

Mandamus will issue to correct a clear abuse of discretion. *See Liberty Nat'l Fire Ins. Co. v. Akin,* 927 S.W.2d 627, 630 (Tex. 1996) (orig. proceeding); *Walker v. Packer,* 827 S.W.2d 833, 839-40 (Tex. 1992) (orig. proceeding). The trial court has no discretion to misinterpret or misapply the law; an abuse of discretion is committed when the trial court clearly fails to analyze or apply the law correctly. *See Walker,* 827 S.W.2d at 840.

The underlying action is for medical malpractice. The real party in interest, Sandra Cantu, individually and as next [*799] friend of Martha Esmeralda Rodriguez, a minor child, seeks production of nonparty medical records that concern deliveries where Nurse [**3] Brenda Mayo-Williams, a labor and delivery room nurse, was present in the delivery room. Cantu maintains she needs the records in order to determine whether it was Nurse Mayo-Williams, and not the doctor, who delivered her baby.

The hospital seeks relief on grounds that the trial court abused its discretion in compelling it to turn over those records because the records are privileged. It claims that redacting the names of the patients will not cure the problem because other information contained in the records could reveal the identities of the patients with minimal investigative work. Moreover, the hospital claims that the doctor, codefendant Dr. Martha Martinez, has already admitted she delivered Cantu's baby, and,

thus, production is unnecessary. The hospital further argues that because certain portions of the documents are privileged, those documents are privileged in their entirety, and redaction does not defeat the privilege.

"Generally, confidential communications between a physician and patient are privileged and may not be disclosed." *Hogue v. Kroger Store,* 875 S.W.2d 477, 480 (Tex. App.--Houston [1st Dist.] 1994, writ denied). *Section 159.002* [**4] *of the Texas Occupations Code* and *rule 509(c)(2) of the Texas Rules of Evidence* specifically provide that records of the identity, diagnosis, evaluation or treatment of a patient are confidential and privileged and may not be disclosed. *See TEX. OCC. CODE ANN. § 159.002(b)* (Vernon Supp. 2001); *TEX. R. EVID. 509(c)(2).* Further, the Texas Health and Safety Code provides that all health care information found in hospital records is privileged and cannot be disclosed without authorization. *See TEX. HEALTH & SAFETY CODE ANN. § 241.151(2)* (Vernon Supp. 2001). "Health care information" is defined as "information recorded in any form or medium that identifies a patient and relates to the history, diagnosis, treatment, or prognosis of a patient." *TEX. HEALTH & SAFETY CODE ANN. § 241.151(2)* (Vernon Supp. 2001).

Importantly, Cantu concedes that the medical records of the nonparties in the underlying litigation are privileged. Although there are a number of exceptions to this privilege, Cantu argues none. *See TEX. OCC. CODE ANN. §§ 159.003-.004* (Vernon 2000); *TEX. HEALTH & SAFETY CODE ANN. § 241.153* [**5] (Vernon Supp. 2001); *TEX. R. EVID. 509(e).*

### Redaction of Identifying Information

Cantu asserts in her response to the petition for writ of mandamus that she seeks the medical records in redacted form so that patient identity is not revealed. Without providing this Court any supporting authority, Cantu contends that by redacting the identifying information, the privilege does not apply because the privacy rights of the nonparties are protected.

Cantu bases her argument on the language found in *Texas Rule of Civil Procedure 196.1(c).* That rule articulates, in pertinent part:

> (1) *Service of request on nonparty.* If a party requests another party to produce medical or mental health records regarding a nonparty, the requesting party must serve the nonparty with the request for production under Rule 21a.
>
> (2) *Exceptions.* A party is not required to serve the request for production on a nonparty whose medical records are sought if:

*****

> (B) the identity of the nonparty whose records are sought will not directly [*800] or indirectly be disclosed by production of the records;

*****

> (3) *Confidentiality.* Nothing in this rule excuses compliance with laws concerning [**6] the confidentiality of medical or mental health records.

*TEX. R. CIV. P. 196.1(c).* While *rule 196.1(c)* contemplates redaction of identifying information from nonparty medical records in order to avoid service on that nonparty, it is only a notice requirement rule and in no way addresses the parameters of the substantive privilege. *See* Hecht & Pemberton, *A Guide to the 1999 Texas Discovery Rules Revisions,* G-14 (Nov. 11, 1998). *Cf. In re: Diversicare Gen. Partner, Inc., Diversicare Leasing Corp., Advocat, Inc., and Tex. Diversicare Limited Partnership d/b/a/ Goliad Manor, Inc.,* 41 S.W.3d 788, 795 (Tex. App.--Corpus Christi Mar. 8, 2001, no pet. h.) (orig. proceeding) (designated for publication) (holding redacted nonparty nursing facility records were not discoverable).

