

LEXSEE 143 SW3D 506

**In re David Nance, Individually, and as Representative of the Estate of Rozene Nance, Deceased; Quinton Singleton; Michael Lance; Crystal Lance; Kassie Singleton; and Lloyd Singleton**

NO. 03-04-00366-CV

COURT OF APPEALS OF TEXAS, THIRD DISTRICT, AUSTIN

*143 S.W.3d 506; 2004 Tex. App. LEXIS 7318*

**August 12, 2004, Filed**

**DISPOSITION:** Writ of mandamus conditionally granted.

**COUNSEL:** Mr. Ben Selman (Metroplex Adventist Hospital), Naman, Howell, Smith & Lee, PC, Waco, TX, Ms. Laura M. Ekery, Mr. Dan Ballard, (Lan Thanh Nguyen, M.D.), Ballard, Simmons & Ekery, LLP, Austin, TX.

FOR RELATOR: Mr. Scott Ozmun, Mr. Jeff Edwards, Whitehurst, Harkness, Ozmun & Brees, P.C., Austin, TX.

**JUDGES:** [**1] Before Justices Kidd, B. A. Smith and Pemberton.

**OPINION BY:** Bob Pemberton

**OPINION**

[*508] ORIGINAL PROCEEDING FROM LAMPASAS COUNTY

In this mandamus proceeding arising out of a medical malpractice death action, we are asked to vacate an order denying a motion to quash a defendant's request for the deceased's psychiatric records. Based on the governing law as applied to the present record, we will conditionally grant the writ.

[*509] BACKGROUND

Rozene Nance died on August 6, 2002, at the age of forty-three, after undergoing a laparoscopic cholecystectomy [1] performed by Dr. Lan Nguyen at Rollins Brook Community Hospital on the evening of August 5. It is alleged that Ms. Nance presented herself to the hospital's emergency room on August 1 and was admitted. Her complaints or condition at presentation are in dispute. The defendants allege that Ms. Nance was admitted for "possible alcohol withdrawal syndrome," but the hospital records also allegedly indicate that Ms. Nance denied regular use of alcohol. After her admission, Ms. Nance developed nausea, vomiting, and abdominal pain. She underwent an abdominal ultrasound on August 5, which indicated the presence of gall stones. Dr. Nguyen operated [**2] on Ms. Nance to remove these gall stones, and the operative notes indicate a routine procedure.

1 Laparoscopic cholecystectomy is a surgical procedure to remove a diseased gall bladder through a laparoscope (a fiberoptic device consisting of a flexible tube in which glass or plastic filaments allow internal refraction of light for viewing). Patients are usually home within 24 hours and symptoms improve for over 90 percent of patients. Online Medical Dictionary, http://www.online-medical-dictionary.org/?q=Laparscopic+Cholecystectomy.

By the next morning, however, Ms. Nance experienced seizures, dilated pupils, and at least one episode of apnea, cessation of breathing. Another physician ordered a blood transfusion and had Ms. Nance transported to Metroplex Hospital in Killeen, where she arrived about 10:00 a.m. on August 6. Surgery commenced immediately. Upon opening Ms. Nance's abdomen, the surgeon reported that blood poured out under pressure at the junction of her aorta and splenic artery. The bleeding could [**3] not be controlled and she developed "dilutional coagulopathy." [2] The surgery was completed by 2:30 p.m. and Ms. Nance was given two more units of blood. At 3:00 p.m., Ms. Nance went into cardiac arrest and died. An autopsy concluded the cause of death to be "hemorrhagic shock and

hemorrhagic pancreatitis." Simply put, she bled to death internally.

> 2 "Coagulopathy" means a deficiency in the clotting mechanisms of the blood, insufficient platelets so that the blood is unable to clot (form insoluble viscous, fibrin masses in the vessels). Online Medical Dictionary, http://www.online-medical-dictionary.org/?q=Coagulopathies%2C+Consumption. "Dilutional coagulopathy" means that blood is diluted to the extent that there is not a sufficient amount of platelets to allow the blood to clot.

The estate and wrongful death beneficiaries of Rozene Nance, David Nance, Quinton Singleton, Michael Lance, Crystal Lance, Kassie Singleton, and Lloyd Singleton (the Nances), sued Metroplex Adventist Hospital, Inc. d/b/a Rollins Brook [**4] Community Hospital and Rollins Brook Community Hospital, Inc. (the Hospitals) and Dr. Nguyen for negligence in the care and treatment of Ms. Nance for gall stones.

