**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JACKIE FISHER | § | |
|     Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:08-CV-01273 |
| | § | |
| UNIVERSITY OF TEXAS | § | Jury Demanded |
| MEDICAL BRANCH and | § | |
| DAVID Watson | § | |
| | § | |
| *Defendants*. | § | |

**MOTION FOR SUMMARY JUDGMENT**

COMES NOW, Defendants David Watson and University of Texas Medicine Branch, Correctional Managed Care (UTMB-CMC ) and moves this court for a summary judgment and would respectfully show the court as follows:

**SUMMARY OF FACTS**.

It is undisputed that Defendant, David Watson, was an employee of the same agency as Plaintiff, Ms. Fisher, for some of the times pertinent to this lawsuit. Mr. Watson was her direct supervisor. (See Plaintiff s Original Complaint, paragraph 11) The Defendant UTMB Correctional Managed Care, is a state agency given the job of administering health care to state prison inmates. Both Mr. Watson and Ms. Fisher are registered nurses.

Plaintiff's complaints focus around alleged racial discrimination and alleged retaliation for opposing the purported discrimination.  The counts set forth by Plaintiff are disparate treatment, hostile environment, retaliation, violation of her  rights under  42 U.S.C §1981 (right to make and enforce a   contract); denial of her Due process and Equal Protection rights under the 14th

Amendment of the U.S. constitution, violation of these rights under 42 U.S.C. 1983  and retaliation for Plaintiff's exercise of her First Amendment free speech rights.

The Plaintiff's factual allegations are that  1) she was demoted; 2) she was referred to a peer review of her actions in an inmate suicide; 3) Watson impermissibly influenced that peer review; 4) she was the subject of an on-site investigation; 5) she received a poor performance evaluation; 5) her grievances were alleged to be unanswered; 6)  made to perform a nurse manager's  job without commensurate pay; 7) and was noticed by UTMB-CMC for a demotion because of Plaintiff's Board of Nursing Examiners Agreed order.   (See Plaintiff's original Complaint, paragraphs 22, 23, 27, 36, 41, 42, 43, 49, 50, 56). She also complaints of a failure to follow progressive disciplinary procedures.

Truth be known, the primary adverse employment actions at issue are  her actual  demotion and reduction in pay from nurse manager to assistant manager.  The demotion occurred, by letter, on May 2, 2006 and took effect on May 26, 2006.  (Watson deposition exhibits 25 and 26 ) There was an earlier letter to Plaintiff from UTMB  giving her notice that the demotion was to be one more step down, that is, to a Nurse Clinician III, a staff nurse.  This action, however never took place.  It was rescinded.  The actual demotion was only to assistant nurse manager.

After receiving notice of the intent to demote her to assistant nurse manager and to transfer her to another medical unit within the Huntsville area prison health care system , the Plaintiff used UTMB's internal grievance procedure to appeal the demotion.( Fisher deposition page 95: lines 1-25; page 96: lines1-12)

 Eventually, as of 4/5/2007, effective as of 4/2/2007, the Human Resources department of UTMB overruled the demotion and restored Plaintiff to nurse manger and paid her back pay. (Fisher deposition page 99: lines14-18; page 101: lines 20-25) Nor did Fisher's job benefits ever change.

Fisher deposition page117: lines 13-18).

There was another and later letter of an intent to demote plaintiff because of restriction on her nursing license. This later notice of intent to demote was rescinded when it was determined that the conditions imposed by the Texas Board of Nursing Examiners on Plaintiff had been met by her. Mr. Watson had nothing to do with this particular set of circumstances as he had left UTMB employment by that time. (Gotcher deposition page 86: lines 2-25; page 87: lines1-15).

David Watson was Plaintiff's immediate supervisor.  It was David Watson who made the initial decision to hire Plaintiff, as a nurse manager. (Watson deposition page 25: lines 6-22). Watson has given Fisher praise where appropriate.  (Watson deposition exhibit 7). Watson noticed problems with Fisher as a nurse manager and documented these in some detail. (Watson deposition exhibits 2 and 4). Further, it was Gotcher , who ultimately made the decision to demote Fisher made the crux of this lawsuit. (Gotcher deposition page 86: lines 2–5).  Certainly Watson and Melton had input. (Watson deposition page 83: lines 17-24).  Moreover, it was David Watson who contested the originally proposed two  stage demotion of Plaintiff.(Watson deposition page84: lines 7-23).

Ms. Fisher also complains  that there was a white nurse who was looking to be rehired and that she was almost rehired until Ms. Fisher reminded Mr. Watson of prior problems with this woman.  After Ms. Fisher reminded Mr. Watson of these prior problems, Mr. Watson nixed the re-hire.(Watson deposition page33; line 5-25; page 34: lines 1-25; page 35: lines 1-24).

