# Plaintiff Jackie Fisher's

## Response in Opposition to Defendants'

# Motion for Summary Judgment

# EXHIBIT 19

AT GALVESTON
UTMB MANAGED CARE

GRIEVANCE _____     APPEAL ✓

TO: HUMAN RESOURCES

FROM: __Jacklyn Fisher__        __Cluster Nurse Manager__
Employee Name/Complainant        Job Title

__Medical - Estelle RMF__         __David Watson__
Department/Facility               Name of Supervisor

The following grievance/appeal is submitted in accordance with The University of Texas Medical Branch Managed Care Discipline and Dismissal, Appeal, or Grievance Policy:

**FOR GRIEVANCE ONLY**

Reason for Grievance (Include UTMB Managed Care's Policy violated, if any):
_____
_____

**FOR APPEAL ONLY**

Action being appealed:
_____ Dismissal
_____ Suspension without pay
__✓__ Demotion

Date occurred: _____

Date occurred: __4-12-06__

Employee's Statement: __See appeal, pages 1-3__

DESIRED RESULTS: __Rescind demotion__

__Jackie Fisher__            __4-24-06__
Employee/Complainant Signature    Date

If additional space is required on any of the above, please submit supplemental sheets in triplicate. Return the completed form and supporting information to your local UTMB Managed Care Human Resources Office.

**FOR USE BY HUMAN RESOURCES ONLY:**

_____      Grievance No: _____
Human Resources Representative
                             Appeal No: _____
MANAGEMENT CONTACT: _____

Verbal Presentation _____
                    Date              Resolution

Level 1
        Date Rec'd   Date to Respondent   Due Date   Resolution

Level 2
        Date Rec'd   Date to Respondent   Due Date   Resolution

Level 3
        Date Rec'd   Date to Respondent   Due Date   Resolution

FISHER-100147

April 24, 2006

Dear Mr. Watson:

This appeal is in response to your letter dated April 11, 2006, in which you indicated your intent to demote me from Cluster Nurse Manager to Nurse Clinician III.

I believe your actions toward me are discriminatory and retaliatory for me having spoken to the Estelle Regional Medical Facility (ERMF) Management Team, Huntsville (HV) Sr. Cluster Practice Manager and Northern Division's Human Resource Administrator and Director of Nursing, regarding your indifference toward me as demonstrated by your harassing behaviors, lack of communication, your intent to set me up for failure, and your behaviors that subjected me to a hostile work environment. During your discussion with the ERMF Medical Director in March 2006 and April 2006, you implied no interest in wanting to rectify any problems.

The staff complaints you mentioned in your letter can not be validated without me having first hand knowledge of the information. I have never been privileged to see an employee's written complaint against me nor have you been able to provide specific examples of me using, loud, stern, tones when I've asked. While using my communication skills as a reason for my demotion you have repeatedly received complaints, made against other non-black Nurse Managers (NM), such as Ms. Wright, NM, who historically has been cited for using vulgar, profanity language on numerous occasions and has been cited for racial discrimination in EEO complaint(s). Ms. Adams, NM who has received numerous staff complaints for her rude and abrupt communication. Ms. Bonds, NM is regarded as irrational and unreasonable and has also receives numerous staff complaints. In March 2006, during a staff interview conducted by you, Ms. Roddey, NM was described as having poor communication skills. Ms. Roddey, NM has had four Assistant Nurse Manager resign, three resigned within a one to two year period with common complaints of her lack of management and support. Clearly, I'm being held to a different set of standards than the similarly situated non-black Nurse Mangers.

I did not receive counseling regarding my communication skills in 2005. From my June 2005 evaluation, you cited a disagreement as the basis for ineffective communication. It is usual for mangers to disagree on various personnel issues. These are normal administrative activities that managers participate in as a normal course of business. No complaints or coaching in regards to my communication was cited at that time. The HV Human Resource Administrator and Sr. Cluster Practice Manager were present for the discussion.

