**Plaintiff**
**Jackie Fisher's**

**Response in Opposition**
**to Defendants'**

# Motion for
# Summary
# Judgment

# EXHIBIT
# 22

To:    UTMB-CMC Human Resources Department
RE:    Demotion Appeal
Date:  May 11, 2006

I have been wrongfully and illegally demoted from Cluster Nurse Manager. The actions taken against me by UTMB are in retaliation for my complaints in February 2006 and other occasions about incidents of racial discrimination by Mr. Watson. Further, UTMB has wholly ignored the system's human resource policies to demote me from my management position. I appeal the decision to demote me and file this grievance against Mr. Watson for the above reasons.

Mr. Watson's retaliatory intent is highlighted by several specific acts. First, he has failed to invoke any progressive discipline to correct the pretextual complaints that he has about my performance. Pursuant to UTMB HR Policy # 3.10.1 (discipline and dismissal) the policy is intended to provide guidelines to promote consistency. The policy states that an employee should know about all issues and concerns; and, one should be given an opportunity to correct the problem when appropriate before moving to other disciplinary steps. Mr. Watson's areas of concern were not addressed with me. Further, he refused to meet with me to discuss any issues that he had concerning my performance. Instead, he took female employees out to dinner and discussed my performance with my subordinates.

According to the same policy, the performance management matrix and the Human Resource P.R.E.P. process outline the criteria when formal corrective action is necessary. If necessary, an employee is to first receive an oral reminder. If no corrective action has been demonstrated by the employee, then the employee is to receive a written reminder, followed progressively by a decision making day, suspension (misconduct) and ultimately termination (or demotion). The guidelines state that all phases of the process are intended

1

FISHER-100217

to assist employees in meeting performance standards. The steps in the process may be omitted only when a severe violation of policy justifies an immediate termination. I have never received any level of formal disciplinary action in relation to Mr. Watson's allegations. His request to demote me is racially motivated and retaliatory in nature. Mr. Watson's allegations against me would never warrant immediate termination of my cluster Nurse Manager position. Instead, they are a pretext for his illegal motives.

Another example of his illegal motive is the hurried and unprofessional way that he attempted to gather support for his illegal decision. For example, Mr. Watson cited support for his actions such as "staff complaints" which were never presented to me by grievance or otherwise. He complains of a high turnover and vacancy rate without any support (especially as compared to other clusters and units). Mr. Watson arranged a meeting with the management of the Northern Division to discuss me without me present and available to rebut his allegations, continued to solicit staff complaints and started requesting and asking them to give him negative written statements (immediately prior to his request to demote me). He presented me with a bad evaluation (after years of excellent evaluations) without any written facts to support the poor evaluation. He then provided statement in the demotion letter that I was deficient in areas that he had allegedly discussed with me on prior occasions, but completely failed to address any of the same issues during the evaluation. Without further means of resolutions, I felt it was necessary to file a formal grievance against him. For speaking out and filing grievances Mr. Watson has imposed a demotion as a harsh punishment.

The white nurses and Nurse Managers are treated differently by Mr. Watson than myself and the black nurses. For example, he has raised the issue about my behavior during

several Nurse Manager meetings. The allegation in regards to me is not true. In comparison, there was an argument between two Caucasian Nurse Managers (Ms. Adams and Ms. Bonds) that required Mr. Watson's intervention in order to proceed with the meeting. They are not being disciplined for the conduct. I merely raised the issue as to what appeared to be discriminatory treatment by Mr. Watson.

Mr. Watson complains about my ability to communicate and cites continued staff complaints prior to my 8/05 transfer. The staff complaints he may have received were handle very differently than the complaints made against the similar situated Caucasian Nurse Managers. According to an email from Mr. Watson on 4/19/05, he stated he would speak with the employee only after she had met and discussed her issues with the Caucasian Assistant Nurse Manager and/or Nurse Manager. If that failed to resolve the problem then he would be happy to meet with her. He stated there are proper ways to address things through the chain of command. If that failed, then she could come to him and he would address the issue. Again, according to an email from Mr. Watson on 2/1/05, he stated if an employee was making an allegation against her supervisor, the supervisor had a right to be there to defend herself and we have the right to hear both sides of the story, we would discuss the issues and not have the employee use it as a bashing session for her personal agenda.

