# Plaintiff
# Jackie Fisher's

## Response in Opposition
## to Defendants'

# Motion for
# Summary
# Judgment

# EXHIBIT
# 64



**✶◀UTMB®**
The University of Texas Medical Branch

**DEPARTMENT OF LEGAL AFFAIRS**

May 14, 2007

Raymond Bautista
Investigator
U.S. Equal Employment Opportunity Commission
Houston District Office – 460
1919 Smith Street, 7th Floor
Houston, TX 77002

Re:    Jacklyn Fisher – EEOC No. 460-2006-01987 Amended

Dear Mr. Bautista:

This is an Amended Response to Jacklyn Fisher's EEOC Charges of Discrimination dated April 12, 2007. Ms. Fisher is alleging she has been discriminated against based on her race and has been subject to retaliation. The University of Texas Medical Branch (UTMB) emphatically denies these statements. Each of Ms. Fisher's issue is in bold type and the University of Texas Medical Branch's (UTMB) response is included below each issue.

*My name is Jacklyn Fisher. I belong to a protected class of employees in that I am African American/Black. I have been employed by UTMB since October of 2000. I started as an Assistant Nurse Manager and was promoted to Cluster Nurse Manager in about August of 2003.*

**1.    *On about February 11, 2005 I complained about my supervisor, Mr. David Watson (white) because he treated a me and a black employee who I supervised, Ms. Kelly, differently and more harshly than he treated similarly situated white employee, Ms. Adams and a white employee she supervised, Ms. Gossett. The complaint was taken to Ms. Sandy Radar, the Huntsville HR Administrator and Denise Box, the Huntsville Sr. Practice Manager. Both Radar and Box stated that Watson handled the situation incorrectly, but nothing was done to address the unequal treatment.***

Ms. Fisher did not make a formal complaint to Sandy Rader or Denise Box regarding Mr. Watson treating her and Ms. Kelly differently and more harshly than Mr. Watson treated Ms. Adams and Ms. Gossett. Ms. Box recalls having a conversation with Ms. Fisher about this issue but does not remember the date. Ms. Rader was present during a meeting between David Watson and Jackie Fisher regarding Mr. Watson going to Ms. Kelly to discuss her performance. Ms. Fisher was very upset that Mr. Watson had gone directly to her employee without her knowledge. As Ms. Fisher's supervisor, it was within Mr. Watson's authority to speak with Assistant Nurse Managers on units he

**Fisher-200100**

supervised.    Ms. Rader recalls Ms. Fisher being upset, but Ms. Fisher did not discuss this issue with her.

Attached is an email response from Ms. Fisher to Melvin Williams dated January 7, 2007. I direct you to Mr. Williams question number 1 *"What was your professional relationship with Ms. Gossett? Were you her supervisor and if so, did you ever discipline her or have any problems with her work performance that were brought to her attention? If yes, was any of this documented and is the documentation available?"* Ms. Fisher's response was *"My professional relationship with Ms. Gossett was strictly a working relationship. Yes, I was her supervisor from August 2005 until she was hired by TDCJ-ID. No, I never disciplined her. Yes, there were problems with her performance that were brought to my attention, to include a few – her being discourteous, rude and unprofessional to her subordinate, being unavailable when on-call and staff not being able to reach her, failure to submit her assigned QI-QM reports by suspense dates, disorganization and lack of personal hygiene. There is no documentation from my self, informal resolution was attempted through verbal counseling.*

Ms. Fisher is critical of Mr. Watson's handling of Leigh Gossett as compared to Ms. Kelly but Ms. Fisher states "No, I never discipline her" (Ms. Gossett)  despite being Ms. Gossett's supervisor for approximately five months.

II.   *In August of 2004, an inmate committed suicide seven days after I spoke to him and six days after the mental health practitioners and psychiatrist evaluated him. I suffered no adverse consequences for my actions in this matter, until after the complaint against Mr. Watson on February 11, 2005. Although it was totally discretionary as to whether or not to report the incident, Mr. Watson chose to send the matter to Peer Review. He also impermissibly influenced the Peer Review by sitting in during the Peer Review Hearing over my objection. Even though he stated that he would not vote, five out of seven committee members were under his chain of command. Consequently, the matter was referred to the Texas Board of Nurse Examiners (BNE) prior to the year end of 2005.*

Mr. Watson did not send this issue to Nursing Peer Review. The mechanism by which Ms. Fisher's role in the incident were "sent" to Nursing Peer Review is, in and of itself, a privileged and confidential process pursuant to the Texas Health and Safety Code section 161.032.  NOTE:  THIS IS A MEDICAL COMMITTEE AND WE CANNOT DIVULGE WHAT THEY DID.  Mr. Watson investigated the incident at the time it occurred and discussed with Ms. Fisher but no disciplinary action was taken. The Peer Review Committee is comprised of RN's and LVN's.  Mr. Watson functioned as the facilitator to the committee by gathering all records that the committee members needed to complete their investigations and make decisions. At no time was Mr. Watson a voting member of the committee. Each nurse that is called to a Peer Review Committee hearing is given the option to request that ANY member in the room be excused. Ms. Fisher was given this option, as any other nurse would have been, and did not voice any request or

Fisher-200101

concern of Mr. Watson's presence. *See* Texas Administrative Code Title 22, Part II, Chapter 217, Rule 217. 19. Again his presence is only one of facilitator to the committee for any paperwork requests that they have. The Peer Review on Ms. Fisher was conducted on April 13, 2005 and the written report sent to the BNE on May 10, 2005. Ms. Fisher claims that it was totally discretionary as to whether or not to report the incident. This is patently untrue. UTMB has a duty to report nursing violations pursuant to the Texas Occupations Code 301.403. Pursuant to the Texas Occupations Code §303.006, a nursing peer review committee proceeding is confidential and any communication made to a nursing peer review committee is privileged. As a result, we are unable to describe any aspect of the nursing peer review findings.

The BNE conducted its own independent investigation and on December 1, 2006, imposed disciplinary action against Ms. Fisher, thus sustaining the findings of UTMB's internal quality assurance and professional liability procedures. See Exhibit 1.

**III.** *While the matter was pending before the BNE, I still functioned in the position of Nurse Manager until May 6, 2006. Around May 6, 2006, I was demoted to Assistant Nurse Manager, and still functioned in a management position to present.*

The BNE does an independent and complete investigation of any incident referred to them. Ms. Fisher continued to serve in a management position of Assistant Nurse Manager during the BNE investigation.

**IV.** *About August of 2005, a black subordinate, Ms. Freeman, wanted to transfer within the Huntsville cluster to work under my supervision. Mr. Watson denied Ms. Freeman the opportunity. Ms. Freeman was the only employee he denied a transfer between August of 2005 and January of 2006. At the same time, he granted several white employees their requests for transfer within the cluster. About January 4, 2006, I opposed what I perceived to be discrimination and confronted Mr. Watson about his different standards for white and black employees and told him it was not fair.*

Ms. Freeman was assigned to the Goree Unit in August 2005. UTMB records indicate that on August 28, 2005, Ms. Freeman applied for four (4) LVN positions at the Estelle Unit . Each of these positions would have been a lateral transfer. At that time, David Watson, District Nurse Manager, was responsible for staffing nursing positions for fourteen (14) TDCJ prison facilities. It was Mr. Watson's responsibility to determine which facility was in need of employees at any given moment. During this time period, Mr. Watson was facing nursing shortages at the Goree Unit and he met with Ms. Freeman to discuss her reasons for transfer. She was asked by Mr. Watson three (3) times what was her reason for requesting a transfer. Ms. Freeman failed to provide reasonable justification for the lateral transfer and due to the critical staffing needs at the Goree Facility at that time, Mr. Watson denied her request for transfer. Attached as Exhibit 2 is a copy of the Transfer Report for August 2005 through January 2006.

During a Nurse Managers meeting held in January 2006, Ms Fisher adamantly opposed the re-hiring of a former white employee, Elizabeth Ford, due to issues of Ms. Ford's behavior. Mr. Watson reviewed this issue after Ms. Fisher brought this to his attention and he agreed with Ms. Fisher. See Exhibit 3. Ms. Ford was not re-hired.

**V.    *Four days later, a witch hunt was initiated against me for opposing the UTMB discriminatory practices. I was out on bereavement leave and about January 9, 2006, Ms. Gotcher, Northern Division Director of Nurses (Watson's Supervisor) and Ms. Melton, Northern Division HR Director, began an on sight investigation of me. There were no written allegations against me to investigate, nor was I given an opportunity to respond. I was supervising 42 employees, and even though management encouraged my staff to be disloyal, only seven employees had disgruntled things to say about me. The employees who stuck up for me were evidently interrogated and felt attacked for sticking up for me. Ms. Gotcher told me the inquisition was conducted against me at Mr. Watson's request.***

Ms. Mary Gotcher, Northern Division Director of Nursing was aware of many issues surrounding the vacancy rate, turnover rate and employee complaints at the Estelle Regional Medical Facility. An investigation at the Estelle Facility was started by Ms. Gotcher with the assistance of Ms. Georgia Melton, Northern Division Senior Human Resources Manager. This investigation was not against Ms. Fisher, it was an investigation about the work environment at the Estelle Facility. At no time did anyone encourage employees to be disloyal to Ms. Fisher. No complaints were received from employees stating they felt attacked and at the time of the investigation the employees were all thankful for the interest and concern for their work environment. All employee interaction with Ms. Melton and Ms. Gotcher was on a volunteer basis only. No one was personally asked to participate in the investigation but all Estelle employees were encouraged to participate if they had any opinions about their work environment that they wanted to share. Copies of the investigation notes generated by Ms. Melton have been produced previously.

**VI.    *I was verbally told that the investigation was undertaken because of my high turnover and vacancy rate. I exercised my protected right by filing a grievance which pointed out that other white Nurse Managers had a higher turnover and vacancy rates than I had and yet they were not subjected to this demeaning and demoralizing investigation. Even though there was good cause to investigate the white Nurse Managers for the same allegations, this was done. On the same day that my staff was interviewed, one white Nurse Manager in the building next to me had higher vacancy rates than I did and her staffing needs were much more critical, yet her staff was not interviewed.***

Estelle is a very complex, inpatient facility. The high vacancy rate and increased turnover was of particular concern to Ms. Gotcher, the Regional Director of Nursing because of the acuity of the patients housed at this facility. Ms. Gotcher monitors the employee vacancy rate for each facility on a monthly basis and responds to the rates and trends as

**Fisher-200103**

needed. Complexity, size and patient acuity are all part of the equation for each facility. A copy of the vacancy report from August 2005 (when Ms. Fisher started at the Estelle Unit) through January 2006 (beginning of the investigation at Estelle) is attached as Exhibit 4. This report shows that nine employees had left the Estelle unit between August 2005 and January 2006. This rate far exceeds that of other units within the Huntsville cluster.

**VII.     *Shortly afterward, I received what I considered to be a poor performance evaluation. Prior to that point, my performance evaluations had been outstanding. On April 10, 2006 I grieved alleging discrimination, hostile work environment, and retaliation. On April 11, 2006, I received notice of Mr. Watson's intent to demote me by two ranks to Nurse Clinician III. I appealed his intention and was then only demoted one rank, to Assistant Nurse Manager and reassigned to the Wynne Unit.***

The investigation of the Estelle Unit revealed that Ms. Fisher's management skills were lacking. Ms. Fisher received a quarterly evaluation on March 7, 2006. See Exhibit 5. This evaluation addresses the issues revealed during the investigation conducted by Ms. Melton and Ms. Gotcher. Ms. Fischer was given an opportunity to present a rebuttal to this evaluation see Exhibit 6.

On April 11, 2006 Ms. Fisher was notified of the intent to demote her to a Nurse Clinician III. Ms. Fisher's demotion was based on her continued failure to meet minimum performance expectations. See Exhibit 7 The areas of deficiency noted were: Ineffective communication with subordinate staff; insubordinate attitude toward your supervisor; failure to follow your supervisor instructions; and ineffective management/leadership. It is noted in the demotion letter that Ms. Fisher's management deficiencies were noted in 2005 when she was the Nurse Manager of the Huntsville, Goree and Ferguson facilities. Ms. Fisher was counseled on numerous occasions. In August 2005, the decision was made to transfer Ms. Fisher to the Nurse Manager position at the Estelle Regional Medical Facility. The same types of complaints were again reported from the Estelle nursing staff. Ms. Fisher was counseled on several occasions by Mr. Watson but Ms. Fisher's management issues continued. Mr. Watson's original intent to demote was reconsidered when presented to Ms. Gotcher. Ms. Fisher had successfully performed in the role of Assistant Nurse Manager at a different facility and the decision was then made to demote Ms. Fisher to an Assistant Nurse Manager.

**VIII.     *While at the Wynne Unit, the Nurse Manager to whom I then reported left in August of 2006, and no other Nurse Manager assumed duties there until March 14, 2007. Though I was demoted in pay, I was still required to function as a Nurse Manager from September 2006 until March 1, 2007, although without the commensurate pay or title.***

Ms. Fisher, at all times, has functioned within the scope of an assistant nurse manager. Ms. Carol Warren was in constant contact and always available to Ms. Fisher until her reassignment under Ms. Upshaw. There are several facilities within Correctional

Managed Care that are "managed" by an assistant nurse manager. The assistant nurse manager at these units reports to either a Nurse Manager or directly to the District Nurse Manager. Again, complexity, size and acuity of the facility are all part of that decision.

IX.    *In December of 2006, the BNE noticed UTMB that, as a result of the 2004 incident, which was not reported until 2005, I had agreed to an Order which required me to complete remedial education within one year. My license was never suspended, nor did the BNE make any stipulation that I could not supervise or hold a managers position. Even with the BNE requirements pending, UTMB still required me to perform in the Nurse Manager position though they were not paying me to do so, nor had they given me the title of Nurse Manager back.*

The BNE's stipulation on Ms. Fisher's license was reported to Ms. Gotcher in December 2006 and at that time no action was taken at the direction of the Human Resources Department due to UTMB's ongoing investigation of Ms. Fisher's EEOC complaint.

Again, Ms. Fisher functioned within the scope of an assistant nurse manager under the supervision of Ms. Carol Warren from August 18, 2006 through December 29, 2006. Effective December 30, 2006, Judy Upshaw was named as the District Nurse Manager and in January 2007, Ms. Lavina Wright was named the Cluster Nurse Manager over the Wynne Facility. Ms. Fisher was under the supervision of a Nurse Manager at all times.

X.    *Subsequent to my February 11, 2005 complaints, I found it necessary to grieve four times totally about discrimination, hostile environment and retaliation. None of the grievances were answered.*

A search of UTMB records indicates Ms. Fisher filed grievances on 4/10/2006, 4/11/2006 and 9/6/2006. See Exhibit 8 She also filed an appeal on 5/11/2006. See Exhibit 9 Ms. Fisher was on FMLA from 3/29/06 through 4/10/2006. The decision was made to demote Ms. Fisher on or about April 7, 2006. See Exhibit 10 Ms. Rader met with her on 4/11/2006 to give her the letter of intent to demote her. The pre-disciplinary hearing was scheduled for 4/12/2006. Ms. Fisher and Dr. Warren Moore attended the pre-disciplinary hearing. Ms. Fisher requested more time to write a response to the proposed demotion which was granted. Ms. Fisher was informed on 4/12/2006, that she was to report the following day to Kim Roddey, the Cluster Nurse Manager for the Wynne, Byrd, and Holliday facilities. Ms. Fisher contacted Ms. Roddey following the meeting to inform her that she was going back out on FMLA. Ms. Fisher did not return to work until 6/21/2006. Ms. Fisher's grievances were sustained pending her return to work. On 4/24/2006, Ms. Fisher responded to the intent to demote, see Exhibit 11. Mr. Watson responded to Ms. Fisher on 5/2/2006, see Exhibit 12, informing Ms. Fisher that her demotion was changed to an Assistant Nurse Manager instead of a Nurse Clinician III. Ms. Fisher filed her appeal on May 11, 2006 . The issues noted in Ms. Fisher's 4/10/2006 and 4/11/2006 grievances were covered in her appeal. Ms. Fisher filed her EEOC complaint on June 2, 2006. Upon receiving Ms. Fisher EEOC complaint UTMB halted its internal investigation and began investigating Ms. Fisher's EEOC complaint.

Fisher-200105

**XI.** *About March 9, 2007, I was awarded back pay as "resolution of my complaints of racial discrimination and retaliation filed April 6, 2006." The back pay was awarded from May 6, 2006 but was cut off as of December 15, 2006, although the cut off date was unexplained at the time.*

Dateline of Contact with Ms. Fisher:

| | |
|---|---|
| 3/9/07 – | John Pemberton mailed a letter to Ms. Fisher notifying her of the backpay of $3907.41 that would cover 5/6/06 through 12/15/06 |
| 3/12/07 – | Ms. Rader tried to reach Ms. Fisher at work several times only to discover that she was on vacation from 3/12/07-3/16/07. The plan was to give her a copy of Mr. Pemberton's letter and a Notice of Intent to Demote from Mary Gotcher. Ms. Rader did contact her by telephone to read Mr. Pemberton's letter to her since it had already been mailed. Ms. Fisher did ask why the back pay went only through 12/15/06 and Ms. Rader explained that the back pay was only through the pay period when UTMB received the letter from the BNE. Ms. Rader further explained to Ms. Fisher that she needed to meet with her when she returned to work, but Ms. Rader did not discuss the intent to demote with her over the telephone. She agreed to contact Ms. Rader when she returned to work on 3/19/07. |
| 3/19/07 – | Ms. Rader attempted to contact Ms. Fisher several times, but learned that she did not report to work due to a doctor's appointment. |
| 3/20/07 – | Ms. Fisher contacted Ms. Rader to state that she would be out of the office for a few days for medical reasons. |
| 3/21/07 – | A notice of Intent to Demote was mailed to Ms. Fisher via certified mail. Ms. Fisher was informed in the letter to contact Ms. Rader by 3/26/07, if she wished to respond either in person or writing. |

**XII.** *I treated the notice as an offer of settlement and rejected the back pay because I still had not been reinstated to my former position as Cluster Nurse Manager.*

On 3/15/07, Ms. Fisher's attorney, Jo Miller, sent a letter to Mr. John Pemberton stating that Ms. Fisher the backpay would be held until Ms. Fisher's case was resolved.

