IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACKIE FISHER | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:08-cv-01273 |
| | § | |
| UNIVERSITY OF TEXAS | § | Jury Demanded |
| MEDICAL BRANCH and | § | |
| DAVID WATSON | § | |
| Defendants. | § | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# **TABLE OF CONTENTS**

Table of Authorities. ............................................................................................. iii

I.     NATURE AND STAGE OF THE PROCEEDINGS.. ............................................ 1

II.    STATEMENT OF FACTS . .................................................................................. 1

III.   STATEMENT OF THE ISSUES AND STANDARD OF REVIEW. .................... 8

V.     ARGUMENT AND AUTHORITY ....................................................................... 10

VI.    SUMMARY JUDGMENT EVIDENCE. ............................................................. .27

VII.   CONCLUSION ................................................................................................... 32

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986).. .................................................. 9,10

*Burell v. Dr. Pepper*, 482 F.3d 408 (5th Cir. 2007). ................................................................. 23

*Costa v. Desert Palace, Inc.*, 539 U.S. 90 (2003). ..................................................................... 23

*Cruz v. Aramark Svcs., Inc.,* 213 Fed. Appx. 329 (5th Cir. 2007). ..................................... 20

*DeAngelis v. El Paso Municipal Police Officers Ass'n,* 51 F.3d 591 (1995). ................... 13

*Depree v. Saunders,* 2009 U.S. App. LEXIS 24969 (Nov. 12, 2009). ............................ 25

*Ellison v. Brady,* 924 F.2d 872 (9th Cir. 1991). ................................................................... 13

*Evans v. City of Houston,* 246 F.3d 344 (5th Cir. 2001). .................................................... 18

*Fabela v. Socorro Indep. Sch. Dist.*, 329 F. 3d 409 (5th Cir. 2003). ................................ 15

*Faragher v. City of Boca Raton,* 524 U.S. 775 (1998). ...................................................... 13

*Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803 (5th Cir. 1996). ...................... 12, 13

*Felton v. Polles,* 315 F. 3d 470 (5th Cir. 2002). ...................................................................26

*Fontenot v. Upjohn Co.,* 780 F.2d 1190 (5th Cir. 1986). ................................................... 9,10

*Gee v. Principi,* 289 F.3d 342 (5th Cir. 2002). ........................................................... 19, 22

*Harris v. Forklift Sys., Inc.,* 510 U.S. 17 (1993). ......................................................... 12, 13

*Harville v. Westward Communs., LLC,* 433 F.3d 428 (5th Cir. 2005). ............................. 13

*Hockman v. Westward Commc'ns, LLC,* 407 F.3d 317 (5th Cir. 2004). ............................ 13

*Jones v. Flagship Int'l,* 793 F.2d 714 (5th Cir. 1986). ........................................................ 12

*Jones v. Robinson Prop. Group, LP.* 427 F. 3d 987 (5th Cir. 2005). ...................................25

*Lauderdale v. Texas Dept. Of Criminal Justice,* 512 F.3d 157 (5th Cir. 2007). ...... 12, 13, 25

*Machinchick v. PB Power, Inc.,* 398 F 3d 345 (5th Cir. 2005)................................................*23*

*Mato v. Bauldauf* , 267 F.3d 444 (5th Cir. 2001)......................................................... 16

*McCoy v. City of Shreveport,* 492 F. 3d 551 (5th Cir. 2007).................................................17

*Okoye v. Univ. of Houston, Health Sci. Ctr.,* 245 F.3d 507(5th Cir. 2001). ..................... 10

*Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75 (2003)........................................... .

*Patrick v. Ridge*, 394 F.3d 311 (5th Cir. 2004)................................................... 14

*Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133 (2000).................................... 22

*Richard v. Cingular Wireless, LLC*, 233 Fed. App. 334 (5th Cir. 2007). .................... 15, 16

*Russell v. McKinney Hosp. Venture*, 235 F.3d 219 (5th Cir. 2000) .................................. 23

*Smith v. Universal Health Svcs., Inc.*, 454 F.2d 154 (5th Cir. 1997). ................................. 20

*Southard v. Tex. Board of Crim. Justice,* 114 F. 3d 539 (5th Cir. 1997)...........................25

*St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993). ...................................... 23

## CONSTITUTION

U. S. CONSTITUTION, First Amendment............................................................. 25

U. S. CONSTITUTION, Fourteenth Amendment....................................................25

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACKIE FISHER | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:08-cv-01273 |
| | § | |
| UNIVERSITY OF TEXAS | § | Jury Demanded |
| MEDICAL BRANCH and | § | |
| DAVID WATSON | § | |
| Defendants. | § | |

PLAINTIFF'S RESPONSE IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

I. <u>NATURE AND STAGE OF THE PROCEEDINGS</u>

Plaintiff, Jackie Fisher (Fisher), African American, brings claims under Title VII against the University of Texas Medical Branch (UTMB) for violations of Title VII including racial discrimination, hostile environment, and retaliation. Fisher additionally asserts claims against her former supervisor David Watson (Watson) and UTMB for violations under 42 U.S.C. §1981 and 42U.S.C. §1983 for violations equal protection and free speech.  Defendants, UTMB and Watson, deny each of Plaintiff's allegations.

Discovery is closed.  Trial is set with Docket Call scheduled for February 22, 2010.

II. <u>STATEMENT OF FACTS</u>

Ms. Fisher was first hired in October of 2000 as Assistant Nurse Manager for UTMB Managed Care at the Estelle Unit of TDCJ.  Fisher had been an Assistant Nurse Manager for UTMB for almost three years, most recently at the Wynne Facility,  when she

applied and was selected as the Cluster Nurse Manager for Goree-Huntsville-Ferguson Facilities in August of 2003.[1]    Fisher was transferred to the Estelle Regional Medical facility (ERMF) in August of 2005, also as Nurse Manager.[2] At all relevant times until his resignation, effective October 23, 2006, David W. Watson, Senior Cluster Nurse Manager, Caucasian, was Ms. Fisher's immediate supervisor.[3]

In August of 2003, Watson expressed to Fisher concerns he had about an African American Assistant Nurse Manager, Ms. Kelly.   Three months later Watson directed Fisher to prepare a Corrective Action Plan and write up for Kelly.[4]  Watson had addressed concerns about Kelly with the previous Cluster Nurse Manager, Ms. Adams, white, but did not require Adams to prepare a Corrective Action Plan for Kelly.  In the same token, Watson did not permit Fisher to discipline the white employees who required attention.

In February of 2005, Nurse Drake, white, tried to complain to Watson about her Assistant Nurse Manager, Ms. Pipkin, also white.   Watson insisted that the white supervisor be present to defend herself, so he could hear both sides of the story.[5] Likewise, in April of 2005, another Nurse, Parker, white, attempted to complain to Watson about her white supervisors Nurse Manager Wright and Brophy.   Watson insisted that

---

[1]  Ex. 5,  Fisher Position Announcements.

[2]  Ex. 1, ¶¶1-13.

[3]  Ex. 6, E-mail re Watson's Resignation (Oct. 11, 2006).

