**IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| JACKIE FISHER | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:08-CV-01273 |
| | § | |
| UNIVERSITY OF TEXAS | § | Jury Demanded |
| MEDICAL BRANCH and | § | |
| DAVID WATSON | § | |
| | § | |
| *Defendants*. | § | |

**DEFENDANTS' REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Defendants University of Texas Medical Branch and David Watson reply in support of Defendants' Motion for Summary Judgment, and would state and show the court the following:

**I.      Contentions present in Plaintiff's response brief and companion declarations do not conform to her record admissions or live pleadings.  This court should not permit them to satisfy her prima facie showings or her burdens created by Defendants' articulation and showing of their legitimate, non-retaliatory and nondiscriminatory reasons for their challenged decisions and conduct.**

Contrary to Plaintiff's record admissions and her live pleadings, Plaintiff now claims in her declaration and in her formal response to the summary judgment motion that she had voiced concerns over treatment of other African American employees by Defendant Watson.  No such factual allegations, however, are noted in Fisher's answers to interrogatories, particularly Number 4. (Attached as Exhibit 6 to  Defendants' original

Motion for Summary Judgment).   Nor does plaintiff's original complaint allege such factual allegation.

Rather, her pleadings -- as adopted by her sworn interrogatory answer -- allege under her First Amendment claim that "Fisher exercised her constitutionally protected right to free speech when she complained of discrimination to the EEOC." (Plaintiff's Original Complaint, paragraph 88). Nor are claims of allegedly  protesting about other African-Americans mentioned in her sworn charge to the EEOC.  (Exhibit 5 attached to Defendants' Motion for Summary Judgment.)  Plaintiff's new-found and contradictory allegations should not be credited to complete a prima facie retaliation claim or to create some fact issue about Defendants' motivations.

More basically, Plaintiff's claims about other African-Americans is contrary to her material, judicial admission about Defendant Watson, that: "[i]n fact, until January of 2006, Watson was quite supportive of Fisher." (emphasis added) (PL Resp. Br. at 18, third sentence from the top.)  Here, Plaintiff admits that Watson supported her and her work at least until January 2006.   Thus, by Plaintiff's own admission, for years -- including after Fisher says that she complained to Watson and others about Watson's alleged mistreatment of African-Americans -- Watson was "quite supportive" of Fisher. Plaintiff nevertheless now ask this court to credit her claim Watson and through him, UTMB, suddenly became unlawful discriminators and retaliators.

**II.**     **The "same actor" inference should apply here to dismiss Plaintiff's unlawful discrimination claims against Defendants.**

It is undisputed that it was Watson who hired Fisher, in 2003, for the nurse manager position from which she was later demoted and which constitutes the gravamen

of her complaint. (Exhibit 1 to Defendants' Reply, page 23: lines 5-7 and page  25: lines 18-25). And, as discussed, even Plaintiff concedes that Watson was "quite supportive" of Fisher until January 2006.  Defendants are entitled here to the same-actor inference. _Brown v. CSC Logic, Inc.,_ 82 F.3d 651 (5th Cir. 1996), _Stover v. Hattiesburg Public School District,_ 549 F.3d 985 (5th Cir. 2008).  Yet Watson and, by extension, UTMB, are now accused of discriminating against Plaintiff due to her race.

Under the facts, Defendants ask this court to apply the Fifth Circuit's position on the same actor inference:  Because the same actor (Watson) who hired and supported the Plaintiff is accused of unlawful discrimination due to his decisions occurring a short time later and about which Plaintiff complaints, a strong inference arises that there was no discriminatory action.  _Bradley v. Harcourt, Brace & Co.,_ 104 F.3d 267 (9th Cir. 1996). Two years is within this time period.  See, _Lowe v.  J.B. Hunt Transportation, Inc_., 963 F.2d. 173 (8th Cir. 1992).  Indeed, even a three year period is appropriately within  the time period to apply the same-actor inference. See, _Schabel  v. Abramson_, 232 F.3d 83 (2d Cir. 2000).  Moreover, the Court is to look at employment actions that favor the Plaintiff, not just the hiring. See, _Coglan v. American Seafoods Co.  L.L.C.,_ 413 F.3d. 1090 (9th Cir. 2005).

