IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JACKIE FISHER, § | | |
|     Plaintiff, § | | |
| § | | |
| v. § | | CIVIL ACTION NO. H-08-1273 |
| § | | |
| UNIVERSITY OF TEXAS MEDICAL § | | |
| BRANCH and DAVID WATSON, § | | |
|     Defendants. § | | |

## **MEMORANDUM AND ORDER**

This employment case is before the Court on the Motion for Summary Judgment ("Motion") [Doc. # 33] filed by Defendants University of Texas Medical Branch ("UTMB") and David Watson. Plaintiff Jackie Fisher filed a Response [Doc. # 44] in opposition to the Motion, and Defendants filed a Reply [Doc. # 47]. Having reviewed the record and applied governing legal authorities, the Court **grants** the Motion as to the due process and First Amendment retaliation claims and **denies** the Motion in all other respects.

**I.     BACKGROUND**

Plaintiff, an African-American female, was hired by UTMB as an Assistant Nurse Manager in October 2000. In August 2003, she was promoted to a Cluster Nurse Manager position. In August 2005, Plaintiff was assigned to the Estelle

Regional Medical Facility ("RMF") as a Nurse Manager. Defendant David Watson, Senior Cluster Nurse Manager, was Plaintiff's supervisor until his resignation in October 2006.

Plaintiff alleges that throughout her employment with UTMB, she experienced race discrimination and observed discrimination against others on the basis of their race. On January 4, 2006, Plaintiff complained to Watson about what she perceived as his disparate treatment of employees based on their race. On January 9, 2006, Watson sent an email that Mary Gotcher, Director of Nursing, would be at the RMF later that month to hear opinions, concerns and ideas. Plaintiff alleges that staff at the RMF reported that they felt "attacked" if they supported Plaintiff during this investigation. On March 7, 2006, Watson gave Plaintiff a poor quarterly evaluation.

On April 10, 2006, Plaintiff filed an internal grievance against Watson alleging that he created a hostile environment because of her race. The next day, April 11, 2006, Watson notified Plaintiff that he intended to demote her effective April 13, 2006. Plaintiff filed another internal grievance against Watson on April 11, 2006. Plaintiff was demoted two levels, to Nurse Clinician III. She appealed her demotion on April 24, 2006, and contacted the Equal Employment Opportunity Commission ("EEOC") to file a charge of race discrimination. On May 6, 2006, the demotion was changed to a one-level demotion to Assistant Nurse Manager. Plaintiff appealed this

demotion and filed a formal charge with the EEOC, asserting race discrimination and retaliation. Plaintiff continued to file grievances against Watson through October 2006.

Plaintiff's appeal of her demotion was sustained, and in March 2007, she was offered $3,907.41 for back pay to resolve her claims. Plaintiff declined to accept this offer as a full resolution of her complaints. Later that month, Plaintiff was again notified that she would be demoted to Nurse Clinician III, but the demotion did not occur.

On November 6, 2007, the EEOC issued its Letter of Determination, finding racial discrimination and retaliation.

Plaintiff filed this lawsuit on April 25, 2008. After an adequate time for discovery, Defendants filed their Motion for Summary Judgment. The Motion has been fully briefed and is ripe for decision.

## II.  STANDARD FOR SUMMARY JUDGMENT

Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th

Cir. 1994) (*en banc*); *see also Baton Rouge Oil and Chem. Workers Union v. ExxonMobil Corp.,* 289 F.3d 373, 375 (5th Cir. 2002).  Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Weaver v. CCA Indus., Inc.*, 529 F.3d 335, 339 (5th Cir. 2008).

For summary judgment, the initial burden falls on the movant to identify areas essential to the non-movant's claim in which there is an "absence of a genuine issue of material fact." *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). The moving party, however, need not negate the elements of the non-movant's case. *See Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).  The moving party may meet its burden by pointing out "'the absence of evidence supporting the nonmoving party's case.'" *Duffy v. Leading Edge Products, Inc.*, 44 F.3d 308, 312 (5th Cir. 1995) (quoting *Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 913 (5th Cir. 1992)).

