# IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

JACKIE FISHER                                §
               Plaintiff,                 §
                                   §
vs.                                          §     CIVIL ACTION NO. 4:08-cv-01273
                                             §
UNIVERSITY OF TEXAS                          §     Jury Demanded
MEDICAL BRANCH and                           §
DAVID WATSON                                 §
               Defendants.                §

## Plaintiff's Trial Brief and Memorandum of Law

I.       TITLE VII RACIAL DISCRIMINATION

II.     TITLE VII HOSTILE ENVIRONMENT

III.    TITLE VII RETALIATION

IV.    SECTION 1981 CLAIMS

V.     SECTION 1983 CLAIMS OF EQUAL PROTECTION

VI.    DEFENDANTS REASONS FOR CONDUCT ARE PRETEXT

VII.   WATSON NOT ENTITLED TO QUALIFIED IMMUNITY

VIII.  TIME BARRED ACTS ARE ADMISSIBLE

IX.    CONDUCT TOWARD OTHER AFRICAN AMERICANS ADMISSIBLE

X.     EEOC LETTER ADMISSIBLE

XI.    DEFENDANTS NOT ENTITLED TO SAME ACTOR INFERENCE JURY INSTRUCTION

XII.   DEFENDANTS NOT ENTITLED TO MIXED MOTIVE JURY INSTRUCTION

## I.   TITLE VII RACIAL DISCRIMINATION

To demonstrate the elements of a prima case of racial discrimination, the Plaintiff must show: (1) she is a member of a protected class; (2) she is qualified for the position at issue; (3) she suffered an adverse employment action; and (4) she was replaced by someone outside the protected class,  or was treated less favorably than similarly-situated employees outside the protected class.  *Okoye v. Univ. of Houston, Health Sci. Ctr.,* 245 F. 3d 507, 512-13 (5th Cir. 2001).

## II.   TITLE VII HOSTILE ENVIRONMENT

To support a hostile work environment claim, the Plaintiff must show that: (1) she belongs to a protected group; (2) she was subject to harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term condition or privilege of employment and was so pervasive or severe as to alter her conditions of employment and create an abusive working environment; and, (5) the employer knew or should have known of the harassment and failed to take prompt remedial action. *Farpella-Crosby v. Horizon Health Care*, 97 F. 3d 803, 806 (5th Cir. 1996)(citing *Jones v. Flagship Int'l,* 793 F. 2d 714, 719-20 (5th Cir. 1986)).   In the case of supervisor harassment, as here, the plaintiff need not demonstrate the fifth prong.

The harassment "must be sufficiently severe or pervasive to alter the conditions of [Plaintiff's] employment and create an abusive working environment."  *See Lauderdale v. Tex. Dep't of Criminal Justice*, 512 F.3d 157, 163 (5th Cir. 2007)  To create a hostile work environment, the "severe or pervasive" harassment must be objectively and subjectively

offensive. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993). Whether the harassment is severe or pervasive - is stated in the disjunctive. A single isolated in incident can be so egregious that it alters the terms, conditions or privileges of employment and may satisfy the forth prong of the hostile work environment elements. *Lauderdale v. Texas Dept. Of Criminal Justice,* 512 F. 3d 157, 163 (5th Cir. 2007)(citing *Harville v. Westward Communs., LLC,* 433 F.3d 428, 434-35 (5th Cir. 2005). Harassment need not be severe *and* pervasive. Frequent incidents of harassment, while not severe, can reach the level of pervasive and can indeed alter the terms, conditions or privileges of employment such that the forth prong is also meet by pervasive conduct. "Thus, the required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Lauderdale v. Texas Dept. Of Criminal Justice,* 512 F. 3d 157, 163 (5th Cir. 2007)(quoting *Ellison v. Brady,* 924 F. 2d 872, 878 (9th Cir. 1991). The environment created by the challenged conduct must be of such a nature that it is both objectively and subjectively offensive, "one that *reasonable person* would find it hostile or abusive and one that the victim in fact did perceive to be so." *Lauderdale v. Texas Dept. Of Criminal Justice,* 512 F. 3d 157, 163 (5th Cir. 2007)(citing *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998)(quoting *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21-22 (1993)). Whether an environment is hostile or abusive is judged by "the totality of circumstances." *Farpella-Crosby v. Horizon Health Care*, 97 F. 3d 803, 806 (5th Cir. 1996)(citing *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, 21 (1993); *DeAngelis v. ElPaso Municipal Police Officers Ass'n,* 51 F. 3d 591, 594 (1995)).

"[T]he harassment must be so serve or pervasive that it destroys a protected classmember's opportunity to succeed in the work place." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004).

