My evaluation for June 2005 indicates an inconsistency of what is written in this letter in regards to my communication skills. The evaluation review shows I occasionally exceeds in focusing on the situation/issue/behavior not the person. Puts the interests of other before self-interest. Does not discriminate. Avoids conflict of interest. Maintains constructive relationships. Respects others. Shares knowledge and information with others. Is successful in building long-term customer relationships. Demonstrates effective interpersonal skills, solve problems fairly and effectively, seeks staff input and serves as a role model.

As you indicated in the even that the second Agency (Elite) was unable to supply nurses, I was then to provide a contact person to the Supplemental Representative. I did not refuse to follow your instructions. *She did however avoid answering my question in the first email and it was only in a third email that she provided this information. Additionally Ms. MacCartney stated to me (and later write) that she never even knew she was appointed as the contact person until I advised her of it.*

There is supporting documentation on March 28, 2006 that I complied to your request. Per my conversation with the Supplemental Representative the statement "only if I were not available" is not true. *I can only state what Brian Allison said to me and I verified it word for word on the phone. I can also say that Fisher refused to designate a person as an alternate contact in my office and never provided me with a reason why she was reluctant. This is the second time that Ms. Fisher claimed that Supplemental said one thing and then they said something else. Fisher didn't deny the correction in my office when confronted by the supplemental employee.*

In the March 10, 2006 meeting you did not request that I meet with the Assistant Nurse Managers (ANM) at a minimum of once per week or more if needed. *Actually I did and (4) of the finve peropl present in the room recall it and I have written proof from the ANMs. The whole reason of the meeting was to increase or improve communication with the ANMs.*

Documentation between you and myself on March 24, 2006 supports an obvious miscommunication of your expectations during the meeting. *What can I say she is already wrong above?*

In February 2006, I was not requested to meet with you two-three times a week to keep you abreast of problems/issues and request your assistance as needed. *Yes she was.*

In March 2006, the ERMF Practice Manager, Medical Director and myself requested to met with you and the HV Sr. Cluster Practice Manager to discuss our concerns and your obvious dissatisfactions but you refused to meet with us. *This is news to me...*

On March 27, 2006, I needed to speak with you and asked via email "can I give you a call" but you never responded. Despite the lack of communication, I have kept you abreast of problems/issues and requested your assistance as needed. *Didn't find the email till it was too late.*

On March 13, 2006, some parts of my evaluation were misrepresented. When the evaluation was given to me for input, you did not provide a specific time frame for me to return it. *I believe I said " a few days". She was about to go out on 10 days of leave and I wanted to conclude the evaluation.*

I later responded to your email explaining why it had taken ten days to return. My tone was not accusatory. As your actions in my April 11, 2006 grievance supports my statement. In my

EXHIBIT
**D-35**
CA 4:08-cv-01273

UTMB-614

opinion, neither of the charges display an insubordinate attitude or failure to follow your instructions.

My performance evaluation should be based on meeting established goals and behavioral expectations. According to my semi-annual evaluation presented on March 13, 2006, you failed to cite either of your alleged charges for February 2006, failure to adhere to your request or for March 10, 2006, direct violation of your instructions. In my opinion, if those were areas of your concern, they should have been noted on my evaluation. *Until that I time I had planned to try to work through this but felt at this point it was now futile and Fisher was displaying destructive behaviors that might allow the RMF to fail in it's mission.*

I did not refuse to accept any accountability for my lack of action for the better part of the preceding eighteen months. As discussed, I was interested in mentoring and providing an opportunity for the ANM to grow and to learn in her position. *In every conversation we had Fisher expressed repeatedly that she didn't think Kelly had the ability to do the job, but continued to "work with her" in spite of her own observation about ability. I finally insisted that she create a formal plan of action.*

She was given specific detail goals each evaluation period. You expressed concern in regards to three ANMs and instructed Ms. Adams, NM and myself to provide our respective ANMs with letters of expectation. *Actually it was for Ms. Gossett not all three ANMs and Ms. Kelly. Fisher elected to provide Ms. Pipkin with a CAP because she supposedly told Pipkin that she couldn't do it to Kelly unless she did it to her as well.*

From your point of view, and in comparison, Ms. Adams, NM showed no accountability for her lack of action for the better part of the preceding three plus years. *It was about this time that I made it a point to begin holding all of the NM accountable for their subordinates,*

Further comparison, the other ANMs that was under Ms. Adams' supervision, according to you, is still less than an effective. In this case, Ms. Adams showed no accountability for her lack of action for the preceding six plus years. *There was only one of the original three left by then (MacCartney) left by then and the other Aguilar) was already talking about leaving due to Fisher.*

My communication with the HV, Ferguson (FE), Goree (GR) Cluster Practice Manager suffered after I reported him to his supervisor on June 7, 2004. *Not sure what she refers to here.*

The HV, FE, GR Management team was requested to met with the HV Cluster Management team regarding our communication on June 14, 2004. *I don't recall one way or the other*

