

Page 1

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

This case was not selected for publication in the Federal Reporter.

Not for Publication in West's Federal Reporter See Fed. Rule of Appellate Procedure 32.1 generally governing citation of judicial decisions issued on or after Jan. 1, 2007. See also Fifth Circuit Rules 28.7, 47.5.3, 47.5.4. (Find CTA5 Rule 28 and Find CTA5 Rule 47)

United States Court of Appeals,
Fifth Circuit.
Steven W. HARRIS, Plaintiff-Appellant
v.
MISSISSIPPI TRANSPORTATION COMMISSION, Defendant-Appellee.
**No. 09-60043.**
**Summary Calendar.**

July 21, 2009.

**Background:** Terminated African-American employee of Mississippi Transportation Commission (MTC) filed state court action alleging, inter alia, unlawful retaliation under Title VII against his former employer. After removing action to federal court, MTC sought to exclude Equal Employment Opportunity Commission (EEOC) reasonable cause determination letter through motion in limine, and also moved for summary judgment. The United States District Court for the Southern District of Mississippi excluded Equal Employment Opportunity Commission (EEOC) 2008 WL 5427795 and 2008 WL 5427797, granted those motions, as well as MTC's motion to quash subpoena issued by employee that sought to obtain report from doctor who conducted independent medical examination of him during proceedings. Employee appealed.

**Holdings:** The Court of Appeals held that:
(1) district court did not abuse its discretion in refusing to admit EEOC letter;
(2) employee failed to show that reasons given for his termination, that he threatened his supervisor and solicited bribes from subcontractor whose work he inspected, were pretext for unlawful retaliation; and
(3) because summary judgment was appropriate, employee's subpoena remained moot.

Affirmed.

West Headnotes

**[1] Federal Courts 170B 823**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)4 Discretion of Lower Court
                170Bk823 k. Reception of Evidence.
Most Cited Cases

**Federal Courts 170B 895.5**

170B Federal Courts
    170BVIII Courts of Appeals
        170BVIII(K) Scope, Standards, and Extent
            170BVIII(K)6 Harmless Error
                170Bk895.5 k. Evidence in General.
Most Cited Cases
Court of Appeals reviews district court's evidentiary ruling for abuse of discretion, and will not reverse court's judgment unless ruling affects parties' substantial rights.

**[2] Civil Rights 78 1542**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
        78k1542 k. Admissibility of Evidence; Statistical Evidence. Most Cited Cases

**Evidence 157 146**

157 Evidence
    157IV Admissibility in General

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

      157IV(D) Materiality
          157k146 k. Tendency to Mislead or Confuse. Most Cited Cases

While Equal Employment Opportunity Commission (EEOC) reasonable cause determinations are highly probative of discrimination, district courts retain discretion to exclude such reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in evidentiary rule. Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[3] Evidence 157 ⛌146**

157 Evidence
    157IV Admissibility in General
      157IV(D) Materiality
          157k146 k. Tendency to Mislead or Confuse. Most Cited Cases

District court did not abuse its discretion in refusing to admit Equal Employment Opportunity Commission (EEOC) reasonable cause determination letter in retaliation case on ground its probative value was substantially outweighed by dangers of unfair prejudice to employer and of misleading jury. Fed.Rules Evid.Rule 403, 28 U.S.C.A.

**[4] Federal Courts 170B ⛌776**

170B Federal Courts
    170BVIII Courts of Appeals
      170BVIII(K) Scope, Standards, and Extent
        170BVIII(K)1 In General
          170Bk776 k. Trial De Novo. Most Cited Cases

Court of Appeals reviews de novo a grant of summary judgment and applies the same standard as did district court.

