

Page 1

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

C

United States District Court,
N.D. Mississippi,
Delta Division.
Sheila A. LUCAS Plaintiff
v.
CITY OF SHELBY Defendant
**No. 2:00CV45-D-B.**

Aug. 26, 2002.

Female applicant for a position as a city police officer sued the city for sexual discrimination in refusing to hire her. Following a jury verdict in favor of the city, the applicant moved for a new trial. The District Court, Davidson, Chief Judge, held that: (1) failure to admit into evidence letters from a city attorney to the Equal Employment Opportunity Commission (EEOC) related to the reasons the city gave for not hiring the applicant did not warrant a new trial; (2) probative value of an EEOC letter was substantially outweighed by the danger of unfair prejudice, and/or misleading the jury; (3) allowing city to impeach applicant with a statement in a letter which should allegedly have been produced in discovery did not warrant a new trial; and (4) admission into evidence of attendance records of the applicant while she worked for the Mississippi Department of Corrections (MDOC) did not prejudice the applicant.

Motion denied, and case closed.

West Headnotes

**[1] Federal Civil Procedure 170A ⇐2334**

170A Federal Civil Procedure
    170AXVI New Trial
        170AXVI(B) Grounds
            170Ak2333 Trial Errors
                170Ak2334 k. Evidence. Most Cited Cases
Court's failure to admit into evidence in an employment discrimination suit letters from a city attorney to the Equal Employment Opportunity Commission (EEOC) related to the reasons the city gave for not hiring a female applicant for a police officer position did not warrant a new trial; the subject matter and the contents of the letter came in on multiple occasions, and there was an abundance of evidence regarding the different reasons given by the city for not hiring the applicant. Fed.Rules Civ.Proc.Rule 59(a)(1), 28 U.S.C.A.

**[2] Evidence 157 ⇐146**

157 Evidence
    157IV Admissibility in General
        157IV(D) Materiality
            157k146 k. Tendency to Mislead or Confuse. Most Cited Cases
Probative value of an Equal Employment Opportunity Commission (EEOC) letter stating "we conclude that [city] engaged in an unlawful employment practice in violation of Title VII" and "[t]his determination is final," was substantially outweighed by the danger of unfair prejudice, and/or misleading the jury in an employment discrimination suit brought by an unsuccessful female applicant for a position as a city police officer, thus warranting exclusion of the letter from evidence. Civil Rights Act of 1964, § 701 et seq., 42 U.S.C.A. § 2000e et seq.; Fed.Rules Evid.Rules 403, 803(8)(C), 28 U.S.C.A.

**[3] Federal Civil Procedure 170A ⇐2333.1**

170A Federal Civil Procedure
    170AXVI New Trial
        170AXVI(B) Grounds
            170Ak2333 Trial Errors
                170Ak2333.1 k. In General. Most Cited Cases
Allowing city to impeach female applicant for a position as a city police officer on cross-examination with a statement contained in a letter she previously wrote to the city, which should allegedly have been

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

produced in discovery, did not warrant a new trial in the applicant's employment discrimination suit; city's litigation counsel was allegedly unaware of the letter's existence until the trial, and the applicant could not claim that she was unaware of the letter she wrote, and as such, could not claim any real prejudice from being unable to review it. Fed.Rules Civ.Proc.Rule 37(c)(1), 28 U.S.C.A.

**[4] Federal Civil Procedure 170A ⚷2334**

170A Federal Civil Procedure
    170AXVI New Trial
        170AXVI(B) Grounds
            170Ak2333 Trial Errors
                170Ak2334 k. Evidence. Most Cited Cases

Admission into evidence of attendance records of an unsuccessful applicant for a city police officer position while she worked for the Mississippi Department of Corrections (MDOC) did not prejudice the applicant in her employment discrimination suit against city, so as to warrant a new trial. Fed.Rules Civ.Proc.Rule 59(a)(1), 28 U.S.C.A.

