| CHARGE OF DISCRIMINATION | AGENCY | CHARGE NUMBER |
|---|---|---|
| This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form. | [ ] FEPA  [X] EEOC | FIRST AMENDMENT to Charge #460-2006-01987 |

| Texas WorkForce Commission - Civil Rights Division | and EEOC |
|---|---|
| State or local Agency, if any | S.S. No. 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 |

| NAME (Indicate Mr., Ms., Mrs.) Ms. Jacklyn Fisher | HOME TELEPHONE (Include Area Code) (936) 293-1347 |
|---|---|
| STREET ADDRESS  CITY, STATE AND ZIP CODE 1150 FM 2296 Rd., Huntsville, TX 77340 | DATE OF BIRTH 06-08-1966 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (If more than one list below.)

| NAME University of Texas Medical Branch | NUMBER OF EMPLOYEES, MEMBERS +30,000 | TELEPHONE (Include Area Code) 409-747-8738 |
|---|---|---|
| STREET ADDRESS  CITY, STATE AND ZIP CODE 301 University Boulevard, Galveston, TX 77555-1008 | | COUNTY Galveston |

| NAME UTMB Correctional Managed Care | TELEPHONE NUMBER (Include Area Code) 409-747-2600 |
|---|---|
| STREET ADDRESS  CITY, STATE AND ZIP CODE 301 Univesrity Boulevard, Galveston, TX 77555-1006 | COUNTY Galveston |

CAUSE OF DISCRIMINATION BASED ON (Check appropriate box(es))

[X] RACE  [ ] COLOR  [ ] SEX  [ ] RELIGION  [ ] AGE
[X] RETALIATION  [ ] NATIONAL ORIGIN  [ ] DISABILITY  [ ] OTHER (Specify)

DATE DISCRIMINATION TOOK PLACE
EARLIEST (ADEA/EPA): 02-11-2005    LATEST (ALL): 03-27-07
[X] CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

My names is Jacklyn Fisher. I belong to a protected class of employees in that I am African American/Black. I have been employed by UTMB since about October of 2000. I started as an Assistant Nurse Manager and was promoted to Cluster Nurse Manager in about August of 2003.

I. On about February 11, 2005 I complained about my supervisor, Mr. David Watson (white) because he treated a me and a black employee who I supervised, Ms. Kelly, differently and more harshly than he treated a similarly situated white employee, Ms. Adams and a white employee she supervised, Ms. Gossett. The complaint was taken to Ms. Sandy Radar, the Huntsville HR Administrator and Denise Box, the Huntsville Sr. Practice Manager. Both Radar and Box stated that Watson handled the situation incorrectly, but nothing was done to address the unequal treatment.

II. In August of 2004, an inmate committed suicide seven days after I spoke to him and six days after the mental health practitioners and psychiatrist evaluated him. I suffered no adverse consequences for my actions in this matter, until after the complaint against Mr. Watson of February 11, 2005. Although it was totally discretionary as to whether or not to report the incident, Mr. Watson chose to send the matter to Peer Review. He also impermissibly influenced the Peer Review by sitting in during the Peer Review Hearing over my objection. Even though he stated that he would not vote, five out of the seven committee members were under his chain of command. Consequently, the matter was referred to the Texas Board of Nurse Examiners (BNE) prior to the year end of 2005.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

NOTARY - (When necessary for State and Local Requirements)
Rebecca A. Evans

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.

I declare under penalty of perjury that the foregoing is true and correct.

4/3/07
Date    Charging Party (Signature) Jacklyn Fisher

SIGNATURE OF COMPLAINANT
Jacklyn Fisher

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year)
3rd day of April 2007

PL. FISHER
H-08-0127
P-68

EEOC FORM 5 (Test 10/94)

Fisher-200013

III. While the matter was pending before the BNE, I still functioned in the position of Nurse Manager until May 6, 2006. Around May 6, 2006, I was demoted to Assistant Nurse Manager, and still functioned in a management position to present.

IV. About August of 2005, a Black subordinate, Ms. Freeman, wanted to transfer within the Huntsville cluster to work under my supervision. Mr. Watson denied Ms. Freeman the opportunity. Ms. Freeman was the only employee he denied a transfer between August of 2005 and January of 2006. At the same time, he granted several white employees their requests for transfer within that cluster. About January 4, 2006, I opposed what I perceived to be discrimination and confronted Mr. Watson about his different standards for white and black employees and told him it was not fair.