*Rule 196.1(c)* does not provide authority for Cantu's contention that redaction of identifying information takes the records outside the scope of the nonparty's privilege. Section 3 of the rule explicitly provides that "nothing in this rule excuses compliance with laws concerning the confidentiality of medical . . . records." *TEX.* [**7] *R. CIV. P. 196.1(c)(3).* Further, comment 8 to the 1999 rule changes specifically points out that *"rule 196.1(c)* is merely a notice requirement and does not expand the scope of discovery of a nonparty's medical records." *TEX. R. CIV. P. 196.1* cmt. 8 (1999). This rule does not imply that such records are or should be discoverable. *See* Hecht & Pemberton, *A Guide to the 1999 Texas Discovery Rules Revisions,* G-14 (Nov. 11, 1998). The statutes and evidentiary rule clearly state that nonparty medical records are privileged.

Additionally, the redaction of only identifying information does not address the concerns regarding portions of the nonparty medical records relating to diagnosis, evaluation, or treatment. The rule does not limit confidentiality to cover only the identity of the patient. Allowing production of information regarding diagnosis, evaluation or treatment, would expand the scope of discovery of nonparty medical records, running afoul of the plain language of the privilege statutes.

We conclude, therefore, redaction of identifying information from nonparty medical records does not

defeat the medical records privilege.

### Redaction of All Privileged Information

[**8] During oral argument, Cantu's counsel stated he would accept nonparty medical records with everything "totally whited out" except for what the records reveal about Nurse Mayo-Williams's charting customs. This raises the issue of whether redaction of *any* or *all* privileged information will render the remainder of the medical records discoverable.

Our sister courts have held, in the context of information protected by the attorney-client privilege, that redaction of the privileged portion of the information will not then render the remainder of the document discoverable. *See, e.g., In re Bloomfield Mfg. Co., 977 S.W.2d 389, 392* (Tex. App.--San Antonio 1998, orig. proceeding); *Pittsburgh Corning Corp. v. Caldwell, 861 S.W.2d 423, 425* (Tex. App.--Houston [14th Dist.] 1993, orig. proceeding); *Keene Corp. v. Caldwell, 840 S.W.2d 715, 720* (Tex. App.--Houston [14th Dist.] 1992, orig. proceeding); *see also Austin v. State, 934 S.W.2d 672, 675 (Tex. Crim. App. 1996)* (disclosure [*801] of attorney's verbal communication to client of trial date setting not subject to attorney-client privilege).

The purpose of the attorney-client [**9] communication privilege is to promote the free flow of communications between an attorney and client on matters involved in litigation by insuring the communications will not be subject to subsequent disclosure. *See Keene Corp., 840 S.W.2d at 719* (citing *Maryland Amer. Gen. Ins. Co. v. Blackmon, 639 S.W.2d 455, 458 (Tex. 1982))*; *In re Bloomfield, 977 S.W.2d at 392* (citing *Boring & Tunneling Co. of Am., Inc. v. Salazar, 782 S.W.2d 284, 289* (Tex. App.--Houston [1st Dist.] 1989, orig. proceeding)). The basis for the physician-patient and the mental health privileges, which includes the confidentiality of hospital records, is: (1) "to encourage the full communication necessary for effective treatment," and (2) "to prevent unnecessary disclosure of highly personal information." *R.K., M.D. v. Ramirez, 887 S.W.2d 836, 839-40 (Tex. 1994)* (citing *Ginsberg v. Fifth Court of App., 686 S.W.2d 105, 107 (Tex. 1985); Ex Parte Abell, 613 S.W.2d 255, 262 (Tex. 1981))*. The similarity of purpose is apparent: to allow for complete communication without fear of disclosure, so that the [**10] professional can effectively render services. Accordingly, we believe the reasoning in the foregoing cases is applicable to issues involving the medical records privilege.