The defendants subpoenaed through depositions on written questions all of Ms. Nance's medical and psychiatric records from four different health care providers; Dr. Nguyen specifically sought Ms. Nance's records from the Texas Department of Mental Health and Mental Retardation ("MHMR"). The Nances sought to limit discovery. As for the MHMR records, they asserted a relevance objection and the physician-patient privilege under *Texas Rule of Evidence 509*. The trial court heard the Nance's motions to quash on March 12, 2004, at which time the Nances tendered the pertinent records for an *in camera* inspection. On May 21, [*510] 2004, the district court issued an order denying all relief. The order did not state whether the court had inspected the records *in camera* and did not place any limitations on the use of the information contained in the records. The Nances subsequently brought this original proceeding, contending that the trial court clearly abused its discretion with respect to Ms. Nance's MHMR records. They do not complain [**5] about any other records addressed by the trial court's order.

## DISCUSSION

### Standards for mandamus

Mandamus is only available to correct a clear abuse of discretion or the violation of a duty imposed by law and only in situations where there is no other adequate remedy at law. *Walker v. Packer, 827 S.W.2d 833, 839, 35 Tex. Sup. Ct. J. 468 (Tex. 1992)*; *Johnson v. Fourth Court of Appeals, 700 S.W.2d 916, 917, 29 Tex. Sup. Ct. J. 101 (Tex. 1985)*. As a matter of law, there is no adequate remedy at law for a decision denying a privilege. *In re Monsanto Co., 998 S.W.2d 917, 922* (Tex. App.--Waco 1999, orig. proceeding).

The party asserting a privilege has the burden to prove its application, and, if the issue of waiver is raised, the same party has the burden of proving that the privilege was not waived. *Jordan v. Fourth Court of Appeals, 701 S.W.2d 644, 648-49, 29 Tex. Sup. Ct. J. 67 (Tex. 1985)* (orig. proceeding). To make a prima facie showing of privilege, the party asserting a privilege must: (1) specifically plead the privilege; (2) produce evidence to support it either by affidavit or testimony; and, if necessary, (3) submit the allegedly privileged items for an *in camera* [**6] inspection. *Peeples v. Fourth Court of Appeals, 701 S.W.2d 635, 637, 29 Tex. Sup. Ct. J. 13 (Tex. 1985)* (orig. proceeding) ("We hold that a party who seeks to exclude documents, records or other matters from the discovery process has the affirmative duty to specifically plead the particular privilege or immunity claimed"); *Marathon Oil Co. v. Moye, 893 S.W.2d 585, 589-90* (Tex. App.--Dallas 1994, orig. proceeding).

### The parties' contentions

In this proceeding, the Nances argue that Ms. Nance's mental health history, as detailed in the MHMR records, is not relevant to the circumstances of her death and that the records are privileged from discovery under both the physician-patient privilege, *see Tex. R. Evid. 509*, and the mental health privilege, *see Tex. R. Evid. 510*. Dr. Nguyen and the hospitals respond that Ms. Nance's mental health records are relevant and discoverable under the patient-litigant exception to these privileges because (1) they relate to the Nances' damage claims for mental anguish, loss of consortium, and loss of pecuniary services, which they contend place her mental health history in issue; and (2) they relate to causation because heavy [**7] consumption of alcohol can be a cause of pancreatitis, and could have caused Ms. Nance's post-operative bleeding. The defendants also argue that the Nances have waived any privilege under the offensive use doctrine. They also urge that the Nances waived their mental health information privilege claim, pointing out that in the district court, the Nances asserted only a relevance objection and the physician-patient privilege under *Texas Rule of Evidence 509*.

We agree with the defendants that the Nances waived their mental health information privilege claim by failing to assert it specifically in the trial court. *Jordan, 701 S.W.2d at 648-49*; *Peeples, 701 S.W.2d at 637*; *Kavanaugh v. Perkins, 838 S.W.2d 616, 620* (Tex. App.--Dallas 1992, orig. proceeding). [*511] As a result, the only privilege potentially available to shield Ms. Nance's MHMR records is the physician-patient privilege of *rule 509*.