Another of Plaintiff's specific complaints of discrimination has to do with a referral of Ms. Fisher by the Texas Department of Criminal Justice's (TDCJ) mortality  committee to the peer review committee over an inmate suicide by hanging. (Watson deposition pages 45: lines 14-25). This referring  agency is not UTMB, nor is it Mr. Watson.(Watson deposition page 46 line 21-24). It was  a committee of a separate state agency, TDCJ, that made the referral. (Watson deposition

page 46: lines 1-13). (Gotcher deposition page 71: lines 6-25; page 72: line 1; page 73 lines 9-22 ; page 74: lines 5-8). Additionally, the  referral  was a routine and standard action at that time. (Gotcher deposition page 73: lines 13-22), (Watson deposition page 47 lines 15-25; page 48 lines 1-11).  Fisher complains that Mr. Watson was a member of the peer review committee  and somehow swayed the committee. This is untrue. All Mr. Watson did was act as a facilitator and provided records to the committee. (Watson page 48 lines 12-25; page 49 lines 1-20)  The documented evidence is that Mr. Watson defended the Plaintiff in these unfortunate circumstances and even wrote a letter to the Board of Nursing Examiners on her behalf.(Watson deposition pages 51:lines l5-25; page 52; lines 1-16). Watson also wrote a memo  for Fisher's file to protect Fisher in the event TDCJ raised a question over this episode. (Watson deposition page 43; lines 20-25; page 44: lines 1-25; page 45: lines 1-10).

Fisher also complains of an on-site investigation of the Regional Medical Facility (RMF) . This occurred in January 2006 before her demotion.(Watson deposition page 61 lines 9-25; page 66 lines 1-2). Watson did not intend to demote Fisher before this investigation. (Watson deposition page 86: lines 7-11).  The RMF, also known as the Estelle unit, is a complex with a high security facility, drug rehabilitation unit and a hospital with over 100 beds.(Watson deposition pages 56: line5 through page 59: line 20). As explained by Watson, the on site investigation was prompted by his concerns about lack of morale, skilled people leaving or threatening to leave, including 4 emergency room nurses under Fisher (Watson deposition page 76 lines 4-25; page 77: lines 6), requests for transfers and turnover rates. (Watson deposition page 62: lines 1-25; page 63: lines 1-15). Watson asked Gotcher, the Director Nursing, to come and take a look at the RMF for an outside perspective.(Watson deposition page 64: lines 8-17).  In an attempt to be thorough and fair, Watson asked other employees who were satisfied with Fisher to tell their points of view to Gotcher and

Melton during the on site investigation.(Watson deposition page 69:lines 20-25; page 70; lines 1-20)

Gotcher and Melton actually did the two days of investigation. Prior to the investigation, Gotcher herself had received e-mails from employees of the unit that were unhappy and thought turnover was increasing. (Gotcher deposition page 28:lines 8-25). Further the investigation was arranged when Melton's and Gotcher's schedule allowed them to be available.(Gotcher deposition page 29: lines 12-18). This was done as soon as the two were available and Gotcher did not know Fisher would be gone. (Gotcher deposition page 40: lines 12-16). Fisher was allowed an opportunity to tell her side of the story and did so. (Gotcher deposition page 40: lines 17-25; page 1-2) (Fisher deposition page 75: lines 9-25; page 76: lines 1-11)

With respect to Fisher's actual demotion, it is undisputed that it was to assistant nurse manager. (Fisher deposition page 93: lines 3-5) It is Gotcher, the Director of Nursing for the northern division of UTMB-CMC (Gotcher deposition page 19; line 7-10), not Watson, that made the decision to demote Fisher to assistant nurse manager. (Gotcher deposition page 86: lines 2-5). Furthermore it was Gotcher, not Watson , who instituted the process leading to the second notice of intent to demote Fisher for having stipulations on her nursing license. ( Gotcher deposition page 86: lines 6-25) . This demotion never occurred after Gotcher learned that Fisher had taken care of the matter and cleared the stipulations in her nursing license. (Gotcher deposition page 87: lines 1-15).

As to the actual demotion, Watson disagreed with Melton that Fisher should be sent down to staff nurse, but thought that assistant nurse manager was the better choice. (Watson deposition page 84: lines 7-23). From Watson's perspective, the demotion came from the lack of positive changes at the RMF; the vacancy rate either remained the same or grew; the assistant nurse managers there were consistently unhappy working in that environment (one quit and one

transferred), there was a concern that the RMF could fail; and continuing problems with the ER nurses and Fisher. ( Watson deposition page 87: line 18 through page 88: line 13; page 90; lines1-18 and page 91: lines 9-25; page 92:1-13). There were  problems between Fisher and the outside nurse staffing agencies. (See Watson deposition exhibit ). Likewise, Gotcher had the same concerns. (Gotcher deposition page 57: lines 10-25; page 58: lines 1-25; page 59:lines 1-11; page 60; lines1-8) . Defendants would respectfully remind the court that the facilities here are medical and deal with inmate patients and needed immediate attention.

## TITLE VII

As to Watson individually, in this federal circuit, individual co-employees such as Mr. Watson cannot be held, as a matter of law, individually liable under Title VII.  *Grant v. Lonestar Co*., 21F. 33d 649 (5thCir.-1994) cert. den'd, 513 U.S; 1015, 115 S. Ct. 574, 130 L. Ed. 2d 491 (1994).  This holding has been upheld as recently as 2007 in *Lewis v. Hardy,* et al., 248 Fed. Appx 589 C 5th Cir. 2007). Defendant Watson would also direct the court to *Johnson v. TCB Construction Co.,* 2009 U.S. app. Lexis 13617 (5th Cir Miss, June 23, 2009) affirming this principal of law. The Title VII claim against Watson should be dismissed.