You have never had to stop my discussion/arguments in order to proceed with a meeting. I cite an instance in 2005 at the ERMF, when you were forced to intervene between Ms. Adams, NM and Ms. Bonds, NM but neither manager was faced demotion.

After transferring to the ERMF in August 2005, complaints that you may have received from the staff were never communicated to me, see grievance date April 10, 2006. I believe that staff complaints should be investigated to determine the veracity.

The January 17 & 18, 2006 meetings held by Ms. Gotcher, Northern Division DON and Ms. Melton, Northern Division Human Resource Administrator were by invitation and conducted in open forum. I supervised approximately forty to forty two employees at the ERMF. According to Ms. Gotcher, there were approximately twenty to twenty five staff interviewed, six to eight staff made complaints against me. Some staff that were interviewed reported they felt attacked in their efforts to support my administration. There was an additional seventeen to twenty two employees that were not interviewed and did not have complaints. This concludes that only a small percentage of the employees were dissatisfied. During Ms. Gotcher's follow up meeting with ERMF staff on March 8, 2006, she identified areas of concern on both sides.

The alleged grievance filed against me on March 9, 2006, was reported as sustained by you. I had no knowledge of the complaint nor was I allowed an opportunity to respond to the alleged charges.

RECEIVED

FISHER-100148  APR 2 4 2006

My evaluation for June 2005 indicates an inconsistency of what is written in this letter in regards to my communication skills. The evaluation review shows I occasionally exceeds in focusing on the situation/issue/behavior not the person. Puts the interests of other before self-interest. Does not discriminate. Avoids conflict of interest. Maintains constructive relationships. Respects others. Shares knowledge and information with others. Is successful in building long-term customer relationships. Demonstrates effective interpersonal skills, solve problems fairly and effectively, seeks staff input and serves as a role model.

As you indicated in the event that the second Agency (Elite) was unable to supply nurses, I was then to provide a contact person to the Supplemental Representative. I did not refuse to follow your instructions. There is supporting documentation on March 28, 2006 that I complied to your request. Per my conversation with the Supplemental Representative the statement "only if I were not available" is not true.

In the March 10, 2006 meeting you did not request that I meet with the Assistant Nurse Managers (ANM) at a minimum of once per week or more if needed, Documentation between you and myself on March 24, 2006 supports an obvious miscommunication of your expectations during the meeting.

In February 2006, I was not requested to meet with you two - three times a week to keep you abreast of problems/issues and request your assistance as needed. In March 2006, the ERMF Practice Manager, Medical Director and myself requested to met with you and the HV Sr. Cluster Practice Manager to discuss our concerns and your obvious dissatisfactions but you refused to meet with us. On March 27, 2006, I needed to speak with you and asked via email "can I give you a call" but you never responded. Despite the lack of communication, I have kept you abreast of problems/issues and requested your assistance as needed.

On March 13, 2006, some parts of my evaluation were misrepresented. When the evaluation was given to me for input, you did not provide a specific time frame for me to return it. I later responded to your email explaining why it had taken ten days to return. My tone was not accusatory. As your actions in my April 11, 2006 grievance supports my statement. In my opinion, neither of the charges display an insubordinate attitude or failure to follow your instructions.

My performance evaluation should be based on meeting established goals and behavioral expectations. According to my semi-annual evaluation presented on March 13, 2006, you failed to cite either of your alleged charges for February 2006, failure to adhere to your request or for March 10, 2006, direct violation of your instructions. In my opinion, if those were areas of your concern, they should have been noted on my evaluation.

I did not refuse to accept any accountability for my lack of action for the better part of the preceding eighteen months. As discussed, I was interested in mentoring and providing an opportunity for the ANM to grow and to learn in her position. She was given specific detail goals each evaluation period. You expressed concern in regards to three ANMs and instructed Ms. Adams, NM and myself to provide our respective ANMs with letters of expectation. From your point of view, and in comparison, Ms. Adams, NM showed no accountability for her lack of action for the better part of the preceding three plus years. Further comparison, the other ANMs that was under Ms. Adams' supervision, according to you, is still less than an effective. In this case, Ms. Adams showed no accountability for her lack of action for the preceding six plus years.