He also ignores the fact that the staff also complained about the previous Caucasian Nurse Manger (Ms. Adams). The complaints were made through Mr. Watson's office, to Ms. Rader's office, via email(s) sent to Dr. Soboto office. There were also calls made to the UTMB Hotline. Supported by Mr. Watson's own admission, the ANM made complaints about the previous Caucasian Nurse Manager (Ms. Adams). Yet she was not demoted.

After I transferred to the ERMF, I learned of Mr. Watson's special relationship with the Hispanic male Assistant Nurse Manager. This particular ANM was Mr. Watson's source of information. Mr. Watson admitted, in front of a witness (Mr. Samrehn), that the staff does not come to him, he calls for them. Mr. Watson's solicitation of staff has been one of only seeking information from persons of the Caucasian race. This is evident from review of my 4/11/06 grievance, the minority employee (Hispanic) refused to comply with his request. There was no solicitation or consideration in regard to my communication from the African American employees.

Mr. Watson personally requested and arranged for the Northern Division Management Team, HR Administrator, Ms. Melton (Caucasian) and Director of Nursing, Ms. Gotcher (Caucasian) to interview ERMF staff. According to Ms. Melton and Ms. Gotcher, they interviewed staff at Mr. Watson's request due to the high turnover rate, high vacancy rates and staff complaints since my 8/05 reassignment. Mr. Watson's intent was to provide an opportunity for disgruntled staff to sabotage me. He had requested at that time that I be demoted. Mr. Watson felt threaten by his persuasion to call the meeting and made the statement to one of the black employees, "I hope I still have a job on Monday." According to the facility monitoring reports, my vacancy rates were not any higher than the Caucasian Nurse Mangers in the local Huntsville area. In some months my vacancy rates were actually lower. In comparison, since the 8/05 reassignment, there has been 14-15 employees resign from the Eastham/Ellis Cluster under the Caucasian Nurse Manager (Ms. Adams). The Estelle Main Building is supervised by a Caucasian Nurse Manager (Ms. Bonds) and her staff was invited to meet with the Northern Division team. During the month of January 2006, and at the time my staff was interviewed, the Caucasian Nurse

Manger's (Ms. Bonds) staff had reasonable cause to be interviewed. Ms. Bonds at that time had only four-five licensed staff to provide 24 hour coverage. In comparison, her high staff turnover and vacancy rate resulted in staffing levels much more critical than mine. Ms. Adams' and Ms. Bonds' high turnover and vacancy rates on those particular Units went without attention from Mr. Watson and the Northern District Level Administration. There have been African American employees that complained about their Caucasian Supervisor and their complaints were ignored.

Mr. Watson stated on the demotion letter, one employee filed a grievance against me. However, I was never provided an opportunity to even respond to the issue before Mr. Watson sustained the grievance against me. In comparison, there have been staff grievances filed against Ms. Roddey (Caucasian) Nurse Manager, and she was allowed an opportunity to respond before Mr. Watson made a final disposition.

On the demotion letter, Mr. Watson has also alleged that I refuse to take accountability for my actions. He is wrong.  Again he is using this broad complaint to support his efforts to retaliate against me.  I know that the same instructions where given to the Caucasian Nurse Manger (Ms. Adams), in which she had supervised her staff for 3-6 years longer than I had supervised my respective ANM. In this particular situation, I had to request that the Caucasian ANM disciplinary be perused after I was instructed to make a letter of reprimand for Ms. Kelly, who is African American. Mr. Watson showed indifference in his treatment as he executed the demotion, which was known to be the African American ANM. However he handled the Caucasian ANM very differently. This discriminatory act on Mr. Waton's part could have jeopardized my working relationship with the black ANM. The white employees were not subjected to the same treatment. Since Ms. Roddey's,

(Caucasian) promoted to Nurse Manager in 2003, she has not been able to mentor a new correctional nurse to survive in the workplace in the Assistant Nurse Manger capacity. She has had four Assistant Nurse Mangers resign between Wynne and Holliday Units. Three resigned with similar reasons, a lack of Ms. Roddey's mentoring and leadership abilities. Oddly, these Caucasian Nurse Managers have not been cited for ineffective management/leadership and requested for demotion.