**XIII.** *UTMB sent me a letter dated March 11, 2007, which noticed me of its intention to further demote me because of the BNE Agreed Order, of which they had notice since December 2006. I had until March 26, 2007 to respond. On March 26, 2007, I noticed UTMB that all requirements had been completed and that there were no sanctions on my license. I pointed out that other professionals have had board sanctions and have not been demoted, that I had functioned effectively since UTMB had notice from BNE in the position of Nurse Manager and they had not complained when they needed me to do so.*

After the EEOC investigation was completed, UTMB reconsidered the issue involving the BNE stipulations against Ms. Fisher's licensure. No record of a supervising nurse working with stipulations on her license was found and we are unaware of what Ms. Fisher is referring. UTMB did not have a policy regarding this issue and the BNE does not get involved in employment issues. The BNE only makes decisions concerning nursing patient care standards - it is the responsibility of the organization to set the standard for management criteria within their organization. The decision was made, in conjunction with HR, Campus Nursing Management, Employee Relations, EEOC and CMC Nursing Management that a nursing leadership position that requires monitoring of patient care standards should not be held by anyone with licensure stipulations from the BNE. These stipulations represent concern from the BNE of the nurse's decision concerning patient care standards as set forth by the BNE.

Ms. Fisher notified UTMB that she had completed the BNE requirements. Ms. Gotcher verified this information through the BNE website. See Exhibit 13. On 3/24/07, Ms. Fisher was placed back into a Cluster Nurse Manager position over two (2) facilities for the Wynne and Goree facilities and has been reimbursed all back wages.

*I have been unlawfully subjected to different terms and conditions of employment by UTMB because of my race. I have been subjected to disparate treatment by UTMB. I belong to a protected class, was qualified for the position of Nurse Manager, I was replaced by someone outside the protected class or otherwise discriminated against because of my race. I have been subjected to a hostile environment because of my race by UTMB. I was subjected to unwelcome harassment which was severe or pervasive. The harassment complained of was based on my race. The harassment complained of affected a term, condition or privilege of my employment.*

UTMB denies that Ms. Fisher was been subjected to different terms, disparate treatment and conditions of employment because of her race. Ms. Fisher's complaint, that white individuals were treated more favorably, is unsubstantiated. Please refer to Exhibit 14 showing the nursing staff disciplines for the Huntsville District from the period of 2003 through the present. It is evident by the spreadsheet that, in actuality, more white nursing staff were disciplined than black nursing staff during this time period. Therefore, there is no basis for Ms. Fisher's complaint of preferential treatment of the white nurses.

Ms.Gotcher has and Mr. Watson had responsibilities to many employees as well as offenders (patients) within Correctional Managed Care. Actions taken against Ms. Fisher were made only after continued reminders of her deficiencies and Ms. Fisher's continued resistance to change.

**I have been retaliated against by UTMB. I exercised a federally and state protected right when I complained about racial discrimination by UTMB. After complaining about racial discrimination at UTMB, I suffered and employment action which the**

reasonable person would consider adverse.  There is a casual connection between my complaint of racial discrimination and the above adverse employment actions.

UTMB denies that Ms. Fisher has been retaliated against and denies any actions taken against her were based on her race or the fact she filed a grievance. The decision to demote Ms. Fisher was made prior to her filing of her grievance.  Ms. Fisher's deficiencies began when she was the Nurse Manager at the Huntsville Cluster and continued at the Estelle Facility.

**UTMB's conduct is unlawful and in violation of TITLE VII of the CIVIL RIGHTS ACT of 1963 as amended, 42 U.S.C. 2000e *et seq*, and  in violation of CHAPTER 21 of the TEXAS LABOR CODE.**

UTMB adamantly denies that its conduct is unlawful or that it has violated the above-referred statutes.

Sincerely,

Jennifer Osteen
Senior Legal Assistant
UTMB Department of Legal Affairs

Enclosures

# EXHIBIT 1

Fisher-200109



# Board of Nurse Examiners For the State of Texas

Location Address: William P. Hobby Building, Ste. 3-460, 333 Guadalupe Street, Austin, Texas 78701
Phone: (512) 305-7400    Fax (512) 305-7401    Web: www.bne.state.tx.us
Katherine A. Thomas, MN, RN
*Executive Director*

December 4, 2006

UTMB Correctional Managed Care
Estell Regional Medical Facility
David Watson, RN
District Nurse Manager/Huntsville District
264 FM 3478
Huntsville, Texas  77320

RE:    Jacklyn Lynette Fisher

Dear Mr. Watson:

Pursuant to Section 301.469, Texas Occupations Code, we are providing you with a copy of the
Order of the Board issued by the Board of Nurse Examiners to the above identified nurse on
December 1, 2006.

Your endeavor to assist this agency in protecting the public is appreciated.

If you have any questions, please contact the Department of Enforcement at (512) 305-6838.

Sincerely,

Katherine A. Thomas, MN, RN
Executive Director

KAT/KW:tc

Enclosure:   Order of the Board

09/99-G20

**Fisher-200110**

Members of the Board

Joyce Adams, PhD, RN          Deborah Bell, CLU, ChFC          George Bucksean, Jr., BSN, RN, MBA          Virginia Campbell, BSN, RN, CNOR          Mateo Rios Garda, PhD, RN
Houston                        AsMost                            Amarillo                                     Memphis                                    Corpus Christi

                Richard Gibbs, LVN                     Rachel Gonzza, LVN              Brenda Jackson, PhD, RN              Beverley Jean Nutall, LVN
                Mesquite                               Harlingen                      San Antonio                          Bryan

AnMa Palmer, ME, SLx          Phyllis Rawley, CPC                                                          Linda Rounds, PhD, FNP, RN          Frank Sandoval, Jr., J.D.
Olney                         Vice-President                                                               President                           San Antonio

## BEFORE THE BOARD OF NURSE EXAMINERS
## FOR THE STATE OF TEXAS
**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

| | | |
|---|---|---|
| In the Matter of Registered Nurse License Number 595688 | § | **AGREED** |
| issued to JACKLYN LYNETTE FISHER | § | **ORDER** |

An investigation by the Board of Nurse Examiners for the State of Texas, hereinafter

referred to as the Board, produced evidence indicating that JACKLYN LYNETTE FISHER, License

Number 595688, hereinafter referred to as Respondent, may have violated Section 301.452 (b)(13),

Texas Occupations Code.

An informal conference was held on December 20, 2005, at the office of the Board

of Nurse Examiners, in accordance with Section 301.464, Texas Occupations Code.

Respondent was not in attendance, but agreed to have her case heard telephonically.

Respondent was notified of her right to be represented by legal counsel and elected to waive

representation by counsel. In attendance were Katherine A. Thomas, MN, RN, Executive Director;

James W. Johnston, General Counsel; Anthony L. Diggs, MSCJ, Director, Enforcement Division;

Desha Melton, RN, Investigator; and Kim Williamson, RN, Investigator.

## FINDINGS OF FACT

1. Prior to the institution of Agency proceedings, notice of the matters specified below in these Findings of Fact was served on Respondent and Respondent was given an opportunity to show compliance with all requirements of the law for retention of the license.

2. Respondent waived representation by counsel, notice and hearing, and consented to the entry of this Order.

3. Respondent is currently licensed to practice professional nursing in the State of Texas.

595688:077                                                                        520

**Fisher-200111**

4.  Respondent received an Associate  Degree in Nursing from North Harris Montgomery Community College District, Houston, Texas, on May 11, 1993.  Respondent was licensed to practice professional nursing in the State of Texas on September 22, 1993.

5.  Respondent's professional employment history includes:

| | |
|---|---|
| 9/93 to 7/95 | RN, Staff Nurse<br>Medical Center Hospital<br>Conroe, Texas |
| 7/95 to 5/96 | RN, Director of Nursing<br>Willis Convalescent Hospital<br>Willis, Texas |
| 6/96 to 2/01 | RN, Staff Nurse<br>Medical Center Hospital<br>Conroe, Texas |
| 10/00 to 8/03<br>8/03 to present | RN, Assistant Nurse Manager<br>RN Cluster Nurse Manager<br>The University of Texas Medical Branch<br>Correctional Managed Care<br>Huntsville, Texas |

6.  At the time of the initial incident in Finding of Fact Number Seven (7), Respondent was employed as a Cluster Nurse Manager with The University of Texas Medical Branch, Correctional Managed Care, Huntsville, Texas, and had been in this position for one (1) year.

7.  On or about August 19, 2004, while employed as a Cluster Nurse Manager with The University of Texas Medical Branch, Correctional Managed Care, Huntsville, Texas, and providing care to Inmate Number 695377, who had placed a sheet around his neck, Respondent failed to accurately and completely assess the inmate when the inmate refused to be transferred to a psychiatric facility for immediate evaluation as ordered by the physician.  Respondent was on call and performed an assessment by telephone, and documented the inmate had a history of suicide attempts and denied intentions to kill himself.  Respondent instructed the security staff to have the inmate sign a refusal of treatment.  The inmate was evaluated by the mental health staff on or about August 20, 2004, and was determined to be at a low imminent risk for a potential lethal suicide attempt. Respondent's conduct exposed the inmate unnecessarily to a risk of harm from failure to perform a complete, in person assessment, by medical personnel and may have resulted in subtle information being missed when the inmate initially had the sheet around his neck. The inmate was found dead in his cell from hanging on August 27, 2004.

Fisher-200112

8.   On or about August 19, 2004, while employed as a Cluster Nurse Manager with The University of Texas Medical Branch, Correctional Managed Care, Huntsville, Texas, and providing care to the aforementioned inmate, Respondent failed to notify the physician of the inmate's refusal to be transferred to a psychiatric facility for immediate evaluation and Crisis Management as the physician had ordered. Respondent's conduct deprived the physician of vital information on which to base the medical and psychiatric care of this inmate and resulted in the inmate not having a mental health evaluation until the following day.

9.   On or about August 19, 2004, while employed as a Cluster Nurse Manager with The University of Texas Medical Branch, Correctional Managed Care, Huntsville, Texas, and providing care to the aforementioned inmate, Respondent failed to ensure the inmate received close supervision once the inmate refused to be transferred to a psychiatric facility for immediate evaluation and Crisis Management, as ordered by the physician. Respondent's conduct exposed the inmate unnecessarily to a risk of harm from failure to have this inmate, who had orders for Crisis Management, closely supervised by medically trained staff. The inmate was found dead in his cell from hanging on August 27, 2004.

10.  On March 17, 2005, Respondent successfully completed a course in nursing jurisprudence and nursing ethics, "Nursing in Texas: A Regulatory Foundation for Safe Practice," which would have been a requirement of this Order.

11.  On September 23, 2004, Respondent attended an inservice on Suicide Prevention, presented by E. Sylvia, MA, Staff Psychotherapist, which would have been a requirement of this Order.

## CONCLUSIONS OF LAW

1.   Pursuant to Texas Occupations Code, Sections 301.451-301.555, the Board has jurisdiction over this matter.

2.   Notice was served in accordance with law.

3.   The evidence received is sufficient to prove violations of Section 301.452(b)(13), Texas Occupations Code, and 22 TEX. ADMIN. CODE §217.11(2),(4)&(21).

4.   The evidence received is sufficient cause pursuant to Section 301.452(b), Texas Occupations Code, to take disciplinary action against License Number 595688, heretofore issued to JACKLYN LYNETTE FISHER, including revocation of Respondent's professional license to practice nursing in the State of Texas.

- 3 -

E20

595688:077

**Fisher-200113**

## ORDER

IT IS THEREFORE AGREED and ORDERED, subject to ratification by the Board of Nurse Examiners, that RESPONDENT SHALL receive the sanction of REMEDIAL EDUCATION, and RESPONDENT SHALL comply in all respects with the Nursing Practice Act, Revised Civil Statutes of Texas as amended, Texas Occupations Code, §§301.001 *et seq.*, the Rules and Regulations Relating to Professional Nurse Education, Licensure and Practice, 22 TEX. ADMIN. CODE §211.01 *et seq.* and this Order.

IT IS FURTHER AGREED and ORDERED that this Order SHALL be applicable to Respondent's multistate licensure privilege, if any, to practice professional nursing in compact states.

IT IS FURTHER AGREED and ORDERED that while Respondent's license is encumbered by this Order, Respondent may not work outside the State of Texas pursuant to a multistate licensure privilege without the written permission of the State of Texas and the Board of Nursing in the party state where Respondent wishes to work.

IT IS FURTHER AGREED that:

(1) RESPONDENT SHALL deliver the wallet-sized license issued to JACKLYN LYNETTE FISHER to the office of the Board of Nurse Examiners within ten (10) days of the date of ratification of this Order for appropriate notation.

(2) RESPONDENT SHALL, within one (1) year of entry of this Order, successfully complete a course in physical assessment. RESPONDENT SHALL obtain Board approval of the course prior to enrollment. Home study courses and video programs will not be approved. In order for the course to be approved, the target audience shall include Nurses. The didactic portion of this

- 4 -

595683:077

820

Fisher-200114

course shall be a minimum of six (6) hours in length. RESPONDENT SHALL perform physical

assessments on live patients in a clinical setting for a minimum of twenty-four (24) hours.  The

clinical component SHALL focus on tasks of physical assessment only and shall be provided by the

same Registered Nurse who provides the didactic portion of this course.  To be approved, the course

shall cover all systems of the body. Performing assessments on mock patients or mannequins WILL

NOT be accepted.  The course description shall indicate goals and objectives for the course,

resources to be utilized, and the methods to be used to determine successful completion of the

course. RESPONDENT SHALL successfully complete both the didactic and clinical portions of the

course to satisfy this stipulation.  RESPONDENT SHALL CAUSE the instructor to submit a

Verification of Course Completion form, provided by the Board, to the office of the Board to verify

RESPONDENT's successful completion of the course. This course shall be taken in addition to any

other courses stipulated in this Order, if any, and in addition to any continuing education

requirements the Board has for relicensure. *Board-approved courses may be found on the Board's*

*website, www.bne.state.tx.us (under BNE events).*

    (3) RESPONDENT SHALL, within one (1) year of entry of this Order, successfully

complete a course in nursing documentation. RESPONDENT SHALL obtain Board approval of the

course prior to enrollment only if the course is not being offered by a pre-approved provider. Home

study courses and video programs will not be approved.  The course shall be a minimum of six (6)

hours in length of classroom time. In order for the course to be approved, the target audience shall

include Nurses.  The course shall include content on the following: nursing standards related to

accurate and complete documentation; legal guidelines for recording;  methods and processes of

recording; methods of alternative record-keeping; and computerized documentation.

Fisher-200115

RESPONDENT SHALL cause the instructor to submit a Verification of Course Completion form, provided by the Board, to the Board's office to verify RESPONDENT's successful completion of the course. This course shall be taken in addition to any other courses stipulated in this Order, if any, and in addition to any continuing education requirements the Board has for relicensure. *Board-approved courses may be found on the Board's website, www.bne.state.tx.us (under BNE events).*

IT IS FURTHER AGREED, that upon full compliance with the terms of this Order, RESPONDENT SHALL be issued an unencumbered license and multistate licensure privileges, if any, to practice professional nursing in the State of Texas.

BALANCE OF THIS PAGE INTENTIONALLY LEFT BLANK.

CONTINUED ON NEXT PAGE.

595688:077                        - 6 -                                   E20

**Fisher-200116**

## RESPONDENT'S CERTIFICATION

I understand that I have the right to legal counsel prior to signing this Agreed Order. I waive representation by counsel. I have reviewed this Order. I neither admit nor deny the violations alleged herein. By my signature on this Order, I agree to the Findings of Fact, Conclusions of Law, Order, and any conditions of said Order, to avoid further disciplinary action in this matter. I waive judicial review of this Order. I understand that when this Order becomes final and the terms of this Order become effective, a copy will be mailed to me. I understand that if I fail to comply with all terms and conditions of this Order, I will be subject to investigation and disciplinary sanction, including revocation of my license to practice professional nursing in the State of Texas, as a consequence of my noncompliance.

Signed this _8_ day of _November_, 20 _06_.

JACKLYN LYNETTE FISHER, RESPONDENT

Sworn to and subscribed before me this _8th_ day of _November_, 20 _0 6_

Kevin C. Brown

Notary Public in and for the State of _Texas_

SEAL

KEVIN L.
BROWN
Notary Public, State of Texas
My Commission Expires
04/04/2010
Notary without Bond

595683.077                         - 7 -                                E20

Fisher-200117

WHEREFORE, PREMISES CONSIDERED, the Executive Director, on behalf of the Board of Nurse Examiners for the State of Texas, does hereby ratify and adopt the Agreed Order that was signed on the ___8th___ day of ___November___, 20 _06_ by JACKLYN LYNETTE FISHER, Registered Nurse License Number 595688, and said Order is final.