[4]  Ex. 1, ¶¶ 14-20

[5]  Ex. 7, E-mail Exchange re Pipkin and Drake (Feb. 2005).

Parker must first confront her supervisors directly before he would discuss the situation with her.[6]

Shortly thereafter, in May of 2005, Fisher questioned Watson as to the Corrective Action Plan he had directed for an African American Assistant Nurse Manager when a white Assistant Nurse Manager had admitted the same involvement in the activity and yet was not disciplined.[7]   Also in May of 2005, African American Nurse Hagan requested a transfer to Fisher's unit and Watson denied the transfer citing current a disciplinary violation for attendance, although Watson permitted white employees with the same pending attendance violations to transfer.[8]

Staffing vacancy rates and turnover rates for the Goree-Huntsville-Ferguson Facilities had been an ongoing problem, and one that Watson specifically brought to his supervisor, Mary Gotcher's attention on July 25, 2005.  Watson identified the reasons for the staffing problems, none of which were attributed or even hinted to be the fault of Ms. Fisher. [9]   In August of 2005, Watson shuffled the Cluster Nurse Mangers around and Fisher was transferred to the Estelle Regional Medical Facility (ERMF).[10]   Most of the Nurse Managers were administratively reassigned, except for Kim Roddey, white, for whom Watson excused not moving because she was "new," even though she had been hired as Cluster Nurse Manager about the same time Fisher had been hired in 2003.[11]

---

[6]  Ex. 8, E-mail Exchange re Parker, Brophy, and Wright (April 19, 2005).
[7]  Ex. 9, E-mail to Watson as to equal Corrective Action Plans (May, 18, 2005).
[8]  Ex. 1, ¶¶21-23.
[9]  Ex. 10.  Memo Watson to Gotcher re Request for Agency Staff (July 25, 2005).
[10]  Ex. 1, ¶¶24-31.
[11]  Ex. 1, ¶¶28-31.

Sometime during the week of October 24, 2005, Watson confronted Fisher directly and asked her if she thought he was prejudiced.  Fisher responded that some of his decisions were discriminatory and that he was biased in the exercise of authority.  She also added that he focused on the person instead of the problem. [12]

During interviews on January 4, 2006, Watson proposed rehiring Nurse Ford, white, at the request of Nurse Manager Wright, white.   Fisher was quite vocal about the disparate treatment Watson showed between black and white employees and reminded Watson that he had refused a requested transfer to Nurse Kelly, black, purportedly for the same reasons that previously led to Ford's departure. [13]

Apparently "several little birds" under Fisher's supervision then visited Watson on January 9, 2006.[14]  That same day, Watson sent a e-mail to the Estelle RMF Building, High Security and SAFP nursing staffs informing them that Mary Gotcher, Director of Nursing, Northern Region, would be at the Estelle's RMF on January 17, 2006 and January 18, 2006 to hear opinions, concerns and ideas, while Ms. Fisher was not available.[15]   Gotcher and the HR Administrator of the Northern Region, Georgia Melton, gathered information for two days, much of it solicited by Watson or Assistant Nurse Manager Aguilera and Watson's informant, none of it in writing.  Staff later reported to Fisher that they felt attacked in their efforts to support Ms. Fisher.[16] Only the staff under

---

[12]  *Id.*

[13]  Ex. 1, ¶*; Ex. 13, E-mail from Watson to Wright re Ford (Jan. 5, 2006).

[14]  Ex. 11, E-mail Watson to Gotcher, Radar & Melton (Jan. 9, 2006); Notice to Staff of Meetings (Jan. 9, 2006).

[15]  Ex. 1, ¶¶39-46.

[16]  Ex. 12, Fisher's Hostile Environment Grievance against Watson  (April 10, 2006).

Ms. Fisher's supervision was interviewed.  None of the staff under Ms. Bond, the Estelle Facility Nurse Manger, white, was interviewed, nor were any other Nurse Managers under Watson's direction subjected to this inquisition.  Gotcher and Melton later met with Ms. Fisher at her request.

On March 7, 2006, Watson gave Fisher a poor quarterly evaluation.[17] A follow-up meeting to the inquisition was held with Ms. Fisher's staff about March 8, 2006, during which it was made clear that the investigation was focused on her.... "the investigation was evaluated and the outcome has been that there was "fault" found on both sides - administrative and the employees." Specific expectations for Ms. Fisher were presented to her and her staff. Very general expectations were issued to the staff, although not to anyone in particular.  A 30-60 day follow-up was set.[18]

Ms. Fisher was to be out on medical leave from March 27, 2006 until April 11, 2006 and covered her responsibilities accordingly.[19]  Despite her absence, Watson sent a detailed e-mail to Fisher harping about his unfounded concerns she was failing to follow his directions.[20]

During her almost six years of employment with UTMB, Ms. Fisher had never filed a formal grievance or appeal of any matter,[21] however, on April 10, 2006, Ms. Fisher filed

---

[17] Ex. 30, Fisher's Quarterly Evaluation (Mar. 7, 2006).
[18] Ex. 14, Gotcher Meeting Agenda and attendance (Mar. 8, 2006).
[19] Ex. 15, E-mail Exchange between Fisher and Watson (March 27, 2006).
[20] Ex. 16, E-mail from Watson to Fisher (Apr. 3, 2006).
[21] Ex. 1, ¶¶98-99.

and delivered an internal grievance against Watson citing a hostile environment because of her race.[22]

The very next day, on April 11, 2006 Watson notified Ms. Fisher of his intention to demote her from Nurse Manager to a Nurse Clinician III effective April 13, 2006.[23] Watson cited issues from as far back as 2003, none of which had been the subject of prior disciplinary action or even notation.[24]

Ms. Fisher filed a second grievance against Watson on April 11, 2006 for harassment and hostile environment.[25]  As a result of Watson's intent to demote, a hearing was scheduled for April 12, 2006 and Ms. Fisher was demoted two levels to a Nurse Clinician III.  She was reassigned to the Wynne Facility to work under Kim Roddey, the Cluster Nurse Manager for Wynne.[26]  Although Ms. Fisher had planned to come back to work early from FMLA leave, she then chose not to do so and took the remaining FMLA leave to which she was entitled and did not return to work until June 21, 2006. [27]

Ms. Fisher appealed this demotion to Nurse Clinician III on April 24, 2006.[28]  Also on April 24, 2006, Ms. Fisher contacted the EEOC, completed and signed the Charge Intake Questionnaire complaining of racial discrimination.[29]   That same day, Watson

---

[22] Ex. 12, Fisher's Hostile Environment Grievance against Watson  (April 10, 2006).
[23] Ex. 17, Notice of Intent to Demote (April 11, 2006).
[24] Ex. 1, ¶¶100-01.
[25] Ex. 18, Fisher's 2nd Harassment and Hostile Environment Grievance against Watson (April 11, 2006).
[26] Ex. 20, Radar letter to Fisher Re Demotion (April 12, 2006).
[27] Ex. 1, ¶¶130-34.
[28] Ex. 19, Appeal of Demotion (April 24, 2006).
[29] Ex. 23, EEOC Intake Questionnaire (Apr. 24, 2006).