The point of the same actor inference is that the evidence rarely is sufficient to find that the employer's asserted justification is false when the actor who allegedly discriminated against the plaintiff had previously shown a willingness to treat the plaintiff favorably. _Goglan_, supra.  Here, Plaintiff admits it was Watson who promoted and was "quite supportive" of her until January of 2006, just a few months before she was demoted.  Therefore, only if a plaintiff can muster "extraordinarily strong showing

of discrimination necessary to defeat the same actor inference" is the case to go to the jury. _Coglan_, supra at 1097.

**III.     Plaintiff's evidence only bolsters Defendants' legitimate, articulated motivations for its decisions affecting Plaintiff's employment.  Otherwise, it is not adequate to rebut Defendants' explanation and affiliated showing in support of summary judgment.**

Plaintiff has offered documents in an effort to show the  vacancy and turnover rates of  the various units in an attempt to show she was treated differently.  Upon examination, however, the exhibits used by Plaintiff actually tend to support Defendants' position and resulting motion for summary judgment relief.  For  instance, Plaintiff's Exhibit 31, CMC, "Turnover Report FY05 and 06," lists units in an (increasing) order of employees (or "full time equivalents," or FTEs) that staff the facility.  Accordingly, the CRMF/Estelle Unit (Plaintiff's unit) is the last one (and had the most employees), whereas the Goree Hunt is listed first (having the fewest). Because Plaintiff's CRMF/Estelle unit had the most employees, its increasing turnover rates of 25.97% (2005) and 27.83% (2006) document a greater number of employees leaving.  The court should also weigh the relative size and complexity of  the CRMF.  Its downward-spiral would, by any reasonable standard, be of more concern and urgency to management than other smaller units.

Plaintiff asserts that  her vacancy reports were not worse.  This is contrary to the cited reports.  Plaintiff's own Exhibit 64 (Fisher 200129) shows that for the Huntsville area units, from August 2005 to January 2006, RMF Estell had 9 of the 19 overall available vacancies for all units, or about one-half of the total.  Moreover, Plaintiff's

Exhibit 64, (Fisher 200188-200189) documents disciplinary action against nursing staff in Huntsville area from 2003 to present.  There is no showing or evidence of unlawful discrimination therein.

Of a different note, as to dealing with Ford, a white nurse, it is undisputed that Watson declined to rehire Ford when Fischer reminded him about Ford's problems.

As to the onsite investigation, the "little birds" cited by Fisher were four (4) emergency room nurses who were threatening to quit over Fisher. This, too, is undisputed.  Again, a mere investigation is not an actionable adverse employment action. Moreover, Watson solicited people to testify on behalf of Fisher.

**The court should note that Plaintiff's Exhibit 64 (Fisher 200126 and 200727) showed that Watson denied a hostile work environment claim of a white nurse, Ford.  (This is  same nurse that Plaintiff claims was treated better in her application for rehire some time later that, although denied,   was somehow evidence of discrimination.)**

Fisher claims that Bonds, a white nurse, working close by was not investigated by Gotcher and Melton.  Bonds facility was only a geriatric center with a very small staff and then only staffed 12 hours a day. (Defendants' Exhibit 3, page 37; lines 11-21) Bonds was a nurse manager (Exhibit 2 to Defendants' Reply, page 60; lines 5-7) whereas Fisher was a cluster nurse manager (Exhibit 2 to Defendants' Reply, page 60; lines 12-19). Bonds simply was not remotely a "nearly identical" employee for adequate comparison to Plaintiff, as the Fifth Circuit requires for summary judgment analysis of race-discrimination cases and claims.

OBJECTIONS TO PLAINTIFF'S EVIDENCE

Defendants object to certain statements in Plaintiff's declaration (Exh. 1 attached to her response).

Defendants object to the portion of Plaintiff's declaration, lines 21-23 because it is based on hearsay and speculation. Line 23 is a conclusory statement with no facts asserted.  Defendants object to lines 44-46 on the grounds that statements are based on hearsay and speculation.

Defendants object to lines 51-43 in that they are speculative as to others' intent and have no basis in fact.

Defendants object to lines 64-65 as this is hearsay.

Defendants object to lines 71-80 as such are speculative, based on hearsay and conclusory.

Defendants object to lines 113-115 as merely conclusory allegations.

Defendants object to lines 120-129 as being conclusory allegations.

Defendants respectfully request these cited lines of Plaintiff's declaration be stricken from the evidence  record and not be used as evidence in this proceeding.