If the moving party meets its initial burden, the non-movant must go beyond the pleadings and designate specific facts showing that there is a genuine issue of material fact for trial. *Littlefield v. Forney Indep. Sch. Dist.*, 268 F.3d 275, 282 (5th Cir. 2001) (internal citation omitted).  "An issue is material if its resolution could affect the

outcome of the action. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *DIRECT TV Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2006) (internal citations omitted).

In deciding whether a genuine and material fact issue has been created, the court reviews the facts and inferences to be drawn from them in the light most favorable to the nonmoving party. *Reaves Brokerage Co. v. Sunbelt Fruit & Vegetable Co.*, 336 F.3d 410, 412 (5th Cir. 2003). The non-movant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *See Diamond Offshore Co. v. A&B Builders, Inc.*, 302 F.3d 531, 545 n.13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden. *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 399 (5th Cir. 2008). Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (citation and internal quotation marks omitted). In the absence of any proof, the court will not assume that the non-movant could or would prove the necessary facts. *Little*, 37 F.3d at 1075 (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

### III.   ANALYSIS

In her Complaint [Doc. # 1], Plaintiff asserts three Title VII claims against UTMB. Plaintiff also asserts against Watson a claim under § 1981, a due process claim, an Equal Protection claim, and a First Amendment retaliation claim.

### A.     Title VII Claims

Plaintiff alleges that UTMB discriminated against her on the basis of her race, subjected her to a racially hostile work environment, and retaliated against her because she engaged in activity protected by Title VII. Plaintiff has presented evidence that raises a genuine issue of material fact regarding these Title VII claims and, as a result, UTMB is not entitled to summary judgment on these three claims.

#### 1.     Discrimination Claim

Under the burden-shifting standard applicable to Title VII claims, a plaintiff claiming race discrimination must establish a *prima facie* case by demonstrating that she: (1) is a member of a protected class; (2) was qualified for the position in question; (3) was the subject of an adverse employment action; and (4) was replaced by someone outside the protected class or was treated less favorably than similarly situated persons who were not members of the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001). A plaintiff's *prima facie* case creates an inference of

intentional discrimination that shifts the burden back to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *McDonnell Douglas*, 411 U.S. at 802; *Lee*, 574 F.3d at 259. The defendant's burden at this stage is a burden of production, not persuasion, and "'can involve no credibility assessment.'" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quoting *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 513 (1993)). If the employer provides such an explanation, the inference created by the *prima facie* case drops out, and the plaintiff bears the burden to establish discrimination by offering evidence that the employer's stated explanation is a pretext for racial bias. *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 249; *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). A plaintiff's *prima facie* case, combined with the factfinder's disbelief of the defendant's proffered reasons, may suffice to show intentional discrimination. *Reeves*, 530 U.S. at 147 (citing *St. Mary's Honor Center*, 509 U.S. at 511). Despite this intermediate burden shifting, the plaintiff at all times bears the ultimate burden to demonstrate that the defendant intentionally discriminated. *Reeves*, 530 U.S. at 143; *Lee*, 574 F.3d at 259 n. 13 (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

It is undisputed that Plaintiff is a member of a protected class and that she was subjected to an adverse employment action when she was demoted from Nurse

Manager to Assistant Nurse Manager. Plaintiff has presented evidence that she was qualified for the Nurse Manager position that she held prior to the demotion. Indeed, Plaintiff has presented evidence that she performed the Nurse Manager duties after Kim Roddey, a Caucasian Nurse Manager, left UTMB in August 2006. Plaintiff has also presented evidence that she was replaced by a Caucasian Nurse Manager after she was demoted. As a result, Plaintiff has presented evidence to support a *prima facie* case of race discrimination.