## III.   TITLE VII RETALIATION

To establish the elements of a claim of retaliation under TITLE VII, 42 U.S.C. §200e-3(a), the Plaintiff must demonstrate that: (1) she engaged in a protected activity; (2) an adverse employment activity occurred; and (3) a causal link exists between the protected activity and the adverse employment action.  *Richard v. Cingular Wireless, LLC*, 233 Fed. App. 334, 336-7 (5th Cir. 2007)(*quoting Fabela v. Socorro Indep. Sch. Dist.*, 329 F. 3d 409, 414 (5th Cir. 2003)).   "The employee must show that the employer's putative justification is unworthy of credence and is instead a pretext for retaliation. *Richard v. Cingular Wireless, LLC*, 233 Fed. App. 334, 336-7 (5th Cir. 2007)(*quoting Mato v. Bauldauf*, 267 F. 3d 444, 452 (5th Cir. 2001).

An adverse employment action is any action that might have reasonably dissuaded a reasonable worker from making or supporting a charge of discrimination.  *McCoy v. City of Shreveport,* 492 F. 3d 551, 559 (5th Cir. 2007).

The determination of the existence of the causal link requires an examination of three factors.  (1) the employees' past disciplinary record; (2) whether the employer followed its typical policies and procedures in the adverse employment action; and (3) the temporal proximity between the employees' conduct and the negative employment action.  *Nowlin v. Resolution Trust,* 33 F. 3d 498, 508 (5th Cir. 1994).   Close timing between the protected

activity and the adverse employment action may provide the causal connection required to demonstrate a *prima facie* case of retaliation.  *Evans v. City of Houston*, 246 F.3d 344, 355-56 (5th Cir. 2001).  Even a lapse of up to several months has been found sufficient to satisfy the casual link.  *Id.* at  354.  In *Gee v. Principi* 289 F.3d 342, 347 (5th Cir. 2002*),* the timing between the employment action and the protected activity was nearly two years, although it was held that such lack of proximity did not entitle the employer to summary judgment. While the ultimate burden of persuading the trier of fact remains at all times with the plaintiff, it is clear that the ultimate fact of retaliation may be inferred from the falsity of the explanation.  *Gee,* 289 F.3d at 348 (citing *Reeves*, 530 U.S. at 146-48).  Under the *Reeves* standard, the plaintiff may withstand a motion for summary judgment on his retaliation claim without adducing additional, independent evidence of retaliation.  *Gee,* 289 F.3d at 348.

However, in reviewing all the evidence in the record in the light most favorable to Fisher and drawing all reasonable inferences in his favor, the Court should at least acknowledge the EEOC determination as some evidence that intentional discrimination and retaliation took place in this case.  Additionally, UTMB's own investigation by the OEO&D supports a prima facie case and finding of retaliation.

## IV.    SECTION 1981 CLAIMS

Title VII Discrimination and §1981 employ the identical burden shifting frame work for evaluation discrimination claims, so the two may be evaluated simultaneously.  *Jones v. Robinson Prop. Group, LP,* 427 F. 3d 987, 992 (5th Cir. 2005).

Under 42 U.S.C. §1983 Due Process Claim, the plaintiff must show a violation of

rights secured by he Constitution or laws of the United States and demonstrate a deprivation of that rights by a person acting under color of state law. *Lauderdale v. Tex. Dept. of Criminal Justice*, 512, F. 3d 157, 165 (5th Cir. 2007). It is undisputed that Watson was acting under color of state law in his capacity as Fisher's Supervisor. Racial harassment and discrimination in public employment violate the Equal Protection Clause of the Fourteenth Amendment and are therefor actionable under §1983. *Southard v. Tex. Board of Criminal Justice*, 114 F. 3d 539, 550 (5th Cir. 1997).

**VI.** **DEFENDANTS REASONS FOR CONDUCT ARE PRETEXT**

*Reeves v. Sanderson Plumbing*, 530 U.S. 133, 147-48 (2000) holds that intentional discrimination may be inferred from the falsity of the employer's explanations. While the ultimate burden of persuading the trier of fact remains at all times with the plaintiff, it is clear that the ultimate fact of retaliation may also be inferred from the falsity of the explanation. *Gee v. Princeps,* 289 F. 3d 342, 348 (5th Cir. 2002)(citing *Reeves*, 530 U.S. at 146-48).

A *prima facie* case combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves,* 530 U.S. at 148. While *Reeves* involved a judgment as a matter of law, the standard for granting summary judgment is the same. *Id.* at 150 (quoting *Liberty Lobby,* 477 U.S. at 250-51). Proof that the employer's explanation is unworthy of credence is only one form of circumstantial evidence and it is quite probative of intentional discrimination. *Reeves,* 530 U.S. at 147. Proof that the employer's explanation is false can be quite persuasive and offers considerable assistance to the fact finder in concluding that

real reason for the conduct was intentional discrimination. *Id.* Once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to articulate the actual reason for its decision. *Id.* at 146-48 (2000)*; Gee v. Principi,* 289 F. 3d 342, 348 (5th Cir. 2002). This circumstantial method of proving discrimination is not only sufficient, but can be more "certain, satisfying, probative and persuasive" than direct evidence of discrimination. *Costa v. Desert Palace, Inc.*, 539 U.S. 90 (2003)(citations omitted).