The Practice Manager and myself were expected to attend, the attendance of the other team members were optional. As noted on my December 2004 evaluation, our communication improved. *For a while it did. Or maybe better said they just quit fighting with each other.*

The Provider base sick call was implemented six to eight months later.
*True. The team came to us before the provider based sick call process and asked that she be removed from their team. This was a clerical mistake in the letter to demote. These were not related and were separated in time. However it does not diminish the fact that they did request she be removed. I have never even heard of a whole teaming coming to the district level asking that one of their own be removed.*

UTMB-615

Per your documentation dated March 9, 2006, the process itself, had a significant impact on patient care and on the flow of clinic operations. You stated "the process was pretty bogged down, staff was suffering, and the process has been less than a booming success". I did not resist the process. In fact, I willingly coordinated the changes in the clinic flow necessary to accommodate the provider base sick call. I had to spend an increase amount of time listening to and diffusing complaints that I received from the nursing staff. I made every effort to encourage their participation in this process. I assisted with verifying competency and helping to complete the CCA's Competency Base Orientation tools (CBO tools). I instructed my ANM to supervise the completion of the CBO tools in my absence. During this time I attended a Supervisor's Training class along with the HV Cluster HR Administrator, Medical Director, Nurse Managers and the EMR Coordinator. In support of the process, I did an presentation on its monetary advantages. *If it was such a bounding success why was it necessary for me to intervene and it has run ok ever since? Why were the nurses sitting around doing nothing and not even speaking to the provider when I arrived. Why did they turn it around in less thant here days based upon her great efforts? If all of that is so why did she say in front of witnesses that she wanted it to fail? I noticed she didn't address this.*

During the cold and flu season in 2004, I did not dismiss patients from the clinic. I assisted in getting the patients seen as this is verified by one of the nurses who was on duty. My involvement did not interfere or interrupt the workflow of the clinic. *Not according to Dr. Adams.*

In this letter you make a point to cite my failure to hold staff meetings between August 2005 and November 2005 without any consideration of the facts and circumstances that may have impacted formal meeting participation. The reassignment did not occur until mid August 2005. Because of Hurricane Rita, formal staff meetings were not held in September 2005. However in October 2005, I met with the High Security and SAFPF nursing staff. In November 2005, I meet with the ERMF, High Security and SAFPF nursing staff. During the first two to four months at the ERMF, I was training staff on the EMR and readily accessible to all shifts day and night. The staff was made aware of my short term goals to come online and standardize the MR process and my long-term goal to become paperless. To mention, there were no formal, monthly staff meetings being held at the ERMF prior to my reassignment in August 2005. *This is not reflected in the written communications from both Mr. Aguilar, Ms. MacCartney and a conversation I had with Penny Reynolds who said things improved after the first staff meeting in late October or November. Mr. Aguilar made a similar comment to me. Furthermore when I mentioned it to Ms. Fisher she seemed to have a lack of motivation to hold the meeting. I told her it was important to express to the staff her ideas and goals as well as her expectations. So it seems the meeting did in fact help.*

A review of your comments in my evaluations for the preceding eighteen months indicates an inconsistency of ineffective management/leadership between what has been written in the letter and what occurred during those evaluation years. My evaluations states that I utilize a proactive style of management. I am supportive of staff. I am a solid professional patient advocate. Exceeded target in taking personal responsibility for handling issues and concerns. Occasionally exceeds in providing clinical and administrative supervision to facility staff using effective principles of management and leadership. *While I received negative feedback from the staff I was reluctant to write that in her evaluations. I had some concerns as I expressed to my superior on several occasions. When I moved her to the RMF it was to give her a fresh start and also to see if the things I was hearing would continue. If it did continue then I could feel better about the problem being Fisher and not the circumstances she worked in previously.*

In your letter of intent, you stated "a pattern of performance has been identified that represents significant areas of deficiencies in my performance". Per UTMB Human Resource Disciplinary Policy 3.10.1, for continued failure to meet performance expectations, formal progressive disciplinary should be initiated. I have not received any levels of formal disciplinary for any of your alleged charges. *In my professional judgment it was necessary to take drastic actions to preserve the mission of the RMF. There are times when the need for drastic actions override the need for a progressive disciplinary approach.*

Since January 5, 2006, there has been a clear succession of your harassing behavior. Without other means of resolution, I filed a formal grievance against you on April 10, 2006. I received your letter of intent to demote me on April 11, 2006. *The letter of intent was already in the works well before I knew of the grievance. In fact I was in the hospital when the grievance was filed. I had not way to even know of it.*

In closing, I believe that your intention to demote me is clearly an act of discrimination. A review of facts by a neutral fact finder will demonstrate that your reasons and rationale are based solely upon intent to subject me to different terms and conditions of employment because of my race. Further, I believe an impartial review of the facts will demonstrate that you have gone out of your way to create a humiliating, offensive and hostile work environment for my by subjecting me to different terms and conditions of employment that those enjoyed by similarly situated non-black Nurse Managers.

Mr. Watson, I believe the charges cited for this demotion are without merit. I'm asking that his proposed demotion be rescinded.