**[5] Civil Rights 78 ⛌1243**

78 Civil Rights
    78II Employment Practices
      78k1241 Retaliation for Exercise of Rights
        78k1243 k. Practices Prohibited or Required in General; Elements. Most Cited Cases

**Civil Rights 78 ⛌1541**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
      78k1534 Presumptions, Inferences, and Burden of Proof
        78k1541 k. Retaliation Claims. Most Cited Cases

Under *McDonnell Douglas* framework, employee must first establish a prima facie case of retaliation by showing that (1) he participated in an activity protected by Title VII, (2) his employer took an adverse employment action against him, and (3) a causal connection exists between the protected activity and the adverse employment action; after employee makes such a showing, employer must articulate legitimate, nondiscriminatory reasons for its employment action, and if it does so, burden falls back on employee to show that employer's proffered reasons are pretext for its actual retaliatory purpose. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

**[6] Civil Rights 78 ⛌1137**

78 Civil Rights
    78II Employment Practices
      78k1137 k. Motive or Intent; Pretext. Most Cited Cases

**Civil Rights 78 ⛌1535**

78 Civil Rights
    78IV Remedies Under Federal Employment Discrimination Statutes
      78k1534 Presumptions, Inferences, and Burden of Proof
        78k1535 k. In General. Most Cited Cases

To carry his burden of showing pretext, employee must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates; in considering employee's arguments, court focuses its attention on whether employer's perception of employee's performance, accurate or not, was the real reason for his termination.

**[7] Civil Rights 78 ⛌1247**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1247 k. Discharge or Layoff. Most Cited Cases

Disparate treatment is one way of demonstrating unlawful retaliatory termination under Title VII, but conduct that led to plaintiff's termination must be nearly identical to that engaged in by employee not within plaintiff's protected class whom company retained. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[8] Civil Rights 78 1251

78 Civil Rights
    78II Employment Practices
        78k1241 Retaliation for Exercise of Rights
            78k1251 k. Motive or Intent; Pretext. Most Cited Cases

States 360 53

360 States
    360II Government and Officers
        360k53 k. Appointment or Employment and Tenure of Agents and Employees in General. Most Cited Cases

Mississippi Transportation Commission (MTC) employee failed to show that reasons given for his termination, that he threatened his supervisor and solicited bribes from subcontractor whose work he inspected, were pretext for unlawful retaliation under Title VII; he proffered no evidence that white employees actually solicited bribes from contractors in exchange for passing inspections and did not point to specific evidence demonstrating that items allegedly received by white employees were, in fact, bribes. Civil Rights Act of 1964, § 704(a), 42 U.S.C.A. § 2000e-3(a).

[9] Labor and Employment 231H 762

231H Labor and Employment
    231HVIII Adverse Employment Action
        231HVIII(A) In General
            231Hk760 Reasons or Grounds for Adverse Action
                231Hk762 k. Motive, Intent, Pretext, and Causation in General. Most Cited Cases

Simply disputing underlying facts of employer's decision is not sufficient to create issue of pretext.

[10] Federal Courts 170B 13

170B Federal Courts
    170BI Jurisdiction and Powers in General
        170BI(A) In General
            170Bk12 Case or Controversy Requirement
                170Bk13 k. Particular Cases or Questions, Justiciable Controversy. Most Cited Cases

Issue of whether district court should have quashed subpoena issued by employee that sought to obtain report, from doctor who conducted independent medical examination of him during proceedings and allegedly relevant to determine amount of his emotional pain and suffering damages, was moot in light of Court of Appeals' determination that summary judgment for employer was appropriate. Fed.Rules Civ.Proc.Rule 35(b), 28 U.S.C.A.

\*552 Robert Nicholas Norris, Louis Hanner Watson, Jr., Law Offices of Louis H. Watson Jr., Jackson, MS, for Plaintiff-Appellant.

James T. Metz, Purdie & Metz, Ridgeland, MS, Joseph Allen Goff, Mississippi Department of Transportation, Jackson, MS, for Defendant-Appellee.

Appeal from the United States District Court for the Southern District of Mississippi, Jackson, 3:07-CV-366.

Before KING, DENNIS, and OWEN, Circuit Judges.