**\*517** Rivers Harlow Humber,Holcomb Dunbar, Clarksdale, for Shelia A. Lucas, plaintiff.

Gary E. Friedman, Chelye Prichard Amis, Phelps Dunbar, Jackson, for City of Shelby, defendant.

*MEMORANDUM OPINION DENYING MOTION FOR NEW TRIAL*

DAVIDSON, Chief Judge.

Presently before the court is the Plaintiff's motion for a new trial. Upon due consideration, the court finds that the motion should be denied.

*A. Factual and Procedural Background*

The Plaintiff, Sheila A. Lucas, brought this case against the Defendant City of Shelby, Mississippi, for sexual discrimination in refusing to hire her as a police officer in 1998. Lucas applied for employment with the City of Shelby in January of 1998. At the time Lucas applied, the Board of Aldermen of the City was responsible for hiring all police officers for the city. At that time, the Board of Aldermen consisted of four males and one female member, Linda Seaton. Seaton also served in the position of Personnel Officer for the Mississippi Department of Corrections at Parchman. Lucas previously worked for the Mississippi Department of Corrections at Parchman.

On May 5, 1998, Lucas' application was submitted to the five board members for a vote. The four male members initially voted to hire Lucas, and Seaton was the only member who voted against hiring her. Thereafter, one or more of the male members wanted to know why Seaton voted as she did. Seaton responded at the time that she could not divulge her reasons. As a result, the board members unanimously voted to hold off on hiring Lucas, and agreed that a further investigation into Lucas' record be conducted. The board members apparently did not delegate or specify who would investigate her record, and there was no evidence that any further action was taken on Lucas' application.

In October of 1998, Lucas filed an Equal Employment Opportunity Commission (EEOC) charge alleging discrimination based on sex. In March of 2000, she filed the present cause of action. This cause went to trial on June 3, 2002. Lucas' circumstantial case was based largely on her qualifications compared to those of the males hired around the same time period, as well as inconsistent answers given by the City to the EEOC as to why Lucas was not hired. At trial, Defendant emphasized that Seaton had heard various things about Lucas while employed by the MDOC, including references to some sort of investigation of Lucas. On the third day of trial, the jury returned a verdict in favor of the City of Shelby. Lucas cites several evidentiary rulings as the basis of her motion for a new trial.

*B. Standard for Granting a New Trial*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

Page 3

"A new trial may be granted ... on all or part of the issues (1) in an action in which there has been a trial by jury, for ***518** any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States ...." Fed.R.Civ.P. 59(a)(1). The decision to grant or deny a new trial lies within the discretion of the trial court. *Mississippi Chem. Corp. v. Dresser-Rand Co.,* No. 5:97CV57BRN, 2000 WL 33725123, at *1 (S.D.Miss.2000), aff'd 287 F.3d 359 (5th Cir.2002). A motion for a new trial based on evidentiary grounds should not be granted unless, at a minimum, the verdict is against the great weight of the evidence, not merely against the preponderance of the evidence. *Carter v. Fenner,* 136 F.3d 1000, 1010 (5th Cir.1998); *Dawson v. Wal-Mart Stores, Inc.,* 978 F.2d 205, 208 (5th Cir.1992) (citing *Conway v. Chemical Leaman Tank Lines, Inc.,* 610 F.2d 360, 363 (5th Cir.1980)).

*C. Discussion*

Lucas makes the following arguments regarding various evidentiary rulings in her motion for a new trial. First, that the court improperly allowed the Defendant to cross-examine Lucas with a letter that was not produced in discovery. Second, that the court erred in admitting into evidence documents regarding Lucas' MDOC attendance records, which were not included in the pretrial order. Third, that the court should have admitted certain documents from the EEOC. Finally, Lucas argues that the court should have admitted letters from the attorney of the City of Shelby to the EEOC related to the reasons the City gave for not hiring Lucas. The court will address each of these in turn, in the order each issue came up at trial.