V. Four days later, a witch hunt was initiated against me for opposing the UTMB discriminatory practices. I was out on bereavement leave and about January 9, 2006, Ms. Gotcher, Northen Division Director of Nurses (Watson's Supervisor) and Ms. Melton, Northern Division HR Director, began an on sight investigation of me. There were no written allegations against me to investigate, nor was I given an opportunity to respond. I was supervising 42 employees , and even though management encouraged my staff to be disloyal, only seven employees had disgruntled things to say about me. The employees who stuck up for me were evidently interrogated and felt attacked for sticking up for me. Ms. Gotcher told me the inquisition was conducted against me at Mr. Watson's request.

VI. I was verbally told that the investigation was undertaken because of my high turnover and vacancy rate. I exercised my protected right by filing a grievance which pointed out that other white Nurse Managers had higher turnover and vacancy rates than I had and yet they were not subjected to this demeaning and demoralizing investigation. Even though there was good cause to investigate the white Nurse Managers for these same allegations, this was not done. On the same day that my staff was interviewed, one white Nurse Manger in the building next to me had higher vacancy rates than I did and her staffing needs were much more critical, yet her staff was not interviewed.

VII. Shortly afterward, I received what I considered to be a poor performance evaluation. Prior to that point, my performance evaluations had been outstanding. On April 10, 2006 I grieved alleging discrimination, hostile work environment, and retaliation. On April 11, 2006, I received notice of Mr. Watson's intent to demote me by two ranks to Nurse Clinician III. I appealed his intention and was then only demoted one rank, to Assistant Nurse Manager and reassigned to the Wynne Unit.

VIII. While at the Wynne Unit, the Nurse Manager to whom I then reported left in August of 2006, and no other Nurse Manager assumed duties there until March 14, 2007. Though I was demoted in pay, I was still required to function as a Nurse Manager from September 2006 until March 14, 2007, although without the commensurate pay or title.

IX. In December of 2006, the BNE noticed UTMB that, as a result of the 2004 incident, which was not reported until 2005, I had agreed to an Order which required me to complete remedial education within one year. My license was never suspended, nor did the BNE make any stipulation that I could not supervise or hold a managers position. Even with the BNE requirements pending, UTMB still required me to perform in the Nurse Manager position though they were not paying me to do so, nor had they given me the title of Nurse Manager back.

X. Subsequent to my February 11, 2005 complaints, I found it necessary to grieve four times totally about the discrimination, hostile environment and retaliation. None of the grievances were answered.

Fisher-200014

 

XI. About March 9, 2007, I was awarded back pay as "resolution of my complaints of racial discrimination and retaliation filed April 6, 2006." The back pay was awarded from May 6, 2006 but was cut off as of December 15, 2006, although the cut off date was unexplained at the time.

XII. I treated the notice as an offer of settlement and rejected the back pay because I still had not been reinstated to my former position as Cluster Nurse Manger

XIII. UTMB sent me a letter dated March 11, 2007, which noticed me of its intention to further demote me because of the BNE Agreed Order, of which they had notice since December 2006. I had until March 26, 2007 to respond. On March 26, 2007, I noticed UTMB that all requirements had been completed and that there were no sanctions on my license. I pointed out that other professionals have had board sanctions and have not been demoted, that I had functioned effectively since UTMB had notice from BNE in the position of Nurse Manager and they had not complained when they needed me to do so.

I have been unlawfully subjected to different terms and conditions of employment by UTMB because of my race.

I have been subjected to disparate treatment by UTMB. I belong to a protected class, was qualified for the position of Nurse Manager, I was replaced by someone outside the protected class or otherwise discriminated against because of my race.

I have been subjected to a hostile environment because of my race by UTMB. I was subjected to unwelcome harassment which was severe or pervasive. The harassment complained of was based on my race. The harassment complained of affected a term, condition or privilege of my employment.

I have been retaliated against by UTMB. I exercised a federally and state protected right when I complained about racial discrimination by UTMB. After complaining about racial discrimination at UTMB, I suffered an employment action which the reasonable person would consider adverse. There is a causal connection between my complaints of racial discrimination and the adverse employment actions.

UTMB's conduct is unlawful and in violation of TITLE VII of the CIVIL RIGHTS ACT of 1964 as Amended, 42 U.S.C. 2000e *et seq*, and in violation of CHAPTER 21 of the TEXAS LABOR CODE.

*/s/ Jacklyn Fisher*
JACKLYN FISHER

Before me, the undersigned notary, on this day, personally appeared Jacklyn Fisher, a person whose identity is known to me. After I administered an oath to her, upon her oath, she said:

"My name is Jacklyn Fisher. I am capable of making this statement. The facts stated in above 'Amended Charge' are within my personal knowledge and are true and correct."

SWORN TO AND SUBSCRIBED before me by Jacklyn Fisher.

REBECCA J. EVANS
MY COMMISSION EXPIRES
March 17, 2009

*/s/ Rebecca J. Evans*
Notary Signature
Notary Public in and for the State of Texas