In the attorney-client context, the trial court does not have the authority to shield portions of documents from discovery through the redaction of information covered by the attorney-client privilege, while allowing production of the remainder of the document. *See Pittsburgh Corning, 861 S.W.2d at 425*. Once it is established that a document contains a confidential communication, the privilege extends to the entire document, and not merely to the specific portions related to legal advice, opinions or mental analysis. *See id.* The *Pittsburgh* Court concluded that "except in the rarest of circumstances, documents falling within the attorney-client privilege simply are not discoverable, even when they are interwoven with factual information." *See Pittsburgh Corning, 861 S.W.2d at 427*.

It is not our intent, nor was it the intent of the *Pittsburgh* Court, to hinder discovery of relevant information in a lawsuit. *See Pittsburgh Corning, 861 S.W.2d at 427; see also Diversicare,* [**11] *41 S.W.3d 788, 796*. However, the allegedly relevant facts sought by Cantu are discoverable through other proper means of discovery, without forcing the production of privileged nonparty medical records which may also contain that factual information. *See Pittsburgh Corning, 861 S.W.2d at 425*. There are appropriate remedies and discovery tools available to discern those facts without disturbing the "sanctity and necessity" of the nonparty patient's medical records privilege. *See Pittsburgh Corning, 861 S.W.2d at 427*. Although we conclude that the hospital cannot be compelled to furnish nonparty medical records upon request, Cantu could seek the information by deposing the defendant nurse. Cantu could also take the depositions of other health care providers who were present in the operating room at the time of the delivery. Moreover, the hospital asserts that it has already presented co-defendant Dr. Martinez's testimony that she delivered the infant.

Furthermore, and importantly, although Cantu couches her request as discovery of factual information regarding the conduct of Nurse Mayo-Williams, the information sought is, in fact, related to the [**12] treatment of the patient, and, as such, remains privileged information. To hold that this privileged [*802] portion of a nonparty's medical records should be disclosed because it may arguably reveal facts related to the nurse's charting customs, would annihilate the purpose of the privilege. *See id.*

Accordingly, we conclude, under the facts of this case, the redaction of any or all privileged portions of the nonparty medical records does not defeat the privilege.

### Constitutional Right to Privacy

Furthermore, we conclude there is a constitutional right to privacy issue in this case. Apart from any statutory or evidentiary privileges that apply, the medical records of an individual have been held to be within the zone of privacy protected by the United States Constitution. *See In re Xeller, 6 S.W.3d 618, 625* (Tex. App.--Houston [14th.] 1999, orig. proceeding (citing *Alpha Life Ins. Co. v. Gayle, 796 S.W.2d 834, 836* (Tex. App.--Houston [14th Dist.] 1990, no writ)); Op. Tex.

Att'y Gen. ORD-370 (1983) (medical records not protected by statute may be protected by constitutional right to privacy); *see also* Op. Tex. Att'y Gen. ORD-1461 (1999) [\*\*13] (constitutional right to privacy consists of the individual interest in independence in making certain kinds of important decisions, and the individual interest in independence in avoiding disclosure of personal matters).

In *Xeller*, the plaintiff sought medical reports on nonparty workers' compensation claimants without their consent. *Xeller, 6 S.W.3d at 625*. The plaintiff argued that the physician-patient privilege and the right to privacy did not preclude him from obtaining redacted records. *Id.* However, because plaintiff did not dispute that the medical reports, *inter alia*, are privileged under the Medical Practice Act or the right to privacy, but only that the "litigation exception" applied, the court held that the documents, even in redacted form, were not discoverable. *See id.* (citations omitted). The court also held that, without nonparty consent, to the extent other documents required disclosure of the identity, diagnosis and treatment of the nonparty claimants, those documents were also privileged. *See id.; cf. Alpha Life Ins. Co. v. Gayle, 796 S.W.2d 834, 835-36* (Tex. App.--Houston [14th Dist.] 1990, orig. proceeding) (without [\*\*14] arguing violation of privacy rights and confidentiality with or without redaction, relator requested redaction of names, addresses and personal information to protect privacy rights of nonparty claimants and confidentiality of their medical and health information contained in claims and underwriting files, and court allowed redaction, finding relator's interest in protecting privacy rights of claimants clearly outweighed any right real parties in interest had to discover identifies of other claimants).