### Physician-patient privilege

Under *rule 509 of the Texas Rules of Evidence*, "confidential communications between a physician and a patient, relative to or in connection with any professional services rendered by a physician to the patient [**8] are privileged and may not be disclosed." *Tex. R. Evid. 509(c)(1)*. Likewise, "records of the identity, diagnosis, evaluation, or treatment of a patient by a physician that are created or maintained by a physician are confidential and privileged and may not be disclosed." *Id.* 509(c)(2). The privilege is not limited solely to records held by a physician, but may extend to those held by certain persons acting at the direction of a physician or who are involved in the patient's consultation, examination, or interview. ³ The purposes of the privilege are to: (1) encourage communications necessary to effective medical treatment, and (2) prevent unnecessary disclosure of highly personal information. *R.K. v. Ramirez, 887 S.W.2d 836, 840, 38 Tex. Sup. Ct. J. 52 (Tex. 1994)* (citing *Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105, 107, 28 Tex. Sup. Ct. J. 281 (Tex. 1985)* (orig. proceeding) and *Ex Parte Abell, 613 S.W.2d 255, 262, 24 Tex. Sup. Ct. J. 290 (Tex. 1981)* (orig. proceeding)).

    3 Tex. R. Evid. 509(a)(3).

At least some of the [**9] records sought by defendants and submitted to the trial court *in camera* appear to implicate the physician-patient privilege. ⁴ We thus consider whether such records are discoverable under one of the exceptions to the privilege.

    4 The records in question have been tendered to this Court under seal. Many are plainly covered by the physician-patient privilege, such as those prepared by a physician. On the other hand, those prepared by non-physicians might or might not be subject to the privilege, depending on whether the conditions of rule 509(a)(3) are satisfied.

The supreme court analyzed the patient-litigant exception to the physician-patient privilege and the parallel exception to the mental health information privilege in *R.K. v. Ramirez*. The court held that this exception applies when: (1) the records are relevant to the condition at issue in the litigation, *and* (2) the condition contained in the records is relied upon as a "part" of a party's claim or defense.

Whether a plaintiff's condition [**10] is a "part" of a claim is determined from the pleadings, without reference to the evidence that is allegedly privileged. *R.K., 887 S.W.2d at 843 n.7; In re Doe, 22 S.W.3d 601, 609 (Tex. App.--Austin 2000, orig. proceeding)*. To be a "part" of a claim or defense, the condition itself must be a fact that alone carries legal significance under the substantive law. *R.K., 887 S.W.2d at 842-43* ("Because relevance is defined so broadly, virtually any litigant could plead some claim or defense to which a patient's condition could arguably be relevant and the privilege would cease to exist. We reject this alternative as well."). To illustrate the "part" of concept, the supreme court cited the example of an allegation that a testator is incompetent. Such a mental condition, if found, would be a factual determination to which legal consequences attach: the testator's will would no longer be valid. *Id. at 842-43*. "In other words," the supreme court explained, "information communicated to a doctor . . . may be relevant to the merits of an action, but in order to fall within the litigation exception to the privilege, the condition [**11] itself must be of legal consequence to a party's claim or defense." *Id. at 843*.

[*512] "As a general rule," the supreme court explained, " a mental condition will be a 'part' of a claim or defense if the pleadings indicate that the jury must make a factual determination concerning the condition itself." *Id.* It also observed that "communications and records should not be subject to discovery if the patient's condition is merely an evidentiary or intermediate issue of fact, rather than an 'ultimate' issue of a claim or defense, or if the condition is merely tangential to a claim rather than 'central' to it." *Id. at 842*.

Assuming both the relevance and "part" of requirements are met by the pleadings, the trial court must then perform an *in camera* inspection of the documents at issue. *Id.; M.A.W. v. Hall, 921 S.W.2d 911, 914 (Tex. App.--Houston [14th Dist.] 1996, orig. proceeding)*.

In their brief to this Court, the defendants argue that the records are discoverable in this case because they are relevant to their defensive theories on causation and damages. They argue the records are relevant to or part of their causation defense [**12] because Ms. Nance's mental health history may establish heavy alcoholism that, in turn, might help show that she was predisposed to the bleed that resulted, and that this pre-disposition, and not the surgery, was the cause of the bleed. The defendants also assert that Ms. Nance's general health and mental condition bear upon the Nances' damage claims for loss of consortium and loss of Ms. Nance's pecuniary services.