Fisher  carries the initial burden of establishing a prima facie case of discrimination, which she can do by satisfying the four-prong test set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Under *McDonnell Douglas,* Fisher  must show: (1) she is a member of protected class, (2) she was qualified to be a nurse manager, (3) she suffered adverse employment action, and (4) others outside the protected class were treated more favorably. *See id.* at 802. The first two prongs are not in dispute. Fisher  is a member of a protected class, and she demonstrated she was qualified for the manager position when she was hired . The final two factors are contested on both of Fisher theories.

Fisher cannot put forward sufficient evidence that similarly situated whites were treated more favorably under the "nearly identical" standard. *Perez v. Texas Dep't of Criminal Justice, Inst'l Div.,* 395 F.3d 206, 213 (5th Cir. 2004) ("We . . . have explained consistently that for employees to be similarly situated those employees' circumstances, including their misconduct, must have been 'nearly identical.'").  *See Little v. Republic Refining Co.*, 924 F. 2d 93, 97 (5th Cir. 1991)(noting that disparate treatment must be under nearly identical circumstances (Internal quotation marks omitted). [N]early identical" is not synonymous with "identical," and whether similarly situated whites were treated more favorably turns on whether the violations were of "'comparable seriousness.'" *Lee,* 574 F.3d at 260-61 (citing *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 283 n.11, 96 S. Ct. 2574, 49 L. Ed. 2d 493 (1976)). The whites identified by Fisher in this regard are: Joyce Bond ( Fisher deposition page 81; lines 5-21) and for Dr. Cherian, a medical doctor. (Fisher deposition page 96: lines13-25; page 97 lines 1- 24) Fisher says there is another white, Lavonia Wright, but has no knowledge of what actually may have transpired there.(Fisher deposition page 97: lines 25; page 98; lines 1-7). There is no similarity between these exemplars offered by Fisher. Ms Bond was  nurse who worked in entirely different facility with significantly different duties. Ms Bond ran only a geriatric facility with a very small staff and was not staffed at night.(Gotcher deposition page 37: lines 11-21).  . Nor is there evidence that the violations were of comparable seriousness. Neither Ms. Mary Adams, Fisher's predecessor nor her replacement at the RMF, Ms. McCartney, had the same pattern of complaints or any complaints at all as with Fisher. (Watson deposition page 72; lines 5-25; pages1-3).

Assuming for the sake of argument that  the plaintiff establishes her prima facie case, the defendant must articulate a legitimate nondiscriminatory reason for its actions. *McDonnell Douglas,* 411 U.S. at 802. If the defendant does so, the burden shifts to the plaintiff to rebut the defendant's

explanation either by showing that the reason given is pretext for unlawful discrimination, or the proffered reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic. In this case, Defendant articulates legitimate reasons for all his/their actions including the investigation, demotion and transfer.  While Defendants contend that the reasons behind these actions were factually based as well as true and correct,  the Plaintiff has not necessarily proven pretext by showing the facts underlying the employer's reason for the adverse employment action are factually incorrect. *See Little v. Republic Ref. Co., Ltd.,* 924 F.2d 93, 97 (5th Cir. 1991) ("The existence of competing evidence about the objective correctness of a fact underlying a defendant's proffered explanation does not in itself make reasonable an inference that the defendant was not truly motivated by its proffered justification The evidence shows Defendant's reasonably believed the Regional Medical facility was suffering high turnover and vacancy, that 4 ER nurses were about to quit because of plaintiff and that there was no improvement in the situation. *See Waggoner v. City of Garland,* 987 F.2d 1160, 1165 (5th Cir. 1993) "The real issue is whether the employer reasonably believed the  allegations and acted on it in good faith . . . ."). To find that Defendants proffered reasons was mere pretext, a jury could only impermissibly speculate as to Gotcher's, Melton's and Watson 's  motives. *See Grizzle v. Travelers Health Network, Inc.,* 14 F.3d 261, 267-68 ("Reviewing the entire record, we find that [plaintiff] has introduced no evidence which would support a reasonable jury finding of retaliatory motive without engaging in impermissible speculation.").

There are more complaints by Plaintiff; none of which are actionable as a matter of law. One, lowered performance evaluations are not actionable adverse employment decisions.  See *Douglas v. DynMcDermott Petorleum Operations Co.,* 144 F. 3d 364 (5th Cir. 1988) Two, a corrective action plan does not constitute and adverse employment action for purposes of a discrimination claim.

*Agnew v. BASF Corp.* 286 F. 3d 307 (6th Cir. 2002)

The failure to follow progressive disciplines is not actionable. As evidenced by Exhibit 4, the plaintiff was an employee at will employee and nothing in the handbook about discipline, progressive or otherwise changes that. See *Hicks v Baylor University Medical Center,* 789 S.W. 2d 299 (Tex. App. - Dallas 1990, writ denied); *Bumstead v Jasper County*, F. Supp. 1323 (E.D. Tex. 1996). Since progressive discipline  was not, as a matter of law, an employment benefit or right, the denial of same cannot constitute an actionable omission. Further, under *Patterson v. Mclean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363. 105 L.Ed. 132 (1989), such post formation conduct is not actionable.