My communication with the HV, Ferguson (FE), Goree (GR) Cluster Practice Manager suffered after I reported him to his supervisor on June 7, 2004. The HV, FE, GR Management team was requested to met with the HV Cluster Management team regarding our communication on June 14, 2004. The Practice Manager and myself were expected to attend, the attendance of the other team members were optional. As noted on my December 2004 evaluation, our communication improved. The Provider base sick call was implemented six to eight months later. Per your documentation dated March 9, 2006, the process itself, had a significant impact on patient care and on the flow of clinic operations. You stated "the process was pretty bogged down, staff was suffering, and the process has been less than a booming success". I did not resist the process. In fact, I willingly coordinated the changes in the clinic flow necessary to accommodate the provider base sick call. I had

to spend an increase amount of time listening to and diffusing complaints that I received from the nursing staff. I made every effort to encourage their participation in this process. I assisted with verifying competency and helping to complete the CCA's Competency Base Orientation tools (CBO tools). I instructed my ANM to supervise the completion of the CBO tools in my absence. During this time I attended a Supervisor's Training class along with the HV Cluster HR Administrator, Medical Director, Nurse Managers and the EMR Coordinator. In support of the process, I did an presentation on its monetary advantages.

During the cold and flu season in 2004, I did not dismiss patients from the clinic. I assisted in getting the patients seen as this is verified by one of the nurses who was on duty. My involvement did not interfere or interrupt the workflow of the clinic.

In this letter you make a point to cite my failure to hold staff meetings between August 2005 and November 2005 without any consideration of the facts and circumstances that may have impacted formal meeting participation. The reassignment did not occur until mid August 2005. Because of Hurricane Rita, formal staff meetings were not held in September 2005. However in October 2005, I met with the High Security and SAFPF nursing staff. In November 2005, I meet with the ERMF, High Security and SAFPF nursing staff. During the first two to four months at the ERMF, I was training staff on the EMR and readily accessible to all shifts day and night. The staff was made aware of my short term goals to come online and standardize the EMR process and my long-term goal to become paperless. To mention, there were no formal, monthly staff meetings being held at the ERMF prior to my reassignment in August 2005.

A review of your comments in my evaluations for the preceding eighteen months indicates an inconsistency of ineffective management/leadership between what has been written in the letter and what occurred during those evaluation years. My evaluations states that I utilize a proactive style of management. I am supportive of staff. I am a solid professional patient advocate. Exceeded target in taking personal responsibility for handling issues and concerns. Occasionally exceeds in providing clinical and administrative supervision to facility staff using effective principles of management and leadership.

In your letter of intent, you stated "a pattern of performance has been identified that represents significant areas of deficiencies in my performance". Per UTMB Human Resource Disciplinary Policy 3.10.1, for continued failure to meet performance expectations, formal progressive disciplinary should be initiated. I have not received any levels of formal disciplinary for any of your alleged charges.

Since January 5, 2006, there has been a clear succession of your harassing behavior. Without other means of resolution, I filed a formal grievance against you on April 10, 2006. I received your letter of intent to demote me on April 11, 2006.

In closing, I believe that your intention to demote me is clearly an act of discrimination. A review of facts by a neutral fact finder will demonstrate that your reasons and rationale are based solely upon intent to subject me to different terms and conditions of employment because of my race. Further, I believe an impartial review of the facts will demonstrate that you have gone out of your way to create a humiliating, offensive and hostile work environment for me by subjecting me to different terms and conditions of employment than those enjoyed by similarly situated non-black Nurse Managers.

Mr. Watson, I believe the charges cited for this demotion are without merit. I'm asking that this proposed demotion be rescinded.

Sincerely,

Jacklyn L. Fisher, RN