On the demotion letter, I was also cited for ineffective management/leadership, stating that the Management Team requested that I be removed from the team. The allegations are not supported by the evidence. Obviously, the demands of the job are extreme at times and all members will not always agree.  The question as to whether the allegations support my demotion is clearly no and again racially motivated.  One can compare how other white Nurse Managers are treated and see that much worse situations go unpunished. For example, there have been problems among other members of different Management Team in the local Huntsville area. In specific, the Ellis/Eastham was not a cohesive team. The Caucasian Nurse Manger (Ms. Wright), the Mid-level providers (Ms. Clay-Keith and Mr. Lopez) and the Medical Director (Dr. Williams) demonstrated a lack of effective communication that required intervention on behalf of the Huntsville Cluster Sr. Management Team. The Caucasian Nurse Manager (Ms. Wright) and the previous Practice Manager (Ms. Porter) relationship was less than effective and required the intervention from the Sr. Cluster Team. As recent of 3/06, the relationship involving a Caucasian Nurse Manger (Ms. Adams) and the Mid-level provider (Mr. Aschberger) was ineffective and was resolved to a workable fashion only after their respective supervisors (Mr. Watson and Dr. Adams) intervened. These Caucasian Nurse Mangers were not requested for demotion. Mr. Watson intervened to assist in the resolution of problems on behalf of the Caucasian

6

Nurse Manger (Ms. Adams), but has refused to meet with me, and expressed no interest to rectify any problems that I was having.

On the demotion letter, Mr. Watson cites his expectation to all his Nurse mangers regarding the need for regular staff meetings to ensure communication throughout the department. He does not enforce the expectations evenly across racial lines.   He never considered the facts and circumstances that impacted me from having formal meetings. However, according to different employees on other respective Units, two of the Caucasian Nurse Mangers do not have regular monthly staff meetings. Since the 8/05 reassignment the Eastham/Ellis Cluster Caucasian Nurse Manger (Ms. Adams) has had only one formal meeting and that was in January 06. There was no formal meeting in 8/05, 9/05, 10/05, 11/05, 12/05, 2/06, 3/06, 4/06. Since the 8/05 reassignment, it has been reported that the FE/HV/GR Cluster under the supervision of Caucasian Nurse Manger (Ms. Wright) did not have formal staff meetings in 8/05, 10/05, 1/06, 3/06. According to the Dialysis Caucasian Nurse Manger (Ms. Elmore) on 4/11/06, prior to her most recent staff meeting, there was a four-five month span between her formal meetings. In further comparison, there is no record of formal, monthly staff meetings being held at the ERMF prior to my reassignment in 8/05. These three Caucasian Nurse Mangers are not requested for demotion.

Mr. Watson's racial discrimination has caused racial strife among the employees and supervisors. There was an incident involving the rehire of a Caucasian employee (Ms. Ford) and the transfer of a black employee (Ms. Freeman). I openly question Mr. Watson's motive and discrimination about this incident.  I have supporting documentation that by his own omission and after I brought some of the issues back to his mind that his initial

approval to rehire the Caucasian employee was unfair and partial.

On 2/1/06 at the interview process, Mr. Watson made the comment that Ms. Roddey (Caucasian) was his favorite Nurse Manger and that we all were being called to his office except her because she kept her protection plan paid up. This particular "favorite" Nurse Manger was not reassigned in 8/05 and was brought to question. Mr. Watson reasoning for not transferring Ms. Roddey was that she was a new Nurse Manger, she needed more support and that she was working well with her current Practice Manager. At the time of the reassignment, Ms. Roddey had been a Nurse Manger as long as I had. In comparisons, we were both promoted to Nurse Managers in 2003, one to two months apart. Even though I previously worked as Assistant Manager and she had not. After 2.5 years, Ms. Rodney was not cited as having ineffective management/leaderships skills nor was she requested for demotion.