Effective this _1st_ day of ___December___, 20 _06_

Katherine A. Thomas, MN, RN
Executive Director on behalf
of said Board

Fisher-200118

TRANSMISSION VERIFICATION REPORT

```
TIME   : 03/06/2007 16:22
NAME   : UTMB CMC ADMIN
FAX    : 4097620311
TEL    : 4097472600
SER.#  : BROE5J204225
```

```
DATE,TIME            03/06  16:20
FAX NO./NAME         7720698
DURATION             00:01:49
PAGE(S)              11
RESULT               OK
MODE                 STANDARD
                     ECM
```

**U.T.MB**
The University of Texas Medical Branch

Correctional Managed Care
301 University Blvd
Galveston, Texas 77555-1008
Phone: (409) 747-2600
Fax:    (409)762-0311

To: Debbie Conley

From: John Pemberton

Fax: 28698

Re:

Date: 3/6/07

Pages:

Comments:

Fisher-200119

 Texas Board of
Nurse Examiners

## Notice of Disciplinary Action

Notice of Disciplinary Action also published in the Texas Board of Nursing
Bulletin - April, 2007

The following nurses had disciplinary action taken against their licenses. If you
would like to receive additional information regarding the disciplinary action
which has been imposed, please send your request to the Board of Nurse
Examiners, Enforcement Division, 333 Guadalupe 3-460, Austin, TX 78701-
3944

| NAME | LICENSE # | CITATION(S) VIOLATED | DISCIPLINE | DATE OF ACTION |
|---|---|---|---|---|
| REDACTED | LVN# 195732 | TOC 301.452(b)(9)(10) & (12) 22 TAC §217.12(5) & (10)(A) | Voluntary Surrender | January 19, 2007 |
| | LVN# 176536 | TOC 301.452(b)(1) & (10) 22 TAC §239.11(13) | License Revoked | February 13, 2007 |
| | RN# 718829 | TOC 301.452(b)(13) 22 TAC §217.11(1)(C)(D)(P) | Reprimand with Stipulations | February 13, 2007 |
| | LVN# 165665 | TOC 301.452(b)(9) & (10) 22 TAC §217.12(6)(G) (10)(A) (B)(C) & (13) Art.4528c, Sec.10(a)(2) | Enforced Suspension | December 11, 2006 |
| | LVN# 158171 | TOC 301.452(b)(10) 22 TAC §217.12(7) 22 TAC §239.11(8) | Remedial Education & Fine | January 22, 2007 |
| | RN# 667113 | TOC 301.452(b)(10) & (13) 22 TAC § 217.11(1) (C)(N) 22 TAC §217.12 (1)(A)(B)(3) & (4) | Warning with Stipulations | December 11, 2006 |
| | LVN# 111445 | TOC 301.452(b)(9) & (10) 22 TAC §217.12(6)(G) (10)(A) | Remedial Education & Fine | December 14, 2006 |
| | RN# 574698 | TOC301.452(b)(8)(9) & (10) 22 TAC §217.12(1) (3)(4)(18) (19) & (21) | Voluntary Surrender | January 11, 2007 |
| | LVN# 139395 | TOC 301.452(b)(5) & (10) 22 TAC §217.11(1)(D)(i) (ii) (iv)(v) 22 TAC §217.12(4)(6)(A)(G)(H)(I) (8)(10)(C)(E) & (11)(B) | License Revoked | February 13, 2007 |
| | LVN# | TOC 301.452(b)(10) 22 | | December |

**Fisher-200120**

Notice of Disciplinary Action

| | | | | |
|---|---|---|---|---|
| | RN# 248271 LVN# 67496 | TOC 301.452(b)(10)TOC 302.402(a)(10) 22 TAC §239.11(27)(F) 22 TAC §217.12(16) | Warning with Stipulations | December 11, 2006 |
| | RN# 700967 | TOC 301.452(b)(9)(10) & (13) 22 TAC § 217.11(1) (A)(D) (ii)(iv) 22 TAC §217.12(1)(B)(E)(4) (6) (G) & (10)(C) | Voluntary Surrender | February 1, 2007 |
| | c LVN# 46119 | TOC 301.452(b)(11) & (12) 22 TAC §217.12(5) | License Revoked | December 11, 2006 |
| | RN# 602913 | TOC 301.452(b)(1) | Reprimand with Stipulations | February 13, 2007 |
| Fisher, Jacklyn Lynette | RN# 595688 | TOC 301.452(b)(13) 22 TAC §217.11(2)(4) & (21) | Remedial Education | December 1, 2006 |
| | RN# 656296 | TOC 301.452(b)(9)(10) & (12) 22 TAC §217.12(5) (10)(A)(D) | Voluntary Surrender | January 3, 2007 |
| | LVN# 197037 | TOC 301.452(b)(1) & (10) 22 TAC §217.12(11)(B) | Suspend/Probate | December 11, 2006 |
| | RN# 695820 | TOC 301.452(b)(10) 22 TAC §217.12(1) | Remedial Education | January 8, 2007 |
| | RN# 600170 | TOC 301.452(b)(10) & (13) 22 TAC §217.11(1) (D) 22 TAC §217.12(1) (C) | Warning with Stipulations | February 13, 2007 |
| | LVN# 196576 | TOC 301.452(b)(9)(10) & (13) 22 TAC §217.11(1) (C)(D)(ii) (iv) 22 TAC §217.12(1)(B)(4)(5) & (10)(A)(D) | Voluntary Surrender | January 24, 2007 |
| | RN# 540458 | TOC 301.452(b)(8)(9) & (10) 22 TAC §217.12(8) & (10)(A) | License Revoked | February 13, 2007 |
| | RN# 640747 | TOC 301.452(b)(9)(10) & (13) 22 TAC §217.11(1) (C)(D) 22 TAC §217.12 (1)(B)(4)(5) (6)(G)(8)(10) (A)(D) & (11)(B) | Voluntary Surrender | January 5, 2007 |
| | LVN# 173788 | TOC 301.452(b)(10) & (13) 22 TAC §217.11(1) (D) 22 TAC §217.12(1) (B)(C) | License Revoked | February 13, 2007 |
| | LVN# 125964 | TOC 301.452(b)(10) & (13) 22 TAC §217.11(1) (C) 22 TAC §217.12(4) | Remedial Education | January 8, 2007 |
| | | TOC 301.452(b)(10) 22 | | |

**Fisher-200121**

# EXHIBIT 2

Fisher-200122

| Patient Name | Race | Transfer Date | Old Department | New Department | Reason for Transfer | Approval by Watson |
|---|---|---|---|---|---|---|
| PICKEY, LINDA R | White | 27-Aug-05 | CRMV/ESTELLE UNIT | CRMV/ESTELLE UNIT | Promotion | No approval necessary by Watson |
| SALISBURY, RITA M | White | 05-Nov-05 | CRMV/ESTELLE UNIT | CRMV/ESTELLE UNIT | Transferred to Estelle Position to Dialysis | Watson approved due to staffing needs in Dialysis |
| SALMON, MORIKO U | Asian | 31-Dec-05 | CRMV/ESTELLE UNIT | CRMV/ESTELLE UNIT | Transferred to Estelle Position to Dialysis | Watson approved due to staffing needs in Dialysis |
| GIBSON, BARBARA | White | 31-Dec-05 | COPFIELD UNIT | EASTHAM UNIT | Transferred from Palestine area to Huntsville | No approval necessary by Watson |
| DAVIS, NATASHA R | Black | 05-Nov-05 | HUNTSVILLE UNIT | FERGUSON UNIT | Transferred from Huntsville Unit to Ferguson Unit | Watson approved due to staffing needs at Ferguson |
| KORAN, JOAN A | White | 08-Oct-05 | CRMV/ESTELLE UNIT | PACK I UNIT | Transferred closer to her home | No approval necessary by Watson |
| FLETCHER, SHERYL L | White | 08-Nov-05 | ELLIS I UNIT | MCCONNELL UNIT | Transferred to Beeville area from Huntsville | No approval necessary by Watson |
| TENNANT, MARY A | White | 05-Nov-05 | CRMV/ESTELLE UNIT | HOLIDAY UNIT | UTMB CMC transferred her for security purposes | Decided and approved by Watson |
| HURLEY, SHERLY J | White | 27-Aug-05 | EASTHAM UNIT | TYC-CROCKETT | Transferred from a TDCJ facility to a TYC facility | No approval necessary by Watson |

Fisher-200123

# EXHIBIT 3

Fisher-200124

Date: 01/05/2006 08:34
From: DAVID WATSON
To: LAVINA WRIGHT(E);
Cc: DENISE BOX K(E); SANDRA RADER J(E);
Subject: Ford
Re: Administrative

Ms. Wright,


As you know it has been my goal of late to strive to hire the best personnel in regard to ability as well as attitude. In that light I confess that I had forgotten some of the reasons that contributed to Ms. Ford's previous departure. Having been reminded of some of those issues yesterday, I feel that to maintain some element of consistency that I can not, in good conscience, support her rehire at UTMB.


dw

Fisher-200125



**David Watson, RN, BSN**
Senior Cluster Nurse Manager
Huntsville Cluster
UTMB Correctional Managed Care
Estelle Regional Medical Facility
264 FM-3478
Huntsville, Texas 77320

April 22, 2004

**TO:**      Elaine Mysliwiec, RN, MHSA, Director, Facility Nursing Services

**FROM:**   David Watson, RN, BSN

**RE:**       Allegations of a Hostile Work Environment

Please find attached a copy of a resignation letter from Elizabeth Ford, RN. Ms. Ford was employed as an Assistant Nurse Manager at the Estelle RMF. She submitted her resignation today effective immediately. She states in her letter of resignation that she failed to provide the traditional two weeks notice because she felt she would be "*...working in a hostile environment....*"

Ms. Ford was involved in a verbal altercation with another ANM, Leigh Gossett on Monday 4-19-04. Ms. Ford brought this to my attention in the form of a letter delivered to my office on 4-20-04. This was the first knowledge I had of the incident. The Cluster Nurse Manager, Mary Adams, RN, is away on vacation so it was brought to my attention for resolution. I immediately began finding and interviewing witnesses to the event. I spoke with and obtained statements from all witnesses I was able to identify. Those witnesses included the following:

John Wang, PA
M. Anderson, RN
P. Thomas CO-III

I also spoke with Ms. Gossett and finally Ms. Ford herself. It seems Ms. Ford's version of events differs significantly from *all* of the witnesses. Of particular significance is that Ms. Ford alleged that Ms. Gossett was rude, aggressive and unprofessional toward her. No one else observed this. In fact, Ms. Anderson in her statement pointed out that Ms. Ford was acting unprofessionally. Mr. Wang's statement revealed, and Ms. Ford verified during our interview, that she stated to S. Barksdale during a telephone conversation that she did mention a recent surgery Ms. Gossett had undergone. I found this to be completely unprofessional and unacceptable. Even Ms. Ford admitted to me that it was unprofessional and had no excuse for her behavior. Mr. Wang also stated that he heard her say to Barksdale that she told Ms. Gossett to shut up and that may have angered her.

Ms Ford also admitted to me that when Ms. Gossett left her office after the first contact inside the office that she followed Ms. Gossett out of the office and challenged her in a very stern voice. Given that Ms. Ford admits that she provoked this incident and given the fact that no one else could support any unprofessional or aggressive behavior on the part of Ms. Gossett I have difficulty finding any support for Ms. Fords claim of a hostile work environment.

**Fisher-200126**

I would also point out that Ms. Ford was administratively moved to the Estelle facility, in part, due to allegations made against her from her subordinates at Ellis that she was creating a hostile work environment and that she was rude, aggressive and at times hateful toward employees. It was my intent to move Ms. Ford closer to my office and under the supervision of a fresh Nurse Manager, Ms. Adams, to oversee her behavior and habits from a closer and fresh perspective. I wanted to give Ms. Ford the benefit of the doubt, as it were, regarding her behavior. Due to the findings of my investigation I intended to pursue the disciplinary process with Ms. Ford and also with Ms. Gossett.

On 4-21-04, during our interview, I informed Ms. Ford of my intention to pursue a disciplinary course with her. Following my investigation I feel there is evidence to support that Ms. Ford was the provocateur in this incident and failed to make any effort to de-escalate the situation. I found her behavior failed to conform to the minimum expectations one would have for a manager. I feel this incident lends much credibility to earlier reports of her poor conduct at Ellis.

In summary I was very disappointed in Ms. Fords conduct and I find no substance to her allegations of a hostile work environment here at Estelle RMF.

I am attaching copies of all the documents I have in this case for your review. Please free to contact me if you have any questions or concerns. Thank you for your interest in this matter.

Sincerely,

David Watson

# EXHIBIT 4

Fisher-200128

**VACANCY REPORT FOR HUNTSVILLE FACILITIES**
**AUGUST 2005-JANUARY 2006**

| EFF DATE | NAME | RACE | DESCRIPTION | TITLE | SALARY | PCN NBR | REASON |
|---|---|---|---|---|---|---|---|
| 12-Aug-05 | BLUM, JULIE D | WHITE | CRM/ESTELLE UNIT | PATIENT CARE ASSISTANT | 20852 | 45464 | Voluntary Resignation |
| 23-Aug-05 | MOCK, DEBRA J | BLACK | CRM/ESTELLE UNIT | VOCATIONAL NURSE | 37200 | 18719 | Voluntary Resignation |
| 23-Sep-05 | MARTIN, STEPHEN R | WHITE | CRM/ESTELLE UNIT | VOCATIONAL NURSE | 37121 | 18741 | Voluntary Resignation |
| 02-Oct-05 | SWENEHART, DAVID E | WHITE | CRM/ESTELLE UNIT | NURSE CLINICIAN III - OUTPATIENT | 54000 | 19223 | Voluntary Resignation |
| 28-Nov-05 | FREDDY, JOSHUA T | WHITE | CRM/ESTELLE UNIT | PATIENT CARE ASSISTANT | 21693 | 18978 | Resigned In Lieu of Termination |
| 15-Nov-05 | WILLIAMS, FAUSIA R | BLACK | CRM/ESTELLE UNIT | DIALYSIS PATIENT CARE TECHNICIAN | 24518 | 37312 | Separated from Leave of Absence status |
| 16-Dec-05 | GOSSETT, LEIGH E | WHITE | CRM/ESTELLE UNIT | ASSISTANT NURSE MANAGER | 62426 | 18385 | Interagency transfer |
| 31-Jan-06 | BOYD, CONNIE G | WHITE | CRM/ESTELLE UNIT | VOCATIONAL NURSE | 34331 | 15926 | Voluntary Resignation |
| 09-Jan-06 | FRANK, DORETHERIA | BLACK | CRM/ESTELLE UNIT | MEDICAL ASSISTANT, CORRECTIONAL MANAGED CARE | 26990 | 15286 | Voluntary Resignation |
| 01-Oct-05 | GALLOWAY, GEHIGER L | WHITE | EASTHAM UNIT | VOCATIONAL NURSE | 37474 | 44985 | Voluntary Resignation |
| 21-Dec-05 | BLAKE, CATHI L | WHITE | EASTHAM UNIT | NURSE CLINICIAN II - OUTPATIENT | 53000 | 15451 | Voluntary Resignation |
| 30-Nov-05 | FREDDY, TERRI G | WHITE | ELLIS I UNIT | VOCATIONAL NURSE | 36421 | 18894 | Voluntary Resignation |
| 31-Jan-06 | ANDREWS, HEATHER R | WHITE | FERGUSON UNIT | VOCATIONAL NURSE | 37960 | 13985 | Voluntary Resignation |
| 24-Aug-05 | MCADAMS, RHEDA D | BLACK | GOREE UNIT | PATIENT CARE ASSISTANT | 27761 | 44619 | Resigned In Lieu of Termination |
| 30-Aug-05 | CARSON, KARA L | WHITE | HOLLIDAY UNIT | PATIENT CARE ASSISTANT | 20176 | 13823 | Voluntary Resignation |
| 29-Sep-05 | LIGGINS, BOBBIE J | BLACK | HOLLIDAY UNIT | MEDICAL ASSISTANT, CORRECTIONAL MANAGED CARE | 26156 | 15016 | Voluntary Resignation |
| 10-Oct-05 | NIXON, ELVIRA R | BLACK | HOLLIDAY UNIT | PATIENT CARE ASSISTANT | 27030 | 14971 | Voluntary Resignation |
| 04-Nov-05 | HORTON, LISA S | WHITE | HOLLIDAY UNIT | VOCATIONAL NURSE | 35643 | 15449 | Voluntary Resignation |
| 07-Nov-05 | JENKINS, JESSIE M | BLACK | HUNTSVILLE UNIT | VOCATIONAL NURSE | 36273 | 28089 | Terminated for Performance |

Fisher-200129

# EXHIBIT 5

Fisher-200130



David Watson, RN, BSN
Huntsville District Nurse Manager

UTMB Correctional Managed Care

# ✕ UTMB

The University of Texas Medical Branch

March 7, 2006

**TO:**      Jackie Fisher, RN, Cluster Nurse Manager; HR File

**FROM:**   David Watson, RN, BSN, Huntsville Cluster Nurse Manager

**RE:**      Quarterly Evaluation

Prior to August of 2005 Ms. Fisher was the Cluster Nurse Manager of the FE/GR/HV cluster. During that time she was responsible for the oversight and operations of the nursing activities at those three units. The FE unit has proven exceptionally difficult to staff. This was also noted with security having difficulty acquiring personnel. Short staffing there was not a problem affecting only the medical staff. It was Ms. Fisher's idea to create a special needs classification for that unit that was ultimately called a Manpower Shortage area. With this designation nursing supervised staff would receive an additional $2.00 per hour in pay on top of the existing pay for that assignment. Thus far the extra pay incentive seems to have positively affected the staffing. Several staff members have elected to move there from other units thereby decreasing the staffing burden somewhat.

In August she was transferred to the Estelle RMF. Since that time she has been beset with more staffing shortages. This has been a problem that has historically plagued the RMF. I attribute that, in part, to the change in general. Any new managers coming in may have experienced the same problems. This situation will continue to be watched closely and interventions made as required.



Since coming to the RMF she has established a good working relationship with both Mr. Samarneh and Dr. Vincent. There are still some problem areas that will require her focused attention. But through discussion with her team she is well aware of those areas and will continue to seek resolutions.

Her ANMs at the RMF are a mixed bag. One is new and is experiencing the pitfalls of a new manager. This is to be expected. One recently resigned and one continues on in less than effective role. The lack of dependable ANM is clearly a handicap for Ms. Fisher. It will be necessary to work with her to attempt to develop effective strategies for dealing with these concerns and for her to learn to deal more effectively with existing staff.

In general I have seen marked improvements in Ms. Fisher's management style. Early on she struggled with being seen as unapproachable by the line staff. We discussed this (see Evaluation dated 12-10-04) previously. She continues to wrestle with balance and perspective in decision making. She has a single mindedness that is both a strength and a weakness. Ms. Fisher tends to hear part of a story and make her decision. She doesn't always listen to the full story and sometimes proceeds down a path of action without

**Fisher-200131**

listening or fully appreciating the entire situation. By not listening to the complaint in its entirety and giving due and diligent consideration she can come across as not truly valuing the concerns of the staff. Once her decision is made she is hard pressed to change her focus and has a tendency to push through her agenda and not be able to change courses in mid stream when necessary.

Ms Fisher was at the RMF for approximately 2-3 months before holding a nursing staff meeting to share her goals for the unit with the staff. As a result at least some of the staff were left in the dark about said goals. I feel very strongly that communication with the staff and sharing goals and expectations is a key to success. When taking on a new facility this sort of information/communications should be a priority.

Ms. Fisher also tends to take full responsibility for all needs of the unit. While this is admirable she wears herself out. She tends to take on all jobs rather than use the patience that might well pay off dividends in the future by teaching and coaching her subordinates and holding them equally accountable. I think she not only forgets to share her plans but her reasons for her actions with her subordinates. In late November, at a DNM meeting I discussed alternate ways to work with staff and empower them to help solve unit problems (Change Process).