purportedly sustained a grievance filed against Ms. Fisher on March 3, 2006, of which Fisher had no prior knowledge, nor had she ever been asked for her side of the story.[30]

On May 2, 2006, Watson notified Ms. Fisher that "there was nothing compelling in her response to alter his decision to demote her, although he demoted her to an Assistant Nurse manager effective May 6, 2006, instead of a Nurse Clinician III as planned.[31]  Ms. Fisher appealed the demotion to Assistant Nurse Manager on May 11, 2006.[32]

Ms. Fisher executed a formal Charge of Discrimination with the EEOC on June 2, 2006 asserting discrimination based on race as well as retaliation.[33]

Kim Roddey, Nurse Manager for the Wynne Facility issued Ms. Fisher a letter of expectation on June 26, 2006[34] and job description for the Assistant Nurse Manager position at the Wynne Facility.[35]  Roddey left her employment with UTMB in August of 2006, and was not replaced.  Ms. Fisher then functioned as the Nurse Manager while still being paid and titled as Assistant Nurse Manager.[36]

Ms. Fisher again appealed her demotion and the two grievances on July 3, 2006,[37] but UTMB had already transferred Ms. Fisher's grievances, appeal and EEOC Charge to their Office of Equal Opportunity and Diversity (OEO&D) on June 26, 2006.[38]

---

[30] Ex. 35, Watson letter to Nurse Darby sustaining grievance against Fisher purportedly filed on March 3, 2006 (Apr. 24, 2006).

[31] Ex. 21, Watson Letter re demotion to Assistant Nurse Manager (May 2, 2006).

[32] Ex. 22, Fisher Appeal of Demotion to Assistant Nurse Manager (May 11, 2006).

[33] Ex. 24, EEOC Charge (June 2, 2006).

[34] Ex. 25, Letter of Expectation from Roddey (June 26, 2006).

[35] Ex. 26, Position Description for Assistant Nurse Manager at Wynne (June 28, 2006).

[36] Ex. 1, ¶¶ 133-35.

[37] Ex. 28,  Appeal of Demotion to Pemberton (July 3, 2006).

[38] Ex. 27, Pemberton Letter to Fisher re OEO &D (June 26, 2006)

Fisher challenged that responses to her April 10, 2006 and April 11, 2006 grievances and appeal had not been forthcoming or timely under the UTMB policy.[39]

In September of 2006, Fisher again grieved against Watson for racial discrimination and in October of 2006 filed another grievance based on Watson's retaliation.[40]

Although Watson filed a very detailed response to the OEO&D investigator,[41] on February 7, 2007, Melvin Williams, the UTMB OEO&D Investigator issued his findings and concluded that "foundation did not exist for the demotion of Ms. Fisher...we [UTMB] did not follow progressive discipline that should have been followed....Ms. Fisher was not allowed to confront her accusers....nor were the accusers expected to take their complaints to her...in the chain of command....no one saw the merit of actually investigating the allegations made [against Ms. Fisher]....A number of individuals have handled this situation poorly and have caused Ms. Fisher to face professional embarrassment for unjustified reasons....[42]  Never has this counsel seen such an indictment by an internal investigation.

On March 9, 2009, Ms. Fisher was sent a letter notifying her of "UTMB's resolution" of her April 2006 complaints of racial discrimination and retaliation and notice

---

[39] Ex. 34, Fisher letter to Radar re Time frames for grievance responses (Apr. 24, 2006); Ex. 39, Fisher's Letter to Radar re Time frames for Grievances and Appeal (May 3, 2006).

[40] Ex. 43, Fisher Discrimination Grievance (Sept. 11, 2006); Ex. 44 Fisher Retaliation Grievance (Oct. 9, 2006).

[41] Ex. 45 Watson's Responses to OEO&D (Dec. 2006).

[42] Ex. 46, Melvin Williams OEO&D Findings re Fisher's Discrimination Complaints, pp. F-20000506-07  (February 7, 2007).

that she would receive a check in the gross amount of $3,907.41 for back pay from May 6, 2006 through December 15, 2006.  Ms. Fisher decline to accept this as a full resolution.

Shortly thereafter, Fisher received yet another letter and another notice of intent to demote to a Nurse Clinician III.  This was dated March 21, 2007 and issued by Mary Gotcher.[43]  This was later dropped.

On November 6, 2007, the EEOC issued Letter of Determination finding racial discrimination and retaliation.  Ms. Fisher filed this lawsuit on April 25, 2008.

### III.  STATEMENT OF THE ISSUES AND STANDARD OF REVIEW

ISSUE I:    Whether Ms. Fisher has established a *prima facie* case of disparate treatment racial discrimination under Title VII.

ISSUE II:   Whether Ms. Fisher has *prima facie* case of hostile environment racial discrimination under Title VII.

ISSUE III:  Whether Ms. Fisher has established a *prima facie* case of retaliation under Title VII.

ISSUE IV:   Whether Ms. Fisher has demonstrated intentional discrimination and retaliation by showing that Defendants' proffered explanations for their conduct are false or not worthy of credence.

ISSUE V:    Whether Defendants are liable on Fisher's Claims under 42 U.S.C.§1981 and 1983.

ISSUE VI:   Whether Watson is entitled to Qualified Immunity.

Summary judgment is proper under FEDERAL RULES OF CIVIL PROCEDURE, Rule 56(c), when the pleadings, the discovery and disclosure materials on file, and any affidavits show there is no genuine issue as to any material fact....only then the movant is

---

[43] Ex. 48, Demotion Letter from Gotcher (March 21, 2007).

entitled to judgment as a matter of law.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,

245 (1986).  The standards for reviewing summary judgment are well established.[44]

Rule 56 requires that the movant in a summary judgment motion must establish the

absence of any issue of material fact, even though the other party would be required not

only to adduce evidence on, but to prove the existence of, the critical facts at the trial.

*Fontenot v. Upjohn Co.,* 780 F. 2d 1190, 1197 (5th Cir. 1986). [45]

The district court "must draw all reasonable inferences in favor of Plaintiff and it

may not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson*

*Plumbing Prods., Inc.,* 530 U.S. 133, 150 (2000).[46]  It is permissible for the trier of fact to

infer the ultimate fact of discrimination from the falsity of the employer's explanation,

---

[44] The non-movant must present affirmative evidence in order to defeat a properly
supported motion for summary judgment.  *Id.*   However, to survive the defendant's
summary judgment motion, the Plaintiff need only present evidence from which a jury
might return a verdict in her favor.  If the Plaintiff presents such evidence, there is a
genuine issue of fact that requires a trial.  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242,
257 (1986).  The district court must examine the record to determine whether the
Defendants have demonstrated the absence of a genuine issue of material fact and whether
UTMB and/or Watson are entitled to judgment as a matter of law.  *Celotex Corp.
v. Catrett,* 477 U.S 317, 325 (1986); FED. R. CIV. P., 56(c).