Defendants object to Exhibit 36, Bernavides letter, on the basis hearsay and lack of predicate transfer was approved.

Defendants object to Plaintiff's Exhibit 64, (Fisher 200144, 4th full paragraph starting "[t]here are disgruntled...." as being conclusory and based on hearsay.

Defendants further object to Plaintiffs Exhibit 64, Fisher 20144, 5th paragraph with two sentences on next page (200145) as being conclusory and based on hearsay.

Defendants object to Plaintiff's Exhibit 64, Fisher 200145, 4th full paragraph, starting with "[d]espite all the meetings...." as this paragraph is conclusory and based on hearsay.

Defendants object to Plaintiff Exhibit 64, Fisher 200146, the second to the last full paragraph where Plaintiff alleges matters about Mr. Samarneh and Dr. Vincent as being hearsay and conclusory.

Defendants object to Plaintiff's Exhibit 64, Fisher 200148, 200150, 200151, 200152 as being hearsay and conclusory.

Defendants object to Plaintiff's Exhibit 64, Fisher 200157 and 200158, beginning with the opening words of the last paragraph 200150 "[t]he white nurses" and remaining paragraph of 200158 as being hearsay and conclusory.

Defendants further object to the hearsay in the in the first full paragraph of Plaintiff's Exhibit 64, Fisher 200159 beginning with "Mr. Watson personally . . ." and ending on the next page 200160 with "complaints were ignored."

Defendants object to the very next paragraph, Plaintiff's Exhibit 64, Fisher 200160 as to hearsay statements about dealing with Ms. Roddey.

The next paragraph of Plaintiff's Exhibit 64, Fisher 200160, beginning with the words "[o]n the demotion letter . . ." and ending on the next page with ". . . requested for demotion" is hearsay and conclusory.

Defendants object to the next paragraph of Plaintiff's Exhibit 64, Fisher 200161, "[o]n the  demotion letter, I was also cited . . ." and ending at the bottom of the page on the basis of hearsay and conclusory statements as to how other white managers were

treated, how Ellis/Eastham personnel were handled (Ms. Wright, Ms. Clay Keith or Mr. Lopez, Ms. Porter, Ms. Adams, Mr. Aschberge).

Defendants object to the next paragraph (the first full paragraph) of Fisher Exhibit 64, Fisher 200162 as it is based on hearsay and conclusory.

Defendants further object to the first 3 full paragraphs of Fisher Exhibit 64, Fisher 200163 as being hearsay and conclusory.

Defendants object to Plaintiff's Exhibit 64, Fisher 200164, first full paragraph, "[t]here was an African-American..."as it is hearsay and conclusory.

Defendants object to Plaintiff's 64, Fisher 200165, all 3 paragraphs as being hearsay and conclusory.

Defendants object to Fisher Exhibit 64, Fisher 200169, (Plaintiff's letter of April 24, 2006) third full paragraph beginning "[t]he staff . . ." as it is hearsay and conclusory.

Defendants object to Fisher Exhibit 64, Fisher 200169 fifth paragraph as hearsay and conclusory.

Defendants object to Fisher Exhibit 64, Fisher 200169, the second to the last full paragraph beginning "[t]he January 17 & 18 . . ." as it is hearsay and conclusory as to what some staff may have reported.

Defendants reiterate the previous objections made as to Fisher April 24, 2006 letter set forth above (Plaintiff's Exhibit 64, Fisher 200169, eq seq. above) as this is a second copy of Plaintiff's response.

Defendants request these statement be stricken from the record and not be used as competent summary judgment evidence.

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully pray that their motion be granted  in all things and Plaintiff be denied all relief and for all relief, in law or equity, to which they may be entitled.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division


   /s/ *Sam Lively*
SAM LIVELY
Assistant Attorney General
Texas Bar No. 12435300
General Litigation Division
P. O. Box 12548, Capitol Station
Austin, Texas 78711
Phone No. (512) 463-2120
Fax No. (512) 320-0667

ATTORNEYS FOR DEFENDANT


## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the above and forgoing document has been sent via CM/ECF email, on December 30, 2009, to the following individual:

Jo Miller
505 North Main
Carriage House
Conroe, Texas 77301

   /s/ *Sam Lively*
SAM LIVELY
Assistant Attorney General