UTMB has articulated that it demoted Plaintiff because it "reasonably believed that [RMF] was suffering high turnover and vacancy, that 4 ER nurses were about to quit because of plaintiff and that there was no improvement in the situation." *See* Motion [Doc. # 33], p. 8. Plaintiff has presented evidence from which a jury could reasonably find that UTMB's explanation is false and is actually a pretext for race discrimination. Plaintiff's evidence shows that, although there were several Caucasian Nurse Managers at the RMF, Watson blamed her (the only African-American) exclusively for the high turnover rate. Plaintiff has presented evidence UTMB's internal investigation determined that there was no foundation for Plaintiff's demotion and that the EEOC found race discrimination. While the EEOC determination is not dispositive, it is evidence that can be considered in evaluating whether Plaintiff has raised a genuine issue of material fact on the issue of pretext. *See Cruz v. Aramark*

*Svcs., Inc.*, 213 F. App'x 329, 332 (5th Cir. 2007) (quoting *Smith v. Universal Health Svcs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1997)).

Plaintiff has presented evidence to raise a genuine issue of material fact on the race discrimination claim and, therefore, UTMB's Motion is denied as to this claim.

### 2. **Hostile Environment Claim**

To prevail on a hostile work environment claim involving one's supervisor, a plaintiff must prove that: (1) she belonged to a protected group; (2) she was subjected to unwelcome harassment; (3) such harassment was based on race; and (4) the harassment complained of affected a term, condition, or privilege of employment. *Baker v. FedEx Ground Package Sys. Inc.*, 278 F. App'x 322, 328 (5th Cir. May 13, 2008) (citing *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002)). "We determine whether a hostile work environment exists using a totality-of-the-circumstances test that focuses on the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating . . . and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 347 (5th Cir. 2007)) (ellipsis in *Baker*). A plaintiff "must subjectively perceive the harassment as sufficiently severe or pervasive, and this subjective perception must be objectively reasonable." *Id.* at 328-29 (quoting *Frank v. Xerox Corp.,* 347 F.3d 130, 138 (5th Cir. 2003)).

It is undisputed that Plaintiff belongs to a protected group. Plaintiff has presented ample evidence that she was subjected to pervasive, unwanted harassment that was race-based. For example, Plaintiff's evidence shows that beginning in 2003, Watson treated African-Americans more harshly than Caucasians in discipline, performance evaluations, and when considering requests for transfers. For example, Plaintiff's evidence shows that in 2003, Watson required Plaintiff to prepare a Corrective Action Plan for an African-American nurse but refused to allow Plaintiff to discipline Caucasian nurses when necessary. In May 2005, Watson imposed a Corrective Action Plan on an African-American nurse but not on the Caucasian nurse who had admitted involvement in the same activity. In October 2005, Watson asked Plaintiff directly if she thought he was "prejudiced." Plaintiff's evidence also shows that in early 2006, Watson blamed her – the only African-American Nurse Manager – exclusively for the RMF's high turnover rate. Plaintiff's evidence shows that in April 2006, Watson sustained a grievance against her without notifying her that the grievance had been filed and giving her an opportunity to respond. Plaintiff's evidence, if credited by the trier of fact, indicates that the harassment and mistreatment of African-Americans including Plaintiff was seriously pervasive, lasting over a period of years between 2003 and 2006.

Plaintiff has presented evidence to raise a genuine issue of material fact in support of her hostile environment claim. As a result, the Court denies UTMB's Motion on this claim.

### 3. Retaliation Claim

To establish a *prima facie* case for retaliation, a plaintiff must present evidence that (1) she engaged in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the protected activity and adverse employment action. *See Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 348 (5th Cir. 2007). The temporal proximity between a plaintiff's protected activity and the adverse employment action can provide evidence of the causal link required to make out a *prima facie* case of retaliation. *See Lemaire v. State of Louisiana*, 480 F.3d 383, 390 (5th Cir. 2007); *Swanson v. Gen. Servs. Admin.*, 110 F.3d 1180, 1188 (5th Cir. 1997).

Plaintiff has presented evidence that she often engaged in protected activity when she spoke on behalf of herself and other African-American employees. She engaged in protected activity when she filed internal grievances against Watson asserting race discrimination and when she filed her charge of discrimination with the EEOC.

It is undisputed that Plaintiff suffered an adverse employment action when she was demoted from Nurse Manager.