When an employer offers inconsistent explanations for its employment decisions at different times, the fact finder may infer that the employer's reasons are pretextual. G*ee,* 289 F.3d at 347-48. In *Burrell v. Dr. Pepper,* 482 F. 3d 408, 413-15 (5th Cir. 2007). Failure of the employer to follow its own progressive disciplinary policy infers pretext. *Machinchick v. PB Power , Inc.,* 398 F. 3e 345, 355 n. 29 (5th Cir. 2005).

In *Reeves,* the Supreme Court resolved and eliminated the confusing pretext plus standard which had emanated from its holding in *Hicks. Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000)(citing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502 (1993)). Shortly after *Reeves* was announced, this Court confirmed that generally proof of pretext and a *prima facie* case is sufficient to survive a sufficiency of the evidence challenge. *Russell,* 235 F.3d at 222-23. There may be narrow exceptions in which a *prima facie* case and pretext will not suffice to establish intentional discrimination such as when the record conclusively reveals some other non-discriminatory reason, but these instances are rare. *Id.* at 229.

## VII.  WATSON NOT ENTITLED TO QUALIFIED IMMUNITY

The doctrine of qualified immunity shields state officials, performing discretionary functions, from actions which are objectively reasonably in light of then clearly established law, but not from all actions. *Felton v. Polles*, 315 F.3d 470, 477, (5th Cir. 2002).

Qualified immunity will not protect state officials if the plaintiff can show that "violated clearly established statutory or constitutional rights of which a reasonable person would have known." *McGregor v. Louisiana St. Univ. Bd of Supervisors,* 3 F.3d 859, 862, (5th Cir. 1993)(citing *Brown v. Texas A & M Univ.,* 804 F. 2d 327, 332 (5th Cir. 1986)). Qualified immunity is analyzed under a two prong process. *Felton* at 477*; Kelly v. Foti,* 77 F.3d 819, 821 (5th Cir. 1996).  First, the plaintiff must state a claim which alleges violations of a clearly established constitutional or federal statutory right. *Felton* at 477; *Siegert v. Gilley*, 500 U.S. 226, 229 (1991). The plaintiff may satisfy the first prong by alleging the claimed deprivation with a high level of generality. *Thompson v. Upshur County, Tex.,* 245 F. 3d 447, 459 (5th Cir. 2001).

If the court finds the official's conduct violated a clearly established constitutional or federal right, the court must then determine whether the conduct was nonetheless objectively unreasonable in light of established law at the time of the infraction. *Felton* at 477; *Kelly v. Foti,* 77 F.3d 819, 821 (5th Cir. 1996).   This second prong may be further broken down into two separate inquiries: (1) what was the state of law at the time concerning the plaintiff's claimed right; and, (2) were the contours of that law were sufficiently clear that a reasonable official would understand that he was violating plaintiff's rights. *Felton* at 477, *quoting Hare*

*v. City of Corinth, Miss.,* 135 F. 3d 320, 325 (5th Cir. 1998); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).   The relevant dispositive inquiry is whether it would be a clear to a reasonable supervisor that Watson's conduct was unlawful in the situation he confronted. *Saucier v. Katz,* 535 U.S. 194, 196 (2001).   This second inquiry focuses on the particulars of the challenged conduct and/or the factual setting in which it took place.  *Pierce v. Smith,* 117 F.3d 866, 872 (5th Cir. 1997).

## VIII.  TIME BARRED ACTS ARE ADMISSIBLE AS EVIDENCE OF HOSTILE ENVIRONMENT

The nature of a hostile environment claim is repeat conduct.  *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 123 (2002).   The hostile environment claim does not generally occur on any given day, it may occur over many months or even years.  *Id.*  In the *Morgan* case, the plaintiff sought to have evidence admitted of the defendant's illegal conduct about which he had not timely complained to the EEOC.  *Id* at 117, 123.   The Supreme Court held that, although these discrete acts were barred by limitations from independent claims from damages, they could be considered as conduct comprising a hostile work environment under the claim alleging "one unlawful employment practice."  *Id* at 125. The cumulative effects such discrete acts may have on the individual determine whether they may be considered under a hostile environment claim.  *Id.* at 123.

The *Faragher* court acknowledged that racial and sexual harassment often take different forms, but sought to harmonize the standards of what amounts to actionable harassment, and they should be viewed under the same standard   *Faragher v. City of Boca Raton,* 524 U.S. 775, 787 (1998).   An actionable hostile environment must be both

objectively and subjectively hostile or abusive, one that the reasonable person would find hostile or abusive and  one that the victim perceives to be so.  *Id.*  (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 12, 21-22(1993)).   The standard is one of the totality and courts must "look at all the circumstances" to determine if an actionable hostile environments exists.  *Id.*  The conduct must sufficiently severe and pervasive to alter the terms and conditions of employment.  *Id.* at 787-88: *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 751 (1998).