PER CURIAM:[FN*]

    FN* Pursuant to 5TH CIR. R. 47.5, the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**\*\*1** The Mississippi Transportation Commission terminated Steve Harris's employment on January 31, 2005. After he exhausted his administrative remedies and obtained a reasonable cause determination letter from the Equal Employment Opportunity Commission, Harris brought, among other things, a claim of unlawful retaliation under Title VII of the Civil Rights Act of 1964 against his former employer. He asserted that he was fired in retaliation for filing an earlier complaint with the Equal Employment Opportunity Commission alleging that he was discriminated against based on his race. During the course of the proceedings below, the Mississippi Transportation Commission filed a successful motion in limine seeking to exclude the reasonable cause determination letter. It then filed a motion for summary judgment contending that Harris failed to show that the reasons given for terminating his employment-that he threatened his supervisor and solicited bribes from a subcontractor whose work he inspected-were a pretext for unlawful retaliation. The district court agreed and granted the motion for summary judgment. The district court also quashed a subpoena issued by Harris that sought to obtain a report from the doctor who conducted an independent medical examination of Harris during the proceedings. Harris now appeals the district court's orders excluding the EEOC's letter, granting summary judgment in favor of the Mississippi Transportation Commission, and quashing his subpoena seeking the doctor's report. For the following reasons, we affirm the district court's judgment.

### I. FACTUAL AND PROCEDURAL BACKGROUND

We summarize here the relevant facts and procedures and note that a detailed account of this case's facts is available in the district court's opinion and order. See *Harris v. Mississippi Transportation Commission,* No. 3:07-CV-366, 2008 WL 5427797 (S.D.Miss. Dec. 30, 2008).

Steve Harris is an African American who was hired by the Mississippi Transportation Commission ("MTC") on February 16, 1990, to inspect road construction projects performed by private contractors. Harris's employment history with MTC was spotted with disciplinary infractions. On three separate occasions occurring between June 2000 and April 2002, Harris was reprimanded and suspended without pay for using obscene or abusive language and for threatening or coercing employees, supervisors, or business invitees.

**\*553** On October 25, 2004, Harris filed a Charge of Discrimination with the Equal Employment Opportunity Commission (the "EEOC"), alleging claims of racial discrimination. Subsequent to Harris's filing that charge, MTC terminated Harris's employment on January 31, 2005, based on its determination that Harris had threatened his supervisor and that he had solicited bribes from a subcontractor.

The charge that Harris had threatened his supervisor was based on a December 2, 2004, incident wherein Harris became loud, unruly, and hostile towards Steve Johnson, Harris's supervisor, after Johnson had denied Harris's request for leave. The solicitation of bribery charge stemmed from statements made by Brian Hodges, President of Hodges, Inc., which was a subcontractor that performed construction for MTC. In September 2004, Hodges told Johnson that between December 2001 and June 2002 Hodges had been approached by Maverick Hughes and another co-worker, both of whom were MTC employees. The MTC workers told Hodges that his company would not be paid for work it had done on the previous Sunday because an inspector had not been present, but that they could "make his problem 'go away' " in exchange for cash. *Id.* at \*1. Hodges submitted a notarized written statement on November 30, 2004, making the same allegations. After reviewing the daily reports of work done by Hodges, Inc. between December 2001 and June

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

2002, Johnson confirmed that Harris was the only other MTC employee who had inspected Hodges, Inc.'s work.

**\*\*2** Leading up to the termination of Harris's employment, Hearing Officer John Head sent Harris a Pre-disciplinary Action Notice on December 21, 2004, notifying Harris of the charges made against him and directing him to appear at a pre-disciplinary conference. Harris was further informed that he could submit a written response to the charges against him. Following the conference, Head set forth his findings in a letter to Larry Brown, Executive Director of MTC. In the letter, Head recommended that Harris's employment be terminated. Finally, on January 21, 2005, Harris was issued a Disciplinary Action Notice informing him that his employment would be terminated, effective on January 31, 2005, based on the charges of threatening his supervisor and soliciting bribes. Following his termination, Harris amended his Charge of Discrimination to include a claim of retaliation.

On September 7, 2006, the EEOC issued a reasonable cause determination letter (the "EEOC Letter") in which it found reasonable cause to believe Harris had been discharged in retaliation for filing his initial Charge of Discrimination. In a February 5, 2007 letter, the EEOC informed Harris that conciliation efforts with MTC had been unsuccessful and advised Harris that he could commence a civil action within ninety days.

Harris filed a lawsuit against MTC in Mississippi state court on May 3, 2007, alleging racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII"); discrimination on the basis of race in violation of 42 U.S.C. § 1981; and state law claims of tortious interference of prospective business advantage, intentional infliction of emotional distress, and negligent infliction of emotional distress. MTC removed the case to the United States District Court for the Southern District of Mississippi on June 28, 2007. On June 17, 2008, the parties entered a stipulation in which Harris withdrew all his claims save that for retaliation under Title VII.