1. Letters from the City's Attorney to the EEOC

[1] Plaintiff contends that the court erred in refusing to admit into evidence letters written by the City of Shelby's attorney, Levingston, in response to inquiries from the EEOC relating to the City's decision not to hire her. Specifically, one of the letters from Levingston to the EEOC quoted Seaton as saying "I did not deem her best suited because we were interested in prior police officer experience and particularly someone who was academy certified." Plaintiff argues that the refusal to admit those letters precluded the jurors from noting the different positions or reasons the City gave for not hiring Plaintiff. For the reasons discussed more fully below, the court is of the opinion that even though the EEOC file, including the letter at issue written by the City attorney, was not admitted into evidence, the subject matter and the contents of the letter did come in on multiple occasions.

Mr. Levingston, Shelby's City Attorney, corresponded with and participated in the investigation by the EEOC. However, Defendant was represented by other counsel in the litigation of the present case. At trial, Plaintiff called Levingston as an adverse witness. Plaintiff's counsel questioned Levingston about the May 5th board meeting and the reasons Lucas was not hired. Plaintiff's counsel asked Levingston if "Mrs. Seaton pointed out to the four Aldermen that voted yes, that Ms. Lucas had no experience as a police officer?" Levingston replied "[n]o sir. That's, that's not what happened." Plaintiff's counsel then asked "did you make that representation?" Levingston replied "I may have written that in response to a question, but ... what Mrs. Seaton said was ...."

Plaintiff's counsel again asked if one of the reasons that Lucas was not hired was that she did not have prior work experience as a police officer. Levingston answered "[n]o sir, that did not even come into it." Plaintiff's counsel then placed the letter on the courtroom's electronic monitor***519** and further questioned Levingston. Later, Plaintiff's counsel asked Levingston if Mrs. Seaton gave him a quote to give the EEOC in response to the question about the reasons Lucas was not hired. That quote was "I did not deem her best suited because we were interested in prior police officer experience and particularly someone who was academy certified." On re-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 4

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

direct, Levingston stated "she [Seaton] gave me that quote and I gave it to the EEOC." Levingston stated that he inferred that Lucas was in a tenuous situation because she was privy to sensitive information from her job in personnel at MDOC and she did not want to do anything to endanger that job. Plaintiff's counsel asked Levingston, "did you ever tell the EEOC that?" Levingston answered "no." [FN1]

> FN1. The court ruled at trial that Plaintiff's counsel could use the letters to the EEOC in examining Levingston, for any admissions (by the Defendant City of Shelby) in the documents pursuant to Fed.R.Evid. 801(d)(2). As is discussed more in the next section, the court did not allow the entire EEOC file to be admitted into evidence.

The next day of trial, Plaintiff called Linda Seaton as an adverse witness. Seaton testified that the real reason she did not want to hire Lucas was that Seaton had heard about an ongoing investigation of Lucas while she was working at MDOC. This reason, although not the answer given in the EEOC letter, was what Seaton testified to in her deposition. Seaton stated at trial that she also saw Lucas' resignation letter from MDOC which made her suspicious. Plaintiff's counsel then asked Seaton about her involvement with Levingston in replying to the EEOC. Seaton admitted that she gave Levingston a statement. Plaintiff's counsel then asked Seaton to explain why Levingston told the EEOC that one of the reasons you didn't want to hire Lucas was because she did not have prior police officer experience. Seaton responded:

[ gave that reason [no prior police officer experience, qualifications] because I did not want to give the real reasons because ... I ... got that information while working at the Department of Corrections and I did not want to jeopardize my job by giving information that I had received while employed with the Department .... I gave them that information, these generic reasons, and I had hoped it would have gone away.

In light of the foregoing, and the fact that the excerpt from the letter to the EEOC was read to the jury, there was an abundance of evidence regarding the different reasons given by the City for not hiring Lucas. The jury was free to infer that Seaton was telling the truth, or that the different reasons were a pretext for discrimination. As such, Plaintiff's argument is not well taken.