This Court has dealt with similar issues of privilege. In *In re Dolezal, 970 S.W.2d 650* (Tex. App.--Corpus Christi 1998, orig. proceeding), we emphasized the importance of privacy rights with respect to medical records by opining that medical records are within a zone of privacy protected by the United States Constitution. *Dolezal, 970 S.W.2d at 652.* In *Dolezal*, the real party in interest sought the names of all patients seen by a physician at the request of a law firm. *See id.* This Court conditionally granted the petition because the trial court abused its discretion in ordering the production of such information. *See id. at 654; see also* [\*\*15] *In re Anderson, 973 S.W.2d 410, 411-12* (Tex. App.--Eastland 1998, orig. proceeding) (where plaintiff sought discovery of identity of persons who had made complaints against defendant physician, his clinic, or technician, court held information sought was privileged and not subject to discovery).

[\*803] We conclude, therefore, the privacy rights of the nonparties in this case have been violated by ordering the production of their medical records.

### Discovery Pursuant to *Rule 192.3(a)*

Cantu argues that because her discovery requests are proper and relevant to Nurse Mayo-Williams's charting customs, *rule 192.3(a) of the Texas Rules of Civil Procedure* applies. However, *rule 192.3(a)* allows a party to obtain discovery regarding any matter that is *not privileged* and that is relevant to the subject matter of the pending case. *See TEX. R. CIV. P. 192.3(a)*. Because we have determined the requested nonparty medical records in redacted form remain privileged, and information protected by a privilege is outside the scope of discovery, this argument is misplaced.

Accordingly, we hold, under the facts of this case, the trial court abused its discretion in ordering the production [\*\*16] of redacted nonparty medical records. We are confident that the trial court will vacate its order requiring the hospital to produce those records. We, therefore, conditionally grant the hospital's petition for writ of mandamus.

NELDA V. RODRIGUEZ

Justice

Dissenting Opinion by Justice J. Bonner Dorsey,

joined by Senior Justice Robert J. Seerden.

Opinion delivered and filed

this 8th day of March, 2001.

**DISSENT BY: J. BONNER DORSEY**

**DISSENT**

**DISSENTING OPINION**

Before the Court En Banc [1]

> 1  Senior Justice Robert J. Seerden assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to *TEX. GOV'T CODE ANN. § 74.003* (Vernon 1998).

Dissenting Opinion by Justice Dorsey

I dissent from the majority's particular holding in this case, and also disagree with the broad language and multiple bases used to justify its position.

The issue is whether the trial judge clearly abused his discretion in requiring the hospital, after deleting all material that could identify [\*\*17] the patients, to reveal a particular delivery room nurse's notes as to whether the physician was in the delivery room at the time of an infant's birth, and when the physician arrived.

The suit involves an alleged injury to an infant,

where the plaintiff claims that an instrument was wrongly used on the infant during birth. Who used the tool and injured the child is critical to the plaintiff's case. The defendant physician, although denying negligence, admits to delivering the child and being present during the critical time when the injury allegedly occurred. However, the mother, a plaintiff, has testified in discovery that while her child was being born and had partially emerged from her body, she saw the defendant physician walk into the delivery room for the first time. If the mother is correct, and the physician had first entered the delivery room after the injury to her child had occurred, someone else was aiding in the delivery without authority and injured the child.

What is sought here are the notes this particular delivery room nurse made on other births when she was present over a several month period, looking solely to whether she noted when the physician arrived or was [\*\*18] present. The habit or practice of this nurse to record this data is the subject of the disputed discovery. Did the nurse regularly record this information in her notes?

The order complained of requires the hospital to shield the identity of the patients whose records are to be examined and copied. The issue is not whether the trial court allowed sufficient protection to protect the identity of patients, as the hospital is directed to take such measures as are necessary to protect identity, which could include omission not only of the name and identifying characteristics of the mother/patient, but also the date of the birth, the sex of the child, and whatever [\*804] else is necessary to provide anonymity to the patient.

I would hold that such redaction of the hospital's records makes them fall outside the scope of the physician-patient privilege. That privilege is found in three locations in the law of Texas: the rules of evidence, the occupations code, and in the health and safety code. *TEX. OCC. CODE ANN. § 159.002(b)* (Vernon Supp. 2001); *TEX. HEALTH & SAFETY CODE ANN. § 241.151(2), 241.152* (Vernon Supp. 2001); *TEX.* [\*\*19] *R. EVID. 509(c)(2)*. The language of the specific provisions shows that the order at issue does not violate the physician-patient privilege.