Applying the *R.K.* standards, as we must, to the pleadings in this case, Ms. Nance's mental health history is not a "part" of either the Nances' claims or the defendants' defenses. The Nances' pleadings allege only facts and circumstances surrounding Ms. Nance's 2002 hospitalization, surgery, follow-up care, and the damages suffered as a result of her death. Nothing in any of these pleadings places Ms. Nance's mental health history in dispute. The fact that a plaintiff had past mental problems is distinct from the mental anguish associated with a personal injury or loss; a tortfeasor takes a plaintiff as he finds him or her. *In re Doe, 22 S.W.3d at*

*606*; [5] *see also Coates v. Whittington, 758 S.W.2d 749, 753, 31 Tex. Sup. Ct. J. 659 (Tex. 1988)* (plaintiffs asserting [**13] routine mental anguish claims arising out of personal injury do not place their mental health into dispute). Furthermore, the issue of whether Ms. Nance was an alcoholic or a heavy drinker is, at most, an intermediate issue of fact regarding the claims for emotional and pecuniary loss by her family, and the defensive theory that a pre-existing condition caused her death. *See R.K., 887 S.W.2d at 842.* Although the hospitals pleaded preexisting condition as an alternative and affirmative defense, [6] that defensive theory is in the [*513] nature of an inferential rebuttal, not an ultimate issue of fact that alone has legal significance. *887 S.W.2d at 843*; *see also Tex. R. Civ. P. 277.* [7] We hold that the records in question, if protected by the physician-patient privilege, are not discoverable under the patient-litigant exception to that privilege.

> 5  This Court's opinion in *In re Doe* involved a female inmate of a privately managed jail facility who alleged she was raped while in custody. *22 S.W.3d 601* (Tex. App.--Austin 1994, orig. proceeding, mand. granted). She was compelled by the district court to reveal her mental health providers and mental health records and to submit to a mental examination. This Court held that compelling release of her mental health records without first determining relevance and without any restrictions was an abuse of discretion. *Id. at 611. Doe* held that a plaintiff's mental condition is in issue "only if the plaintiff asserts a mental injury that exceeds the common emotional reaction to an injury or loss." *Id. at 606.* Unless the plaintiff seeks to recover for a "permanent mental injury" or a deep seated emotional disturbance or psychiatric problem" her mental condition or history is not "in controversy." *Id.* That a plaintiff had past mental problems is "'peripheral'" to determining what is in controversy. *Id.* (quoting *Coates v. Whittington, 758 S.W.2d 749, 752, 31 Tex. Sup. Ct. J. 659 (Tex. 1988)).*
>
> [**14]
> 6  The hospitals alleged that any injuries "were caused only by . . . pre-existing conditions, injuries, diseases, accidents, causes or events and disabilities or subsequent conditions, injuries, diseases, accidents, causes or events, or disabilities of Plaintiffs" that were not a result of anything done by the hospitals.
>
> 7  An inferential rebuttal issue disproves the existence of an essential element submitted in another issue or question. *Select Ins. Co. v. Boucher, 561 S.W.2d 474, 477, 21 Tex. Sup. Ct. J. 195 (Tex. 1978).* It presents a contrary or inconsistent theory from the claim relied upon for recovery. *Id.* Inferential rebuttal issues attempt to disprove a claim by establishing the truth of a positive factual theory that is inconsistent with some factual element of the ground of recovery. *Id.* "Inferential rebuttal questions shall not be submitted in the charge." *Tex. R. Civ. P. 277.*

**Offensive use of physician-patient privilege**

Defendants also argue that the MHMR records are discoverable under the offensive use doctrine. This doctrine is a type of waiver that occurs if [**15] the plaintiff uses a privilege offensively to shield information that would be material and relevant to the defense against the plaintiff's claims. *See Ginsberg v. Fifth Court of Appeals, 686 S.W.2d 105, 106, 28 Tex. Sup. Ct. J. 281 (Tex. 1985). Ginsberg* involved the mental health information privilege of *rule 510.* There, the court held that a plaintiff "cannot use one hand to seek affirmative relief in court and with the other lower an iron curtain of silence against otherwise pertinent and proper questions which may have a bearing upon his right to maintain his action." *Id. at 108* (quoting *Pavlinko v. Yale-New Haven Hosp., 192 Conn. 138, 470 A.2d 246, 251 (1984)* (involving *Fifth Amendment* privilege against self-incrimination)). The supreme court found these *Fifth Amendment* cases persuasive, noted that they have been applied in cases involving other privileges, and cited several cases involving the physician-patient privilege. *Id.* (citing, among others cases, *Mull v. String, 448 So. 2d 952, 954 (Ala. 1984); Sagmiller v. Carlsen, 219 N.W.2d 885, 896 (N.D. 1974); Mattison v. Poulen, 134 Vt. 158, 163, 353 A.2d 327, 331 (1976)).* [**16]