For hostile work environment claims , a plaintiff must show: (1) she is a member of a protected class, (2) she suffered unwelcome harassment, (3) the harassment was based on race, (4) the harassment affected her job, and (5) the employer was responsible.  *Ramsey v. Henderson* 286 F.3d 264, 268 (5th Cir. 2002).  In an analysis of these sorts of claims analysis, the court must consider all the circumstances, including the frequency of the conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance. Here there is simply not sufficient evidence to meet these elements.

Actionable harassment must involve "racially discriminatory intimidation, ridicule and insults". *Walker v. Thompson*, 214 F.3d 615 (5th Cir 2000). There is no such evidence here. Indeed, Fisher does not remember any derogatory or racially charged comment by anyone at UTMB-CMC, including Watson. (Fisher deposition page 113:lines 18-23; page 114: lines 1-24)

Fisher has pleaded sexual harassment in her original complaint, but this was not made part of her EEOC charge, Exhibit 5 and may not be heard now. *See Young v City of Houston*, 906 F.2d

177 ( 5th Cir. 1990).

## Retaliation

To establish a claim of unlawful Title VII retaliation, Ms Fisher must first demonstrate a prima facie case as follows (1) that she engaged in an activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a casual [sic] link existed between the protected activity an the adverse employment action. *Washburn v. Harvey*, 504 F.3d 505, 510 (5th Cir 2007). Assuming Ms Fisher can establish a prima facie case, the burden of production would then shift to Defendants to articulate a legitimate, non-discriminatory reason for their actions(s), and, if they do so, the burden returns to, and ultimately rests with, Ms Fisher to show pretext, per the usual *McDonnell Douglas* framework, *Long v. Estfiled Coll.,* 88 F.3d 300, 305 (5th Cir. 1996).

As an adverse employment action, it would be correct to say that the Supreme Court's standard for retaliation is broader than for discrimination, in that such actions are not limited to tangible employment acts. *See Burlington N orth  & Santa Fe Ry. Co. v. White* 548 U.S. 53, 67, 126 S. CT. 2405 Ct., 2405, 165 L. Ed. 2d 345 (206) (observing that Title VII's substantive provision and its anti-retaliation provision are not coterminous). Rather, an adverse action is one that might have dissuaded a reasonable working from making a charge of discrimination. *Id.* at 68 (quotations omitted).

The court should note while *McCoy v. City of Shreveport,* 492 F.3d 551 (5th Cir. 2007), provided temporal proximity between the protected activity and an adverse employment action may be enough of a causal connection to establish a prima facie case, once the employer offers a legitimate, nondiscriminatory reason that explains both the adverse action and the timing, the plaintiff must offer some evidence from which the jury may infer that retaliation as the real motive.492 F.3d, 551, 562 (5th Cir. 2007) (per curium) (quotation omitted). Yet, even if there is a

dispute as to the Defendants' knowledge, Ms Fisher  still cannot offer evidence to rebut the reasons

behind her demotion and the like.  To raise an inference of pretext in the face of the employer's

legitimate, non [retaliatory] explanation, the plaintiff must undermine the employer's credibility to

the point that a reasonable jury could not find in its favor.  *Slaten v. New Palace Casino LLC,* 187

F. F. App' x 350, 361 (5th Cir. 2006) (per curium).  Thus, defendant UTMB is entitled to a summary

judgment on its behalf as to the Title VII claim by plaintiff.

## 42 U.S.C. §1981

Another  of Fisher's claims is that Defendants  violated her  42 U.S.C. §1981 rights, that is,

the right  to make and enforce contracts. To establish a prima facie case under 42 U.S.C. §1981, the

Plaintiff must show: 1) membership in a protected class, 2) intent to discriminate on basis of race

or part of Defendant and 3) discrimination interfering with protected activity (i.e. making and

enforcement of contracts.  *Daniel v. Dillards, Inc.* 373 F. 3d. 885 (8th Cir. 2004). In addition, for

Fisher's claims , and in the light of the  precedent holding that Title VII  principles guide the

treatment of parallel §1981 claims, the complained-of conduct must rise to the level of an "ultimate

employment decision". Title VII was designed to address *ultimate employment decisions*, not to

address every decision made by employers that arguably might have some tangential effect upon

those ultimate decisions". *Dollis v. Rubin*, 77 F.3d 777, 781-82 (5th Cir. 1995) (emphasis added).

"'Ultimate employment decisions' include acts such as hiring, granting leave, discharging,

promoting, and compensating.'" *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir.)

(quoting *Dollis*, 77 F.3d at 782), *cert. denied*, 522 U.S. 932, 139 L. Ed. 2d 260, 118 S. Ct. 336

(1997).

Thus, the only potentially actionable adverse employment action of which Plaintiff complains

is a demotion from nurse manager to assistant nurse manager. This is simply not  actionable under

42 U.S.C. §1981. Since *Patterson v. Mclean Credit Union*, 491 U.S. 164, 109 S.Ct. 2363. 105 L.Ed.

132 (1989) this circuit and others have seen *Patterson* as a bar to a variety of post formation conduct.

In *Carroll v General Accident Insurance Co of America*, 891 F.2d a 1174, the Fifth Circuit held that

*Patterson* precluded recovery for discriminatory treatment and constructive discharge under 1981.