During the death of Ms. Roddey's nephew (in late 05) and Ms. Wright's mother (1/06), both Caucasian Nurse Mangers, Mr. Watson sent out emails requesting thoughts and prayers. During the death of my grandmother in 1/06, just a few weeks before Ms. Wright's mother passed, Mr. Watson did not handle my situation in by notifying my colleagues, as he did for the Caucasian Nurse Mangers. During that time, Mr. Watson requested that we purchase a card and/or take Ms. Roddey out to eat. He also attended the out of town funeral services for Ms. Wright.  He never acknowledged my loss or offered his sympathy in any manner.

The (Caucasian) Nurse Manager, Ms. Wright, has been found guilty of falsifying records. This is considered "gross misconduct" according to the UTMB Disciplinary Policy and recommends termination. Being Caucasian, she received a lesser punishment. She was not

8

requested for demotion or termination.

During the week of October 24-28, 2005, I was in conversation with Mr. Watson and, for no apparent reason, he asked me "if I thought he was prejudice". Quite surprised by the question, I replied that some of his decisions are discriminatory and that he was biased in exercise of his authority. His decision focused on the person, instead of focusing on the problem at hand. Mr. Watson's statement made me very concerned that he was aware of his own racial partialities—but did not care.

There was an African American employee (Ms. Hagan) that requested transfer to my supervision back in mid 05; the black employee was denied transfer due to her disciplinary status for attendance violations. However, Mr. Watson approved the transfer of a Caucasian employee (Ms. Duke) to the Fe Unit under the supervision of a Caucasian Nurse Manager (Ms. Wright), effective 5/06. Ms. Duke is under disciplinary action for the same attendance policy issues. The Caucasian employee has been shown a more favorable outcome in a similar situated incident.

Mr. Watson has allowed me to provide written disciplinary to the African American employees for inaccurate sharp and needle counts at the HV/FE Units but has denied me the opportunity to provide written disciplinary to the Caucasian employees at the ERMF for the same violation. There was a Mental Health case at the Huntsville Unit involving an African American ANM that Mr. Watson insisted that she be sent to peer Review in addition to her written disciplinary. A similar incident occurred at the RMF involving (4) Caucasian employees and I was instructed by Mr. Watson not to provide any type of formal disciplinary reduced to paper, and encouraged to do only verbal counseling. I was allowed to provide a disciplinary "decision making day" to a black employee (Ms. Platt) at

ERMF in 1/06 for progressive attendance violation. I wrote and submitted to Mr. Watson a disciplinary for progressive attendance violation which caused for a "decision making day" back on 3/07/06 for a white employee (Ms. Darby) as of my last day 4/11/05, it still hadn't been approved or returned for presentation. I have been allowed to terminate three African Americans according to the Nursing Attendance Standards. There is one Caucasian employee that worked under my supervision on the Estelle Complex that should have been terminated in 1/06 or 2/06. I recommended her termination in accord with the standards and it was denied and placed on holding pending her trial verdict. Mr. Watson obviously exercises harsher punishment for black employees than he does for the white employees.

My demotion was one in a series of three African American disciplines imposed and inflicted by Mr. Watson within a one month period. A black ANM was demoted on 3/24/06, a black employee was given a disciplinary, written warning on 4/5/06 with disregard to the white nurse involvement and failure by her own omission. I was presented with a letter of demotion on 4/11/06.

The Human Resources Department has no real reason to allow my demotion, other than its desire to support the racist practices of Mr. Watson. In this venue, or another, in honest and good faith, the UTMB system cannot support the pretext for my termination as Cluster Nurse Manager position. I ask that the demotion be set aside and that I be immediately returned to my job as Cluster Nurse Manager.

I request that this appeal be forwarded to Step II.

Sincerely,

Jackly Fisher

Jacklyn Fisher

**FISHER-100300**                                                                 10