Ms. Fishers main strengths are her keen ability to evaluate a situation quickly and adjust taking swift actions as needed. (He dominant weaknesses are subtle people skills and effective communications with her staff coupled with her single minded drive toward goals. While her truly tireless dedication to work is admirable, she should also appreciate that her staff, in particular her subordinates, are a potential wealth of support and need to be developed wherever possible. Her success in her mission here is not likely with only her hard work; it will also be dependent upon eliminating undesirable elements in the workplace coupled with successful teamwork and team building.

I will be working with her over the course of the next few months to attempt to increase her awareness of weak areas and increase her areas of strength. I have confidence that if she can improve these she will be a more effective manager.

- Ms Fisher's goals need to be refocused on the one from December 2004 which is to allow more time to assimilate issues before responding to disagreements in order to increase objective and constructive responses. This will enhance her communication skills and produce better interpersonal relationships and related outcomes.

- Ms. Fisher needs to make a more pronounced effort to communicate her goals and expectations to the staff at all levels and be sensitive to the feedback this produces. I have little doubt her final judgment calls tend to be correct, but providing the feedback to the staff as to why she makes some of the decisions may help prevent issues later on.

Personal/Professional goals:

**Fisher-200132**

To research, plan and start on my BSN degree

<u>Facility Goals:</u>
To start ACA transition for SAFP and HS, e.g. labeling, retention of records, cleanliness, etc.

<u>District Goal:</u>
A 10% reduction of the annual overtime for nursing supervised staff

Ms. Fisher's performance is satisfactory. She continues to be a strong patient and UTMB advocate and a credit to the organization.
*************************************************************************
Employee Comments:

**Fisher-200133**

| | | | |
|---|---|---|---|
| David Watson | 3-08-06 | Jackie Fisher | Date |

# EXHIBIT 6

Fisher-200134

## Semi-Annual Evaluation Response

From experience, Ferguson's reputation held true. The medical department was not well liked, nor respected by Security Staff. During the struggle of making the clinical operations more efficient and rebuilding relationships with security, the turnover of nursing staff was the biggest advantage. Though it suffered in vacancies, access to care was met.

Prior to my arrival at ERMF, the vacancy rate was higher. Agency staff had already been requested and approved. ERMF has had agency approval several times within the last year. After my arrival, the turnover was still a concern. Staff resigned for various reasons: Six (6) relocated for family reasons, one (1) administratively reassigned, one (1) medical/health reason, one (1) school accommodations, etc. The last two (2) employees resigned confirmed and added veracity to "said" encouragement of staff strife and complaints.

Neither Assistant Nurse Managers here are strong supervisors. The newest Assistant Nurse Manager does not understand the needs of the Pods, in regards to patient acuity versus staffing levels, so tends to not support my decisions or the messages I am trying to deliver. Neither Assistant Nurse Managers show any self-motivation to monitor or track deficiencies. Neither is consistent in identifying areas of improvement and taking initiative to correct them. Empowerment is there, but there is an obvious lack of willingness. The Assistant Nurse Manager who resigned had received a letter of expectation, was unhappy and was applying for various positions prior to my arrival.

The staff at all levels are empowered and encouraged to function in their official capacity. Unless taken advantage of, empowerment is useless. Goals and directions are discussed in every staff meeting. Positive and negative feedback is given when appropriate. Most of this staff appreciates my management-style and me, and do not have a problem with my people skills and communication.

There is a small percent of this staff that do not appreciate the fact that I am not wavered by their complaining nor easily persuaded by excuses. I do listen and hear them out, but it is still not satisfying unless the outcome is favorable to them. Shortly after I arrived at the ERMF, I met with the Assistant Nurse Managers and our goal was established to go online with the EMR. During the first 2-3 months, time and circumstances hampered me from having formal staff meetings. The reassignment did not actually take place until mid-August, September—Hurricane Rita, October—I met with HS/SAFP staff, November—meeting with RMF, HS & SAFP. I was readily accessible and available to both day and night staff on all four (4) rotations. During the first 2-4 months, I came in several nights on each rotation to train staff. The transition was in two phases. I was monitoring and providing feedback in person and via e-mail. During this time vested, staff was aware of my short-term goal to come online and standardize the processes. The long-term goal was to become paperless. As I do understand and favor formal meeting, the communication and goals were not lacking.

Fisher-200135

Besides the EMR transition, the few changes made were at the staff's request: Change in Nurse Assistant hours for better utilization, relief of weekly crash cart check by licensed staff, insulin at SAFP changed to CMA or licensed staff. Cleaning, organizing, decreasing supply and maintaining para levels have been requested, another fashion of empowerment, without any results.

While it appears to Mr. Watson that I am an inattentive listener, I do listen attentively and have an open mind. If information forth coming necessitates a change, I can make a mid-course adjustment.

I feel there is a lack of empowerment and support from you to manage the unit. Successful teamwork and team building comes with a balanced team spirit. The undesirable elements of circumventing my authority, solicitation of information from my assistants and other employees without constructive use of information and inconsistencies do not contribute to successful team building. Teamwork is a team effort and requires support from all of its members. A small percentage of my staff needs to be refocused to use proper communication etiquette as on-going issues, evident by multiple emails from various staff in multiple departments. In my opinion, the personal dissatisfaction of a few is due to my high level of expectation.

Would you please provide me, in writing, your plans and efforts to work with me?

Jackie Fisher, RN
Nurse Manager
Estelle RMF

Fisher-200136

# EXHIBIT 7

Fisher-200137



David Watson, RN
Senior Cluster Nurse Manager

Huntsville District
UTMB Correctional Managed Care

April 11, 2006

Jacklyn L. Fisher, RN
Cluster Nurse Manager
Estelle Regional Medical Facility
University of Texas Medical Branch at Galveston
UTMB Correctional Managed Care

Dear Ms. Fisher:

This letter is to notify you that I intend to request your demotion to Nurse Clinician III effective April 13, 2006, due to your continued failure to meet minimum performance expectations. A pattern of performance has been identified that represents significant areas of deficiencies in your performance. Those areas are:

1. Ineffective communications with subordinate staff
2. Insubordinate attitude toward your supervisor
3. Failure to follow your supervisor instructions
4. Ineffective management/leadership

The factual basis that supports my intent is as follows:

**Ineffective communication with staff:**

- During your first year as a Cluster Nurse Manager for the Huntsville, Goree and Ferguson Facilities numerous complaints were received by the Senior Cluster Nurse Manager's office regarding your communications with staff. The complaints included that you spoke in loud, stern tones, failed to listen adequately and continued to interrupt them when they spoke. While you denied these allegations, you were counseled regarding your communication in 2005. During the counseling session you displayed this same behavior towards your supervisor. At that time you agreed to set a goal for the following year to improve your communication skills.
- Although some improvement in your communications skills was noticed over the next few months, you again exhibited an argumentative behavior during several nurse manager meetings. At times it became necessary for your supervisor to instruct you to stop your discussion/arguments in order to proceed with the meeting.
- When you transferred to the Estelle Regional Medical Facility (ERMF) in August 2005, the same type of complaints regarding your communication/interaction with staff were reported to your supervisor's office. Once again you denied that it was a concern. At that time, it was suggested that you set another goal to improve this area of your management style.

**Fisher-200138**

Jackie Fisher, RN
April 11,2006
Page 2

*[handwritten: Who were these individuals?]*

- In January 2006, Mary Gotcher, the Northern Region Director of Nurses and Georgia Melton, the Northern Region Human Resources Administrator, received similar reports of your poor communication from multiple staff members during their investigation of complaints of staff dissatisfaction.
- On March 9, 2006, a grievance was filed by one of your employees alleging that you spoke to her in a demeaning and demoralizing way in front of both patients and correctional staff. The investigation of the allegation revealed evidence to sustain this grievance.

<u>**Insubordinate attitude toward your supervisor and Failure to follow your supervisors instructions:**</u>

- On 3-22-06, you informed your supervisor that staffing at the ERMF was so critical that you would require a minimum of three, full time agency nurses to meet mission goals. I advised you that due to complaints about you from the contracted nursing agency, Supplemental Health Care, who supplied nurses, the representative reported that they are having problems recruiting nurses to work at the ERMF. The reason given was due to your unprofessional behavior towards the temporary nurses during their assignment(s) at the ERMF.

*[handwritten: Jackie →]*

- At that time, you were instructed to provide an alternate contact at the ERMF for that agency's staff, however, you refused to do so. You were unable to provide an appropriate explanation for your refusal to follow this instruction and you stated that you just would not use the agency in question. Your refusal to cooperate indicated to your supervisor that you were willing to allow a potential disaster to befall the operations of the unit because you didn't wish to follow my instructions.

*[handwritten: This is ... sorry hostile]*

- You were then directed to contact another nursing agency to secure temporary nursing staff. In the event that the second agency was unable to supply nurses, you were directed to appoint a contact person (other than yourself) at the ERMF to work with the representative from Supplemental. This instruction from your supervisor was very explicit that this point of contact was to be the liaison for all situations except an emergency on site.
- The name of your contact person was requested by your supervisor at least twice via email before you finally provided this information. Upon speaking with the agency a few days later, your supervisor was informed that you instructed them (nursing agency) to contact the alternate person *only* if you were not available. This is in direct violation of your supervisor's instructions.
- On March 10, 2006, during a meeting with your Assistant Nurse Managers (ANM) we discussed the need for you to improve communications with both of them. Both of your ANM's had expressed to your supervisor that you were not keeping them informed of your actions and decisions. They frequently learned about changes you made from the staff after the fact. They felt left out and ill prepared to deal effectively with the staff as a result. During this meeting, you were explicitly advised that you were to meet at a <u>minimum</u> of once per week or more if needed. As of 3-27-06 both ANMs informed your supervisor that you have not met even once with them. Again, this is a direct violation of my instructions.

**Fisher-200139**

Jackie Fisher
April 11, 2006
Page 3

- In February 2006, your supervisor requested that you meet with him informally 2-3 times per week in order that he may keep abreast of problems/issues and provide assistance to you. As of this date, you have failed to adhere to your supervisor's request.
- On March 13, 2006, when your supervisor presented your semi-annual evaluation you objected to some parts of the evaluation. This document was given to you with instructions to closely review and offer alternate wording or constructive comments so that we could negotiate what you felt was fair. Ten days later you still had not returned the evaluation and your supervisor had to request it's return.
- In the last paragraph of your response to the evaluation, you accused your supervisor of circumventing your authority, soliciting information from your assistants and other employees without constructive use of information. This accusatory tone in your response displays an insubordinate attitude towards your supervisor.

### Ineffective management/leadership



- You assumed the Cluster Nurse Manager position of the Goree, Huntsville, Ferguson cluster, in August 2003. Your supervisor expressed concerns regarding the performance of your Assistant Nurse Manager, Ms. Kelly, who was assigned to the Ferguson Facility at that time. Some of the concerns were that she seemed to have a lack of time management, organization and leadership ability.
- Over the course of the next several months, this person's performance showed no improvement, however, you failed to prepare a Corrective Action Plan to address her deficiencies.
- Your supervisor allowed your ample opportunity to address the ANM's performance issues, however, after approximately another three months it was necessary for your supervisor to direct you to make such a plan. You refused to accept any accountability for your lack of action for the better part of the preceding 18 months.
- Attempts were made to implement the provider assisted sick call process at the Huntsville Facility during your assignment at the facility. You resisted the process change so intensely that your team members (The Practice Manager, Mid-Level Practitioner, a Physician and the Cluster Medical Director) requested that you be removed from the team. This issue was finally resolved when your supervisor intervened. Your resistance to this process change had a significant impact on the patient care flow and on the clinic operations. You later commented in the presence of witnesses that you were disappointed that your supervisor had intervened because you thought if the problems had lingered a little longer the entire program would have failed miserably thus supporting your original belief that provider assisted sick call was a bad idea.
- In late 2004, during the onset of the cold and flu season, the Huntsville Unit was besieged by an abnormally high number of sick call requests (70) from patients suffering from what appeared to be flu or other acute respiratory infection. Due to the absence of the Mid-Level, the Medical

**Fisher-200140**

Jackie Fisher
April 11, 2006
Page 4

Director agreed to see patients. Without consultation with a Medical Director, you ordered the patients dismissed from the clinic due to only two nurses being available. It was necessary for the Medical Director to intervene in order to proceed with patient care. Again, you attempted to interfere with the patient care and interrupt the workflow of the clinic.

- By your own admission, you did not conduct staff meeting between August 2005 and November 2005 at the ERMF. Your supervisor has expressed his expectations to all of his Nurse Managers regarding the need for regular staff meetings to ensure communication throughout the department

Before I ask for your demotion, you have the opportunity to tell me, whether in writing or in person, if any of my facts are incorrect or if there are any reasons why you should not be demoted. If you wish to take advantage of this opportunity, a hearing has been scheduled at 10:00 a.m. on April 12, 2006, in Room 181 of the Health Services Building in Huntsville, Texas. If you choose not to attend this meeting you may submit your information in writing at that time. If I do not hear from you, I will assume you do not wish to respond and your demotion will be effective on April 12, 2005 at 5:00 PM.

Sincerely,

David Watson
Senior Cluster Nurse Manager

I am in receipt of a copy of this letter.

_I disagree with the content._

Jackie Fisher, RN                                    4-11-06
                                                     Date

Fisher-200141

# EXHIBIT 8

Fisher-200142

**THE UNIVERSITY OF TEXAS MEDICAL BRANCH
AT GALVESTON
UTMB MANAGED CARE**

RECEIVED

APR 10 2006

GRIEVANCE ✓   APPEAL____

TO:  **Human Resources**

FROM:  _Jackie Fisher_          _RN, CNM_
       (Employee Name/Complainant)      (Job Title)

       _Medical - Estelle RMF_
       (Department and Facility)

The following grievance/appeal is submitted in accordance with The University of Texas Medical Branch Managed Care Discipline and Dismissal, Grievance or Appeal Policy:

**FOR GRIEVANCE ONLY**                     **FOR APPEAL ONLY**

Reason for Grievance (Include UTMB Managed Care      Action being appealed:
Policy violated, if any):

_Hostile Work enviroment_                    ____ Dismissed
                                             ____ Suspended without pay
                                             _✓_ Demotion

Date occurred:  _on-going_                    Date occurred: ____

Employee's Statement  (Additional pages may be attached, if needed):

_See attachment, pages 1-3_

Desired Results:

_A conducive work enviroment that does not promote_
_harassment._

_Jackie Fisher_                              _4-10-2006_
Employee's Signature                          Date

Return the completed form and supporting information to your local UTMB Managed Care Human Resources Office.

## FOR USE BY HUMAN RESOURCES ONLY

_Sandy P_____                    Grievance No. _06-____-__-___-_
Human Resources Representative

**MANAGEMENT CONTACT:**

Verbal Presentation: ____

|         | Date Rec'd | Date Date to Respondent | Due Date | Resolution |
|---------|-----------|------------------------|----------|------------|
| Level 1 | _4/10/06_ | _4/10/06_ | _4/14/06_ | |
| Level 2 | | | | |
| Level 3 | | | | |

**Fisher-200143**

April 10, 2006

To: Sandy Rader
HV Cluster HR Administrator
Huntsville, Tx. 77340

Ref: Hostile Working Environment

An email was sent on 1/9/06 from Mr. Watson, District NM, to Estelle's RMF, Building, High Security and SAFP nursing staffs informing the staff Ms. Gotcher, D.O.N., Northern Region, would be at the Estelle's RMF on 1/17/06 and 1/18/06. He encouraged all staff to come by to share opinions, concerns and ideals.

On 1/17/06 and 1/18/06, Ms. Gotcher and Ms. Melton, HR Administrator of the Northern Region, conducted interviews among the RMF staff. Some staff stated they felt attacked in their efforts to support my administration. The Estelle RMF, High Securiyt and SAFP personnel are under my supervision, while Ms. Bond, RN, Facility NM, supervises the Estelle Building staff. It should be noted that the nurses at the other locations- Estelle High Security, SAFP and the Estelle Building were not interviwed. It is my opinion, the meeting was requested by Mr. Watson and intentionally set up to provide disgruntled employees the opportunity to personal attack me. It is alleged that Mr. Watson encoraged Mr. Aguilar, ANM to ensure participation of a certain group of the RMF staff.

Ms. Gotcher and Ms. Melton met with me on 2/10/06 to report their findings of the alleged problem areas from the above stated meetings. Rebuttals and comments were made on my behalf. No factual evidence was presented. Most of the allegations were stated as perceptions on the behalf of the employees. According to Ms. Gotcher, the meeting was called due to the large turnover, high vacancy rates and staff complaints under my supervision since the 8/05 administrative reassignment of nurse managers. My vacancy rates were not any higher than the other Nurse Managers in the Huntsville Cluster. According to the facility monitoring reports, in comparsion, my vacancy rates were lower in some months.

There are disgruntled employees with racial allegations and supervisory complaints on most units throughout the Huntsville Cluster in which Mr. Watson is very aware. He has personally received staff complaints via emails from other units. To make mention, since 2/06, three licensed staff on the Wynne Unit have requested transfer to the RMF due to dissatisfaction. These complaints have gone without obvious attention from the District level.

I have documentation that a Nurse from the Ellis Unit sent as an email to Mr. Watson alleging that her work enviroment was bad and that it was hard for her to talk to her Nurse Manager and requested to met with Mr. Watson. In response, Mr. Watson replied "I will speak with you only after you have met with and discussed your issues with the ANM and/or NM. If that fails to resolve the problem then I will be happy to meet with you. There are proper ways to address things through your chain of command". It should be noted, that this rule is not being enforced for the staff under my administration. My

Fisher-200144

staff are encouraged to circumvent the chain of command by being summoned and allowed to go directly to Mr. Watson.

I requested a meeting with Ms. Gotcher and Ms. Melton to discuss my concerns in regards to Mr. Watson. Initially it was scheduled for 2/21/06 but rescheduled for 3/7/06. I voiced my belief that this was an act of retaliation and that that he had intentionally set me up for failure. His areas of concerns that was reported to Ms. Gotcher had never been communicated to me. In my opinion, those problems and/or concerns should have been shared with me first to resolve or address at the lowest level. At that time, I also reported that Mr. Watson was creating a very uncomfortable work environment.  During this meeting, Ms. Melton concluded that Mr. Watson and I needed mediation and stated arrangements would be made.