[45] The non-movant must, either by its own affidavits, or by the depositions, answers
to interrogatories, admissions on file, or by submitting opposing evidentiary documents
setting out specific facts showing the existence of a genuine issue for trial.  *Celotex Corp.
v. Catrett,* 477 U.S. 317, 324 (1986).  A genuine issue of material fact exists if the
summary judgment evidence is such that a reasonable jury could return a verdict for the
non-movant.  *Anderson,* 477 U.S. at 249.  "[A]ll facts and evidence must be taken in the
light most favorable to the non-movant.  *LeMarie v. La. Dept. of Trans. & Dev.*, 480 F. 3d
383, 387 (5th Cir. 2007).

[46] The district court should review a summary judgment motion critically to
determine whether either inference or circumstantial evidence might suffice to create the
existence of a factual dispute about the claims.  *Fontenot v. Upjohn Co.,* 780 F. 2d 1190,
1195 (5th Cir. 1986). At the summary judgment stage, the evidence of the non-movant is
to be believed. *Anderson,* 477 U.S. at 255.

thus rejection of the Defendants' proffered reasons will permit the trier of fact to infer the ultimate fact of intentional discrimination.  *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000). Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions and not those of a judge. *Anderson,* 477 U.S. at 255.[47]

In this case, the disputed issues of fact must be resolved in favor of Plaintiff Fisher.

## V. ARGUMENT AND AUTHORITY

### A.   *Plaintiff Makes a Prima Facie Case of Title VII Racial Discrimination*

To demonstrate a prima case of racial discrimination, the Plaintiff must show: (1) she is a member of a protected class; (2) she is qualified for the position at issue; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class,  or was treated less favorably than similarly-situated employees outside the protected class.  *Okoye v. Univ. of Houston, Health Sci. Ctr.,* 245 F. 3d 507, 512-13 (5th Cir. 2001).  Defendants admit that Fisher meets the first two prongs of the prima facie case, but denies that Plaintiff has met prongs three and four.

---

[47]Additionally, this Court should disregard evidence favorable to the moving party that the jury is not required to believe. *Laxton v. Gap,* 333 F. 3d 572, 577 (5th Cir. 2003)*(citing Russell v. McKinney Hosp. Venture* 235 F. 3d 219, 222 (5th Cir. 2000). Credence, however, must be given to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from *disinterested witnesses. Laxton v. Gap,* 333 F. 3d 572, 577 (5th Cir. 2003)*(citing Wallace v. Methodist Hosp. Sys.,* 271 F. 3d 212, 219 (5th Cir. 2001)(emphasis added).  The appropriate inquiry at the summary judgment stage is whether there are any genuine factual issues that can properly be resolved only by a fact finder because they may reasonably be resolved in favor of either party. *Anderson,* 477 U.S. at 250-252.

It is rather stunning that Defendants do not admit that Fisher suffered an adverse employment action. She was stripped of her Nurse Manager title, her responsibilities, her staff, and her professional dignity and indeed, also suffered a decrease in her pay. Prong three is also clearly demonstrated in this case.

After she was demoted, Fisher was replaced by a white Nurse Manager, Nurse McCartney.[48] Thus, demonstrating prong four is also easily accomplished. Fisher was treated also significantly less favorably than the white Nurse Managers outside her protected class. When there were complaints against white Nurse Managers under Watson's supervision, Watson demanded that the complaining employees at least attempt to resolve the issues directly with her first before he got involved. Not so with Ms. Fisher.

Although the vacancy rates and turnover rates were high in all of Watson's facilities, he singled Fisher out from among the white nurse managers to discipline her only for those problems.[49] In fact, the UTMB-CMC Executive Summary acknowledged that this was an ongoing problem....not one only of Ms. Fisher's administration.[50] Additionally, with the exception of Nurse Roddey, all the Nurse Managers had been reassigned in August of 2005. None of them had been in these new positions long enough to specifically account for the turnover rates and vacancy rates which existed. The monthly rates give the best example of how Fisher compared to the white Nurse Managers

---

[48]  Ex. 1.

[49]  Ex. 33,  Vacancy Rates Watson's District Facilities 2005-2006;  Ex. 31, Historical Detail Turnover Report 2005 & 2006. .

[50]  Ex. 32, UTMB CMC Executive Summary August 2006.

under Watson's supervision, which was favorable.  Yet Fisher was the only black Nurse Manager and the only one singled out and demoted for vacancy rates and turnover rates.[51]

**B.      *Plaintiff Makes a Prima Facie Case of Title VII Hostile Environment***

To support a hostile work environment claim, the Plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term condition or privilege of employment and was so pervasive or severe as to alter her conditions of employment and create an abusive working environment; and, (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Farpella-Crosby v. Horizon Health Care*, 97 F. 3d 803, 806 (5th Cir. 1996)(citing *Jones v. Flagship Int'l,* 793 F. 2d 714, 719-20 (5th Cir. 1986)).   In the case of supervisor harassment, as here, the plaintiff need not demonstrate the fifth prong.

To be actionable, the harassment "must be sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment." *See Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)  To create a hostile work environment, the "severe or pervasive" harassment must be objectively and subjectively offensive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993).  Whether the harassment is severe or pervasive - is stated in the disjunctive.  A single isolated in incident can be so egregious that it alters the terms, conditions or privileges of employment and may satisfy the forth prong of the hostile work environment elements.  *Lauderdale v. Texas Dept. Of Criminal Justice,* 512 F. 3d 157, 163 (5th Cir.

---

[51]  Ex. 33,  Vacancy Rates Watson's District Facilities 2005-2006.

2007)(citing *Harville v. Westward Communs., LLC,* 433 F.3d 428, 434-35 (5th Cir. 2005).

Harassment need not be severe *and* pervasive.  Frequent incidents of harassment, while

not severe, can reach the level of pervasive and can indeed alter the terms, conditions or

privileges of employment such that the forth prong is also meet by pervasive conduct.

"Thus, the required showing of severity or seriousness of the harassing conduct varies

inversely with the pervasiveness or frequency of the conduct." *Lauderdale v. Texas Dept.*

*Of Criminal Justice,* 512 F. 3d 157, 163 (5th Cir. 2007)(quoting *Ellison v. Brady,* 924 F. 2d

872, 878 (9th Cir. 1991).    For a Plaintiff's hostile work environment claim to be

actionable, the environment created by the challenged conduct must be of such a nature

that it is both objectively and subjectively offensive, "one that *reasonable person* would

find it hostile or abusive and one that the victim in fact did perceive to be so."

*Lauderdale v. Texas Dept. Of Criminal Justice,* 512 F. 3d 157, 163 (5th Cir. 2007)(citing

*Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998)(quoting *Harris v. Forklift Sys.,*

*Inc.,* 510 U.S. 17, 21-22 (1993)).  Whether an environment is hostile or abusive is judged

by "the totality of circumstances."    *Farpella-Crosby v. Horizon Health Care*, 97 F. 3d

803, 806 (5th Cir. 1996)(citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993);

*DeAngelis v. ElPaso Municipal Police Officers Ass'n,* 51 F. 3d 591, 594 (1995)).