Plaintiff has also presented evidence of a causal connection between her protected activity and the adverse employment action. In addition to receiving notice of Watson's intent to demote her only one day after she filed a grievance against him alleging race discrimination, Plaintiff has presented evidence that the internal investigation resulted in a finding that Watson had supported Plaintiff until she challenged his intent to rehire a Caucasian nurse at the request of a Caucasian Nurse Manager. As was noted above, Plaintiff has also presented evidence that the EEOC determined that she was subjected to retaliation.

UTMB's Motion for Summary Judgment on the retaliation claim is denied because Plaintiff has presented evidence to support this claim.

**B.     Section 1981 Claim**

Plaintiff alleges that Watson's decision to demote her denied her the right to make and enforce contracts in violation of 42 U.S.C. § 1981. Section 1981 grants all persons the right "to make and enforce contracts." 42 U.S.C. § 1981.

Watson argues that the demotion is not actionable under § 1981 because it involves post-formation conduct, citing *Patterson v. McLean Credit Union*, 491 U.S. 164 (1989). *Patterson* was superseded by statute in 1991, a statute amending § 1981

to provide that the term "make and enforce contracts" encompasses the "making, performance, modification and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

Watson also argues that Plaintiff's § 1981 claim must fail because she was employed on an at-will basis. The Fifth Circuit "permits the prosecution of § 1981 claims that involve alleged discrimination of at-will employees." *Hall v. Continental Airlines, Inc.*, 252 F. App'x 650, 653 (5th Cir. Oct. 26, 2007) (citing *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 425 (5th Cir. 2000)).

The analysis for claims under § 1981 and Title VII is identical. *See Hall*, 252 F. App'x at 653 (citing *Jones v. Robinson Prop. Group, L.P.*, 427 F.3d 987, 992 (5th Cir. 2005); *Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 468 (5th Cir. 2002)). For the reasons discussed in this section, Plaintiff is legally entitled to pursue a § 1981 claim against Watson. For the reasons discussed above in connection with the Title VII claims, there are genuine issues of material fact, and Watson's Motion for Summary Judgment on Plaintiff's § 1981 claim is denied.

### C. Due Process Claim

Plaintiff alleges that Watson, by discriminating against her on the basis of her race, violated her due process rights. The evidence indicates that Plaintiff was

employed on an "at-will" basis and, therefore, Plaintiff bears the burden to present evidence of a contract establishing a property interest in her continued employment as a Nurse Manager with UTMB. *See Grey v. Dallas Indep. Sch. Dist.*, 265 F. App'x 342, 347 (5th Cir. Feb. 14, 2008) (citing *Schultea v. Wood*, 27 F.3d 1112, 1116 (5th Cir. 1994)). Plaintiff has failed to allege facts or present evidence to establish a property interest in her Nurse Manager position with UTMB. As a result, Watson is entitled to summary judgment on Plaintiff's due process claim.

### D. Equal Protection Claim

Plaintiff alleges that Watson created a hostile work environment, violating her right to equal protection. Harassment in public employment can violate the Equal Protection Clause. *See Lauderdale v. Texas Dept. of Crim. Justice*, 512 F.3d 157, 166 (5th Cir. 2007) (citing *Southard v. Texas Bd. of Crim. Justice*, 114 F.3d 539, 550 (5th Cir. 1997)). Although *Lauderdale* and *Southard* involved sexual harassment, the same legal principles would apply to racial harassment that creates a hostile work environment. *See, e.g., Bryant v. Jones*, 575 F.3d 1281, 1296 (11th Cir. 2009) (involving discrimination and harassment on the basis of race).

Discrimination and hostile work environment claims brought under the Equal Protection Clause are subject to the same analysis as those brought under Title VII. *See id.* at 1296, n.20. Therefore, for the reasons stated in this section and in the

section regarding Plaintiff's Title VII claims, there are genuine issues of material fact and Watson's Motion for Summary Judgment is denied as to the Equal Protection Clause claim.