Accordingly, the Fifth Circuit analyzed that hostile environment cased decided by the Supreme Court have involved patterns or allegations of extensive, long-acting, unredressed, and uninhibited threats of conduct that permeated the plaintiff's work environment.  *Indest v. Freeman Decorating, Inc.*, 164 F. 3d 258, 264(1999).   The requirement of severity or pervasiveness should be viewed objectively in the plaintiff's entire employment context.  *Id.* at n8.  The *Cortes* court found that although the court imposed liability for the actions which occurred that were not time barred, the court properly considered prior acts which occurred outside the statutory limitations period as relevant "fear producing" actions. *Cortes v. Maxus Exploration Co.*, 977 F. 2d 195, 199 (5th Cir. 1992).

Time-barred acts and those outside the parameters of the administrative complaint evidentiary significance in hostile environment cases.  The 5th Circuit has acknowledged that time-barred acts can be used as evidence of discriminatory intent in later actions.  *Ray v. Tandem Computers*, 63 F. 3d 429, n. 12 (5th Cir. 1995)( citing *Cortes v. Maxus Exploration Co.*, 977 F. 2d 195 (5th Cir. 1992)).  In *Cortes*, the trial court properly allowed evidence of harassment and fear-producing acts that occurred from 1980 through 1982, even though

liability based on 1986 actions.  *Cortes* at 199.  The Fifth Circuit stated that by allowing evidence of time-barred acts, the Court did not erroneously impose liability nor did it err in considering evidence of those acts.  The Fifth Circuit has also held that consideration of time-barred acts is proper to show current conduct and the relationship between past actions and present effects.  *Fisher v. Procter & Gamble Mfg. Co.*, 613 F.2d 527, 540 (5th Cir.1980), *cert. denied* (emphasis added).

Testimony detailing instances of supervisors' addressing plaintiffs as "boys" and other racially motivated language and conduct by coworkers from the 1960's was allowed in Crawford, although some of it was over ten years old,  as relevant to explain current practices, which viewed in isolation may not indicate discriminatory motives. *Crawford v. Western Elec. Co.*, 614 F.2d 1300, 1314 (5th Cir.980) . In *Downey v. Southern Natural Gas Co.* 649 F.2d 302, (5th Cir. 1981)*,* the Fifth Circuit noted that " '[w]hile some or most of this evidence may concern time-barred conduct, it is relevant, ... and may be used ... to illuminate current practices which, viewed in isolation, may not indicate discriminatory motives.' " *Id*. at 305 (quoting *Crawford*, 614 F.2d at 1314).   As in *Crawford,* in this case, TDCJ supervisors in 1987 and 1988 were less circumspect in the use of racial slurs in earlier incidents than in 2000 and 2001.  This evidence is relevant to explain current practices.

Additionally, the Supreme Court has recognized that, although time-barred acts themselves can create no present legal consequences, they "may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 558 (1977).  The Court found that the district

court did not erroneously impose liability for time-barred acts.

In *Shattuck* , the Defendant challenged Plaintiff's evidence of failure to promote, contending that it was time-barred. *Shattuck v. Kinetic Concepts, Inc*., 49 F. 3d 1106, (5th Cir. 1995).  The Court, nonetheless, allowed it as relevant to the issue of Defendant's motivation in later conduct.  *Id*. at 1109.

Evidence is relevant if it has any tendency to make the existence of any fact of consequence to the determination of the action more probable or less probable than it would be without the evidence. FED.R.EVID. 401.

## IX.   CONDUCT TOWARD OTHER AFRICAN AMERICANS ADMISSIBLE

Evidence of discrimination against other members of the protected class is generally admissible.  *Shattuck v. Kinetic Concepts, Inc.,* 49 F. 3d 1106, 1109-1110 (5th Cir. 1995). Such evidence of discrimination against other members of the protected class may be highly probative.  *Id.*  "Fellow employees may testify to racial slurs and acts of racial disinclination against them, subject to limitations designed to prevent the trial from fragmenting into multiple mini-trials." *Id.* at n9 (citing *Visse v. Packer Engineering Associates.,* 924 F. 2d 655 (7th Cir. 1991); and *Hawkins v. Hennepin Technical Center,* 900 F. 2d 153 (8th Cir. 1990), *cert denied.*

In *Collins v. Baptist Memorial Geriatric Center*, the Fifth Circuit found that Collins did not demonstrate a hostile environment that was severe and pervasive.  937 F. 2d 190, 195 (5th Cir. 1991).   The court did allow, however, that evidence involving incidents of other members of the protected class was admissible to determine whether a hostile environment

existed. *Id.*

The Fifth Circuit's holding regarding hostile environment in *DeAngelis,* is applicable to determination of racially hostile environment criteria. *DeAngelis v. El Paso Municipal Police Officers Assoc.*, 51 F. 3d 591, 593 (5th Cir. 1995). As in this case, DeAngelis was an individual plaintiff, but the court also looked to the treatment of the protected class [women] in general to judge whether the individual's environment was hostile at work. *Id.* The court stated that a hostile environment, embodied a series of criteria that "express extremely insensitive conduct against women [the collective protected class] so egregious as to alter the conditions of employment." *Id.* To determine whether a hostile environment existed, the court examined the totality of the circumstances, including evidence of an atmosphere of inequality and demeaning treatment aimed at all members of the protected class. *Id.* at 596.