During the proceedings below, MTC sought to exclude the EEOC Letter through a motion in limine, which the district court granted. The district court additionally**\*554** granted MTC's motion for summary judgment, concluding that Harris failed to present a genuine issue of material fact showing that MTC's nondiscriminatory reasons for firing Harris were a pretext for unlawful retaliation. Finally, after submitting to an independent medical examination performed by Dr. Hiatt, who was engaged by MTC, Harris requested a report of that examination through a subpoena. MTC moved to quash the subpoena, and a magistrate judge granted the motion. Harris then filed a motion appealing the magistrate judge's order to the district court; the court dismissed the motion, as well as all other outstanding motions, as moot when it granted MTC's motion for summary judgment.

Harris filed a timely notice of appeal. We have jurisdiction under 28 U.S.C. § 1291, and for the following reasons, we affirm the district court's judgment.

### II. DISCUSSION

**\*\*3** Harris raises three points of contention on appeal: (1) the district court erred by excluding the EEOC Letter; (2) it erred by granting MTC's motion for summary judgment; and (3) it erred by quashing Harris's subpoena seeking a report of the medical examination. We conclude that the district court did not abuse its discretion in refusing to admit the EEOC Letter; that it did not err in granting MTC's motion for summary judgment; and that, because summary judgment for MTC is appropriate, Harris's subpoena remains moot.

**A. EEOC Reasonable Cause Determination Letter**

Harris argues that the court erred by granting

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 6

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

MTC's motion in limine that sought to exclude the EEOC Letter from the evidence. The district court determined under Rule 403 of the Federal Rules of Evidence that the probative value of the EEOC Letter was substantially outweighed by the dangers of unfair prejudice to MTC and of misleading the jury. FN1

> FN1. Rule 403 states:
>
> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[1] We review a district court's evidentiary ruling for an abuse of discretion, and we will not reverse the court's judgment unless the ruling affects the parties' substantial rights. Positive Black Talk Inc. v. Cash Money Records, Inc., 394 F.3d 357, 375 (5th Cir.2004); see also EEOC v. Manville Sales Corp., 27 F.3d 1089, 1092-93 (5th Cir.1994).

[2] Harris argues that the district court abused its discretion because the letter is a reasonable cause determination, which he asserts is per se admissible, as opposed to a "letter of violation," which may be excluded. In making this argument, Harris misreads our precedent. While this court has recognized that EEOC reasonable cause determinations are "highly probative of discrimination," we have also admonished that such a statement "should not 'be read as leaving district courts without discretion under Rule 403 to exclude such reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in the rule.' " Manville Sales Corp., 27 F.3d at 1095 (internal quotation marks and brackets in first quotation omitted) (quoting Cortes v. Maxus Exploration Co., 977 F.2d 195, 201-02 (5th Cir.1992)); see also *555Eason v. Fleming Cos., No. 92-1390, 1993 WL 13015208, at *3 (5th Cir. Aug.24, 1993) ("[D]espite their probative value, EEOC determinations may be excluded from evidence ... pursuant to Rule 403 of the Federal Rules of Evidence, where the court determines that their probative value is substantially outweighed by their prejudicial effect.").

[3] In excluding the EEOC Letter, the district court determined that the letter threatened to confuse the jury and prejudice MTC because the explanations of its conclusion were diametrically opposed to the facts in the record. Cf. Eason, 1993 WL 13015208, at *4 (affirming a district court's decision to admit an EEOC reasonable cause determination that was "fully supported by the record"). The EEOC Letter stated that MTC "did not have a problem with [Harris's] employment prior to [his] filing a discrimination charge" and that MTC, "without an investigation or corroborating evidence and only after [Harris] filed his charge[,] concluded that [Harris] was the co-worker [named by Hodges] and discharged him." The record evidence, however, indicates the opposite: Harris received written reprimands and had been suspended on at least three prior occasions, and MTC did conduct an investigation in order to determine that Harris was the only other MTC employee working at the job site in question. Harris raises no other argument challenging the district court's reasoning, and we cannot say the court abused its discretion in excluding the EEOC Letter.