2. EEOC Documents

[2] Plaintiff argues that the court erred in excluding the EEOC documents from evidence in this case. Plaintiff argues that under *McClure v. Mexia Ind. Sch. Dist.,* 750 F.2d 396 (5th Cir.1985), and other cases, the EEOC documents should not have been excluded. As an initial matter, under Fed.R.Evid. 803(8)(C), investigative reports made by government agencies are removed from the rule against hearsay unless circumstances indicate untrustworthiness. *See, e.g., McClure,* 750 F.2d at 399; *Cortes v. Maxus Exploration Co.,* 977 F.2d 195, 201 (5th Cir.1992). Rule 803 was not what this court based its decision on to exclude the documents in the case *sub judice.*

The court excluded the evidence under Rule 403, which gives trial courts the discretion **\*520** to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, of needless presentation of cumulative evidence." *Cortes,* 977 F.2d at 201 (citing Fed.R.Evid. 403). The Fifth Circuit has found investigative reports and files of the EEOC to be highly probative on multiple occasions. *See, e.g., McClure,* 750 F.2d 396; *Peters v. Jefferson Chemical Co.,* 516 F.2d 447, 450 (5th Cir.1975); *Smith v. Universal Services, Inc.,* 454 F.2d 154, 157 (5th Cir.1972). The Fifth Circuit also warned that the balancing test of Rule 403 should not be misused in such a way that "would end the presumption that evaluative reports are admissible hearsay under Rule 803(8)(C)." *Moss v. Ole South Real Estate, Inc.,* 933 F.2d 1300,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

1308-09 (5th Cir.1991). However, "[n]one of these decisions should be read as leaving district courts without discretion under Rule 403 to exclude such reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in the rule." *Cortes,* 977 F.2d at 201-02. [FN2]

> FN2. The Court of Appeals for the Eleventh Circuit has cogently noted:
>
>> [t]he admission of an EEOC report, in certain circumstances, may be much more likely to present the danger of creating unfair prejudice in the minds of the jury than in the mind of the trial judge, who is well aware of the limits and vagaries of administrative determinations and better able to assign the report appropriate weight and no more.
>
>> *Walker v. NationsBank of Florida,* 53 F.3d 1548, 1554 (11th Cir.1995)(quoting *Barfield v. Orange County,* 911 F.2d 644, 651 (11th Cir.1990)).

Furthermore, while in a different context than the situation presently before the court, when considering what weight to give an EEOC determination at the summary judgment stage, other district courts within this circuit have held that a court should not "deny a summary judgment based on a record that otherwise would require it to be granted simply because an EEOC investigator has made unfounded determinations of discrimination." *See, e.g., Bynum v. Fort Worth Indep. Sch. Dist.,* 41 F.Supp.2d 641, 658 (N.D.Tex.1999).

In *EEOC v. Manville Sales Corp.,* 27 F.3d 1089 (5th Cir.1994), the Fifth Circuit affirmed the trial court's exclusion of an EEOC letter of violation in a suit under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §§ 621-34. Lucas focuses on the court's distinction in *Manville Sales Corp.* between letters of violation and letters of reasonable cause.

The difference is ... a letter of reasonable cause is more tentative in its conclusions whereas a letter of violation states the categorical legal conclusion that a violation has taken place. Additionally, we have held that *McClure* and *Smith* decisions should not "be read as leaving district courts without discretion under Rule 403 to exclude such reports if their probative value is substantially outweighed by prejudicial effect or other considerations enumerated in the rule."

*Manville Sales Corp.,* 27 F.3d at 1095 (citation omitted).

Regardless of how the letter in this case is classified, the EEOC letter states in pertinent part:

DETERMINATION

Under the authority vested in me by the Commission's Procedural Regulations, I issue the following determination on the merits of the subject charge filed under Title VII of the Civil Rights Act of 1964 ....

*521 ....

On October 6, 1998 two males were hired. Charging party also alleges that she is qualified for the position. Charging party further alleges in the position she sought Respondent employs only males.

I have determined that the evidence obtained in the investigation establishes reasonable cause to believe that the Charging Party was discriminated against in violation of Title VII .... One Alderman voted not to hire Charging Party citing Charging Party had no previous experience.... One of the males [hired] had similar experience as Charging Party.