Protection of the identity of the patients clearly makes these records fall outside the scope of the version of the privilege codified in the health and safety code. See *TEX. HEALTH & SAFETY CODE ANN. § 241.152(a)*. In that statute, except in certain circumstances, "a hospital or an agent or employee of a hospital may not disclose health care information *about a patient* to any person other than the patient or the patient's legally authorized representative." *Id.* (emphasis added). "Health care information" is information that "identifies a patient *and* relates to the history, diagnosis, treatment, or prognosis of a patient." *Id.* at *§ 241.151(a)* (emphasis added). Thus, if the information does not both identify the patient and relate to his "history, diagnosis, treatment, or prognosis," it is not "health care information" under the statute. Accordingly, I would hold that the proposed redaction adequately addresses the concerns expressed by the majority. The information sought from those records [\*\*20] does not concern the patient's history, treatment, diagnosis, or prognosis, but concerns the presence of a particular nurse during the delivery of the patient. I believe this information could be safely revealed without infringing on the confidentiality concerns addressed by the statute.

The version of the privilege contained in the occupations code protects the confidentiality of both communications between a physician and a patient and of certain "records." *TEX. OCC. CODE ANN. § 159.002(a)-(b)*. The records that are protected are records "of the identity, diagnosis, evaluation, or treatment of a patient by a physician that is created or maintained by a physician." *Id.* at *§ 159.002(b)*. The next section of the chapter carves out numerous exceptions to this general rule in the context of "court or administrative proceedings." *Id.* at *§ 159.003(a)*. One notable exception exists when the record or communication is produced "to a court or a party to an action under a court order or court subpoena." *Id.* at *§ 159.003(a)(12)*. I would interpret that provision to include a situation where the trial court has determined that the confidentiality concerns of the patient are adequately [\*\*21] protected, such as the one presented in this case.

Finally, the version of the privilege contained in the rule of evidence sets forth the "general rule of privilege" in civil proceedings. *TEX. R. EVID. 509(c)*. Rule 509(c) states that both confidential communications between physician and patient, and "records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed." *Id.* However, redacting all information that identifies the patient would render the remaining information anonymous. Thus, I fail to see how a particular patient's confidentiality privilege could be violated. I would hold that redaction of the patient's identification and of all other information reasonably necessary to conceal the patient's identification would make these records fall outside the scope of the privilege.

[\*805] Moreover, I find a meaningful distinction between the cases involving redaction of information contained in an attorney's records and redaction of information contained in medical records. The majority contends that we should apply the reasoning of the court in *Pittsburgh Corning Corp. v. Caldwell*, 861 S.W.2d 423, [\*\*22] (Tex. App.--Houston [14 Dist.] 1993, orig. proceeding). That court held that documents protected by

the attorney-client privilege may not be safely redacted so as to be capable of being produced, in part, but protected, in part. *Id. at 425*. However, that court's concerns are not applicable to the situation at hand.

The *Pittsburgh Corning* court stated:

> The . . . document in dispute is . . . a portion of a memorandum authored by . . . a claims director for Travelers . . . which concerns [his] trial strategy and . . . thoughts on how certain facts might affect an asbestos lawsuit. This information falls squarely within the language of [the attorney-client] privilege, and is clearly privileged and not subject to production.
>
> [The parties seeking the records] claim that [the trial judge] was attempting to "follow the winds of judicial change" by attempting to shield portions of these disputed documents from discovery through redaction of the privileged information, while allowing the production of the remainder of the document. Basically, plaintiffs argue that redaction of privileged information from a document is not an abuse of discretion because [\*\*23] the rule of privilege extends only to shelter mental processes, conclusions, and legal theories, and does not extend to facts an attorney might acquire. *See Owens-Corning Fiberglas Corp. v. Caldwell, 818 S.W.2d 749, 750 (Tex.1991)*. We agree that the relevant facts of a case may not be hidden under the guise of privilege. However, those facts are discoverable through other proper means of discovery, without forcing the production of a privileged document which may also contain that factual information. . . .
>
> Once it is established that a document contains a confidential communication, the privilege extends to the entire document, and not merely the specific portions relating to legal advice, opinions, or mental analysis. *Id. It is inconceivable that an attorney could give sound legal advice on a client's case if he or she did not include an application of the law or opinion to the specific facts of that case. If we were to hold that all or part of a document containing privileged information should be disclosed because it also included facts pertinent to the lawsuit, the purpose of the attorney-client and work-product privileges would be annihilated. The ultimate* [\*\*24] *effect of such a holding would be that clients would be reluctant to give their attorneys any factual information for fear that it would be subject to discovery. . . . And no attorney could even begin to prepare a case for trial, or be able to give sound advice for lack of those facts. Such a chilling intervention into the attorney-client relationship under the guise of "looking for facts," pierces the core of a critical privilege to carve out limited and usually superfluous morsels of discovery otherwise obtainable.* In our opinion, the cost is too great.