The supreme court has mandated that the following factors be used to determine whether offensive use-waiver has occurred:

> First, before a waiver may be found the party asserting the privilege must seek affirmative relief. Second, the privileged information sought must be such that, if believed by the fact finder, in all probability it would be outcome determinative of the cause of action asserted. Mere relevance is insufficient. A contradiction in position without more is insufficient. The confidential communication must go the very heart of the affirmative relief sought. Third, disclosure of the confidential communication must be the only means by which the aggrieved party may obtain the evidence. If any one of these requirements is lacking, the trial court must uphold the privilege.

*Republic Ins. Co. v. Davis, 856 S.W.2d 158, 163, 36 Tex. Sup. Ct. J. 956 (Tex. 1993)* (internal footnotes omitted). The first prong of the test is satisfied on the current record. We need not address whether the second prong is met because, given the early state of discovery in this case, there is no indication that the MHMR records are the only source from which defendants can obtain information [**17] about Ms. Nance's drinking habits or other matters that might be contained in the records.

Defendants speculate that Ms. Nance's family members may not be helpful in [*514] disclosing information establishing Ms. Nance's heavy drinking. But defendants set forth no facts to support their fears that the Nances will hide harmful facts and disclose only self-serving ones, or that the family members have frustrated discovery in any way. If the defendants ultimately cannot obtain discovery to support their theories from the family members or other sources, they can revisit the issue with the trial court. On the current record, however, the *Davis* test for waiving a privilege by offensive use is not satisfied.

**Lack of protective restrictions**

The Nances also complain about the failure of the district court to restrict the disclosure or dissemination of any records that might be found to be discoverable. The supreme court has made clear that courts have an obligation to safeguard privileged information even if only part of the information or records involved are privileged. In *Mutter v. Wood*, the supreme court said: "Judge Wood's order should have been drawn more restrictively [**18] to respect whatever privileged communications or records might exist after suit is filed and to allow those privileges to be preserved." *744 S.W.2d 600, 601, 31 Tex. Sup. Ct. J. 217 (Tex. 1988)* (granting mandamus against order requiring plaintiffs to sign overbroad release of medical records). Any disclosure should be no broader than necessary and it is a trial court's obligation to oversee and safeguard the records to ensure unnecessary matters are not disclosed. See *R.K., 887 S.W.2d at 843*. In *Davis*, the supreme court said that if the communication "goes beyond issues dealing with the affirmative relief sought, the trial court should redact any part of the privileged communication that does not relate to the affirmative relief sought." *Davis, 856 S.W.2d at 163 n.10*. The irrelevant portions of the records, should be redacted, deleted, or otherwise protected by the trial court. *R.K., 887 S.W.2d at 844; M.A.W., 921 S.W.2d at 915*.

Thus, with respect to any records the trial court finds to be discoverable, it should limit disclosure of any privileged matters contained therein, such as through redaction. In these defendants' [**19] response to the Nances' motion to quash, they stated that they were "willing to enter into a confidentiality order" limiting the use of the records to only that necessary for the defense of the litigation. Such a measure might also be ordered by the trial court as a means of avoiding unnecessary disclosure.

**CONCLUSION**

We recognize the difficulties faced by the district court in addressing the complex privilege issues presented here without benefit of the resources appellate courts possess. Nonetheless, we must conditionally grant the writ of mandamus unless and until the district court:

1. Vacates its order of May 21, 2004;

2. Reviews the documents at issue *in camera* to determine whether each is subject to the physician-patient privilege of *Texas Rule of Evidence 509*. This inquiry should be guided by the general rule of privilege in *Texas Rule of Evidence 509(c)(1)* & *(2)* and the definition of confidential communication" in rule 509(a)(3).