Similarly, in *Lavender v V&B transmissions & Auto Repair*, 897 F.2d at 805, the Fifth Circuit  held

that *Patterson* barred a discriminatory discharge claim under §1981. *Patterson's* bar also applied to

a retaliatory discharge claim in *Carter v. South Central Bell*, 912 F.2d 839(5th Cir. 1990). *See also*

*Gonzalez v. Home Ins. Co.*, 909 F.2d 716 (2d Cir.1990); *McKnight v. General Motors Corp.*, 908

F.2d 104 (7th Cir.1990); and *Courtney v. Canyon Television & Appliance Rental, Inc.*, 899 F.2d 845

(9th Cir.1990). *But see Hicks v. General Motors Corp.*, 908 F.2d 104 (8th Cir.1990); and *Kriegel v.*

*Home Ins. Co.*, 739 F. Supp. 1538 (N.D. Ga.1990). Here there is no termination, but only a temporary

demotion.

The Plaintiff also makes a retaliation claim.   Unlike constructive and discriminatory

discharges, retaliatory discharge may implicate the right to enforce contracts. Retaliation or threats

of retaliation calculated to deter the legal enforcement of contractual rights falls within the express

ambit of §1981. *Patterson*, 109 S. Ct. at 2373. The rub is that Ms Fisher's' claim is that Defendants

retaliated  against for her asserting rights under Title VII. The Fifth Circuit  reaffirmed  its recent

decision in *Carter*, guided by the Supreme Court's statement that "the right to enforce contracts does

not . . . extend beyond conduct by an employer which impairs an employee's ability to enforce

through legal processes his or her established *contract* rights." *Patterson*, 109 S. Ct. at 2373

(emphasis added). *See McKnight v. General Motors Corp.*, 908 F.2d 104, 111-12 (7th Cir.1990);

*Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1535 (11th Cir.1990); and *Overby v. Chevron*

*USA Inc.*, 884 F.2d 470 (9th Cir.1989). *But see Jordan v. U.S. West Direct Company*, 716 F. Supp.

1366 (D. Colo.1989). The retaliation is simply not actionable under 42 U.S.C. 1981. *See Stratford v Rockwell International Corp* , 755 F. Supp. 760 (S.D. Ohio 1991) Title VII provides an express remedy for employer conduct in retaliation for pursuing rights created by Title VII. *See* 42 U.S.C. §2000e-3(a).

Moreover, Defendant was and is an at will employee  As such, she had no  contractual right of employment, thus negating an essential element of a 42 U.S.C. §1981 claim. Texas state courts, uniformly embrace the notion that employee handbooks or manuals, standing alone, "constitute no more than general guidelines," absent express reciprocal agreements addressing discharge protocols. *Reynolds Mfg. Co. v. Mendoza,* 644 S.W.2d 536, 539 (Tex. App. -- Corpus Christi 1982 no writ). *See also Ryan v. Superior Oil Co.,* 813 S.W.2d 594, 596 (Tex. App. -- Houston [14th Dist.] 1991, writ denied); *Hicks v. Baylor Medical Univ. Med. Center,* 789 S.W.2d 299, 302 (Tex. App. -- Dallas 1990, writ denied); *Benoit v. Polysar Gulf Coast, Inc.,* 728 S.W.2d 403, 406 (Tex. App. -- Beaumont 1987, writ ref'd n.r.e.); *Vallone v. Agip Petroleum Co.,* 705 S.W.2d 757, 759 (Tex. App. -- Houston [1st Dist.] 1986, writ ref'd n.r.e.); *Totman v. Control Data Corp.,* 707 S.W.2d 739, 744 (Tex. App. -- Ft. Worth, no writ); *Molder v. Southwestern Bell Tel. Co.,* 665 S.W.2d 175 (Tex.App. -- Houston [1st Dist.] 1983, writ ref'd n.r.e.).

In harmony with well-established Texas law, this court should hold that  the UTMB's handbook of policy and procedures did not create a property right in continued employment. The handbook was not a written employment agreement, and was not supplemented or supplanted by any express agreement or written representation regarding termination procedures. Because the handbook bestowed no contractual rights on Ms Fisher r and no concomitant obligations on the UTMB or Mr. Watson, and because  Plaintiff cannot  points to any other source of entitlement to employment, she enjoyed no property interest the deprivation of which merited procedural or substantive due process

protection or entiled her to protection under 42 U.S.C. §1981.

As Plaintiff has no actionable claim under 42 U.S.C. 1981, she has no claim under 42 U.S.C. 1983 for a violation of 1981. *Baker v. McCollan*, 443 U.S. 137, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979) (emphasis added)

If Fisher is complaining of her transfer from one unit to another, this is not a right or privilege, but merely a process which might be requested by an employee withe no guarantee, but may be denied by the supervisors at work. (Fisher deposition page 52:lines 2-12) A  transfer from one medical unit to another within the same system is not an actionable employment decision.  See *Mosley v. Houston Community College System*,  951  F. Supp. 1279 (S.D. Tex. 1996).

Obviously, Ms Fisher's  alleged contractual relation was not with Mr. Watson; it was with the UTMB, i.e. the State of Texas.