Ms. Gotcher returned to meet with the RMF staff for a follow up visit on 3/8/06.  Those present were Mr. Watson, Ms. Rader, staff on duty, and I.  She gave specific expectations for the staff and me.  She also encouraged everyone to work together, follow their chain of command and to open the line of communications.

In a later discussion on 3/13/06 with Mr. Watson and Ms. Box, Huntsville Cluster PM, I made it known again that I felt a lack of trust and support from Mr. Watson.  Mr. Watson freely acknowledged that he has a problem communicating with me. He has never disclosed a reason for not being able to communicate with me. My efforts to communicate with him remains open and respectful in an attempt to conduct professional business.

Despite all the meetings and discussions, Mr. Watson continues to allow staff to circumvent my authority, he continues to solicits information concerning my work performance from my assistant NMS and other staff members.  His involvement has caused a great lack of cohesiveness on the unit level. Mr. Watson has made it known that staff does not voluntarily come to him, he calls for them. The solicitation of staff has a tendency to make the employees feel obligated to complain and they could feel at a disadvantage not to comply with his requests. Mr. Aguilar, ANM has voiced concern about Mr. Watson's behavior to me and he questioned his decision to trust Mr. Watson to another member of the management team. Ms. MacCartney, ANM has commented to me on several occassions that she feels put in between her supervisor (me) and my supervisor (Mr. Watson). Mr. Watson's behavior causes a strain our relationship. It should be noted, his solicitation of staff is of the Caucasian race only.  Diversity would be a better representation and provide a greater appreciation of the staff as a whole.

There still continues to be a lack of empowerment and support from Mr. Watson to manage the unit.  He has shown a lack of consistency in allowing me to provide discipline for similar occurrences.  Disciplinaries written by me for policy violations (inaccurate sharp counts) and practice act issues (MH) have been denied. On my semi-annual evaluation that was due in 12/05 and presented to me on 3/13/06, Mr. Watson stated he have little doubt that my final judgement calls tend to be correct but in an email I recieved from him on 2/15/06 he instructed me to discuss and get input from my subordinates before deciding to pursue disciplinary, and if I failed to do so, my decision

Fisher-200145

would be remissed.

Prior to my approved leave, I sent an email on 3/27/06 and copied Mr. Watson summarizing the staffing issues and my attempt and plan to staff unmanned shifts when I returned on 4/11/06.  During my absence, Mr. Watson requested a meeting with Mr. Aguilar and Ms MacCartney around or on 3/30/06.  Mr. Aguilar was unavailable, but the meeting was conducted with Ms. MacCartney. Inspite of the email that I had previously sent addressing the staff numbers for the entire month of April 06 and my plan to cover the shifts, it was reported that Mr.Watson instructed MacCartney to prepare daily assignments sheets for the entire month of April and report my deficiencies to him. From that information, he requested the use of agency staff to fill all the vacant shifts. Despite my efforts, he shows no support for me and continues to use my subordinates to discredit my authority.

On my semi-annual evaluation, Mr. Watson stated that "there are still some problem areas that require my focused attention. But through discussion with her team she is well aware of those areas and will continue to seek resolutions." I am not aware of any problems that require my focused attention on behalf of the management team. After viewing that comment and discussing it with Mr. Samarneh and Dr. Vincent they both disclaim having any specific knowledge as related. It would be very beneficial if Mr. Watson was able to effectively communicate with me  to get the whole story and fully understand the entire situation.

Mr. Watson's personal dislike for me and his continued harassment has created a hostile working environment.


Respectfully submitted,

*Jackie Fisher*

Jackie Fisher, RN, CNM



cc: file

# THE UNIVERSITY OF TEXAS MEDICAL BRANCH
## AT GALVESTON
## UTMB MANAGED CARE

GRIEVANCE __✓__   APPEAL _____

**RECEIVED**

APR 1 2 2006

TO:  _Human Resources_

FROM: _Jackie Fisher_    _RN, CNM_
(Employee Name/Complainant)   (Job Title)

_Medical – Estelle RMF_
(Department and Facility)

The following grievance/appeal is submitted in accordance with The University of Texas Medical Branch Managed Care Discipline and Dismissal, Grievance or Appeal Policy:

| **FOR GRIEVANCE ONLY** | **FOR APPEAL ONLY** |
|---|---|

**FOR GRIEVANCE ONLY**

Reason for Grievance (Include UTMB Managed Care Policy violated, if any):

_Harassment and Hostile Work enviroment_

Date occurred: _on-going_

**FOR APPEAL ONLY**

Action being appealed:

____ Dismissed
____ Suspension without pay
_e✓_ Demotion

Date occurred: _____

Employee's Statement (Additional pages may be attached, if needed):

_See attachment – page 1 of 1_

Desired Results:

_A conducive work enviroment that does not tolerate harassment._

_Jackie Fisher RN_   _4-11-06_
Employee's Signature   Date

Return the completed form and supporting information to your local UTMB Managed Care Human Resources Office.

## FOR USE BY HUMAN RESOURCES ONLY

_Laury Kade_
Human Resources Representative

Grievance No. _06-04-03.5_

MANAGEMENT CONTACT:

Verbal Presentation: _N/A_
                      Date

| | Date Rec'd | Date to Respondent | Due Date | Resolution |
|---|---|---|---|---|
| Level 1 | 4/12/06 | 4/12/06 K | 4/26/06 | |
| Level 2 | | | | |
| Level 3 | | | | |

_Mrs. Fisher on 5/11/06 @ 1112 my res_

Fisher-200147

April 11, 2006

To: Sandy Rader
HV Cluster HR Administrator
Huntsville, Tx. 77340

Ref: Hostile Working Environment

It was reported to me by the employee that on or around 3/29/06, Mr. Watson came to the Estelle RMF's South Pod work location without cause and requested to speak with Ms. Sevilla, Nurse Assistant in his office. When Ms. Sevilla arrived at his office, he commented to her, it has been reported that Ms. Fisher treats some of the employees bad. She (Ms. Fisher) yells and scream. Would you provide me a written statement of how Ms. Fisher treats you? According to Ms. Sevilla she reported that Ms. Fisher treats me fine, I don't have any problems with her or her supervision and declined to provide a written statement. At that time, Mr. Watson thanked her for coming and dismissed her from his office.

The constant solicitation and summons of my staff to complain about me is very unprofessional and has no positive impact in the workplace. This type of relationship empowers some of the staff and makes it hard to supervise them. While other staff view this behavior from Mr. Watson as initimidating and undesireable.

Mr. Watson has made mutliple attempts on several levels to identify short comings and pitfalls in my work performance and management abilities. In my opinion, his constant harassement is an act of retailation because of the meeting I had with the Northern Region's HR Administration and DON to discuss my concerns in regards to him. Mr. Watson's behavior continues to create a hostile work enviroment.

Respectfully submitted,

*Jackie Fisher RN*

Jackie Fisher, RN, CNM

cc: file

Fisher-200148

FROM :UTMBHUMANRESOURSE                    FAX NO. :9354373511        Sep. 13 2006 02:08PM P2

UTMB CMC ADMIN                                                        PAGE  02/05

# THE UNIVERSITY OF TEXAS MEDICAL BRANCH
## AT GALVESTON
## UTMB MANAGED CARE

GRIEVANCE  ✓        APPEAL ____

TO:        Human Resources

FROM:      Jackie Fisher              ANM
           (Employee Name/Complainant)    (Job Title)

           Medical – Wynne
           (Department and Facility)

The following grievance/appeal is submitted in accordance with The University of Texas Medical Branch Managed Care Discipline and Dismissal, Grievance or Appeal Policy.

**FOR GRIEVANCE ONLY**                    **FOR APPEAL ONLY**

Reason for Grievance (include UTMB Managed Care      Action being appealed:
Policy violated, if any):
Discrimination                                ____ Dismissal
                                              ____ Suspension without pay
                                              ____ Demotion

Date occurred:  9-1-06                        Date occurred _____

Employee's Statement (Additional pages may be attached, if needed):

    See attached

Desired Results:
    Review & action

    Jackie Fisher                             9-11-06
    (Employee's Signature)                    (Date)

Return the completed form and supporting information to your local UTMB Managed Care Human Resources Office.

## FOR USE BY HUMAN RESOURCES ONLY

_____          Grievance No. _____
    Human Resource Representative

MANAGEMENT CONTACT:                       Appeal No. _____

Verbal Presentation: _____

| | Date | | | Resolution |
|---|---|---|---|---|
| Level 1 | | | | |
| Level 2 | Date Rec'd | Date to Respondent | Due Date | Resolution |
| Level 3 | Date Rec'd | Date to Respondent | Due Date | Resolution |
| | Date Rec'd | Date to Respondent | Due Date | Resolution |

Fisher-200149

To:    Sandy Rader, HV Human Resource Administrator
Re:    Internal Grievance
Date:  September 11, 2006


This internal grievance is filed against David Watson, Huntsville District Nurse Manager. I have been subjected to different terms and condition of employment than those of different gender (male) and race (Caucasian).

I (female, African American) was demoted from Cluster Nurse Manager in April 2006 by David Watson. His decision and action taken against me was an act of retaliation and racial discrimination as highlighted by specific facts. The decision was not deferred to the Estelle Management Team.

Mr. Cavan Brophy, (male, Caucasian) was demoted from Assistant Nurse Manager in September 2006. Mr. Watson deferred Mr. Brophy's level of disciplinary for decision making to the Ellis/Eastham Management Team. Inspite of Mr. Brophy's obvious continued failure to meet performance expectations, the decision/recommendation to demote Mr. Brophy was that of the Ellis/Eastham Medical Management Team. Why did the HV District Nurse Manager, (Mr. Watson) and/or the Northern Division Director of Nurses, (Ms. Gotcher) defer the decision? The last two demotions of African Americans were not deferred to the management teams.

In comparison, Mr. Watson has shown preferential treatment, he did not allow or provide the Estelle Management Team an opportunity to provide a recommendation(s) prior to his decision to demote me.

I submit this formal grievance due to Mr. Watson's discriminatory practices and inconsistent disciplinary actions for further review.


Sincerely,

Jacklyn Fisher

RECEIVED

SEP 1 1 2006

HEALTH SERVICES
DIVISION

Fisher-200150

FROM :UTMBHUMANRESOURCES                    FAX NO. :9364373511           Sep. 13 2006 02:08PM  P4



Mary C. Adams, RN
Cluster Nurse Manager
UTMB Correctional Managed Care
Ellis/Eastham Cluster
Huntsville, Texas 77320-3322

September 1, 2006

Cavan Brophy, RN, Assistant Nurse Manager
Medical Department, Eastham Facility
University of Texas Medical Branch at Galveston
UTMB Correctional Managed Care

Dear Mr. Brophy,

This letter is to notify you that it is my intention to seek your demotion from the position you presently occupy as an Assistant Nurse Manager to a Nurse Clinician III due to your failure to meet minimum performance expectations. The factual basis that supports this is as follows:

On 8-29-06 at approximately 3:00 AM you were working with another staff nurse at the Eastham Facility. It is normal procedure to count needles and sharps and have two staff members sign off on this count as is required by *UTMB Managed Health Care, Nursing Services Policy D-28.2*. By your own verbal admission and written statement, as well as additional corroboration by co-workers, you did not conduct this count and yet you later signed the logbook indicating that you did. You have in effect falsified a document. This behavior is of particular concern in light of recent allegations of tampering with medical documents on the Eastham facility. As an Assistant Nurse Manager you are expected to set standards by example to subordinate employees.

Your actions demonstrate performance that does not rise to the level expected by a Registered Professional Nurse and an Assistant Nurse Manager.

Before a final decision is made regarding your demotion, you have the opportunity to explain, if any of these facts are incorrect or if there are any reasons why you should not be demoted. If you wish to take advantage of this opportunity, a pre-disciplinary hearing has been scheduled for September 5, 2006, at 11:00 AM, at the Human Resources Office, at the Health Services Bldg. at 3009-A, Hwy. 30 West, in Huntsville, Texas. If you have any questions regarding this pre-disciplinary hearing, please contact Sandy Rader, Human Resources Administrator, at (936) 437-3501.

Regards,

*m. adams*

Mary Adams, RN
Cluster Nurse Manager

Fisher-200151

UTMB CMC ADMIN    PAGE  05/05

FROM :UTMBHUMANRESOURCES          FAX NO. :9364373511          Sep. 13 2006 02:05PM  P5

FROM :EDITHRM          FAX NO. :9366768827 7312          Aug. 31 2006 02:47PM  P2

FROM :ELLIS          FAX NO. :9362955736 5452          Aug. 31 2006 02:31PM  P2

FROM :EDITHRM          FAX NO. :9366768827 7312          Aug. 31 2006 02:16PM  P2

**UTMB**
The University of Texas Medical Branch

August 31, 2006

At 12:30 am August 31, 2006, the Stachein/Ellis Management Team met to discuss the situation regarding Owen Brophy. The following members were in attendance:

- Dr. Forsby, DDS, Dental Director
- Douglas Sterling, Responsible Psychotherapist
- Sherrie Crawford, Practice Manager
- Mary Adams, RN, Cluster Nurse Manager
- Dr. Williams, Unit Medical Director (was not present, as she has a scheduled day off)

The incident regarding falsifying the narcotic count sheet was discussed. It was unanimously decided that disciplinary action needed to be taken. Ms. Adams and Mr. Crawford recommend demotion and transfer from the facility for the following reasons.

1. Not following TDCJ Health Services Policy and falsifying a legal document

2. Lack of leadership skills by not setting the standards and not leading by example. In addition, lack of inappropriate communication skills with staff and unsatisfactory scheduling

3. Not being trust worthy

Dr. Forsby and Mr. Sterling deferred the level of discipline to Mr. Brophy's supervisors. Dr. Forsby commented that in light of the shredding incident occurring on Mr. Brophy's watch, this should be taken into consideration regarding what disciplinary action should be taken.

_Sherrie Crawford, Practice Manager_          _Mary Adams, RN, Cluster Nurse Manager_

_Edward Forsby, DDS_          _Douglas Sterling, RN_

Fisher-200152

# EXHIBIT 9

Fisher-200153



Sandy Rader
Huntsville District Human Resources Administrator
UTMB Correctional Managed Care
1009 Hwy. 30 W
Huntsville, TX 77340
Office: (936) 437-3503
Fax: (936) 437-3511

# Memo



**RECEIVED**

6 22-06

**To:**   John Pemberton

**From:** Sandy Rader
       Huntsville District Human Resources

**Date:** 6/9/06

**Re:**   Appeal filed by Jackie Fisher

John, please find attached letter from Jackie Fisher appealing her demotion.  Since she is claiming racial discrimination and retaliation by David Watson, I am forwarding to you.  Here are the events that led to this appeal:

1.   Letter of Intent dated April 11, 2006 for demotion from Cluster Nurse Manager to Nurse Clinician III.  During the pre-disciplinary hearing on April 12, 2006, Ms. Fisher requested 10 days to respond to the Letter of Intent.  The request was approved by Georgia Melton;

2.   Response from Jackie Fisher dated April 24, 2006 to Letter of Intent for demotion;

3.   Final decision dated May 2, 2006, from David Watson, Huntsville District Nurse Manager, to Jackie Fisher regarding demotion.   The original intended demotion to Nurse Clinician III was reversed and Ms. Fisher was actually demoted to an Assistant Nurse Manager at the Wynne Unit under the supervisor of Kim Roddy, Cluster Nurse Manager;

4.   1st level appeal – On May 11, 2006, Jackie Fisher filed an appeal as a result of demotion to Assistant Nurse Manager.  Ms. Fisher is claiming racial discrimination and retaliation.

Following the pre-disciplinary hearing on April 12, 2006, Ms. Fisher notified Ms. Roddey that she would be taking the balance of her FMLA due to her son's medical condition.  Ms. Fisher has been off work the first 2 weeks of April with her son for his surgery.

Ms. Fisher has not returned to work as of this date and Ms. Roddey has had heard from Ms. Fisher regarding her return.

Fisher-200154

# Appeal of Demotion
# Filed by
# Jackie Fisher's
# May 11, 2006

Fisher-200155

To:      UTMB-CMC Human Resources Department
RE:      Demotion Appeal                                    MAY 1 1 2006
Date:    May 11, 2006

I have been wrongfully and illegally demoted from Cluster Nurse Manager.  The actions taken against me by UTMB are in retaliation for my complaints in February 2006 and other occasion about incidents of racial discrimination by Mr. Watson. Further, UTMB has wholly ignored the system's human resource policies to demote me from my management position.  I appeal the decision to demote me and file this grievance against Mr. Watson for the above reasons.

Mr. Watson's retaliatory intent is highlighted by several specific acts.  First, he has failed to invoke any progressive discipline to correct the pretextual complaints that he has about my performance.  Pursuant to UTMB HR Policy # 3.10.1 (discipline and dismissal) the policy is intended to provide guidelines to promote consistency. The policy states that an employee should know about all issues and concerns; and, one should be given an opportunity to correct the problem when appropriate before moving to other disciplinary steps. Mr. Watson's areas of concern were not addressed with me.  Further, he refused to meet with me to discuss any issues that he had concerning my performance.  Instead, he took female employees out to dinner and discussed my performance with my subordinates.

According to the same policy, the performance management matrix and the Human Resource P.R.E.P. process outline the criteria when formal corrective action is necessary. If necessary, an employee is to first receive an oral reminder.  If no corrective action has been demonstrated by the employee, then the employee is to receive a written reminder, followed progressively by a decision making day, suspension (misconduct) and ultimately termination (or demotion). The guidelines state that all phases of the process are intended

to assist employees in meeting performance standards. The steps in the process may be omitted only when a severe violation of policy justifies an immediate termination. I have never received any level of formal disciplinary action in relation to Mr. Watson's allegations. His request to demote me is racially motivated and retaliatory in nature. Mr. Watson's allegations against me would never warrant immediate termination. Instead, they are a pretext for his illegal motives.