"[T]he harassment must be so serve or pervasive that it destroys a protected

classmember's opportunity to succeed in the work place." *Hockman v. Westward*

*Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004).  The incidents of racial discrimination

in this case were aimed both at Ms. Fisher and other black nurses and rendered her

working environment pervasively hostile.

Once the requirements of a *prima facie* case of discrimination are established, a rebuttable presumption arises that the employer unlawfully discriminated against the Plaintiff on the basis of his protected class. *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004).

In this case, Ms. Fisher was confronted with Watson's discriminatory attitude in 2003 by the manner in which he treated Nurse Kelly. Watson tried to influence Fisher's perception of Kelly during the first month Fisher became her supervisor.   Watson demanded Fisher prepare a Corrective Action plan against Kelly, even though Fisher felt there were white nurses who needed corrective action more than Kelly, but Watson would not permit her to discipline them.   Watson's disparate treatment of black nurses was pervasive and offensive to Ms. Fisher, as a supervisor and as an African American.   It became very apparent to Fisher that Watson knew his racial biases showed, when he asked Fisher if she thought her was "prejudice."   In the January staff meeting, Watson's disparate treatment of black and white nurses became so glaring unacceptable to Fisher and she was compelled to point out Watson's different standards for black and white employees.   After that incident, Watson secured the assistance of Mary Gotcher in his witch hunt and became obsessed with causing professional harm to Ms. Fisher....which he did.   The April 11, 2006 intent to demote, the May 2, 2006 actual demotion, was followed by Watson's questionable involvement in a Peer Review of Ms. Fisher's professional conduct.

One need only to look at the time line created by the exhibits in this case to see the drip, drip, drip of the UTMB water on Ms. Fisher's forehead.   Severe, probably not, pervasive, very much so.    And it did not stop.   UTMB offered a final resolution of the matter with a notice merely stating that Fisher would receive a small amount of back pay....without so much as a "we're sorry," "this shouldn't have happened," or a "hey, let's work together better in the future," kind of statement.[52]   Insult to injury.   It is not surprising that Ms. Fisher rejected the offer as an unacceptable resolution.   So what did UTMB do next.....they sent her another notice of intent to demote her (again) to a Nurse Clinician III.[53]

Was the environment severe...probably not..pervasive...you bet.

**C.    *Plaintiff Establishes Makes a Prima Facie Case of Title VII Retaliation***

To establish a claim of retaliation under TITLE VII, 42 U.S.C. §200e-3(a), the Plaintiff must demonstrate that : (1)she engaged in a protected activity; (2) an adverse employment activity occurred; and (3) a causal link exists between the protected activity and the adverse employment action.   *Richard v. Cingular Wireless, LLC*, 233 Fed. App. 334, 336-7 (5th Cir. 2007)(*quoting Fabela v. Socorro Indep. Sch. Dist.*, 329 F. 3d 409, 414 (5th Cir. 2003)).   In cases where the Plaintiff relies only on circumstantial evidence, the *McDonnell Douglas* burden shifting framework applies.   When the employee satisfies the three elements of a prima facie case of retaliation, the employer has the burden of

---

[52]   Ex. 47, Pemberton Letter re back pay (March 9, 2007).

[53]   Ex. 48, Demotion Letter from Gotcher (March 21, 2007).

production to state a legitimate non-retaliatory reason for the negative employment action. If the employer meets this burden of production, the employee is left with the ultimate burden of proving that the adverse employment action would not have taken place, but for her engagement in the protected activity. In other words, "the employee must show that the employer's putative justification is unworthy of credence and is instead a pretext for retaliation. *Richard v. Cingular Wireless, LLC*, 233 Fed. App. 334, 336-7 (5th Cir. 2007)(*quoting Mato v. Bauldauf*, 267 F. 3d 444, 452 (5th Cir. 2001).

In this case, Ms. Fisher engaged in protected activity on behalf of other black employees, as well as in behalf of herself.  In particular, on January 4, 2006, in a staff meeting, Ms. Fisher openly opposed Watson's intent to rehire Nurse Ford, a "problem" employee *albeit* a white employee who was supported by a white Nurse Manger. Watson had previously denied a transfer to African American Nurse Freeman, because of the same "problem"behavior,[54] and Fisher called him on it.  Additionally, Fisher had previously opposed Watson's discriminatory behavior towards African American employees in other instances, to the point he questioned her in October of 2005 as to whether she thought he was "prejudiced."   Fisher responded then that some of Watson's decisions were discriminatory and that he was biased in the exercise of authority.  She also added that he focused on the person instead of the problem. [55]

---

[54] Ex. 1.

[55] Ex. 1.

Ms. Fisher also exercised her federally protected right and on April 10, 2006, and grieved against Watson, claiming that he discriminated against her because of her African American race.[56]

Ms. Fisher unquestionably suffered an adverse employment action when she was demoted to Nurse Clinician III on April 12, 2006 and given a salary reduction. [57] Likewise, Fisher continued to assert her federally protected right to complain of racial discrimination when she filed her second grievance against Watson on April 11, 2006, and when she filed an appeal of her demotion on April 24, 2006.

Again, Fisher unquestionably suffered an adverse employment action when she was then demoted to Assistant Nurse Manager on May 2, 2006 and given a salary reduction.[58] An adverse employment action is any action that might have reasonably dissuaded a reasonable worker from making or supporting a charge of discrimination. *McCoy v. City of Shreveport,* 492 F. 3d 551, 559 (5th Cir. 2007).

It could have gone on, and on....and  so it does.

In each instance the causal link is established in a number of ways in this case. The determination of the existence of the causal link requires an examination of three factors.  (1) the employees' past disciplinary record; (2) whether the employer followed its typical policies and procedures in the adverse employment action; and (3) the temporal proximity between the employees' conduct and the negative employment action.  *Nowlin*

---

[56] Ex. 12,     Fisher's Hostile Environment Grievance against Watson  (April 10, 2006).

[57] Ex. 17,     Notice of Intent to Demote (April 11, 2006).

[58] Ex.  Watson Letter re demotion to Assistant Nurse Manager (May 2, 2006).

*v. Resolution Trust,* 33 F. 3d 498, 508 (5th Cir. 1994).  Ms. Fisher had nothing in her files to support the allegations of the April 11, 2006 letter noticing her of Watson's intent to demote her.  In fact, until January of 2006, Watson was quite supportive of Fisher.  In July of 2005, he noted the problems with vacancy rates and turned over rates under Ms. Fisher's administration, but in no way associated it with her management style or ability to communicate.[59]

UTMB totally failed to follow its progressive discipline policy regarding the alleged offenses against Ms. Fisher.  In some instances, Watson was dragging up incidents which took place some three years prior, for which there had been no write ups or discipline or even warnings at the time.[60]  While failure to follow established progressive discipline policies may not be a adverse employment action, standing alone, it is certainly evidence of a causal connection to retaliation and pretext.