### E.      First Amendment Retaliation Claim

Plaintiff alleges that Watson retaliated against her for exercising her free speech rights under the First Amendment "when she complained of discrimination to the EEOC." *See* Complaint [Doc. # 1], ¶ 89.  To avoid summary judgment on this claim, the plaintiff must present evidence that:  (1) she suffered an adverse employment action; (2) she engaged in speech that was on a matter of public concern; (3) her interest in commenting on matters of public concern outweighs her employer's interest in maintaining efficiency in the workplace; and (4) the speech motivated the adverse employment action.  *See Serna v. City of San Antonio*, 244 F.3d 479, 482, (5th Cir. 2001) (citing *Harris v. Victoria Indep. Sch. Dist.*, 168 F.3d 216, 220 (5th Cir.1999)).

Watson argues that the alleged speech that forms the basis for Plaintiff's First Amendment retaliation claim was not a matter of public concern.  "Lodging a complaint with the EEOC, without further airing of grievances, implicates only the private employment interests of the plaintiff and is not conduct that constitutes speech on a matter of public concern."  *Cutrer v. McMillan*, 308 F. App'x 819, 821 (5th Cir.

2009); *Short v. City of West Point, Miss.*, 125 F.3d 853, *1 (5th Cir. Aug. 29, 1997); *Ayoub v. Texas A&M Univ.*, 927 F.2d 834, 837-38 (5th Cir. 1986). Because Plaintiff in her Complaint bases her First Amendment claim on her EEOC charge of discrimination, and because EEOC complaints do not constitute speech that is a matter of public concern, Watson is entitled to summary judgment on Plaintiff's First Amendment retaliation claim.

## IV. QUALIFIED IMMUNITY (WATSON)

Watson asserts the defense of qualified immunity as to Plaintiff's remaining § 1981 and Equal Protection claims. The qualified immunity defense protects from civil liability government officials performing their discretionary functions "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Flores v. City of Palacios*, 381 F.3d 391, 394 (5th Cir. 2004) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 1982)). When determining whether a defendant is entitled to qualified immunity, the Court views the facts in the light most favorable to the party asserting the injury and determines "(1) whether the defendant's conduct violated the plaintiff's constitutional rights, and (2) 'whether the defendant[']s conduct was objectively reasonable in light of clearly established law.'" *Goodson v. City of Corpus Christi,* 202 F.3d 730, 736 (5th Cir. 2000).

As was discussed above, Plaintiff has presented evidence that raises a genuine issue of material fact regarding whether Watson violated Plaintiff's rights under § 1981 and the Equal Protection clause. As also discussed above, it has been clearly established since at least 2000 that § 1981 applies to "at-will" employees. *See Hall*, 252 F. App'x at 653. Similarly, it has been clearly established that racial discrimination and harassment that creates a hostile work environment in public employment can violate the Equal Protection Clause. *See Lauderdale*, 512 F.3d at 166. Viewing the evidence in the light most favorable to Plaintiff, the Court cannot hold on this record that Watson's conduct was objectively reasonable in light of this clearly established law. As a result, Watson is not entitled to summary judgment on his claim of qualified immunity.[1]

## V.     CONCLUSION AND ORDER

Plaintiff has failed to present evidence of a property interest in her continued employment as a Nurse Manager with UTMB and bases her First Amendment retaliation claim on her complaint of discrimination to the EEOC. As a result, Watson is entitled to summary judgment on these two claims. Otherwise, Plaintiff has presented sufficient evidence and legal authority to support her claims in this case.

---

[1] The Court does not hold that Watson is not entitled to qualified immunity, only that genuine issues of material fact preclude a qualified immunity determination at this point. *See, e.g., Manis v. Lawson*, 585 F.3d 839, 842-43 (5th Cir. 2009).

Defendant Watson is not entitled to summary judgment on his assertion of qualified immunity. Accordingly, it is hereby

**ORDERED** that the Motion for Summary Judgment [Doc. # 33] is **GRANTED** as to the due process and First Amendment retaliation claims and **DENIED** in all other respects.

The case remains scheduled for docket call on **February 22, 2010**.

SIGNED at Houston, Texas, this **14th** day of **January, 2010**.

_____
Nancy F. Atlas
United States District Judge