In *Walker v. Glasfloss Industries, Inc.* the court specifically addressed the admissibility of non-party experiences in determine whether the racially hostile environment complained of was severe or pervasive. 214 F.3d 615, 626 (5th Cir. 2000). In Walker, a non-party African American witness testified that she resigned from Glasfloss because she could no longer tolerate the employer's racism and discrimination. *Id.* This evidence from a non-party member of the same protected class persuaded the court that a fact issue had been created as to whether the hostile environment complained of was severe or pervasive. *Id.*

More recently, the Fifth Circuit found that plaintiff's claims of a hostile environment were undermined by her admissions that the supervisor also yelled and was rude to an employee who was not of a protected class. *Read v. BT Alex Brown, Inc., Etc.*, 2003 U.S.

Lexis 15201 (5th Cir. July 30, 2003).   The court went on to reveal that the plaintiff failed to show a hostile environment because she had not adduced evidence that the employer's "rudeness was focused on those in a protected class."   Thus, the *Read* court allows, even encourages, that the plaintiff should have introduced evidence of the employer's conduct toward other non-party members of her protected class to support her hostile environment claim.

In 2008, the United States Supreme Court issued a unanimous decision in *Sprint/United Management Company v. Mendelsohn*, 128 S.Ct. 1140 (2008), holding: "The question whether evidence of discrimination by other supervisors is relevant is fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." *Id*. at 1147.  As the Court explained, "Applying Rule 403 to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry."  *Id*. at 1147.

The simple holding of *Mendelsohn*, therefore, is that testimony by non-parties alleging discrimination "at the hands of supervisors of the defendant company who played no role in the adverse employment decision challenged by the plaintiff," is "neither *per se* admissible nor *per se* inadmissible." *Id*. at 1143.

Contrary to the position taken by the employer in *Mendelsohn*, the Supreme Court issued an ironclad rule rejecting *per se* exclusion of evidence under the Federal Rules: We note that, had the district court applied a *per se* rule excluding the evidence, the Court of Appeals would have been correct to conclude that it had abused its discretion.  Relevance and

prejudice under Rules 401 and 403 are determined in the context of the facts and argument in a particular case, and thus are generally not amenable to broad *per se* rules.

128 S.Ct. at 1147. What this means is simple: there are no "categorical" exclusions of evidence regarding discrimination against other employees, or by other supervisors, found within the Federal Rules of Evidence. Article IV is entitled "Relevancy And Its Limits." And, where "categories" of evidence require limitations, explicit rules within Article IV say so.1 The Federal Rules "occupy the field" and require fact-based, case-by-case determinations, not artificial overlays such as the "same supervisor" rule the employer argued in *Mendelsohn* – and which some courts have followed.

This statement of the law is not new. The Fifth Circuit has often noted the admissibility of such evidence. In *Vance v. Union Planters Corp.*, 209 F.3d 438 (5th Cir. 2000), for example, the plaintiff properly introduced the evidence to show how Union Planters treated the class of women employees. The Fifth Circuit then observed that, in the context of a Title VII suit, evidence concerning an employer's "general policy and practice with respect to minority employment" may be relevant to any showing of pretext. Further, this evidence of past discrimination could help undermine defendant's argument that it chose not to hire Vance only because of administrative concerns. Finally, the Fifth Circuit noted that, because defendants had the opportunity to explore the evidence of prior acts through examination of its own witnesses, the admission of potentially damaging evidence was not reversible error. *See also Green v. Adm's of the Tulane Educ. Fund.*, 284 F.3d 642 (5th Cir. 2002) (sexual harassment case where evidence of three other sexual harassment complaints

admissible); *Hatley v. Hilton Hotels Corp.*, 308 F.3d 473 (5th Cir. 2002) (sexual harassment case where evidence of other sexual harassment complaints admissible); *Shattuck v. Kinetic Concepts,* 49 F.3d 1106, 1109-110 (5th Cir. 1995) (evidence of discrimination against others in protected class may be highly probative).

On the ever-important question of proving pretext, the Supreme Court recognized over 35 years ago, that an employer's policies and practices in its treatment of others in the same protected group is significant. As the Court observed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 Other evidence that may be relevant to any showing of pretext includes . . . [the employer's] general policy and practice with respect to minority employment. *Id.* at 804-05.

## X.      EEOC LETTER ADMISSIBLE

Defendants seek to exclude the EEOC's November 6, 2007  Letter of Determination (P-70), the supporting investigation and those documents evidencing the findings of the investigation.  (P-102).  While Plaintiff does not disagree that the EEOC file may not be appropriately admissible in its entirety, the availability of the entire file is offered as it demands review to access reliability and trustworthiness of the findings contained in the Letter of Determination.  Admittedly, the EEOC record is not conclusively binding on the court, and may be given no more weight than any other admissible evidence.  *Cruz v. Aramark Svcs., Inc.,* 213 Fed. Appx. 329, 332 (5th Cir. 2007)(quoting *Smith v. Universal Health Svcs., Inc.*, 454 F.2d 154, 157 (5th Cir. 1997).