**B. Summary Judgment Is Appropriate**

**\*\*4** [4] Harris next challenges the district court's grant of summary judgment in favor of MTC. We review de novo a grant of summary judgment and apply the same standard as did the district court. McCoy v. City of Shreveport, 492 F.3d 551, 556 (5th Cir.2007); Willis v. Coca Cola Enters., Inc., 445 F.3d 413, 416 (5th Cir.2006). Summary judgment is proper when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). We construe all facts and inferences in the light most fa-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

vorable to the nonmoving party, *Willis,* 445 F.3d at 416, but where the movant has asserted that evidence supporting the nonmovant's claim is lacking, the onus is on the nonmovant to "go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial," *Wright v. Ford Motor Co.,* 508 F.3d 263, 276 (5th Cir.2007) (internal quotation marks omitted); *see also EEOC v. Chevron Phillips Chem. Co.,* 570 F.3d. 606, 615 (5th Cir.2009) ("The nonmovant must then point to or produce specific facts demonstrating that there is a genuine issue of material fact.").

[5] Under Title VII, "an employer may not discriminate against an employee because the employee has 'opposed any practice made an unlawful employment practice ... or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing' under Title VII." *LeMaire v. La. Dep't of Transp. & Dev.,* 480 F.3d 383, 388 (5th Cir.2007) (omission in original) (quoting 42 U.S.C. § 2000e-3). A retaliation claim such as this is governed by the familiar *McDonnell Douglas* burden-shifting framework. *Id.* (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)); *see also McCoy,* 492 F.3d at 556. Under that framework, Harris must first establish a prima facie case of retaliation by showing that (1) "he participated in an activity protected by Title VII"; (2) "his employer took an adverse employment action against him"; and (3) "a causal connection exists between the protected activity and the adverse**556** employment action." *McCoy,* 492 F.3d at 557. After making such a showing, MTC must articulate legitimate, nondiscriminatory reasons for its employment action. *See id.* If MTC articulates such reasons, the burden falls back on Harris to show that MTC's proffered reasons are a pretext for its actual retaliatory purpose. *See id.* at 556-57.

Here, neither party questions that Harris has made out a prima facie case of retaliation. Nor do they contest that MTC met its burden to articulate legitimate, nondiscriminatory reasons for terminating Harris's employment-that (1) he solicited bribes and (2) he threatened his superior. The question, then, is whether Harris can point to sufficient evidence raising a genuine issue of material fact regarding whether MTC's proffered reasons are a mere pretext for unlawful retaliation.

**\*\*5** [6] To carry his burden of showing pretext, Harris "must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates." *Wallace v. Methodist Hosp. Sys.,* 271 F.3d 212, 220 (5th Cir.2001). In considering Harris's arguments, we focus our attention on "whether [MTC's] perception of [Harris's] performance, accurate or not, was the real reason for [his] termination." *Laxton v. Gap Inc.,* 333 F.3d 572, 580 (5th Cir.2003) (internal quotation marks omitted); *see also LeMaire,* 480 F.3d at 391 ("Our antidiscrimination laws do not require an employer to make proper decisions, only non-retaliatory ones.").

[7][8] Harris raises four arguments in asserting that MTC's reasons are pretextual, none of which gives rise to a genuine issue of material fact regarding pretext. First, he points to the affidavit of Jimmy Forrest, an MTC employee who stated that "[w]e had a lot of whites getting stuff from contractors," as evidence of MTC's disparate treatment of white employees who were not fired for accepting bribes. Disparate treatment is indeed one way of demonstrating unlawful retaliation, but the conduct that led to the plaintiff's termination must be "nearly identical to that engaged in by an employee not within [his] protected class whom the company retained." *Wallace,* 271 F.3d at 221 (internal quotation marks and brackets omitted); *see also Bryant v. Compass Group USA Inc.,* 413 F.3d 471, 478 (5th Cir.2005) ("To establish disparate treatment, [the plaintiff] must show that [the employer] gave preferential treatment to another employee under 'nearly identical' circumstances." (citations omitted)). Harris's argument fails because he has proffered no evidence indicating that the white employees actually solicited these bribes from contractors in exchange for passing inspections, nor