Respondent's workforce for Police Officer is comprised of nine (9) males. The evidence of record supports Charging Party's Allegation. As such, we conclude that Respondent engaged in an un-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

Page 6

lawful employment practice in violation of Title VII. There is reasonable cause that Charging Party was discriminated against because of her sex.

....

This determination is final. When the Commission finds that violations have occurred, it attempts to eliminate unlawful practices by informal methods of conciliation....

The court is of the opinion that admitting the determination in the present case would invade the province of the jury. Throughout the trial, the jury heard the same evidence that the EEOC investigator did, with one exception. The jury heard testimony about: the number of males on the police force, the qualifications of the males hired before and after Lucas applied, compared to Lucas' qualifications and experience, what Seaton based her decision not to hire Lucas on, and why the City gave a different answer to the EEOC as to why Lucas was not hired. However, the EEOC never heard anything about an alleged investigation of Lucas while she worked at Parchman or whether she resigned while under investigation. Thus, the court is of the opinion that admitting the entire file would involve needless presentation of cumulative evidence. More importantly, the court is of the opinion that the probative value of the letter stating "we conclude that Respondent engaged in an unlawful employment practice in violation of Title VII" and "[t]his determination is final" is substantially outweighed by the danger of unfair prejudice, and / or misleading the jury.

3. Lucas' August 20, 1998 Correspondence

[3] Plaintiff argues that the court erred in allowing the Defendant to cross-examine her with a statement contained in a letter she previously wrote to the Defendant City of Shelby. Plaintiff's counsel assert that their discovery requests should have produced this letter and that under Rule 37(c)(1), the letter should not have been used at trial. Fed.R.Civ.P. 37 states in pertinent part:

(c) Failure to Disclose; False or Misleading Disclosure; Refusal to Admit.

(1) A party that without substantial justification fails to disclose information required by Rule 26(a) or 26(e)(1), or to amend a prior response to discovery as required by Rule 26(e)(2), is not, unless such failure is harmless, permitted to use as evidence at a trial, ... any information not so disclosed....

Defendant's counsel admits that the document was never produced in discovery, but that counsel was unaware of its existence until the trial. Again, Mr. Levingston, Shelby's City Attorney, corresponded with and participated in the investigation by the EEOC, but the City used other counsel during this litigation. Defendant's counsel **\*522** states that it was not until Mr. Levingston, appeared at trial to testify "that the letter was produced to the undersigned counsel."

Throughout the trial, there were questions about Lucas' job performance at the MDOC, and whether she had been under any investigation. During Plaintiff's case, Plaintiff Lucas was called as a witness. On direct, Plaintiff's counsel asked her if she left the MDOC on good terms. Lucas answered yes. Counsel then asked if she authorized the release of information from the Mississippi Department of Corrections. Lucas answered yes. Counsel further asked "you weren't concerned about anything in your personnel file ...?" Lucas answered "no." Later, counsel asked Lucas "did you try to stop anyone from checking up on your personnel file or looking into your background?" Lucas answered "[n]o sir, I didn't."

On cross-examination, Defendant's counsel went over the fact that Ms. Seaton worked at Parchman in the personnel department and asked Lucas if she knew why Seaton voted not to hire her. Defense counsel also asked Lucas whether she tried to stop

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

anyone from looking into her personnel file from Parchman.

The letter at issue, written by Lucas to the Mayor and the Board of Shelby states:

During that same [May 5, 1998] meeting Mrs. Seaton objected to me being hired on information that she relayed to this board and in relation to my not being re-employed at the Mississippi Department of Corrections (MDOC).

Mrs. Seaton did not have the authority to interject into a Shelby City Board Meeting that information. She is privileged to that information based on job duties and responsibility for the Mississippi Department of Correction and the two job responsibilities do not overlap and should not be allowed to overlap. Mrs. Seaton shared that information in violation of my privacy rights.