*Pittsburgh Corning, 861 S.W.2d at 424-25* (emphasis added).

I do not believe the concerns at issue in this case are so grave. Certainly, no one would argue that revelation of the redacted records requested would destroy a physician's ability to render medical treatment. The concerns with an attorney's notes are different than the concerns with [\*806] a physician's notes. While the stated purposes of the two privileges are similar, I do not believe the potential harm incumbent with allowing discovery of redacted medical records is comparable to allowing discovery of redacted attorney's notes.

The majority has cited no case holding that medical records [\*\*25] may not be redacted so that they fall outside the scope of the privilege for such records. I believe that they can.

I agree with my colleagues that *rule 196.1(c)* is merely a notice requirement and does not alter the substantive law regarding privilege of physician-patient records. *See. TEX. R. CIV. P. 196.1*. That rule states that where discovery of nonparty records is sought in a manner where "the identity of the nonparty whose records are sought will not directly or indirectly be disclosed by production of the records," the nonparty is not required to be served with the request for the records. *Id.* While I concede that the rule does not authorize production of redacted nonparty medical records, its existence would seem to imply that such an action is not unprecedented.

This is a mandamus action, in which the real question here is whether the trial judge clearly abused his discretion in ordering the records to be produced after redaction. The question of abuse of discretion goes to whether the judge acted without guiding rules and principles in making the decision complained of. *Downer v. Aquamarine, 701 S.W.2d 238, 241-42 (Tex. 1985)*. The guiding rules and [\*\*26] principles to be

applied are the applicable Texas statutes and rules discussed earlier: the health and safety code, the occupations code, and the rules of evidence. A general rule of statutory construction is that the more specific and particular be applied before the more general. *See Horizon/CMS Healthcare Corporation v. Auld, 34 S.W.3d 887, , 2000 Tex. LEXIS 88, at *37-38* (Tex. Aug. 24, 2000). My construction is that none of the cited Texas statutes or rules prohibit the trial judge's order. The majority finds the disclosure violates both Texas statutes as well as a "constitutional right of privacy." Having found protection in the statutes, seeking additional justification in the constitution would seem to be dicta and gratuitous. However, because this constitutional right is given as an additional reason for the trial judge's abusing his discretion, I must address it.

The United States Supreme Court is the ultimate interpreter of the United States Constitution, but not the sole one. The United States Supreme Court has found a right of privacy in reproductive matters only, and has not expanded it to include other activities within the "right of privacy."

The first [**27] case holding there was a right of privacy in the United States Constitution was *Griswold v. Connecticut,* in which Justice William O. Douglas wrote for the Court "that specific guarantees of the Bill of Rights have penumbras, formed by emanations from those guarantees that help give them life and substance." *Griswold, 381 U.S. 479, 485, 14 L. Ed. 2d 510, 85 S. Ct. 1678 (1965).* The Court held that a right of privacy was in this penumbra of the Bill of Rights. *Griswold, 381 U.S. at 483.* At issue was a conviction for disseminating birth control information to married couples. Justice Goldberg stated it as a matter of marital privacy, and quoted Justice Brandeis in his dissent in *Olmstead v. United States,* "They conferred, as against the Government, the right to be let alone -- the most comprehensive of rights and the right most valued by civilized men." *Olmstead, 277 U.S. 438, 478, 72 L. Ed. 944, 48 S. Ct. 564 (1928)* (Brandeis J., dissenting).

[*807] The only other instances in which the United States Supreme Court has applied a constitutional right of privacy has been in the abortion cases. In *Roe v. Wade,* the court said that although "the Constitution [**28] does not explicitly mention any right of privacy," certain zones of personal privacy were fundamental. *Roe, 410 U.S. 113, 152, 35 L. Ed. 2d 147, 93 S. Ct. 705 (1973).* The court has been seemingly reluctant to expand this right of privacy beyond reproductive rights.