3. As to any documents the court finds to be protected by physician-patient privilege, sign an order that the documents are protected from disclosure at this time; and

4. As to any documents the court finds not to [**20] be protected by the physician-patient privilege, permit disclosure to the extent necessary while protecting any privileged information contained in those documents by redaction [*515] or other protective measures.

Bob Pemberton, Justice



Copyright 2009 SHEPARD'S(R) - 13 Citing references

In re Nance, 143 S.W.3d 506, 2004 Tex. App. LEXIS 7318 (Tex. App. Austin 2004)

Restrictions: *Unrestricted*
FOCUS(TM) Terms: *No FOCUS terms*
Print Format: *FULL*
Citing Ref. Signal: *Hidden*

## SHEPARD'S SUMMARY

**Unrestricted *Shepard's* Summary**
No subsequent appellate history.
**Citing References:**

Positive Analyses:        **Followed (3)**

Other Sources:            Treatises (3), Court Documents (2)

**LexisNexis Headnotes:**   HN1 (1), HN2 (1), HN7 (1), HN8 (2), HN9 (2), HN10 (1), HN11 (2)

## PRIOR HISTORY ( 0 citing references )

   *(CITATION YOU ENTERED):*
   *In re Nance*, 143 S.W.3d 506, 2004 Tex. App. LEXIS 7318 (Tex. App. Austin 2004)


## CITING DECISIONS ( 8 citing decisions )

## TEXAS COURT OF APPEALS

1. **Followed by:**
   *In re Williams*, 2009 Tex. App. LEXIS 1561 (Tex. App. Waco Mar. 4, 2009)
      2009 Tex. App. LEXIS 1561

2. **Cited by:**
   *In re Union Energy, Inc.*, 2008 Tex. App. LEXIS 8486 (Tex. App. Tyler Oct. 31, 2008) **LexisNexis Headnotes HN2**
      2008 Tex. App. LEXIS 8486

3. **Followed by:**
   *In re Pennington*, 2008 Tex. App. LEXIS 5359 (Tex. App. Fort Worth July 16, 2008) **LexisNexis Headnotes HN7, HN8, HN9, HN10, HN11**
      2008 Tex. App. LEXIS 5359

4. **Cited by:**
   *Pleasant v. Bradford*, 260 S.W.3d 546, 2008 Tex. App. LEXIS 4821 (Tex. App. Austin 2008) **LexisNexis Headnotes HN11**
      260 S.W.3d 546 *p.557*

SHEPARD'S® - 143 S.W.3d 506 - 13 Citing References

5. **Cited by:**
   *Gilmore v. SCI Tex. Funeral Servs.*, 234 S.W.3d 251, 2007 Tex. App. LEXIS 6512 (Tex. App. Waco 2007)
   234 S.W.3d 251 *p.258*

6. **Followed by:**
   *In re Toyota Motor Corp.*, 191 S.W.3d 498, 2006 Tex. App. LEXIS 4669 (Tex. App. Waco 2006) **LexisNexis Headnotes HN8, HN9**
   191 S.W.3d 498 *p.502*

7. **Cited by:**
   *Ferrer v. Guevara*, 192 S.W.3d 39, 2005 Tex. App. LEXIS 10010 (Tex. App. El Paso 2005)
   192 S.W.3d 39 *p.48*

8. **Cited by:**
   *In re Tex. Mut. Ins. Co.*, 157 S.W.3d 75, 2004 Tex. App. LEXIS 11890 (Tex. App. Austin 2004) **LexisNexis Headnotes HN1**
   157 S.W.3d 75 *p.78*

## TREATISE CITATIONS ( 3 Citing Sources )

9. *2-22 Def Of Speeding, Reckless Driving & Vehic Homic @ 22.13*

10. *4-50 Texas Civil Trial Guide @ 50.11*

11. *4-50 Texas Civil Trial Guide @ 50.12*

## BRIEFS ( 2 Citing Briefs )

12. *In re Living Ctrs. of Texas, Inc.*, 2005 TX S. Ct. Briefs 659949, 2005 TX S. Ct. Briefs LEXIS 915 (Tex. Aug. 30, 2005)

13. *Pleasant v. Bradford*, 2007 TX App. Ct. Briefs 309989, 2007 TX App. Ct. Briefs LEXIS 1582 (Tex. App. July 31, 2007)