"This Court has not yet decided whether a plaintiff has a cause of action under section 1981 against a third party for interference with the plaintiff's right to make and enforce contracts". *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997), *cert. denied*, 522 U.S. 1068, 139 L. Ed. 2d 675, 118 S. Ct. 739 (1998). See also *Felton v Carter*, 315 F.3d 470 (5th Cir. 2002) Prior to *Bellows*, however, *Faraca v. Clements*, 506 F.2d 956, 959 (5th Cir.), *cert. denied*, 422 U.S. 1006, 45 L. Ed. 2d 669, 95 S. Ct. 2627 (1975), had held that the director of a state entity could be personally liable under §1981 for interfering with the plaintiff's right to contract with the State (refusal to hire because wife was black).

*Bellows* distinguished *Faraca* on the basis that "the director was only nominally a third party". *Bellows*, 118 F.3d at 274. "In substance, because he was acting on behalf of the state when he decided not to hire Faraca -- thus making his hiring decision indistinguishable from that of the state -- the director and the state were essentially the same." *Id.*

In the light of *Bellows*' limited reading of *Faraca*, it would appear Watson could *only* be amenable to §1981 liability *if* he were "essentially the same" as the State for purposes of the complained-of conduct. He does *not* appear to be.  Nonetheless, even if Mr Watson had such status, a §1981 discrimination claim against him *in his individual capacity* should barred by the ruling in *Oden v. Oktibbeha County, Miss.*, 246  F.3d 458 (5th Cir.), *cert. denied*, 534 U.S. 948, 122 S. Ct. 341, 151 L. Ed. 2d 258. In reversing a judgment against a county sheriff *in his individual capacity* for an alleged racially-motivated failure to promote, *Oden* held:

> Only officials should be responsible for discriminatory decisions concerning government employment contracts. *Likewise, when a plaintiff asserts a cause of action under §1981 for discrimination in the terms and conditions of a municipal employment contract*, the proper defendant is the government employer *in his official capacity*. *Id.* at 464 (internal citations omitted; emphasis added).

Oden speaks of discrimination in the terms and conditions of a *municipal* employment contract; there is  no reason not to extend its holding to discrimination in the terms and conditions of *state* employment contracts.

Under 42 USC §1981, the Plaintiff must show intent to act in a discriminatory way.  As evidenced herein, the reasons Watson and UTMB-CMC  acted as they did were not pretextual at all, but had a sound and rational basis and were for non-discriminatory reasons.

### Due Process & Equal Protection

Fisher also alleges Defendants violated her Due Process and Equal Protection rights in violation of 42 U.S.C. '1983.  To state a claim under 42 U.S.C. '1983, a Plaintiff must show that (1) she has been deprived of the rights secured by the Constitution and laws of the United States and (2) the deprivation occurred under color of state law.  See *Flagg Bros. v. Brooks* 436 U.S.; 149, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978).  As her Due Process is pleaded  in the Fourteenth Amendment of the

U.S. Constitution, the question of whether the facts and events pleaded in her complaint constitute a violation is a question of law for the court to decide. *Hatton v. Ricks*, 744 F. 2d 501 (5th Cir. 1984) Public employees, such as Plaintiff, have a property interest in their employment only when there is a legitimate right to continued employment. Fisher  has no such right as explained above and reiterated here. An employee must have a property interest in continued employment to assert a Due Process claim in connection with termination. *Cabrol v. Town of Youngsville*, 106 F. 3d 101l 105, (5th Cir 1997) (*citing Cleveland Board of Education v. Loudermill*, 470 U.S., 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985)). *Am Fed'n of Gov't Employees v. Stetson,* 640 F.2d 642, 645 (5th Cir. 1982); *see also Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S. Ct. 2701, 33 L. Ed. 23d 548 (1972).  Absent a property interest in continued employment, there exists no right to Due Process prior to termination of employment, much less a demotion.  *Roth*, 408 U.S. at 578; *see also Moore v. Mississippi Valley State Univ.* 871 F.2d 545, 548 (5th Cir. 1989). The Fifth Circuit has held that in order to maintain a substantive due process claim in the context of public employment, a plaintiff must plead and prove: (1) a property interest in continued employment, and (2) that the employer's termination of her employment was arbitrary and capricious. *Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir. 1993).

In any event , Fisher received Due Process. As she admits, she was allowed to tell her side of the story and file grievances for any alleged wrongdoing by defendants. (Fisher deposition page 85: line 6-20; page 91: lines 4-25; page 93: lines 7-25; page 94; lines 1-9; page 96: lines 7-15: page 97: lines 1-70). No one at UTMB-CMC , including Watson ever told Fisher she could not appeal her grievances. (Fisher deposition page 114: lines 12-16).