Another example of his illegal motive is the hurried and unprofessional way that he attempted to gather support for his illegal decision. For example, Mr. Watson cited support for his actions such as "staff complaints" which were never presented to me by grievance or otherwise. He complains of a high turnover and vacancy rate without any support (especially as compared to other clusters and units). Mr. Watson arranged a meeting with the management of the Northern Division to discuss me without me present and available to rebut his allegations, continued to solicit staff complaints and started requesting and asking them to give him negative written statements (immediately prior to his request to demote me). He presented me with a bad evaluation (after years of excellent evaluations) without any written facts to support the poor evaluation. He then provided statement in the demotion letter that I was deficient in areas that he had allegedly discussed with me on prior occasions, but completely failed to address any of the same issues during the evaluation. Without further means of resolutions, I felt it was necessary to file a formal grievance against him. For speaking out and filing grievances Mr. Watson has imposed a demotion as a harsh punishment.

The white nurses and Nurse Managers are treated differently by Mr. Watson than the black nurses. For example, he has raised the issue about my behavior during several Nurse

Manager meetings. The allegation in regards to me is not true. In comparison, there was an argument between two Caucasian Nurse Managers (Ms. Adams and Ms. Bonds) that required Mr. Watson's intervention in order to proceed with the meeting. They are not being disciplined for the conduct. I merely raised the issue as to what appeared to be discriminatory treatment by Mr. Watson.

Mr. Watson complains about my ability to communicate and cites continued staff complaints prior to my 8/05 transfer. The staff complaints he received were handle very differently than the complaints made against the similar situated Caucasian Nurse Managers. According to an email from Mr. Watson on 4/19/05, he stated he would speak with the employee only after she had met and discussed her issues with the Caucasian Assistant Nurse Manager and/or Nurse Manager. If that failed to resolve the problem then he would be happy to meet with her. He stated there are proper ways to address things through the chain of command. If that failed, then she could come to him and he would address the issue. Again, according to an email from Mr. Watson on 2/1/05, he stated if an employee was making an allegation against her supervisor, the supervisor had a right to defend herself and we have the right to hear both sides of the story, we would discuss the issues and not have the employee use it as a bashing session for her personal agenda.

He also ignores the fact that the staff also complained about the previous Caucasian Nurse Manger (Ms. Adams). The complaints were made through Mr. Watson's office, to Ms. Rader's office, via email(s) sent to Dr. Soboto office. There were also calls made to the UTMB Hotline. Supported by Mr. Watson's own admission, the ANM made complaints about the previous Caucasian Nurse Manager (Ms. Adams). Yet she was not demoted.

After I transferred to the ERMF, I learned of Mr. Watson's special relationship with the

Hispanic male Assistant Nurse Manager. This particular ANM was Mr. Watson's source of information. Mr. Watson admitted, in front of a witness (Mr. Samrehn), that the staff does not come to him, he calls for them. Mr. Watson's solicitation of staff has been one of only seeking information from persons of the Caucasian race. This is evident from review of my 4/11/06 grievance. The employee refused to comply with his request. There was no solicitation or consideration in regard to my communication from to the African American employees.

Mr. Watson personally requested and arranged for the Northern Division Management Team, HR Administrator, Ms. Melton (Caucasian) and Director of Nursing, Ms. Gotcher (Caucasian) to interview ERMF staff. According to Ms. Melton and Ms. Gotcher, they interviewed staff at Mr. Watson's request due to the high turnover rate, high vacancy rated and staff complaints since my 8/05 reassignment. Mr. Watson's intent was to provide an opportunity for disgruntled staff to sabotage me. He had requested at that time that I be demoted. Mr. Watson felt threaten by his persuasion to call the meeting and made the statement to one of the black employees, "I hope I still have a job on Monday." According to the facility monitoring reports, my vacancy rates were not any higher than the Caucasian Nurse Mangers in the local Huntsville area. In some months my vacancy rates were actually lower. In comparison, since the 8/05 reassignment, there has been 14-15 employees resign from the Eastham/Ellis Cluster under the Caucasian Nurse Manager (Ms. Adams). The Estelle Main Building is supervised by a Caucasian Nurse Manager (Ms. Bonds) and her staff was invited to meet with the Northern Division team. During the month of January 2006, and at the time my staff was interviewed, the Caucasian Nurse Manger's (Ms. Bonds) staff had reasonable cause to be interviewed. Ms. Bonds at that time had only four-five licensed staff to provide 24 hour coverage. In comparison, her high staff

turnover and vacancy rate resulted in staffing levels much more critical than mine. Ms. Adams' and Ms. Bonds' high turnover and vacancy rates on those particular Units went without attention from Mr. Watson and the Northern District Level Administration. There have been African American employees that complained about their Caucasian Supervisor and their complaints were ignored.

Mr. Watson stated on the demotion letter, one employee filed a grievance against me. However, I was never provided an opportunity to even respond to the issue before Mr. Watson sustained the grievance against me. In comparison, there have been staff grievances filed against Ms. Roddey (Caucasian) Nurse Manager, and she was allowed an opportunity to respond before Mr. Watson made a final disposition.

On the demotion letter, Mr. Watson has also alleged that I refuse to take accountability for my actions. He is wrong.  Again he is using this broad complaint to support his efforts to retaliate against me. I know that the same instructions where given to the Caucasian Nurse Manger (Ms. Adams), in which she had supervised her staff for 3-6 years longer than I had supervised my respective ANM. In this particular situation, I had to request that the Caucasian ANM disciplinary be perused after I was instructed to make a letter of reprimand for Ms. Kelly, who is African American. Mr. Watson showed indifference in his treatment as he executed the demotion, which was known to be the African American ANM.  However he handled the Caucasian ANM very differently. This discriminatory act on Mr. Waton's part could have jeopardized my working relationship with the black ANM. The white employees were not subjected to the same treatment. Since Ms. Roddey's, (Caucasian) promoted to Nurse Manager in 2003, she has not been able to mentor a new correctional nurse to survive in the workplace or in the Assistant Nurse Manger capacity.

Fisher-200160

5

She has had four Assistant Nurse Mangers resign between Wynne and Holliday Units. All resigned with similar reasons, a lack of Ms..Roddey's mentoring and leadership abilities. Oddly, these Caucasian Nurse Managers have not been cited for ineffective management/leadership and requested for demotion.

On the demotion letter, I was also cited for ineffective management/leadership, stating that the Management Team requested that I be removed from the team. The allegations are not supported by the evidence. Obviously, the demands of the job are extreme at times and all members will not always agree. The question as to whether the allegations support my demotion is clearly no and again racially motivated. One can compare how other white Nurse Managers are treated and see that much worse situations go unpunished. For example, there have been problems among other members of different Management Team in the local Huntsville area. In specific, the Ellis/Eastham was not a cohesive team. The Caucasian Nurse Manger (Ms. Wright), the Mid-level providers (Ms. Clay-Keith and Mr. Lopez) and the Medical Director (Dr. Williams) demonstrated a lack of effective communication that required intervention on behalf of the Huntsville Cluster Sr. Management Team. The Caucasian Nurse Manager (Ms. Wright) and the previous Practice Manager (Ms. Porter) relationship less than effective and required the intervention from the Sr. Cluster Team. As recent of 3/06, the relationship involving a Caucasian Nurse Manger (Ms. Adams) and the Mid-level provider (Mr. Aschberger) was ineffective and was resolved to a workable fashion only after their respective supervisors (Mr. Watson and Dr. Adams) intervened. These Caucasian Nurse Mangers were not requested for demotion. Mr. Watson intervened to assist in the resolution of problems on behalf of the Caucasian Nurse Manger (Ms. Adams), but has refused to meet with me, and expressed no interest to rectify any problems that I was having.

**Fisher-200161**

6

On the demotion letter, Mr. Watson cites his expectation to all his Nurse mangers regarding the need for regular staff meetings to ensure communication throughout the department. He does not enforce the expectations evenly across racial lines. He never considered the facts and circumstances that impacted me from having formal meetings. However, according to different employees on other respective Units, two of the Caucasian Nurse Mangers do not have regular monthly staff meetings. Since the 8/05 reassignment the Eastham/Ellis Cluster Caucasian Nurse Manger (Ms. Adams) has had only one formal meeting and that was in January 06. There was no formal meeting in 8/05, 9/05, 10/05, 11/05, 12/05, 2/06, 3/06, 4/06. Since the 8/05 reassignment, it has been reported that the FE/HV/GR Cluster under the supervision of Caucasian Nurse Manger (Ms. Wright) did not have formal staff meetings in 8/05, 10/05, 1/06, 3/06. According to the Dialysis Caucasian Nurse Manger (Ms. Elmore) on 4/11/06, prior to her most recent staff meeting, there was a four-five month span between her formal meetings. In further comparison, there is no record of formal, monthly staff meetings being held at the ERMF prior to my reassignment in 8/05. These three Caucasian Nurse Mangers are not requested for demotion.

Mr. Watson's racial discrimination has caused racial strife among the employee and supervisors. There was an incident involving the rehire of a Caucasian employee (Ms. Ford) and the transfer of a black employee (Ms. Freeman). I openly question Mr. Watson's motive and discrimination about this incident. I have supporting documentation that by his own omission and after I brought some of the issues back to his mind that his initial approval to rehire the Caucasian employee was unfair and impartial.

On 2/1/06 at the interview process, Mr. Watson made the comment that Ms. Roddey

(Caucasian) was his favorite Nurse Manger and that we all were being called to his office except her because she kept her protection plan paid up. This particular "favorite" Nurse Manger was not reassigned in 8/05 and was brought to question. Mr. Watson reasoning for not transferring Ms. Roddey was that she was a new Nurse Manger, she needed more support and that she was working well with her current Practice Manager. At the time of the reassignment, Ms. Roddey had been a Nurse Manger as long as I had. In comparisons, we were both promoted to Nurse Managers in 2003, one to two months apart. Even though I previously worked as Assistant Manager and she had not. After 2.5 years, Ms. Rodney was not cited as having ineffective management/leaderships skills nor was she requested for demotion.

During the death of Ms. Roddey's nephew (in late 05) and Ms. Wright's mother (1/06), both Caucasian Nurse Mangers, Mr. Watson sent out emails requesting thoughts and prayers. During the death of my grandmother in 1/06, just a few weeks before Ms. Wright's mother passed, Mr. Watson did not handle my situation in by notifying my colleagues, as he did for the Caucasian Nurse Mangers. During that time, Mr. Watson requested that we purchase a card and/or take Ms. Roddey out to eat. He also attended the out of town funeral services for Ms. Wright. He never acknowledged my loss or offered his sympathy in any manner.

The (Caucasian) Nurse Manager, Ms. Wright, has been found guilty of falsifying records. This is considered "gross misconduct" according to the UTMB Disciplinary Policy and recommends termination. Being Caucasian, she received a lesser punishment. She was not requested for demotion or termination.

During the week of October 24-28, 2005, I was in conversation with Mr. Watson and, for

no apparent reason, he asked me "if I thought he was prejudice". Quite surprised by the question, I replied that some of his decisions are discriminatory and that he was biased in his exercise of his authority. His decision focused on the person, instead of focusing on the problem at hand. Mr. Watson's statement made me very concerned that he was aware of his own racial impartialities—but did not care.

There was an African American employee (Ms. Hagan) that requested transfer to my supervision back in mid 05; the black employee was denied transfer due to her disciplinary status for attendance violations. However, Mr. Watson approved the transfer of a Caucasian employee (Ms. Duke) to the Fe Unit under the supervision of a Caucasian Nurse Manager (Ms. Wright), effective 5/06. Ms. Duke is under a disciplinary action for the same attendance policy issues.  The Caucasian employee has been shown a more favorable outcome in a similar situated incident.

Mr. Watson has allowed me to provide written disciplinary to the African American employees for inaccurate sharp and needle counts at the HV/FE Units but has denied me the opportunity to provide written disciplinary to the Caucasian employees at the ERMF for the same violation. There was a Mental Health case at the Huntsville Unit involving an African American ANM that Mr. Watson insisted that she be sent to peer Review in addition to her written disciplinary. A similar incident occurred at the RMF involving (4) Caucasian employees and I was instructed by Mr. Watson not to provide any type of formal disciplinary reduced to paper, and encouraged to do only verbal counseling. I was allowed to provide a disciplinary "decision making day" to a black employee (Ms. Platt) at ERMF in 1/06 for progressive attendance violation. I wrote and submitted to Mr. Watson a disciplinary for progressive attendance violation which caused for a "decision making day"

Fisher-200164

9

back on 3/07/06 for a white employee (Ms. Darby) as of my last day 4/11/05, it still hadn't been approved or returned for presentation. I have been allowed to terminate three African Americans according to the Nursing Attendance Standards. There is one Caucasian employee that worked under my supervision on the Estelle Complex that was should have been terminated in 1/06 or 2/06. I recommended her termination in accord with the standards and it was denied and placed on holding pending her trial verdict. Mr. Watson obviously exercises harsher punishment for black employees than he does for the white employees.

My demotion was one in a series of three African American disciplines imposed and inflicted by Mr. Watson within a one month period. A black ANM was demoted on 3/24/06, a black employee was given a disciplinary, written warning on 4/5/06 with disregard to the white nurse involvement and failure by her own omission. I was presented with a letter of demotion on 4/11/06.

The Human Resources Department has no real reason to demote me, other than its desire to support the racist practices of Mr. Watson. In this venue, or another, in honest and good faith, the UTMB system cannot support the pretext for my termination. I ask that the demotion be set aside and that I be immediately returned to my job as Cluster Nurse Manager.

I request that this appeal be forwarded to Step II.

Sincerely,

Jacklyn Fisher

Fisher-200165

10

# David Watson's
# Decision Letter
# Dated May 2, 2006
# Notifying Ms. Fisher of Demotion

Fisher-200166



David Watson, RN
Huntsville District Nurse Manager

UTMB Correctional Managed Care

May 2, 2006

Jacklyn Fisher, RN
Estelle Facility
University of Texas Medical Branch at Galveston
UTMB Correctional Managed Care

Dear Ms. Fisher:

I have carefully reviewed your response regarding my intent to demote. I found nothing compelling in your response to alter the decision to demote you.

However, I have made the decision that you will be demoted to the position of Assistant Nurse Manager rather than Nurse Clinician III as originally intended. You will be assigned to the Wynne Unit and answer directly to Cluster Nurse Manager Kim Roddey. In addition, you will be reassigned to District Nurse Manager Carol Warren. Your salary will be $65,352.00, annualized. This action will be effective on May 6, 2006.

You have the right to appeal my decision under the UTMB Human Resources Appeal Policy 3.10.2. If you wish to do so, you must contact Sandy Rader, Human Resources Administrator within five (5) working days.

Sincerely,

David Watson, RN
District Nurse Manager

**Fisher-200167**

Page 1 of 1

# Jackie Fisher's Response
# Dated April 24, 2006
# To Intent of Demotion

Fisher-200168

April 24, 2006

Dear Mr. Watson:

This appeal is in response to your letter dated April 11, 2006, in which you indicated your intent to demote me from Cluster Nurse Manager to Nurse Clinician III.

I believe your actions toward me are discriminatory and retaliatory for me having spoken to the Estelle Regional Medical Facility (ERMF) Management Team, Huntsville (HV) Sr. Cluster Practice Manager and Northern Division's Human Resource Administrator and Director of Nursing, regarding your indifference toward me as demonstrated by your harassing behaviors, lack of communication, your intent to set me up for failure, and your behaviors that subjected me to a hostile work environment. During your discussion with the ERMF Medical Director in March 2006 and April 2006, you implied no interest in wanting to rectify any problems.

The staff complaints you mentioned in your letter can not be validated without me having first hand knowledge of the information. I have never been privileged to see an employee's written complaint against me nor have you been able to provide specific examples of me using, loud, stern, tones when I've asked. While using my communication skills as a reason for my demotion you have repeatedly received complaints, made against other non-black Nurse Managers (NM), such as Ms. Wright, NM, who historically has been cited for using vulgar, profanity language on numerous occasions and has been cited for racial discrimination in EEO complaint(s).   Ms. Adams, NM who has received numerous staff complaints for her rude and abrupt communication. Ms. Bonds, NM is regarded as irrational and unreasonable and has also receives numerous staff complaints. In March 2006, during a staff interview conducted by you, Ms. Roddey, NM was described as having poor communication skills. Ms. Roddey, NM has had four Assistant Nurse Manager resign, three resigned within a one to two year period with common complaints of her lack of management and support. Clearly, I'm being held to a different set of standards than the similarly situated non-black Nurse Mangers.

I did not receive counseling regarding my communication skills in 2005. From my June 2005 evaluation, you cited a disagreement as the basis for ineffective communication. It is usual for mangers to disagree on various personnel issues. These are normal administrative activities that managers participate in as a normal course of business. No complaints or coaching in regards to my communication was cited at that time. The HV Human Resource Administrator and Sr. Cluster Practice Manager were present for the discussion.

You have never had to stop my discussion/arguments in order to proceed with a meeting. I cite an instance in 2005 at the ERMF, when you were forced to intervene between Ms. Adams, NM and Ms. Bonds, NM but neither manager was faced demotion.

After transferring to the ERMF in August 2005, complaints that you may have received from the staff were never communicated to me, see grievance date April 10, 2006. I believe that staff complaints should be investigated to determine the veracity.

The January 17 & 18, 2006 meetings held by Ms. Gotcher, Northern Division DON and Ms. Melton, Northern Division Human Resource Administrator were by invitation and conducted in open forum. I supervised approximately forty to forty two employees at the ERMF. According to Ms. Gotcher, there were approximately twenty to twenty five staff interviewed, six to eight staff made complaints against me. Some staff that were interviewed reported they felt attacked in their efforts to support my administration. There was an additional seventeen to twenty two employees that were not interviewed and did not have complaints. This concludes that only a small percentage of the employees were dissatisfied. During Ms. Gotcher's follow up meeting with ERMF staff on March 8, 2006, she identified areas of concern on both sides.

The alleged grievance filed against me on March 9, 2006, was reported as sustained by you. I had no knowledge of the complaint nor was I allowed an opportunity to respond to the alleged charges.

**Fisher-200169**

RECEIVED
APR 2 4 2006

My evaluation for June 2005 indicates an inconsistency of what is written in this letter in regards to my communication skills. The evaluation review shows I occasionally exceeds in focusing on the situation/issue/behavior not the person. Puts the interests of other before self-interest. Does not discriminate. Avoids conflict of interest. Maintains constructive relationships. Respects others. Shares knowledge and information with others. Is successful in building long-term customer relationships. Demonstrates effective interpersonal skills, solve problems fairly and effectively, seeks staff input and serves as a role model.