Temporally, the adverse employment actions were close in time to Fisher's exercise of her right to complain of racial discrimination, whether it was against other black employees or against herself.  Close timing between the protected activity and the adverse employment action may provide the causal connection required to demonstrate a *prima facie* case of retaliation.  *Evans v. City of Houston*, 246 F.3d 344, 355-56 (5th Cir. 2001).  Even a lapse of up to several months has been found sufficient to satisfy the casual link.  *Id.* at  354.  In *Gee v. Principi* 289 F.3d 342,

---

[59] Ex. 10, Memo Watson to Gotcher re Request for Agency Staff (July 25, 2005).
[60] Ex. 17,  Notice of Intent to Demote (April 11, 2006); Ex. 42, UTMB Discipline & Dismissal Policy IHOP 3.10.1.

347 (5th Cir. 2002*), the timing between the employment action and the protected activity was nearly two years, although it was held that such lack of proximity did not entitle the employer to summary judgment.   In this case it was merely from January 4, 2006 until April 11, 2006 or from April 10, 2006, or from April 11, 2006 & April 24, 2006 until May 2, 2006.   While the ultimate burden of persuading the trier of fact remains at all times with the plaintiff, it is clear that the ultimate fact of retaliation may be inferred from the falsity of the explanation.   *Gee,* 289 F.3d at 348 (citing *Reeves*, 530 U.S. at 146-48).   Under the *Reeves* standard, the plaintiff may withstand a motion for summary judgment on his retaliation claim without adducing additional, independent evidence of retaliation.   *Gee,* 289 F.3d at 348.

The OEO&D Investigator found that Watson had been a strong supporter of Ms. Fisher's until early 2006....at least until she stood up to him about rehiring Nurse Ford in January of 2006.[61]

The EEOC investigative evidence, including the resulting Letter of Determination with a finding of retaliation also offers evidence of the causal link and prima facie case.[62]   Admittedly, the EEOC record is not conclusively binding on the court, and may be given no more weight than any other admissible evidence. *Cruz v. Aramark Svcs., Inc.,* 213 Fed. Appx. 329, 332 (5th Cir. 2007)(quoting *Smith*

---

[61]   Ex. 46,  Melvin Williams OEO&D Findings re Fisher's Discrimination Complaints p. 200502 (February 7, 2007).

[62]   Ex. 65       EEOC Letter of Determination Discrimination & Retaliation (November 6, 2007)

*v. Universal Health Svcs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1997).   However, in reviewing all the evidence in the record in the light most favorable to Fisher and drawing all reasonable inferences in his favor, the Court should at least acknowledge the EEOC determination as some evidence that intentional discrimination and retaliation took place in this case.   Additionally, UTMB's own investigation by the OEO&D supports a prima facie case and finding of retaliation.

**D.      *Defendant UTMB Cannot Meet the Reasonable Belief and Good Faith Exceptions for it Conduct***

Defendants would like to rely on their assertion that they formed of a reasonable belief and a good faith exception for their discriminatory and retaliatory conduct toward Ms. Fisher.   While this might be their only avenue for some saving grace in this case, it fails as totally unbelievable.   Defendants go so far as to state that the reasons behind their conduct were "factually based as well as true and correct."   There are numerous errors and omissions which belie Defendants' actions.   One need not speculate as to motives in order to debunk the "reasonable belief" and "good faith" exceptions espoused by Defendants.

Mary Gotcher and Georgia Melton went to the Estelle RMF in January 2006 to conduct an investigation, without any plan, no structure....a witch hunt, if you will.   The people who voluntarily spoke to them were all white and fewer than half the staff.   The investigation was based on "complaints" about Ms. Fisher's communication skills, but there was nothing in her file to indicate she had communication problems.    As a result of the expectations from March 8, 2006, Ms. Fisher was given 30-60 days before follow-up, however, no follow-up ever came and she was demoted before the expiration.   During this

time she was also out on sick leave and had no opportunity to work on and evidence the improvement which was demanded.

Watson offered almost no documentation of Ms. Fisher's management style and lack of communication skills.

Watson did allude to a grievance filed against Ms. Fisher by Nurse Darby on March 3, 2006, but there is no record of this anywhere in Fisher's file, nor was she ever given notice of the grievance until after it was sustained on April 24, 2006.[63]   Additionally, UTMB policy would have required that this March 3, 2006 grievance be resolved by mid-March, long before its April 24, 2006 memo sustaining it.[64]

The management staff at the Estelle RMF was not even consulted.   William Samarneh, Practice Manager and Bobby Melvin Vincent, MD, Medical Director were both very supportive of Ms. Fisher and perplexed by not being included in the investigatory proceedings.

How can you evidence a reasonable belief and good faith effort if you don't investigate by any other method than an undocumented "bitching session," scheduled behind someone's back, with only the malcontents encouraged to participate, and only the white ones at that?

**E.**     ***The Rationale for Defendants' Conduct Should be Disbelieved as Pretexual***

*Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147-48 (2000) holds that intentional

---

[63]   Ex. 35.  Watson Letter to Nurse Darby sustaining grievance against Fisher purportedly filed March 3, 2006 (April 24, 2006).

[64]   Ex. 40, UTMB Grievance Policy IHP 3.10.3.

discrimination may be inferred from the falsity of the employer's explanations.  While the ultimate burden of persuading the trier of fact remains at all times with the plaintiff, it is clear that the ultimate fact of retaliation may also be inferred from the falsity of the explanation.  *Gee v. Principi,* 289 F. 3d 342, 348 (5th Cir. 2002)(citing *Reeves,* 530 U.S. at 146-48).

A *prima facie* case combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated.  *Reeves,* 530 U.S. at 148.  While *Reeves* involved a judgment as a matter of law, the standard for granting summary judgment is the same.  *Id.* at 150 (quoting *Liberty Lobby,* 477 U.S. at 250-51).  Proof that the employer's explanation is unworthy of credence is only one form of circumstantial evidence and it is quite probative of intentional discrimination.  *Reeves,* 530 U.S. at 147.  Proof that the employer's explanation is false can be quite persuasive and offers considerable assistance to the fact finder in concluding that real reason for the conduct was intentional discrimination.  *Id.* Once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to articulate the actual reason for its decision.  *Id.* at 146-48 (2000)*;  Gee v. Principi,* 289 F. 3d 342, 348 (5th Cir. 2002).  This circumstantial method of proving discrimination is not only sufficient, but can be more "certain, satisfying, probative and persuasive" than direct evidence of discrimination.  *Costa v. Desert Palace, Inc.*, 539 U.S. 90 (2003)(citations omitted).

When an employer offers inconsistent explanations for its employment decisions at

different times, the fact finder may infer that the employer's reasons are pretextual. G*ee,* 289 F.3d at 347-48.   In *Burrell v. Dr. Pepper,* 482 F. 3d 408, 413-15 (5th Cir. 2007). Failure of the employer to follow its own progressive disciplinary policy infers pretext. *Machinchick v. PB Power , Inc.,* 398 F. 3e 345, 355 n. 29 (5th Cir. 2005).