Plaintiff offers a EEOC Letter of Determination of a hybrid sort, something with verbiage  between "reasonable cause" and a " violation" statement.  Because Defendants

cannot meet their burden of proving untrustworthiness of the EEOC findings, Defendants' efforts to exclude the EEOC Letter the Determination should be denied under FRE Rule 803(8)(C).

In 1976, the Supreme Court decided that EEOC findings and reports  are admissible under FRE Rule 803(8)(C)  as a hearsay exception  - specifically, in a civil action,  as a public record and report of factual finding made pursuant to authority granted by law, unless the sources of information or other circumstances indicate a lack of trustworthiness. *Chandler v. Roudebush*, 425 U.S. 840 (1976).  No distinction is made under FRE Rule 803(8)(C) between (1) an EEOC determination finding of "reasonable cause" and (2) an EEOC letter of "violation."  Under FRE Rule 803(8)(C), the party opposing the admission of the report must prove the report's untrustworthiness.

This issue has been addressed repeatedly by the Fifth Circuit which has held that that EEOC findings and determinations are highly probative.   *Lindsey v. Prive Corp.*, 161 F.3d 886, 894 (5th Cir. 1998).   It has been established for years in the Fifth Circuit that findings and determinations made by the EEOC are admissible in civil proceedings.   In the Fifth Circuit, "EEOC determinations and findings of fact, although not binding on the trier of fact, are admissible as evidence in civil proceedings as probative of a claim of employment discrimination at issue in the civil proceedings." *McClure v. Mexia Indep. Sch. Dist.,* 750 F. 2d 396, 400 (5th Cir. 1985).  This rule has been extended to both intermediate and final EEOC determinations.    *Lindsey v. Prive Corp.*, 161 F.3d 886, 894 (5th Cir. 1998) . Numerous other cases make the same point. *See e.g., Garcia v. Gloor,* 618 F.2d 264, 272 (5th

Cir. 1980)(error to refuse to admit EEOC Findings); *Peters v. Jefferson Chem. Co.*, 516 F. 2d 447 (5th Cir. 1975); *Smith v. Universal Serv., Inc.,* 454 F. 2d 154, 157 (5th Cir. 1972). In the *Smith* decision, the court was quite directive when it noted, "the district court is obligated to hear evidence of whatever nature tends to throw factual light on the controversy and ease its fact-finding burden." *Id.* at 157. "To ignore the manpower and resources expended on the EEOC investigation and expertise acquired by its field investigators in the area of discriminatory employment practices would be wasteful and unnecessary." *Id.* The court further held, "[t]he fact that an investigator, trained and experienced in the area of discriminatory practices and the various methods by which they can be secreted," has found it likely that such an unlawful practice has occurred, its highly probative of the ultimate issue of such cases. *Id.*

In this case, Fisher first contacted the EEOC on April 24, 2006 and completed their Intake Questionnaire, identifying that she was subjected to racial discrimination by David Watson, her supervisor at UTMB. (P-19). On June 2, 2006 Fisher completed her formal EEOC Charge claiming racial discrimination, hostile environment, and retaliation. (P-20). Ms. Fisher amended he EEOC charge on April 3, 2007 to allege additional acts of retaliation and hostilities. (P-68).

Here, as in the *Smith* case, the report and Letter of Determination was prepared by an investigator for the EEOC, pursuant to its statutory mandate, and was not prepared in anticipation of litigation. *Smith v. Universal Serv., Inc.,* 454 F. 2d 154, 157-58 (5th Cir. 1972). Here, also as in Smith, the Commission is not a party to the litigation and has no

interest in this case. Also here, the investigator had no personal involvement in the situation and there is no reason to suspect any lack of trustworthiness. Given the facts presented in *Smith*, which are consistent with the facts in this case, in *Smith*, the court held that the district court erred when it chose to ignore the report for purposes of its fact finding function. *Smith v. Universal Serv., Inc.,* 454 F. 2d 154, 158 (5th Cir. 1972). After an investigation spanning a year and a half, 561 days to be exact, and consuming 1259 pages of documents (P-102), the EEOC issued findings of facts and determinations on November 6, 2007. (P-70). The trustworthiness of the EEOC Letter of determination cannot be successfully challenged by Defendants.