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))
**(Not Selected for publication in the Federal Reporter)**
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

does he point to specific evidence demonstrating that the items allegedly received by white employees were, in fact, bribes. Thus, Harris has not shown that the white employees were retained under circumstances nearly identical to Harris's. Further, Harris must rebut *each* justification offered by MTC, and he does not argue to this court that MTC retained white employees who threatened a superior, as did Harris. *See, e.g., Wallace,* 271 F.3d at 221-22 (holding that, while the plaintiff succeeded in demonstrating a genuine issue of fact concerning the pretext of one of her employer's reasons for terminating her employment, she failed to meet her burden of "presenting evidence rebutting *each* of the legitimate nondiscriminatory reasons" put forward by the employer and, hence, judgment as a matter of law was appropriate).

[9] Second, Harris denies that he solicited bribes and that he threatened Johnson, and MTC's refusal to conduct a polygraph test, according to Harris, shows that MTC believes Harris's denials are truthful. **\*557** "Simply disputing the underlying facts of an employer's decision is not sufficient to create an issue of pretext." *LeMaire,* 480 F.3d at 391; *see also id.* ("Our job as a reviewing court conducting a pretext analysis is not to engage in second-guessing of an employer's business decisions."). To the extent that Harris suggests that MTC normally offers polygraph exams to employees it investigates, this inference is belied by *Parks v. Mississippi Department of Transportation,* 246 Fed.Appx. 282, 283 (5th Cir.2007) ("[MTC] *does not* routinely require an employee who asserts [a Title VII protected] claim to take a polygraph test ...." (emphasis added)). At bottom, MTC determined without the use of a polygraph test that Hodges's statements were more credible than Harris's explanations, and, correct or not, we will not second-guess MTC's decision to disbelieve Harris absent a showing of actual retaliatory purpose. *See LeMaire,* 480 F.3d at 391 ("Despite [plaintiff]'s denial of these actions, we will not second-guess [the employer]'s decision to disbelieve [plaintiff]'s explanation, given the conflicting factual accounts.").

**\*\*6** Third, Harris points to the EEOC Letter as evidence that MTC's reasons are pretextual, but we have determined above that the district court did not abuse its discretion in excluding that letter from the evidence. As such, we do not consider the EEOC Letter as part of the summary judgment record. *See Michaels v. Avitech, Inc.,* 202 F.3d 746, 751 (5th Cir.2000) ("[O]nly materials in the pretrial record that would have been admissible evidence can be considered."); *Curtis v. M & S Petroleum, Inc.,* 174 F.3d 661, 668 (5th Cir.1999) (explaining that we first review the district court's evidentiary rulings in order to define the record with which to review the district court's judgment).

Fourth and finally, Harris points to an unwritten order denying MTC's motion for summary judgment in a discrimination case brought by Maverick Hughes, *Hughes v. Mississippi Transportation Commission,* No. 3:06-CV-80. Harris argues that the court's decision there is evidence of MTC's pretext here. He does not articulate how the mere fact that summary judgment was denied in Hughes's case creates a genuine issue of material fact in this case; thus, Harris again fails to meet his burden of producing some evidence that MTC's reasons were a pretext for retaliation.

Harris has failed to identify specific facts creating a genuine issue for trial. As such, summary judgment in favor of MTC is appropriate.

### C. Subpoena Seeking Dr. Hiatt's Report

[10] Finally, Harris asserts that he is entitled under Rule 35(b) of the Federal Rules of Civil Procedure to a report of his independent medical examination performed by Dr. Hiatt. In arguing to the district court that he was entitled to the report, Harris represented that the report was relevant to determine the amount of his emotional pain and suffering damages. As we have determined that summary judgment in favor of MTC is appropriate, Harris is not entitled to any amount of damages and, therefore, this issue is moot.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))  
**(Not Selected for publication in the Federal Reporter)**  
**(Cite as: 329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.)))**

Page 9

### III. CONCLUSION

For the reasons stated above, we AFFIRM the district court's judgment.

C.A.5 (Miss.),2009.  
Harris v. Mississippi Transp. Com'n  
329 Fed.Appx. 550, 2009 WL 2168913 (C.A.5 (Miss.))

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.