I have investigated her accusation myself and found that all the documents necessary for my re-employment to be in my file at MDOC, and there is nothing negative in my file that would hold up my re-employment from [MDOC] in fact, I have in my possession a copy of the rehire approval from signed by the Commissioner of MDOC.

I am requesting a hearing ... in relation to ... me being hired to the City of Shelby Police Department and I request Mrs. Seaton provide me and the board any information in writing that she has to prevent that employment.

At trial, Defendant primarily pointed out the second paragraph, which seems to contradict Lucas' statements that she wasn't concerned about anything in her personnel file and that she never tried to stop anyone from checking up on her personnel file or looking into her background. Defendant states that Plaintiff likewise never produced the letter to Defendant during discovery and that it appears if anyone had an obligation to disclose the existence of the letter, it would be the Plaintiff. Defendant argues that Lucas could not have been prejudiced because as the author, she obviously was aware that it existed. Defendant also asserts that exhibits to be used for impeachment are not required to be listed in the pre-trial order.[FN3]

> [FN3]. The pretrial order states "[t]he following is a list and brief description of all exhibits (except exhibits to be used for impeachment only) to be offered in evidence by the respective parties."

As an initial matter, the court notes that there are "surprisingly few cases on the discoverability of impeachment evidence." *Chiasson v. Zapata Gulf Marine Corp.,* 988 F.2d 513, 516 (5th Cir.1993). Impeachment **523** evidence is that which is offered to "discredit a witness ... to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in ... [her] testimony." *Chiasson,* 988 F.2d at 517.

In *Miles v. M/V Mississippi Queen,* 753 F.2d 1349 (5th Cir.1985), the plaintiff, a crew member of a passenger steamboat, claimed that he injured his back in an unwitnessed accident. *Miles,* 753 F.2d at 1350. Before trial, the defendant steamboat company found that plaintiff claimed to have been injured in two other accidents after he left the steamboat and that he made damaging admissions in statements he had given to an adjuster investigating the other claims. *Id.* Defendant's counsel informed the court at the pretrial conference that he intended to offer certain documents as impeachment and produced them for inspection to the court, but refused to let plaintiff's counsel inspect them. *Id.* at 1350-51. The court denied plaintiff's request to inspect the *in camera* documents. *Id.* at 1351. At trial, defendant's attorney questioned plaintiff with the statements he had given to the insurance adjuster investigating other claims. *Id.* Both of these alleged accidents occurred after plaintiff left the steamboat. *Id.* In one of the statements, which described a back injury from falling off a U-Haul trailer ramp, plaintiff stated "this was my first injury of any kind of accident in my life." *Id.* The jury ultimately returned a verdict for the defendant. *Id.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

Page 8

The Fifth Circuit held that the district court erred in failing to order production of the statements to the plaintiff. *Id.* at 1350. The court stated that the defendant has preserved the dramatic impeachment value of the prior statements and there was neither reason nor excuse for delay in producing them. *Id.* at 1352. However, the Fifth Circuit held that any error was harmless, and affirmed the judgment entered on the jury verdict. The court stated:

> Rule 61, however, provides a reprieve from retrial for error that is not "inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." [FN4] This embodies the harmless error rule ... based on the sensible concept that a new trial should not be granted because of an error that inflicted no harm. Perfection is an aspiration, but the failure to achieve it in the judicial process, as elsewhere in life, does not, absent injury, require a repeat performance.
>
> FN4. Fed.R.Civ.P. 61 states:
>
>> No error in either the admission or the exclusion of evidence and no error or defect in any ruling or order or in anything done or omitted by the court or by any of the parties is ground for granting a new trial or for setting aside a verdict or for vacating, modifying, or otherwise disturbing a judgment or order, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

*Id.* at 1352 (footnotes omitted).

The court went on to state counsel for plaintiff has been able to point to no real prejudice resulting from his inability to review his statements. *Id.* The court noted that the statements had been given and were in writing and that failure to permit Miles to examine his prior statements was, under the circumstances, harmless. *Id.* at 1353-54.