Given that very limited guidance from the United States Supreme Court, I am not sure a patient's interest in the confidentially of his medical records rises to such a fundamental right to require constitutional protection. But if it should, the State of Texas has adopted seemingly reasonable rules defining the physician patient privilege, limiting it, creating exceptions, etc. I am not prepared to hold that those limitations are so unreasonable so as to violate the patient's constitutional right of privacy absent comprehensive briefing and having the matter squarely presented to the trial judge.

I would not grant mandamus. The trial judge did not clearly abuse his discretion. Accordingly, I respectfully dissent.

J. BONNER DORSEY,

    Justice

    Senior Justice Robert J. Seerden

    joins in this dissent.

    Dissenting Opinion delivered and filed

    this 8th day of March, 2001.

SHEPARD'S® - 41 S.W.3d 797 - 25 Citing References



Copyright 2009 SHEPARD'S(R) - 25 Citing references

**In re Columbia Valley Regional Med. Ctr., 41 S.W.3d 797, 2001 Tex. App. LEXIS 1668 (Tex. App. Corpus Christi 2001)**

Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *FULL*
Citing Ref. Signal: *Hidden*

## SHEPARD'S SUMMARY

**Unrestricted *Shepard's* Summary**
No subsequent appellate history.
**Citing References:**

| | | |
|---|---|---|
| ⚠ | Cautionary Analyses: | **Distinguished (1)** |
| | Positive Analyses: | Followed (2) |
| | Neutral Analyses: | Concurring Opinion (1) |
| | Other Sources: | Law Reviews (2), Treatises (3), Court Documents (8) |

**LexisNexis Headnotes:**   HN2 (7), HN4 (3), HN6 (1), HN8 (1), HN9 (2), HN10 (1)

## PRIOR HISTORY ( 0 citing references )

   *(CITATION YOU ENTERED):*
   *In re Columbia Valley Regional Med. Ctr.*, 41 S.W.3d 797, 2001 Tex. App. LEXIS 1668 (Tex. App. Corpus Christi 2001)

## CITING DECISIONS   ( 12 citing decisions )

## TEXAS COURT OF APPEALS

1. **Followed by:**
   *In re Tenet Healthcare, Ltd.*, 2006 Tex. App. LEXIS 2640 (Tex. App. Tyler Mar. 31, 2006) **LexisNexis Headnotes HN4**
      2006 Tex. App. LEXIS 2640

2. **Cited by:**
   *In re Christus Health Southeast Tex.*, 167 S.W.3d 596, 2005 Tex. App. LEXIS 5013 (Tex. App. Beaumont 2005) **LexisNexis Headnotes HN4, HN6**
      167 S.W.3d 596 *p.601*

3. **Followed by:**
   *Walters v. Columbia/St. David's Healthcare Sys., L.P.*, 2005 Tex. App. LEXIS 3999 (Tex. App. Austin May 26, 2005) **LexisNexis Headnotes HN2**
      2005 Tex. App. LEXIS 3999

SHEPARD'S® - 41 S.W.3d 797 - 25 Citing References

4. **Cited by:**
   *Walters v. Columbia/St. David's Healthcare Sys., L.P.*, 2005 Tex. App. LEXIS 2840 (Tex. App. Austin Apr. 14, 2005) **LexisNexis Headnotes HN2**
   2005 Tex. App. LEXIS 2840

5. **Cited by:**
   *Walters v. Columbia/St. David's Healthcare Sys., L.P.*, 2005 Tex. App. LEXIS 1976 (Tex. App. Austin Mar. 17, 2005) **LexisNexis Headnotes HN2**
   2005 Tex. App. LEXIS 1976

6. **Cited by:**
   *In re Highland Pines Nursing Home, Ltd.*, 2003 Tex. App. LEXIS 9723 (Tex. App. Tyler Nov. 13, 2003) **LexisNexis Headnotes HN2**
   2003 Tex. App. LEXIS 9723

7. **Cited by:**
   *In re Fort Worth Children's Hosp.*, 100 S.W.3d 582, 2003 Tex. App. LEXIS 1820, CCH Prod. Liab. Rep. P16545 (Tex. App. Fort Worth 2003) **LexisNexis Headnotes HN2**
   100 S.W.3d 582 *p.588*

8. **Cited by:**
   *In re Whiteley*, 79 S.W.3d 729, 2002 Tex. App. LEXIS 4245 (Tex. App. Corpus Christi 2002) **LexisNexis Headnotes HN8, HN9**
   79 S.W.3d 729 *p.734*