The Due Process Clause of the Fourteenth Amendment does not create a property interest in government employment. *Cabrol v. Town of Youngsville*, 106 F. 3d 101, 105 (5th Cir. 1997); *see also*

*Roth*, 408 U.S. at 577.  Instead, the existence of a property interest is determined by reference to state law.  *Bishop v. Wood*, 426 U.S. 341, 344, 96S.Ct. 2074, 48 L. Ed. 2d 684 (1976).  Texas is an employment-at-will state.  There is a crucial difference between the government exercising the power to regulate or license, as lawmaker, and acting as a proprietor, to manage its international operation.  *Cafeteria & Restaurant Workers v. McElroy,* 367 U.S. 886, 896, 81 S. Ct. 1743, 6 L.E. 2d 1230.  Thus, in the public employment context, the Court has recognized that government has significantly greater leeway in its dealings with citizen employees than in brining its sovereign power to bear on citizens at large.  See, e.g., *O'Connor v. Ortega,* 480 U.S. 709, 721-722, 107 S. Ct. 1492, 94 L. Ed. 2d 714.

The Court's equal protection jurisprudence has typically been concerned with governmental classifications that affect some groups of citizens differently than others.  *McGowan v. Maryland,* 366 U.S. 420, 425, 81 S. Ct. 1101, 6 L. Ed. 2d 393.

There are some forms of state action, however, which by their nature involve discretionary decision making based on a vast array of subject, individualized assessments.  In such cases treating like individuals differently is a accepted consequence of the discretion granted to governmental officials.  This principle applies most clearly in the employment context, where decisions are often subjective and individualized, resting on a wide array of factors that are difficult to articulate and quantify. Recognition of a claim that the State treated an employee differently from others for a bad reason, or for no reason at all, is simply contrary to the at-will concept.  The Constitution does not require repudiating the familiar doctrine. *See Engquist v Oregon Dept. of Agriculture*, 128 S. Ct. 2146, 1780 L. Ed. 975 (2008)

There is no class of one Equal Protection in the employment context. If class-of-one claims were recognized in the employment context, any personnel action in which a wronged employee can

conjure up a claim of differential treatment would suddenly become the basis for a federal constitutional claim.  The Equal Protection Clause does not require this displacement of managerial discretion by judicial supervision.  *Garcetti v. Ceballos*, 547 U.S. 410, 423, 126 S. Ct. 1951, 164 L. Ed. 2d 689.

42 U.S.C.§ 1983 provides no substantive rights, only a remedy. *Chapman v. Houston Welfare Rights Organization*, 441 U.S. 600, 6127-18, 99 S. Ct. 1905, 1915-16, 60 L. Ed. 2d 508 (1979).  Ms. Nilsen's right does not emanate from §1983, but rather from the Equal Protection clause of the 14th Amendment.  And as we observed in *Rivera v city of Wichita Falls*, 665, F. 2d 531, 534 n. 4 (5th Cir. 1982): "This court has held that when §1983 is used as a parallel remedy with Title VII in a discrimination suit, the elements of the substantive cause of action are the same under both Statues. *Whiting v. Jackson State University*, 616 F.2d 116 (5th Cir. 1980). "*See also Pouncy v. Prudential Ins. Co.*, 668 F. 2d 795, 797 n. 3 (5th Cir. 1982) (elements of substantive cause of action for racial employment discrimination identical under Title VII and §1983), and *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982) (New York anti-discrimination statute, same cause of action as Title VII).

## FIRST AMENDMENT

Plaintiff's Original Complaint, as adopted in her sworn interrogatory answers to interrogatory number 3 , Exhibit 6, specifically asserts that the free speech she claims as protected was "her Constitutionally protected right to free speech when she complained to the EEOC". (Plaintiff's original Complaint, paragraphs 89-90) and her own complains about her treatment at the hands of Watson (Fisher deposition page 119: lines 10-20).  To begin an analysis on a First Amendment retaliation case, the Court determines as a matter of law whether Plaintiffs' speech involved a matter of public concern, *Tompkins v. Vickers* 26 F. 3d 603, 606 (5th Cir. 1994). To prevail on a First

Amendment employment retaliation claim, Plaintiff must establish four elements: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3)her interest in commenting on matters of public concern outweighs the Defendant's interest in employment actions. *Salge v Edna Indep. Sch. Dist.,* 411 F.3d 178, 184 (5th Cir. 2005).

Whether Ms Fisher's speech was addressed to a matter of public concern is a question of law. *Terrell v. University of Texas System Police*, 792 F. 2d 1360, 1362 n. 2 (5th Cir. 1982).  Furthermore, whether an employee's speech addresses a matter of public concern must be determined by the content, form and context of a given statement, as revealed by the whole record.  *Conneck v. Myers***,** 461 U.S. 138, 103 S. Ct. 1684, 1690 & n. 7, 1692 n. 10, 75 L. Ed. 2d 708 (1983).

In *Conneck*, the Supreme Court held that when a public employee speaks *not as a citizen* upon matters of public concern, but instead *as an employee* upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior. 103 S. Ct. 1t 1690 (emphasis added).  A public employee like any other citizen, has a right to free and open debate, opinion and expression.  However, when she speaks as an employee on matters that address only her personal employment conditions, she is not protected from an employment action for engaging in that speech by the First Amendment.  This principle is especially compelling in cases where an employee's expressions are protected against retaliation under Title VII of the Civil Rights Act.

The court has  recognized in *Terrell* that:

> Because almost anything that occurs within a public agency could be of concern to the public, we do not focus on the inherent interest or importance of the matters discussed by the employee.  Rather, out task is to decide whether the speech at issue in a particular case was made primarily in the plaintiff's role as a citizen or primarily in his role as employee.  In make this determination, the mere fact that th

topic of the employee's speech was one in which the public might or would have had a great interest is of little moment.