As you indicated in the event that the second Agency (Elite) was unable to supply nurses, I was then to provide a contact person to the Supplemental Representative. I did not refuse to follow your instructions. There is supporting documentation on March 28, 2006 that I complied to your request. Per my conversation with the Supplemental Representative the statement "only if I were not available" is not true.

In the March 10, 2006 meeting you did not request that I meet with the Assistant Nurse Managers (ANM) at a minimum of once per week or more if needed. Documentation between you and myself on March 24, 2006 supports an obvious miscommunication of your expectations during the meeting.

In February 2006, I was not requested to meet with you two - three times a week to keep you abreast of problems/issues and request your assistance as needed. In March 2006, the ERMF Practice Manager, Medical Director and myself requested to met with you and the HV Sr. Cluster Practice Manager to discuss our concerns and your obvious dissatisfactions but you refused to meet with us. On March 27, 2006, I needed to speak with you and asked via email "can I give you a call" but you never responded. Despite the lack of communication, I have kept you abreast of problems/issues and requested your assistance as needed.

On March 13, 2006, some parts of my evaluation were misrepresented. When the evaluation was given to me for input, you did not provide a specific time frame for me to return it. I later responded to your email explaining why it had taken ten days to return. My tone was not accusatory. As your actions in my April 11, 2006 grievance supports my statement. In my opinion, neither of the charges display an insubordinate attitude or failure to follow your instructions.

My performance evaluation should be based on meeting established goals and behavioral expectations. According to my semi-annual evaluation presented on March 13, 2006, you failed to cite either of your alleged charges for February 2006, failure to adhere to your request or for March 10, 2006, direct violation of your instructions. In my opinion, if those were areas of your concern, they should have been noted on my evaluation.

I did not refuse to accept any accountability for my lack of action for the better part of the preceding eighteen months. As discussed, I was interested in mentoring and providing an opportunity for the ANM to grow and to learn in her position. She was given specific detail goals each evaluation period. You expressed concern in regards to three ANMs and instructed Ms. Adams, NM and myself to provide our respective ANMs with letters of expectation. From your point of view, and in comparison, Ms. Adams, NM showed no accountability for her lack of action for the better part of the preceding three plus years. Further comparison, the other ANMs that was under Ms. Adams' supervision, according to you, is still less than an effective. In this case, Ms. Adams showed no accountability for her lack of action for the preceding six plus years.

My communication with the HV, Ferguson (FE), Goree (GR) Cluster Practice Manager suffered after I reported him to his supervisor on June 7, 2004. The HV, FE, GR Management team was requested to met with the HV Cluster Management team regarding our communication on June 14, 2004. The Practice Manager and myself were expected to attend, the attendance of the other team members were optional. As noted on my December 2004 evaluation, our communication improved. The Provider base sick call was implemented six to eight months later. Per your documentation dated March 9, 2006, the process itself, had a significant impact on patient care and on the flow of clinic operations. You stated "the process was pretty bogged down, staff was suffering, and the process has been less than a booming success". I did not resist the process. In fact, I willingly coordinated the changes in the clinic flow necessary to accommodate the provider base sick call. I had

to spend an increase amount of time listening to and diffusing complaints that I received from the nursing staff. I made every effort to encourage their participation in this process. I assisted with verifying competency and helping to complete the CCA's Competency Base Orientation tools (CBO tools). I instructed my ANM to supervise the completion of the CBO tools in my absence. During this time I attended a Supervisor's Training class along with the HV Cluster HR Administrator, Medical Director, Nurse Managers and the EMR Coordinator. In support of the process, I did an presentation on its monetary advantages.

During the cold and flu season in 2004, I did not dismiss patients from the clinic. I assisted in getting the patients seen as this is verified by one of the nurses who was on duty. My involvement did not interfere or interrupt the workflow of the clinic.

In this letter you make a point to cite my failure to hold staff meetings between August 2005 and November 2005 without any consideration of the facts and circumstances that may have impacted formal meeting participation. The reassignment did not occur until mid August 2005. Because of Hurricane Rita, formal staff meetings were not held in September 2005. However in October 2005, I met with the High Security and SAFPF nursing staff. In November 2005, I meet with the ERMF, High Security and SAFPF nursing staff. During the first two to four months at the ERMF, I was training staff on the EMR and readily accessible to all shifts day and night. The staff was made aware of my short term goals to come online and standardize the EMR process and my long-term goal to become paperless. To mention, there were no formal, monthly staff meetings being held at the ERMF prior to my reassignment in August 2005.

A review of your comments in my evaluations for the preceding eighteen months indicates an inconsistency of ineffective management/leadership between what has been written in the letter and what occurred during those evaluation years. My evaluations states that I utilize a proactive style of management. I am supportive of staff. I am a solid professional patient advocate. Exceeded target in taking personal responsibility for handling issues and concerns. Occasionally exceeds in providing clinical and administrative supervision to facility staff using effective principles of management and leadership.

In your letter of intent, you stated "a pattern of performance has been identified that represents significant areas of deficiencies in my performance". Per UTMB Human Resource Disciplinary Policy 3.10.1, for continued failure to meet performance expectations, formal progressive disciplinary should be initiated. I have not received any levels of formal disciplinary for any of your alleged charges.

Since January 5, 2006, there has been a clear succession of your harassing behavior. Without other means of resolution, I filed a formal grievance against you on April 10, 2006. I received your letter of intent to demote me on April 11, 2006.

In closing, I believe that your intention to demote me is clearly an act of discrimination. A review of facts by a neutral fact finder will demonstrate that your reasons and rationale are based solely upon intent to subject me to different terms and conditions of employment because of my race. Further, I believe an impartial review of the facts will demonstrate that you have gone out of your way to create a humiliating, offensive and hostile work environment for me by subjecting me to different terms and conditions of employment than those enjoyed by similarly situated non-black Nurse Managers.

Mr. Watson, I believe the charges cited for this demotion are without merit. I'm asking that this proposed demotion be rescinded.

Sincerely,

Jacklyn L. Fisher, RN

**Fisher-200171**

# Letter of Intent
# Dated April 11, 2006

Fisher-200172



David Watson, RN
Senior Cluster Nurse Manager

Huntsville District
UTMB Correctional  Managed Care

April 11, 2006

Jacklyn L. Fisher, RN
Cluster Nurse Manager
Estelle Regional Medical Facility
University of Texas Medical Branch at Galveston
UTMB Correctional Managed Care

Dear Ms. Fisher:

This letter is to notify you that I intend to request your demotion to Nurse Clinician III effective April 13, 2006, due to your continued failure to meet minimum performance expectations. A pattern of performance has been identified that represents significant areas of deficiencies in your performance. Those areas are:

1. Ineffective communications with subordinate staff
2. Insubordinate attitude toward your supervisor
3. Failure to follow your supervisor instructions
4. Ineffective management/leadership

The factual basis that supports my intent is as follows:

### Ineffective communication with staff:

- During your first year as a Cluster Nurse Manager for the Huntsville, Goree and Ferguson Facilities numerous complaints were received by the Senior Cluster Nurse Manager's office regarding your communications with staff. The complaints included that you spoke in loud, stern tones, failed to listen adequately and continued to interrupt them when they spoke. While you denied these allegations, you were counseled regarding your communication in 2005. During the counseling session you displayed this same behavior towards your supervisor. At that time you agreed to set a goal for the following year to improve your communication skills.
- Although some improvement in your communications skills was noticed over the next few months, you again exhibited an argumentative behavior during several nurse manager meetings. At times it became necessary for your supervisor to instruct you to stop your discussion/arguments in order to proceed with the meeting.
- When you transferred to the Estelle Regional Medical Facility (ERMF) in August 2005, the same type of complaints regarding your communication/interaction with staff were reported to your supervisor's office. Once again you denied that it was a concern. At that time, it was suggested that you set another goal to improve this area of your management style.

**Fisher-200173**

Jackie Fisher, RN
April 11, 2006
Page 2

- In January 2006, Mary Gotcher, the Northern Region Director of Nurses and Georgia Melton, the Northern Region Human Resources Administrator, received similar reports of your poor communication from multiple staff members during their investigation of complaints of staff dissatisfaction.
- On March 9, 2006, a grievance was filed by one of your employees alleging that you spoke to her in a demeaning and demoralizing way in front of both patients and correctional staff. The investigation of the allegation revealed evidence to sustain this grievance.

**Insubordinate attitude toward your supervisor and Failure to follow your supervisors instructions:**

- On 3-22-06, you informed your supervisor that staffing at the ERMF was so critical that you would require a minimum of three, full time agency nurses to meet mission goals. I advised you that due to complaints about you from the contracted nursing agency, Supplemental Health Care, who supplied nurses, the representative reported that they are having problems recruiting nurses to work at the ERMF. The reason given was due to your unprofessional behavior towards the temporary nurses during their assignment(s) at the ERMF.
- At that time, you were instructed to provide an alternate contact at the ERMF for that agency's staff, however, you refused to do so. You were unable to provide an appropriate explanation for your refusal to follow this instruction and you stated that you just would not use the agency in question. Your refusal to cooperate indicated to your supervisor that you were willing to allow a potential disaster to befall the operations of the unit because you didn't wish to follow my instructions.
- You were then directed to contact another nursing agency to secure temporary nursing staff. In the event that the second agency was unable to supply nurses, you were directed to appoint a contact person (other than yourself) at the ERMF to work with the representative from Supplemental. This instruction from your supervisor was very explicit that this point of contact was to be the liaison for all situations except an emergency on site.
- The name of your contact person was requested by your supervisor at least twice via email before you finally provided this information. Upon speaking with the agency a few days later, your supervisor was informed that you instructed them (nursing agency) to contact the alternate person *only if you were not available*. This is in direct violation of your supervisor's instructions.
- On March 10, 2006, during a meeting with your Assistant Nurse Managers (ANM) we discussed the need for you to improve communications with both of them. Both of your ANM's had expressed to your supervisor that you were not keeping them informed of your actions and decisions. They frequently learned about changes you made from the staff after the fact. They felt left out and ill prepared to deal effectively with the staff as a result. During this meeting, you were explicitly advised that you were to meet at a minimum of once per week or more if needed. As of 3-27-06 both ANMs informed your supervisor that you have not met even once with them. Again, this is a direct violation of my instructions.

**Fisher-200174**

Jackie Fisher
April 11, 2006
Page 3

- In February 2006, your supervisor requested that you meet with him informally 2-3 times per week in order that he may keep abreast of problems/issues and provide assistance to you. As of this date, you have failed to adhere to your supervisor's request.
- On March 13, 2006, when your supervisor presented your semi-annual evaluation you objected to some parts of the evaluation. This document was given to you with instructions to closely review and offer alternate wording or constructive comments so that we could negotiate what you felt was fair. Ten days later you still had not returned the evaluation and your supervisor had to request it's return.
- In the last paragraph of your response to the evaluation, you accused your supervisor of circumventing your authority, soliciting information from your assistants and other employees without constructive use of information. This accusatory tone in your response displays an insubordinate attitude towards your supervisor.

## Ineffective management/leadership

- You assumed the Cluster Nurse Manager position of the Goree, Huntsville, Ferguson cluster, in August 2003. Your supervisor expressed concerns regarding the performance of your Assistant Nurse Manager, Ms. Kelly, who was assigned to the Ferguson Facility at that time. Some of the concerns were that she seemed to have a lack of time management, organization and leadership ability.
- Over the course of the next several months, this person's performance showed no improvement, however, you failed to prepare a Corrective Action Plan to address her deficiencies.
- Your supervisor allowed your ample opportunity to address the ANM's performance issues, however, after approximately another three months it was necessary for your supervisor to direct you to make such a plan. You refused to accept any accountability for your lack of action for the better part of the preceding 18 months.
- Attempts were made to implement the provider assisted sick call process at the Huntsville Facility during your assignment at the facility. You resisted the process change so intensely that your team members (The Practice Manager, Mid-Level Practitioner, a Physician and the Cluster Medical Director) requested that you be removed from the team. This issue was finally resolved when your supervisor intervened. Your resistance to this process change had a significant impact on the patient care flow and on the clinic operations. You later commented in the presence of witnesses that you were disappointed that your supervisor had intervened because you thought if the problems had lingered a little longer the entire program would have failed miserably thus supporting your original belief that provider assisted sick call was a bad idea.
- In late 2004, during the onset of the cold and flu season, the Huntsville Unit was besieged by an abnormally high number of sick call requests (70) from patients suffering from what appeared to be flu or other acute respiratory infection. Due to the absence of the Mid-Level, the Medical

Fisher-200175

Jackie Fisher
April 11, 2006
Page 4

Director agreed to see patients. Without consultation with a Medical Director, you ordered the patients dismissed from the clinic due to only two nurses being available. It was necessary for the Medical Director to intervene in order to proceed with patient care. Again, you attempted to interfere with the patient care and interrupt the workflow of the clinic.

- By your own admission, you did not conduct staff meeting between August 2005 and November 2005 at the ERMF. Your supervisor has expressed his expectations to all of his Nurse Managers regarding the need for regular staff meetings to ensure communication throughout the department

Before I ask for your demotion, you have the opportunity to tell me, whether in writing or in person, if any of my facts are incorrect or if there are any reasons why you should not be demoted. If you wish to take advantage of this opportunity, a hearing has been scheduled at 10:00 a.m. on April 12, 2006, in Room 181 of the Health Services Building in Huntsville, Texas. If you choose not to attend this meeting you may submit your information in writing at that time. If I do not hear from you, I will assume you do not wish to respond and your demotion will be effective on April 12, 2005 at 5:00 PM.

Sincerely,

David Watson
Senior Cluster Nurse Manager

I am in receipt of a copy of this letter.

*I disagree with the content.*

Jackie Fisher, RN                                    4-11-06

Jackie Fisher, RN                                    Date

Fisher-200176

# EXHIBIT 10

Fisher-200177

From:   Melton, Georgia P.
Sent:   Fri 4/7/2006 2:56 PM
To:     Watson, David W.; Gotcher, Mary L.
Cc:     Pemberton, John S.; Rader, Sandra J.
Subject:   Fisher

Dear David and Mary,
**Mr. Pemberton and I discussed the information provided to us.  Here are our concerns and both of still recommend demoting Ms. Fisher to a Staff Nurse.**

There is overwhelming evidence of her shortcomings as a supervisor and  demoting her to a position of ANM (without authority) will still have a negative impact on staff and on the ability to retain or hire for any facility.

Her "bad" reputation in a supervisory position will continue to hamper any facility where she carries a title with supervisory duties.

Also, we can decide to fight an appeal now or later.

Let us know your thoughts.

Georgia

**Fisher-200178**

# EXHIBIT 11

Fisher-200179

April 24, 2006

Dear Mr. Watson:

This appeal is in response to your letter dated April 11, 2006, in which you indicated your intent to demote me from Cluster Nurse Manager to Nurse Clinician III.

I believe your actions toward me are discriminatory and retaliatory for me having spoken to the Estelle Regional Medical Facility (ERMF) Management Team, Huntsville (HV) Sr. Cluster Practice Manager and Northern Division's Human Resource Administrator and Director of Nursing, regarding your indifference toward me as demonstrated by your harassing behaviors, lack of communication, your intent to set me up for failure, and your behaviors that subjected me to a hostile work environment. During your discussion with the ERMF Medical Director in March 2006 and April 2006, you implied no interest in wanting to rectify any problems.

The staff complaints you mentioned in your letter can not be validated without me having first hand knowledge of the information. I have never been privileged to see an employee's written complaint against me nor have you been able to provide specific examples of me using, loud, stern, tones when I've asked. While using my communication skills as a reason for my demotion you have repeatedly received complaints, made against other non-black Nurse Managers (NM), such as Ms. Wright, NM, who historically has been cited for using vulgar, profanity language on numerous occasions and has been cited for racial discrimination in EEO complaint(s). Ms. Adams, NM who has received numerous staff complaints for her rude and abrupt communication. Ms. Bonds, NM is regarded as irrational and unreasonable and has also receives numerous staff complaints. In March 2006, during a staff interview conducted by you, Ms. Roddey, NM was described as having poor communication skills. Ms. Roddey, NM has had four Assistant Nurse Manager resign, three resigned within a one to two year period with common complaints of her lack of management and support. Clearly, I'm being held to a different set of standards than the similarly situated non-black Nurse Mangers.

I did not receive counseling regarding my communication skills in 2005. From my June 2005 evaluation, you cited a disagreement as the basis for ineffective communication. It is usual for mangers to disagree on various personnel issues. These are normal administrative activities that managers participate in as a normal course of business. No complaints or coaching in regards to my communication was cited at that time. The HV Human Resource Administrator and Sr. Cluster Practice Manager were present for the discussion.

You have never had to stop my discussion/arguments in order to proceed with a meeting. I cite an instance in 2005 at the ERMF, when you were forced to intervene between Ms. Adams, NM and Ms. Bonds, NM but neither manager was faced demotion.

After transferring to the ERMF in August 2005, complaints that you may have received from the staff were never communicated to me, see grievance date April 10, 2006. I believe that staff complaints should be investigated to determine the veracity.

The January 17 & 18, 2006 meetings held by Ms. Gotcher, Northern Division DON and Ms. Melton, Northern Division Human Resource Administrator were by invitation and conducted in open forum. I supervised approximately forty to forty two employees at the ERMF. According to Ms. Gotcher, there were approximately twenty to twenty five staff interviewed, six to eight staff made complaints against me. Some staff that were interviewed reported they felt attacked in their efforts to support my administration. There was an additional seventeen to twenty two employees that were not interviewed and did not have complaints. This concludes that only a small percentage of the employees were dissatisfied. During Ms. Gotcher's follow up meeting with ERMF staff on March 8, 2006, she identified areas of concern on both sides.

The alleged grievance filed against me on March 9, 2006, was reported as sustained by you. I had no knowledge of the complaint nor was I allowed an opportunity to respond to the alleged charges.

RECEIVED

Fisher-200180

My evaluation for June 2005 indicates an inconsistency of what is written in this letter in regards to my communication skills. The evaluation review shows I occasionally exceeds in focusing on the situation/issue/behavior not the person. Puts the interests of other before self-interest. Does not discriminate. Avoids conflict of interest. Maintains constructive relationships. Respects others. Shares knowledge and information with others. Is successful in building long-term customer relationships. Demonstrates effective interpersonal skills, solve problems fairly and effectively, seeks staff input and serves as a role model.