In *Reeves,* the Supreme Court resolved and eliminated the confusing pretext plus standard which had emanated from its holding in *Hicks.   Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000)(citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993)).   Shortly after *Reeves* was announced, this Court confirmed that generally proof of pretext and a *prima facie* case is sufficient to survive a sufficiency of the evidence challenge.   *Russell,* 235 F.3d at 222-23.   There may be narrow exceptions in which a *prima facie* case and pretext will not suffice to establish intentional discrimination such as when the record conclusively reveals some other non-discriminatory reason, but these instances are rare.  *Id.* at 229.

Here, the pretext is overwhelming:

1)     Defendants failed to utilize the mandatory UTMB progressive discipline policy.[65]

2)     Defendants brought up incidents from as far back as 2003 for which there was no contemporaneous documentation and no disciplinaries in Ms. Fisher's file.

3)     Defendants acted without investigation or verification of the facts.

---

[65]  Ex. 42, UTMB Discipline & Dismissal Policy IHP 3.10.1.

4)      Defendants purportedly based decisions on vacancy rates and turnover rates, but the actual documentation of these rates does not support their conduct.[66]

5)      The Defendants solicited, actually cultivated, only the white malcontents, while the management team at the facility was quite supportive of Ms. Fisher.

6)      Defendants failed to timely document the verbal complaints.

7)      Defendants failed to timely address a purported grievance filed against Ms. Fisher and did not given Fisher a chance to respond, nor were the results documented.

8)      Defendants carried out an inquisition against Ms. Fisher, with no guidelines and no measure of the results.

9)      Defendants failed timely respond to Ms. Fisher's grievances and failed to follow the UTMB grievance policy by not timely responding. [67]

10)     The EEOC found that UTMB racial discrimination and retaliation.

11)     UTMB's own internal investigation found that the demotion was unfounded.

12)     Fisher had previous excellent evaluations and no disciplinaries.

---

[66] Ex. 31, 32, 33.
[67] Ex. 40, UTMB Grievance Policy IHP 3.10.3.

**F.    Defendants are Liable to Fisher for Violations of 42 U.S.C. §1981 and for 42 U.S. §183 Equal Protection Violations.**

Title VII Discrimination and §1981 employ the identical burden shifting frame work for evaluation discrimination claims, so the two may be evaluated simultaneously. *Jones v. Robinson Prop. Group, LP,* 427 F. 3d 987, 992 (5th Cir. 2005).

Under 42 U.S.C. §1981, a demotion qualifies as an ultimate employment decision. *Sharp v. City of Houston,* 164 F. 3d 923, 933 n. 21 (5th Cir. 1999).

Under 42 U.S.C. §1983 Due Process Claim, the plaintiff must show a violation of rights secured by he Constitution or laws of the United States and demonstrate a deprivation of that rights by a person acting under color of state law.  *Lauderdale v. Tex. Dept. of Criminal Justice,* 512, F. 3d 157, 165 (5th Cir. 2007).  It is undisputed that Watson was acting under color of state law in his capacity as  Fisher's Supervisor.  Racial harassment and discrimination in public employment violate the Equal Protection Clause of the Fourteenth Amendment and are therefor actionable under *§1983. Southard v. Tex. Board of Criminal Justice*, 114 F. 3d 539, 550 (5th Cir. 1997).

**G.    Fisher Prevails on her Claims of First Amendment Free Speech Because She her Actions were Not only in her Own Personal Interest**

To establish a Constitutional claim for First Amendment retaliation, the employee must demonstrate***:*** (1) she suffered an adverse employment action; (2) that her speech involved a matter of public concern; (3) that the Plaintiff's interest in commenting outweighs the Defendants' interest in promoting workplace efficiency; and that Plaintiff's speech motivated the Defendants' action. *Depree v. Saunders,* 2009 U.S. App. LEXIS 24969, p.6 (5th Cir. Nov. 12, 2009)(*citations omitted*).

### H.      *Watson is not Entitled to Qualified Immunity*

The doctrine of qualified immunity shields state officials, performing discretionary

functions, from actions which are objectively reasonably in light of then clearly established law,

but not from all actions. *Felton v. Polles*, 315 F.3d 470, 477, (5th Cir. 2002).

Qualified immunity will not protect state officials if the plaintiff can show that "violated

clearly established statutory or constitutional rights of which a reasonable person would have

known."*McGregor v. Louisiana St. Univ. Bd of Supervisors,* 3 F.3d 859, 862, (5th Cir.

1993)(citing *Brown v. Texas A & M Univ.,* 804 F. 2d 327, 332 (5th Cir. 1986)).   Qualified

immunity is analyzed under a two prong process.  *Felton* at 477*; Kelly v. Foti,* 77 F.3d 819, 821

(5th Cir. 1996).    First, the plaintiff must state a claim which alleges violations of a clearly

established constitutional or federal statutory right. *Felton* at 477; *Siegert v. Gilley*, 500 U.S. 226,

229 (1991). The plaintiff may satisfy the first prong by alleging the claimed deprivation with a

high level of generality.  *Thompson v. Upshur County, Tex.,* 245 F. 3d 447, 459 (5th Cir. 2001).

Under §1981, Fisher alleged racial harassment under 42 USC  §1981.  Under 42 USC

§1983, Fisher alleged a violations of the Fourteenth Amendment and the right to employment

absent racial discrimination, as required and defined by Texas law.  TEX. LABOR CODE §21.125.

Fisher's facts support the first prong under both §1981 and §1983.

If the court finds the official's conduct violated a clearly established constitutional or

federal right, the court must then determine whether the conduct was nonetheless objectively

unreasonable in light of established law at the time of the infraction.  *Felton* at 477; *Kelly v. Foti,*

77 F.3d 819, 821 (5th Cir. 1996).    This second prong may be further broken down into two

separate inquiries: (1) what was the state of law at the time concerning the plaintiff's claimed

right; and, (2) were the contours of that law were sufficiently clear that a reasonable official

would understand that he was violating plaintiff's rights. *Felton* at 477, *quoting Hare v. City of Corinth, Miss.,* 135 F. 3d 320, 325 (5th Cir. 1998); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The relevant dispositive inquiry is whether it would be a clear to a reasonable supervisor that Watson's conduct was unlawful in the situation he confronted. *Saucier v. Katz,* 535 U.S. 194, 196 (2001).   This second inquiry focuses on the particulars of the challenged conduct and/or the factual setting in which it took place.  *Pierce v. Smith,* 117 F.3d 866, 872 (5th Cir. 1997) Determination as to whether qualified immunity lies must take into account the functions and responsibilities of the particular defendant in his capacity as a state officer as well as the purposes of 42 U.S.C. §1983. *Sheuer v. Rhodes*, 416 U.S. 232, 243 (1974).

There is at lease at fact issue as to whether Watson's actions against Fisher were "objectively reasonable," especially in light of the situation.  Watson is not entitled to qualified immunity.

## V. SUMMARY JUDGMENT EVIDENCE

### TABLE OF CONTENTS
### FOR PLAINTIFF'S APPENDICES

**APPENDIX I**

Exhibit 1     Declaration of Jackie Fisher (Dec. 14, 2009).

**APPENDIX II**

Exhibit 2     Deposition Jackie Fisher (August 26, 2009).