The "umbrella rule," FRE Rule 403, spans the whole of the FEDERAL RULES OF EVIDENCE and the trial judge must apply Rule 403 in tandem with other Federal Rules under which evidence would be admissible. *Coleman v. Home Depot, Inc.,* 306 F. 3d 1333, 1343 (3rd Cir. 2002). A "cost/benefit analysis" must be employed in determining whether to admit evidence. The evidence may be excluded if the probative value is not worth the problems it may cause, *e.g.,* unfair prejudice, confusion of the issues, misleading the jury, undue delay, waste of time, or needless presentation of cumulative evidence. *Id.* (Emphasis added). Because there is a strong presumption that relevant evidence should be admitted, to justify exclusion under FRE Rule 403, the probative value of the evidence must be "substantially outweighed" by the problems in admitting it. *Id.* In instances where the probative value of evidence is great and the prejudicial effect may well be great also, the force of "substantially outweighs" compels admission under FRE Rule 403. *Id.* (quotation

omitted).  The standard for exclusion is not one of mere "prejudice," but "unfair prejudice" which "substantially outweighs" the probative value of the evidence.

The Fifth Circuit has addressed the standard by which to evaluate whether evidence should be excluded as more prejudicial than probative.  In *Smith v. Universal Servs., Inc.*, 454 F.2d 154 (5th Cir. 1972)**,** the Fifth Circuit found that the probative value of the EEOC findings outweighed any possible prejudice to the Defendant and opined that "'prejudicial' cannot be equated with 'harmful' in all cases; rather, it connotes 'harmful' plus 'non-probative.'"

Under *Lindsey, Smith* and *McClure* the Fifth Circuit has deemed findings and determinations of the EEOC to be probative.  *See Lindsey v. Prive. Corp.*, 161 F.3d 886, 894 (5th Cir. 1998); *McClure v. Mexia Ind. Sch. Dist.*, 750 F.2d 396 (5th Cir. 1985); *Smith v. Universal Servs., Inc.*, 454 F.2d 154 (5th Cir. 1972).

In order for Defendants to be successful in their quest to have the EEOC Letter of Determination excluded, they must show that the evidence is "harmful" and "non-probative." Under Fifth Circuit precedent, it is clear that the determination letter is probative and thus Defendant's motion to exclude should be denied on this ground.

In *Manville*, the Fifth Circuit stated that, while there is a greater possibility of unfair prejudice where the EEOC has determined that a violation has occurred, the probative value *may not always* outweigh the potential for prejudice.  *EEOC v. Manville*, 27 F.3d 1089, 1095 (5th Cir. 1994).  *Manville* does not stand for the proposition that letters of violation are more prejudicial than probative *per se*.  While Defendant requests this Court exclude the

determination letter under the *Manville* decision, they fail to recognize the subsequent Fifth

Circuit opinion in *Lindsey v. Prive Corp.* and still fail to identify what potential prejudice will

ensue should the jury be allowed to evaluate the evidence.  *Lindsey v. Prive. Corp.*, 161 F.3d

886 (5th Cir. 1998).  The *Manville* opinion seeks to create a distinction between a reasonable

cause finding and a violation finding.  This distinction has largely been ignored since 1994.

However, in fact, there is no distinction between a finding of reasonable cause and a letter

of violation.  There are only three conclusions that can be reached by the EEOC: (1) no

violation, (2) a violation or (3) no conclusion at all.

The probative value of this EEOC Letter of Determination is not substantially

outweighed  by unfair prejudice and is admissible under Fifth Circuit precedent-- including

*Manville*.  Because Defendants cannot meet their burden of establishing that the probative

value is substantially outweighed by unfair prejudice, the EEOC Letter of Determination

should be admitted.


**XI.   DEFENDANTS NOT ENTITLED TO SAME ACTOR INFERENCE JURY INSTRUCTION**

Defendants argued the "same actor inference" in their summary judgment reply and

it is therefor anticipated that they will request a jury instruction on the "same actor inference"

as a presumption to be rebutted by Plaintiff. (Doc. 47, p.2-4).

Defendants rely on the Fifth Circuit case of *Brown v. CSC Logic, Inc*., 82 F. 3d 651,

658 (5th Cir. 1996) in which the same actor "inference" was approved when CSC Logic's

motion for summary judgment was granted.  The *Brown* Court derived its "same actor

inference" "presumption" from the Fourth Circuit's holding in *Proud v. Stone,* 945 F. 2d 796, 797-98 (4th Cir. 1991), which concerned the termination of an employee by the same individual who had recently hired him.   The *Proud* opinion held that "where the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." *Proud v. Stone,* 945 F. 2d 796, 797 (4th Cir. 1991).  The facts of the *Proud* summary judgment ruling revealed that the same person hired and fired Proud and there was a relatively short time period between hiring and firing, there was termination after a short period of employment, *and* there was no compelling intervening evidence of pretext....but that is certainly not the case here.

The holdings of *Proud v. Stone*  and *Brown v. CSC Logic, Inc*. are based on two completely different theories.  Although, without so much as acknowledging the differences, the Brown court relied on the Proud decision in arriving at their con. The facts of the *Brown* age discrimination summary judgment ruling  revealed that the individual firing Brown was even older than Brown.....the *Brown* court relied on the very distinguishable *Proud* decision to propel the "same actor inference" to one of the "same protected class inference." However, the Brown "same actor inference" does not fly in this case at all.  All relevant UTMB supervisors, including Watson the decision maker, are white and not in Fisher's protected class. Defendants should not be permitted to impermissibly raise Plaintiff's evidentiary requirements with an instruction to the jury that Fisher must rebut a "same actor inference."