Plaintiff cites *Klonoski v. Mahlab,* 156 F.3d 255 (1st Cir.1998) and *Chiasson,* 988 F.2d 513 for support. In *Chiasson,* the **\*524** defendant made a video surveillance tape of the plaintiff, but during discovery never produced the tape. Chiasson testified that she was unable to carry on daily activities without pain, but she never stated that she was entirely unable to do so. *Chiasson,* 988 F.2d at 517. The tape, which was played at trial, showed the plaintiff from a distance carrying on some daily activities. The Fifth Circuit stated "[i]t requires quite a leap to conclude that because she engages in routine activities, *ergo,* she does so without pain" and questioned "whether the proffered videotape discredits her testimony at all." *Id.*

In *Klonoski,* a husband brought a wrongful death medical malpractice suit after his wife died of a cerebral hemorrhage. There had been discovery disputes before the trial, and the court had already issued an order for defendants to produce "a list of the names of individuals having knowledge of discoverable information relating to the issues of marital discord and paternity ...." *Klonoski,* 156 F.3d at 258.

As the direct examination of the plaintiff/widower was drawing to a close, he stated "I loved my wife without reservation, and I still love her." *Id.* at 260. On cross examination of the plaintiff/widower, defendant attempted to impeach him with letters written by his late wife to her family in Poland. It related to the issue of damages and the marital problems between the couple. The letters essentially portrayed the plaintiff as "a tyrant as a husband and a liar" *Id.* at 275, and stated "I think we should get a divorce because we are tormenting each other ...." *Id.* at 265.

The court evaluated the motion for a new trial un-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

246 F.Supp.2d 516
**(Cite as: 246 F.Supp.2d 516)**

Page 9

der Rule 60(b) and stated:

> the movant must show the opponent's misconduct by clear and convincing evidence. Next, the moving party must show that the misconduct substantially interfered with its ability fully and fairly to prepare for, and proceed at, trial.

*Id.* at 275.

The court is of the opinion that both *Chiasson* and *Klonoski* are significantly different in that the plaintiffs in those cases were unaware that any recorded evidence or statements existed. In the case *sub judice,* the Plaintiff actually wrote the letter. While the court admonishes Defendant's regular attorney and their litigation counsel to work together and better coordinate discovery efforts in the future, the court is of the opinion that Plaintiff Lucas can not claim that she was unaware of the letter she wrote, and as such, she can not claim any real prejudice from being unable to review it.

4. Records of Plaintiff's Attendance

[4] Plaintiff also argues that the court should not have admitted into evidence the attendance records of plaintiff while she worked for MDOC. Lucas testified at trial during direct examination that she left the MDOC on good terms and that to her knowledge, she never had any attendance problems. As noted above, Lucas also stated that she had nothing to hide in her personnel file from MDOC. On cross, counsel for Defendant asked her about missing months of work. These attendance records were used as impeachment evidence. Lucas explained that she had to take some time off for various reasons, such as maternity and sick leave. Even though the attendance records were not listed in the pretrial order, Plaintiff's counsel admits that they received a copy of said records from the MDOC long before trial. In any event, Plaintiff has failed to show that she prejudiced by the attendance records.

*D. Conclusion*

In sum, the Plaintiff's motion for a new trial is denied. A motion for a new trial **\*525** based on evidentiary grounds should not be granted unless, at a minimum, the verdict is against the great weight of the evidence. *Carter v. Fenner,* 136 F.3d 1000, 1010 (5th Cir.1998). The Plaintiff has not shown that any of the above rulings affected the substantial rights of the parties. The jury verdict was not against the great weight of evidence in the present case and the court is of the opinion that a new trial is not warranted.

A separate order in accordance with this opinion shall issue this day.

*ORDER DENYING MOTION FOR NEW TRIAL*

Pursuant to an opinion issued this day, it is hereby ORDERED that

(1) the Plaintiff's motion for a new trial (docket entry 64) is DENIED; and

(2) this case is CLOSED.

N.D.Miss.,2002.
Lucas v. City of Shelby
246 F.Supp.2d 516

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.