9. **Cited by:**
   *James v. Kloos*, 75 S.W.3d 153, 2002 Tex. App. LEXIS 2224 (Tex. App. Fort Worth 2002) **LexisNexis Headnotes HN10**
   75 S.W.3d 153 *p.157*

10. **Cited in Concurring Opinion at, Cited by:**
    *In re Diversicare Gen. Partner, Inc.*, 41 S.W.3d 788, 2001 Tex. App. LEXIS 1669 (Tex. App. Corpus Christi 2001) **LexisNexis Headnotes HN4, HN9**
    **Cited in Concurring Opinion at:**
    41 S.W.3d 788 *p.796*

    **Cited by:**
    41 S.W.3d 788 *p.795*

## 2ND CIRCUIT - U.S. DISTRICT COURTS

11. **Distinguished by, Cited by:**
    *In re Rezulin Prods. Liab. Litig.*, 178 F. Supp. 2d 412, 2001 U.S. Dist. LEXIS 21136 (S.D.N.Y. 2001) **LexisNexis Headnotes HN2**
    **Distinguished by:**
    178 F. Supp. 2d 412 *p.416*

    **Cited by:**
    178 F. Supp. 2d 412 *p.414*

SHEPARD'S® - 41 S.W.3d 797 - 25 Citing References

## 5TH CIRCUIT - U.S. DISTRICT COURTS

12. **Cited by:**
    *Timberlake v. Synthes Spine Co., L.P.*, 2008 U.S. Dist. LEXIS 44256 (S.D. Tex. June 4, 2008) LexisNexis **Headnotes HN2**
    2008 U.S. Dist. LEXIS 44256

## LAW REVIEWS AND PERIODICALS ( 2 Citing References )

13. *COMMENT: TELEMEDICINE IN TEXAS: SOLVING THE PROBLEMS OF LICENSURE, PRIVACY, AND REIMBURSEMENT*, 34 St. Mary's L. J. 651 (2003)
    34 St. Mary's L. J. 651 *p.651*

14. *ARTICLE: INFECTED JUDGMENT: LEGAL RESPONSES TO PHYSICIAN BIAS*, 48 Vill. L. Rev. 195 (2003)
    48 Vill. L. Rev. 195 *p.195*

## TREATISE CITATIONS ( 3 Citing Sources )

15. *1-10 Long-Term Care Advocacy @ 10.13*

16. *4-50 Texas Civil Trial Guide @ 50.11*

17. *1-15 Texas Courtroom Evidence @ 15.10*

## BRIEFS ( 6 Citing Briefs )

18. *ROE v. PLANNED PARENTHOOD SOUTHWEST OHIO REGION*, 2007 OH S. Ct. Briefs 421988, 2008 OH S. Ct. Briefs LEXIS 273 (Ohio June 16, 2008)

19. *In re COLUMBIA-VALLEY HEALTHCARE SYS.*, 2007 TX S. Ct. Briefs 914, 2008 TX S. Ct. Briefs LEXIS 1023 (Tex. June 11, 2008)

20. *In re ORTIZ*, 2007 TX S. Ct. Briefs 590201, 2007 TX S. Ct. Briefs LEXIS 624 (Tex. May 23, 2007)

21. *In re JOHNSON*, 2005 TX S. Ct. Briefs 859309, 2006 TX S. Ct. Briefs LEXIS 1067 (Tex. May 4, 2006)

22. *In re UNION CARBIDE CORP.*, 2003 TX S. Ct. Briefs 1178, 2004 TX S. Ct. Briefs LEXIS 52 (Tex. Jan. 8, 2004)

23. *WESTLAKE SURGICAL v. TURNER*, 2008 TX App. Ct. Briefs 122, 2008 TX App. Ct. Briefs LEXIS 1081 (Tex. App. May 1, 2008)

## MOTIONS ( 2 Citing Motions )

24. *In re REZULIN PRODS. LIAB. LITIG.*, 2000 U.S. Dist. Ct. Motions 9320, 2001 U.S. Dist. Ct. Motions LEXIS 6224 (S.D.N.Y. Nov. 15, 2001)

25. *McPherson v. Trimac Transp. Servs.*, 2004 TX Dist. Ct. Motions 72295, 2005 TX Dist. Ct. Motions LEXIS 191 (Tex. Dist. Ct. Apr. 14, 2005)