Accepting this contention, the indisputable facts found in the record remain that Ms Fisher consistently spoke not as a citizen upon matters of public concern, but rather as the employee upon matters of only personal interest.  Certainly, she  never attempted to air her complaint in a manner that would call the public's attention to the alleged wrong.

Because Plaintiffs's discrimination charge is not speech on a matter of public concern, she have failed to establish a *prima facie* First Amendment retaliation claim, and the claim should be dismissed.  See *Click v. Copeland*, 970 F. 2d 106, 111 (5th Cir. 1992) If the conduct does not touch a matter of public concern, the inquiry is at an end and a court will not scrutinize the reasons motivating the employer's action.

To establish the causation element of a retaliation claim, a plaintiff must prove that the exercise of his First Amendment rights "played some substantial role" in motivating the retaliatory act.  The defendant can rebut the claim of causation by showing that "the same adverse action would have taken place in the absence of the protected conduct."

A court must be diligent in enforcing these causation requirements because otherwise a public actor cognizant of the possibility that litigation might be filed against him, particularly in his individual capacity, could be chilled from taking action that he deemed appropriate and, in fact, was appropriate. Consequently, a putative plaintiff by engaging in protected activity might be able to insulate himself from actions adverse to him that a public actor should take.  *Lauren W. ex rel. Jean W. v. Deflaminis*, 480 F.3d 259, 267 (3d Cir. 2007). Internal personnel disputes and management decisions are rarely a matter of public concern. *Branton v. City of Dallas,* 272 F.3d 730, 739 (5th Cir. 2001). In the instant case, there is no protected speech, no causation evidence and the claim should

be dismissed.

## QUALIFIED IMMUNITY OF DAVID WATSON

The bifurcated test for qualified immunity is quite familiar: (1) whether the plaintiff has alleged a violation of a clearly established constitutional [or federal statutory] right; and, (2) if so, whether the defendant's conduct was objectively unreasonable in the light of the clearly established law at the time of the incident." *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998).

The first prong requires determining "whether the plaintiff has alleged the deprivation of an *actual* constitutional [or statutory] right", *Conn v. Gabbert*, 526 U.S. 286, 290, 143 L. Ed. 2d 399, 119 S. Ct. 1292 (1999) (emphasis added) -- that is, a right "*clearly established* under *currently applicable* standards", *Hare*, 135 F.3d at 325-26 (emphasis added; internal citations and quotation marks omitted).

The second prong "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which it took place". *Pierce* , 117 F.3d at 872. [d]efendant's acts are objectively reasonable unless *all* reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson*, 245 F.3d at 457 (emphasis in original).

As shown, Watson did not make the decision to demote Fisher. The on site investigation he requested was certainly reasonable under the circumstances he encountered. At that investigation, Watson went out of his way to try to make sure people in favor of Fisher were heard.  He defended Fisher in the investigation of the inmate suicide and defended her to Board of Nursing Examiners. Watson is entitled to a qualified immunity defense on the remaining claims, such as they may be, all of which should be dismissed as to him individually. Watson prepared a lengthy written explanation

for the UTMB_CMC's  EEO office, attached hereto as Watson deposition Exhibit 1 that sets forth in some detail why and what he did in dealing with Fisher.

As against Mr. Watson , individually, Title VII is not at issue now. "Because qualified immunity protects a public official from liability for money damages in her *individual capacity only*, [it] is inapplicable in the Title VII context." *Harvey v. Blake*, 913 F.2d 226, 228 (5th Cir. 1990) (emphasis added). This is because, as the district court noted: "Under Title VII, a plaintiff may sue only his employer, and few, if any, of the named defendants other than the [Department] would seem to qualify as a Title VII 'employer'".

As stated previously, it is more than well-established that, unlike 42 U.S.C. 1981,§ 1983 "is not itself a source of substantive rights"; instead, it provides "a method for vindicating federal rights *elsewhere conferred*". *Baker v. McCollan*, 443 U.S. 137, 144 n.3, 61 L. Ed. 2d 433, 99 S. Ct. 2689 (1979) (emphasis added) there is no viable 42 U.S.C. 1981 claim against Watson. Even if there were, he should still be entitled to a qualified immunity to those claims.

WHEREFORE,. PREMISES CONSIDERED, Defendants respectfully request this honorable court to grant their summary judgment and deny Plaintiff all relief. Defendants further pray for all relief to which they may show themselves entitled.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division


_/s/ Sam Lively_
SAM LIVELY
Assistant Attorney General
Texas Bar No. 12435300
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Phone No. (512) 463-2120
Fax No. (512) 320-0667

ATTORNEYS FOR DEFENDANT


## NOTICE OF ELECTRONIC FILING

I, Sam Lively, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing document in accordance with the Electronic Case Files System of the Southern District of Texas, on this the 20th day of November, 2009.

_/s/ Sam Lively_
SAM LIVELY
Assistant Attorney General


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and forgoing document has been sent via certified mail, return receipt requested, on November 20, 2009, to the following individual:

Jo Miller
505 North Main
Carriage House
Conroe, Texas 77301

_/s/ Sam Lively_____

SAM LIVELY
Assistant Attorney General