As you indicated in the event that the second Agency (Elite) was unable to supply nurses, I was then to provide a contact person to the Supplemental Representative. I did not refuse to follow your instructions. There is supporting documentation on March 28, 2006 that I complied to your request. Per my conversation with the Supplemental Representative the statement "only if I were not available" is not true.

In the March 10, 2006 meeting you did not request that I meet with the Assistant Nurse Managers (ANM) at a minimum of once per week or more if needed. Documentation between you and myself on March 24, 2006 supports an obvious miscommunication of your expectations during the meeting.

In February 2006, I was not requested to meet with you two - three times a week to keep you abreast of problems/issues and request your assistance as needed. In March 2006, the ERMF Practice Manager, Medical Director and myself requested to met with you and the HV Sr. Cluster Practice Manager to discuss our concerns and your obvious dissatisfactions but you refused to meet with us. On March 27, 2006, I needed to speak with you and asked via email "can I give you a call" but you never responded. Despite the lack of communication, I have kept you abreast of problems/issues and requested your assistance as needed.

On March 13, 2006, some parts of my evaluation were misrepresented. When the evaluation was given to me for input, you did not provide a specific time frame for me to return it. I later responded to your email explaining why it had taken ten days to return. My tone was not accusatory. As your actions in my April 11, 2006 grievance supports my statement. In my opinion, neither of the charges display an insubordinate attitude or failure to follow your instructions.

My performance evaluation should be based on meeting established goals and behavioral expectations. According to my semi-annual evaluation presented on March 13, 2006, you failed to cite either of your alleged charges for February 2006, failure to adhere to your request or for March 10, 2006, direct violation of your instructions. In my opinion, if those were areas of your concern, they should have been noted on my evaluation.

I did not refuse to accept any accountability for my lack of action for the better part of the preceding eighteen months. As discussed, I was interested in mentoring and providing an opportunity for the ANM to grow and to learn in her position. She was given specific detail goals each evaluation period. You expressed concern in regards to three ANMs and instructed Ms. Adams, NM and myself to provide our respective ANMs with letters of expectation. From your point of view, and in comparison, Ms. Adams, NM showed no accountability for her lack of action for the better part of the preceding three plus years. Further comparison, the other ANMs that was under Ms. Adams' supervision, according to you, is still less than an effective. In this case; Ms. Adams showed no accountability for her lack of action for the preceding six plus years.

My communication with the HV, Ferguson (FE), Goree (GR) Cluster Practice Manager suffered after I reported him to his supervisor on June 7, 2004. The HV, FE, GR Management team was requested to met with the HV Cluster Management team regarding our communication on June 14, 2004. The Practice Manager and myself were expected to attend, the attendance of the other team members were optional. As noted on my December 2004 evaluation, our communication improved. The Provider base sick call was implemented six to eight months later. Per your documentation dated March 9, 2006, the process itself, had a significant impact on patient care and on the flow of clinic operations. You stated "the process was pretty bogged down, staff was suffering, and the process has been less than a booming success". I did not resist the process. In fact, I willingly coordinated the changes in the clinic flow necessary to accommodate the provider base sick call. I had

to spend an increase amount of time listening to and diffusing complaints that I received from the nursing staff. I made every effort to encourage their participation in this process. I assisted with verifying competency and helping to complete the CCA's Competency Base Orientation tools (CBO tools). I instructed my ANM to supervise the completion of the CBO tools in my absence. During this time I attended a Supervisor's Training class along with the HV Cluster HR Administrator, Medical Director, Nurse Managers and the EMR Coordinator. In support of the process, I did an presentation on its monetary advantages.

During the cold and flu season in 2004, I did not dismiss patients from the clinic. I assisted in getting the patients seen as this is verified by one of the nurses who was on duty. My involvement did not interfere or interrupt the workflow of the clinic.

In this letter you make a point to cite my failure to hold staff meetings between August 2005 and November 2005 without any consideration of the facts and circumstances that may have impacted formal meeting participation. The reassignment did not occur until mid August 2005. Because of Hurricane Rita, formal staff meetings were not held in September 2005. However in October 2005, I met with the High Security and SAFPF nursing staff. In November 2005, I meet with the ERMF, High Security and SAFPF nursing staff. During the first two to four months at the ERMF, I was training staff on the EMR and readily accessible to all shifts day and night. The staff was made aware of my short term goals to come online and standardize the EMR process and my long-term goal to become paperless. To mention, there were no formal, monthly staff meetings being held at the ERMF prior to my reassignment in August 2005.

A review of your comments in my evaluations for the preceding eighteen months indicates an inconsistency of ineffective management/leadership between what has been written in the letter and what occurred during those evaluation years. My evaluations states that I utilize a proactive style of management. I am supportive of staff. I am a solid professional patient advocate. Exceeded target in taking personal responsibility for handling issues and concerns. Occasionally exceeds in providing clinical and administrative supervision to facility staff using effective principles of management and leadership.

In your letter of intent, you stated "a pattern of performance has been identified that represents significant areas of deficiencies in my performance". Per UTMB Human Resource Disciplinary Policy 3.10.1, for continued failure to meet performance expectations, formal progressive disciplinary should be initiated. I have not received any levels of formal disciplinary for any of your alleged charges.

Since January 5, 2006, there has been a clear succession of your harassing behavior. Without other means of resolution, I filed a formal grievance against you on April 10, 2006. I received your letter of intent to demote me on April 11, 2006.

In closing, I believe that your intention to demote me is clearly an act of discrimination. A review of facts by a neutral fact finder will demonstrate that your reasons and rationale are based solely upon intent to subject me to different terms and conditions of employment because of my race. Further, I believe an impartial review of the facts will demonstrate that you have gone out of your way to create a humiliating, offensive and hostile work environment for me by subjecting me to different terms and conditions of employment than those enjoyed by similarly situated non-black Nurse Managers.

Mr. Watson, I believe the charges cited for this demotion are without merit. I'm asking that this proposed demotion be rescinded.

Sincerely,

Jacklyn L. Fisher, RN

# EXHIBIT 12

Fisher-200183



David Watson, RN
Huntsville District Nurse Manager

UTMB Correctional Managed Care

May 2, 2006

Jacklyn Fisher, RN
Estelle Facility
University of Texas Medical Branch at Galveston
UTMB Correctional Managed Care

Dear Ms. Fisher:

I have carefully reviewed your response regarding my intent to demote. I found nothing compelling in your response to alter the decision to demote you.

However, I have made the decision that you will be demoted to the position of Assistant Nurse Manager rather than Nurse Clinician III as originally intended. You will be assigned to the Wynne Unit and answer directly to Cluster Nurse Manager Kim Roddey. In addition, you will be reassigned to District Nurse Manager Carol Warren. Your salary will be $65,352.00, annualized. This action will be effective on May 6, 2006.

You have the right to appeal my decision under the UTMB Human Resources Appeal Policy 3.10.2. If you wish to do so, you must contact Sandy Rader, Human Resources Administrator within five (5) working days.

Sincerely,

David Watson, RN
District Nurse Manager

# EXHIBIT 13

Fisher-200185

　　　　Page 1 of 1

 **Texas Board** *of*
**Nurse Examiners**

# Registered Nurse – Verification Results

## FISHER , JACKLYN LYNETTE
HUNTSVILLE TX  77340

**Texas Initial Licensure Date:**
9/22/1993
**Licensure Status:**
CURRENT - 6/30/2008

**Compact Texas License:**
NO

**Current Disciplinary Action (if applicable):**
NONE

---

**Total Finds: 1**

Board of Nurse Examiners
333 Guadalupe #3-460
Austin, Texas  78701

Office: (512) 305-7400

**Fisher-200186**

# EXHIBIT 14

Fisher-200187

All Disciplinary Actions Against Nurses in Huntsville Area from 2003 to Present

| FACILITY | EMPLOYEE NAME | JOB CLASS | RACE | UPDATE DATE | CATEGORY OF DISCIPLINARY ACTION | REASON FOR DISCIPLINARY ACTION |
|---|---|---|---|---|---|---|
| Byrd | Archibald, James | RN | Black | 6/10/08 | Written Reminder | Attendance |
| Byrd | Archibald, James | RN | Black | 8/22/08 | Written Reminder | Failure to follow nursing inventions for patient care |
| Huntsville | Burns, Tabitha | PCA | Black | 4/14/06 | Written Reminder | Attendance |
| Eastham | Owens, Teshelle | PCA | Black | 6/0/06 | Written Reminder | Attendance |
| Estelle | Fraser, Jackie | RN - WM | Black | 8/09/06 | Demotion (Mid to ANM) | Ineffective communication, insubordinate attitude, failure to deliver instructions, ineffective leadership/management |
| Garza | Freeman, Patricia | LVN | Black | 9/06/06 | Written Reminder | Failure to provide appropriate patient care |
| Estelle | Hamilton, Embratia | PCA | Black | 2/02/06 | Suspension | Attendance |
| Estelle | Hamilton, Embratia | PCA | Black | 12/17/04 | Written Reminder | Attendance |
| Ellis | Harris, Lisa | PCA | Black | 7/6/07 | Termination | Theft of medications |
| Huntsville | Jenkins, Gwendolyn | PCA | Black | 8/10/07 | Termination | Failure to property security narcotics, unprofessional behavior |
| Huntsville | Jenkins, Jessie | LVN | Black | 11/7/06 | Termination | Failure to accurately pass the Patient Interviewing and Examination Tests |
| Estelle | Johnson, Antionette | Medical Assistant | Black | 10/17/06 | Termination | Offender Relationship |
| Estelle | Kelly, Allyson | Nurse Assistant | Black | 10/81/04 | Written Reminder | Attendance |
| Estelle | Kelly, Allyson | Nurse Assistant | Black | 11/10/04 | Suspension | Attendance |
| Huntsville | Kelly, Roselyn | RN - ANM | Black | 3/24/06 | Demotion (ANM to Staff RN) | Failure to meet instruments performance expectations |
| Huntsville | Kelly, Roselyn | RN - ANM | Black | 3/31/06 | Written Reminder | Failure to property assess and intervene with suicidal patient |
| Huntsville | Kelly, Michelle | RN - ANM | Black | 2/11/06 | Written Reminder | Failure to accurately count sharps/instruments and record missing item |
| Holliday | Malone, Anita | PCA | Black | 7/6/07 | Written Reminder | Attendance |
| Estelle | Moore, Debra | LVN | Black | 5/17/06 | Written Reminder | Attendance |
| Holliday | Nixon, Elvira | PCA | Black | 12/21/04 | Written Reminder | Attendance |
| Holliday | Nixon, Elvira | PCA | Black | 4/10/06 | Decision Day | Attendance |
| Huntsville | Osborne, Alma | LVN | Black | 2/01/06 | Written Reminder | Attendance |
| Holliday | Pasqua, Saeeda | PCA | Black | 12/21/04 | Written Reminder | Attendance |
| Estelle | Pope, Patricia | PCA | Black | 9/19/06 | Written Reminder | Unprofessional Behavior |
| Huntsville | Powell, Erin | PCA | Black | 11/10/06 | Written Reminder | Attendance |
| Holliday | Powell, Erin | PCA | Black | 5/00/06 | Suspension | Attendance |
| Holliday | Toler, Katherine | LVN | Black | 6/9/06 | Written Reminder | Attendance |
| Holliday | Toler, Katherine | LVN | Black | 9/9/05 | Decision Day | Attendance |
| Holliday | Toler, Katherine | LVN | Black | 5/4/06 | Resigned in lieu of Termination | Attendance |
| Byrd | Tubbs, Nicole | PCA | Black | 1/18/06 | Written Reminder | Unprofessional behavior, leaving duty post w/o authorization, violation of pharmacy policy, security violations |
| Estelle | Wagoner, Bridgette | PCA | Black | 4/1/06 | Decision Day | Attendance |
| Estelle | Wagoner, Bridgette | PCA | Black | 5/9/06 | Written Reminder | Attendance |
| Wynne | Whitney, Marcella | PCA | Black | 7/9/06 | Written Reminder | Attendance |
| Estelle | Anderson, Marianne | RN | White | 8/1/07 | Decision Day | Attendance |
| Holliday | Andrews, Amber | PCA | White | 6/27/05 | Written Reminder | Absent Care and Unprofessional Behavior |
| Holliday | Andrews, Amber | PCA | White | 12/27/07 | Written Reminder | Attendance |
| Holliday | Andrews, Amber | PCA | White | 2/1/07 | Decision Day | Attendance |
| Huntsville | Andrews, Heather | LVN | White | 10/0/06 | Decision Day | Attendance |
| Huntsville | Andrews, Heather | LVN | White | 2/18/06 | Written Reminder | Attendance |
| Wynne | Arnold, Kenny | RN | White | 6/27/07 | Termination | Failure to follow narcotic inventories for patient care |
| Wynne | Arnold, Kenny | RN | White | 9/04/05 | Written Reminder | Failure to count sharps at end of shift |
| Estelle | Bailey, Tina | PCA | White | 2/12/08 | Termination | Unprofessional behavior, insubordination, refusing racial commands |
| Estelle | Barton, William | PCA | White | 6/6/08 | Termination | Unprofessional behavior, insubordination |
| Wynne | Beacham, Rhonda | PCA | White | 2/18/04 | Termination | Offender Relationship |
| Eastham | Brophy, Caren | RN - ANM | White | 9/1/06 | Demotion (ANM to Staff RN) | Falsification of sharps logbook |

Fisher-200188

All Disciplinary Actions Against Nurses in Huntsville Area from 2003 to Present

| LAST NAME | FIRST NAME | EMPLOYEE TITLE | RACE/ETHNICITY | DISCIPLINARY ACTION | DATE | REASON/DESCRIPTION |
|---|---|---|---|---|---|---|
| Estelle | Cooper, Van | RN | White | Termination | 6/9/04 | Failure to properly assess and provide care |
| Estelle | Crosby, Margaret | LVN | White | Written Reminder | 9/1/04 | Failure to meet minimum performance expectations/assessment of patient |
| Ferguson | | LVN | White | Written Reminder | 11/8/04 | Unauthorized Leave, Occurrences |
| Wynne | Copelin, Donnie | LVN | White | Suspension | 1/7/05 | Failure to administer medications to patients |
| Wynne | Eretta, Kim | RN - ANM | White | Resigned in lieu of Term during probationary period | 4/14/04 | Ineffective leadership, enjoyed favoritism, |
| Ellis | Eastham, Enfeld | LVN | White | Written Reminder | 12/20/04 | Attendance |
| Eastham | Gibson, Barbara | PCA | White | Termination | 8/23/04 | TDCJ Security Clearance Revoked |
| Estelle | Harris, Daniel | RN | White | Written Reminder | 1/30/04 | Failure to accurately and completely document patient's condition |
| Estelle | Harris, Marty | RN - RN | White | Written Reminder | 1/9/04 | Failure to follow supervisor's instructions |
| Ferguson | Henley, Jason | LVN | White | Resigned in lieu of Termination | 4/23/04 | Offender reaction/falsification of med. Record/improper deliver of meds/assaulting sick call requests |
| Estelle | Holliday | PCA | White | Decision Day | 7/26/04 | Attendance |
| Estelle | Holliday | PCA | White | Written Reminder | 3/24/05 | Attendance |
| Holliday | Hughes, Donna | LVN | White | Written Reminder | 1/22/07 | Attendance |
| Estelle | Huval, Sandra | LVN | White | Written Reminder | 2/4/04 | Failure to count sharps at end/unprofessional behavior |
| Eastham | Latham, Donna | LVN | White | Termination | 4/29/04 | TDCJ Security Clearance Revoked |
| Estelle | Lee, Barbara | LVN | White | Written Reminder | 1/17/04 | Failure to follow properly administer medications and documents patients condition |
| Holliday | Lee, Olivia | Medical Assistant | White | Written Reminder | 6/10/04 | Failure to follow dress code and unprofessional behavior |
| Estelle | Lee, Olivia | LVN | White | Termination | 9/7/04 | Job Abandonment |
| Estelle | Lindley, Rebecca | PCA | White | Written Reminder | 8/1/04 | Attendance |
| Byrd | Lindley, Rhonda | LVN | White | Written Reminder | 9/9/04 | Unprofessional behavior |
| Estelle | Loridar, Nancy | RN | White | Written Reminder | 3/14/07 | Failure to meet minimum performance expectations/assaulting a patient |
| Estelle | McMahon, Freida | RN | White | Written Reminder | 1/20/04 | Attendance |
| Estelle | McMahon, Freida | RN | White | Decision Day | 1/1/04 | Attendance |
| Estelle | McMahon, Freida | Medical Assistant | White | Termination | 4/1/04 | Attendance |
| Estelle | Maverick, Cindy | Medical Assistant | White | Written Reminder | 10/1/04 | Attendance |
| Ellis | Parker, Suzanne | RN | White | Decision Day | 4/4/04 | Unprofessional Behavior |
| Eastham | Powers, Nadia | RN | White | Termination | 8/22/04 | TDCJ Security Clearance Revoked |
| Wynne | Raley, Terri | LVN | White | Written Reminder | 6/11/05 | Attendance |
| Holliday | Ramo, Willam | LVN | White | Written Reminder | 1/2/04 | Attendance |
| Estelle | Rowe, Paul | LVN | White | Written Reminder | 7/22/04 | Attendance |
| Estelle | Rye, Patrisia | RN | White | Written Reminder | 7/21/04 | Unprofessional Behavior |
| Estelle | Stoll, Joanne | LVN | White | Written Reminder | 7/22/04 | Attendance |
| Estelle | Tarbutton, Helen | RN | White | Written Reminder | 7/29/04 | Insubordination, failure to follow call in procedures and supervision instructions |
| Estelle | Thornton, Mary | LVN | White | Resigned in lieu of Termination | 10/1/04 | Failure to utilize nursing practices for patient care |
| Estelle | Williams, Debra | PCA | White | Termination | 9/4/04 | Offender Relationship, imitating and lending |
| Estelle | Wood, Anthony | Medical Assistant | White | Written Reminder | 12/3/04 | Unprofessional Behavior |
| Estelle | Wood, Isabel | Medical Assistant | White | Termination | 5/22/04 | Unprofessional Behavior, inappropriate patient care |
| Huntsville | Wright, Levita | RN - RN | White | Suspension | 9/30/05 | Unauthorized LVN to alter patient record |

Fisher-200189