**APPENDIX III**

Exhibit 3     Deposition of David Watson (August 28, 2009).

**APPENDIX IV**

    Exhibit 4      Deposition of Mary Gotcher (August 27, 2009).

**APPENDIX V**

    Exhibit 5      Fisher Position Announcements.

    Exhibit 6      E-mail re Watson's Resignation (Oct. 11, 2006).

    Exhibit 7      E-mail Exchange re Pipkin and Drake (Feb. 2005).

    Exhibit 8      E-mail Exchange re Parker, Brophy, and Wright (April 19, 2005).

    Exhibit 9      E-mail to Watson re Equal treatment of white and African American Assistant Nurse Managers (May 18, 2005).

    Exhibit 10    Memo Watson to Gotcher re Request for Agency Staff (July 25, 2005).

    Exhibit 11    E-mail Watson to Gotcher, Radar & Melton (Jan. 9, 2006); Notice to Staff of Meetings (Jan. 9, 2006).

    Exhibit 12    Fisher's Hostile Environment Grievance against Watson  (April 10, 2006).

    Exhibit 13    E-mail from Watson to Wright re Ford (Jan. 5, 2006).

    Exhibit 14    Gotcher Meeting Agenda and attendance (Mar. 8, 2006).

    Exhibit 15    E-mail Exchange between Fisher and Watson (March 27, 2006).

    Exhibit 16    E-mail from Watson to Fisher (Apr. 3, 2006).

    Exhibit 17    Notice of Intent to Demote (April 11, 2006).

Exhibit 18    Fisher's 2nd Harassment and Hostile Environment Grievance against
              Watson  (April 11, 2006).

Exhibit 19    Appeal of Demotion (April 24, 2006).

Exhibit 20    Radar letter to Fisher Re Demotion (April 12, 2006).

Exhibit 21    Watson Letter re demotion to Assistant Nurse Manager (May 2, 2006).

Exhibit 22    Fisher Appeal of Demotion to Assistant Nurse Manager (May 11, 2006).

Exhibit 23    EEOC Intake Questionnaire (Apr. 24, 2006).

Exhibit 24    EEOC Charge (June 2, 2006).

Exhibit 25    Letter of Expectation from Roddey (June 26, 2006).

Exhibit 26    Position Description for Assistant Nurse Manager at Wynne (June 28,2006).

Exhibit 27    Pemberton Letter to Fisher re OEO &D (June 26, 2006).

Exhibit 28    Appeal of Demotion to Pemberton (July 3, 2006).

Exhibit 29    UTMB Position statement to the EEOC (Aug. 8, 2006).


**<u>APPENDIX VI</u>**

Exhibit 30    Fisher's Quarterly Evaluation  (March 7, 2006).

Exhibit 31    Historical Detail Turnover Report 2005 & 2006.

Exhibit 32    UTMB CMC Executive Summary August 2006.

Exhibit 33    Vacancy Rates Watson's District Facilities 2005-2006.

Exhibit 34    Fisher Letter to Radar re Time Frames for grievance Responses ( April 24, 2006).

Exhibit 35    Watson Letter to Nurse Darby sustaining grievance against Fisher purportedly filed March 3, 2006 (April 24, 2006).

Exhibit 36    Letter from Nurse Sarah Benavides re 2004 Incident (April 11, 2006).

Exhibit 37    Fisher's Meeting Agendas Estelle Unit (2005 & 2006).

Exhibit 38    Kim Roddey's Meeting Agendas Wynne Unit (2005 & 2006).

Exhibit 39    Fisher's Letter to Radar re Time frames for Grievances and Appeal (May 3, 2006).

Exhibit 40    UTMB Grievance Policy IHOP 3.10.3.

Exhibit 41    UTMB Appeals Policy IHOP 3.10.2.

Exhibit 42    UTMB Discipline & Dismissal Policy IHOP 3.10.1.

Exhibit 43    Fisher Discrimination Grievance (Sept. 11, 2006).

Exhibit 44    Fisher Retaliation Grievance (Oct. 9, 2006).

Exhibit 45    Watson's Responses to OEO&D (Dec. 2006).

Exhibit 46    Melvin Williams OEO&D Findings re Fisher's Discrimination Complaints (February 7, 2007).

## APPENDIX VII

Exhibit 47    Pemberton Letter re back pay (March 9, 2007).

Exhibit 48    Demotion Letter from Gotcher (March 21, 2007).

Exhibit 49     Watson Letter of Expectation (Sept. 17, 2004).

Exhibit 50     Notice of Peer Review  (March 21, 2005).

Exhibit 51     UTMB Peer Review Policy (Aug. 1995).

Exhibit 52     BNE Letter (May 19, 2005).

Exhibit 53     Fisher Response (July 8, 2005).

Exhibit 54     BNE Letter (Oct. 18, 2005).

Exhibit 55     Death Summary (Dec. 15, 2005).

Exhibit 56     BNE Letter (Jan. 13, 2006)

Exhibit 57     Fisher Response (February 10, 2006).

Exhibit 58     Fisher Response to BNE (May 12, 2006).

Exhibit 59     Agreement to Order of BNE (Nov. 8, 2006).

Exhibit 60     Final Order of BNE (Dec. 1, 2006).

Exhibit 61     Fisher Compliance with Course work Requirement (Mar. 23-25 of 2006).

Exhibit 62     BNE Acknowledgment of Completion of Requirements (March 26, 2007).

Exhibit 63     First Amended EEOC Charge (April 3, 2007).

Exhibit 64     UTMB Position Statement (May 14, 2007).

Exhibit 65     EEOC Letter of Determination Discrimination & Retaliation (November 6, 2007).

VII.  <u>CONCLUSION</u>

For these reasons, Plaintiff asks the court deny Defendants' Motion for Summary

Judgment.

Respectfully submitted,

LAW OFFICE OF JO MILLER, P.L.L.C.
505 North Main
Carriage House
Conroe, Texas 77301
Tel: (936) 539-4400
Fax: (936) 539-4409
jmiller@jomillerlaw.com

By: <u>*/s/   Jo Miller*                                    </u>
                      JO MILLER
                      State Bar No. 00791268
                      Southern District No. 20385
                      Attorney in Charge for Jackie Fisher,
                      Plaintiff

## NOTICE OF ELECTRONIC FILING

I, Jo Miller, do hereby certify that I have electronically submitted for filing, a true and correct copy of the above and foregoing document in accordance with the Electronic Case Files System of the Southern District of Texas, on this the 14th day of December, 2009.

*/s/ Jo Miller*  _____

JO MILLER

## CERTIFICATE OF SERVICE

I hereby certify that, a true and correct copy of the foregoing *"Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment"* was served electronically to:

> Sam Lively
>
> Assistant Attorney General
>
> General Litigation Division
>
> P.O. Box 12548, Capitol Station
>
> Austin, Texas 78711
>
> Attorney for Defendants
>
> (512) 463-2120 phone
>
> (512) 320-0667 fax
>
> sam.lively@oag.state.tx.us

*/s/ Jo Miller*  _____

Jo Miller, Attorney for Jackie Fisher

-33-