In contrast to the Fourth Circuit, the Fifth Circuit has taken a more "wholistic" approach to the same actor inference.  In *Haun v. Ideal Industries, Inc.,* 81 F. 3d 541, 546 (1996), the Fifth declined to establish a rule that no  inference of discrimination could arise in the case where the same actor was the hirer and firer.   The *Haun* court, instead, looked at the whole situation, keeping in mind the ultimate issue as to whether the protected trait was a factor in the employment decision. *Haun v. Ideal Industries, Inc.,* 81 F. 3d 541, 546 (1996).

In this case, Fisher is black, Watson is white.  Admittedly, Watson was the decision maker who hired Fisher in 2000 as an Assistant Nurse Manager.  Admittedly, Watson was the decision maker who promoted Fisher to Nurse Manager in August of 2003.  Although, once he placed her in this decision making role, Watson immediately began demanding that Fisher be the implementor of his practices which required different standards for black employees and white employees.  Perhaps Watson thought his discriminatory acts would be more palatable coming from a Black Nurse Manager instead of a white supervisor, but after Fisher balked, Watson demanded to know if Fisher "thought he was prejudiced."   It apparently did not please Watson, when Fisher responded that "some of his decisions were discriminatory and that he was biased in the exercise of authority."  Watson's entitlement to the "same actor inference" presumption further disintegrates on January 4, 2006, when Fisher openly challenged Watson and accused him of setting different standards for black employees and white employees.  Additionally, it is important that Fisher was not fired...it is apparent that UTMB and Watson made her work life so miserable as to get her to quit....but she was not fired. While Watson may have had full knowledge of Fisher's race,

until after he promoted her, he obviously did not have full knowledge that she would rebuke his discriminatory tactics against other members of the African American race.

In this case, to instruct the jury on the "same actor inference" as was done in *Stover v. Hattiesburg Pub. Sch. Dist.*, 549 F. 3d 985, 994 (5th Cir. 2008),  would misguide the jury in its deliberations, given the facts of this case.   Given Watson's intervening discriminatory conduct, in this case Defendants claim of "same actor inference" should be held to merely just that....a factual inference, but certainly not a rebuttable presumption which would unjustly place the burden on Plaintiff to overcome.  It is certainly an inference which could be argued by Defendants....along with all the other inferences to be made in this case from the circumstantial evidence presented and argued by both parties.

Plaintiff's proposed instruction on circumstantial evidence and inferences should adequately address this "same actor inference," along with all the other inferences regarding pretext to be made in this case, without elevating this particular inference to a burden shifting presumption.

## XII.   DEFENDANTS NOT ENTITLED TO AFFIRMATIVE DEFENSES OR JURY INSTRUCTIONS RELATING TO THEM

Defendants may not first raise an affirmative defense at trial.  FED. R. CIV. P. R. 8(c).

Any affirmative defense which may have been available is waived by Defendant's failure to properly plead it in its answer.  *Id.*    An affirmative defense which is not pled is considered waived. *Simi Investment Co., Inc. v. Harris County Texas,* 236 F. 3d 240, 252 (5th Cir. 2000), *cert denied.*  The Simi court did allow that this court has discretion to permit the

raising of an affirmative defense at this late date, if "no prejudice would result to the other party and the ends of justice require." *Id*.   As in this case, the defendants failed to raise any affirmative defense in a timely manner.  Failure to raise an affirmative defense in an answer may not constitute a fatal waiver if it is raised at pragmatically sufficient time so that the plaintiff would not be prejudiced by its ability to respond. *Allied Chemical Corp. v. MacKay*, 685 F. 2d 854, 855 (5th Cir. 1983).  However, that is not the case, here, plaintiff's discovery is foreclosed, and in the event Defendant should attempt to raise such an affirmative defense, it would unfairly prejudice the Plaintiff.

In the event such amended is forthcoming or permitted.  Plaintiff asserts that the same would be foreclosed by the facts of the case anyway.

This supervisor conduct.

Under the holdings of *Ellerth* and *Faragher,* if the employee did not suffer a tangible employment result, the employer would be able to plead a two pronged affirmative defense: a) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and, b) that the plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer to avoid injury. *Faragher v, City of Boca Raton,* 524 U.S. 775, 805-807 (1998);  *Ellerth* at 765 (1998). Not the case here.

A  tangible employment action taken by a supervisor becomes the act of the employer in a claim of hostile environment and the employer cannot escape liability. *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998).  A tangible employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote,

reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Id.* at 762. Generally, only a supervisor isn of the station with the employer that can cause a tangible employment action. *Id.* In most cases a tangible employment decision carries with it economic harm and injury which could not have been inflicted absent the actions of a supervisor. *Id.* A tangible employment decision subjects the employers to vicarious liability to the victimized employee for an actionable hostile environment. *Id.* at 765.