

The University of Texas Medical Branch

OFFICE OF EQUAL OPPORTUNTIY AND DIVERSITY

August 8, 2006

U.S. Equal Employment Opportunity Commission
Houston District Office
1919 Smith St.—7th Floor
Houston, TX 77002

Attn: Raymond Bautista, Investigator

RE:   Jacklyn L. Fisher
        EEOC #460-2006-01987

Dear Mr. Bautista:

This correspondence and the attached "Position Statement" serve as UTMB's response to the above referenced complaint. We deny that we have discriminated against Ms. Freeman in any form or fashion and we are quite confident that the information we have provided demonstrates that fact.

I will be forwarding the "position statement" by email to you and will follow up with the statement in hard copy along with supporting documentation that serves as additional evidence regarding the fact that all our personnel actions involving Ms. Freeman have been without any discriminatory undertones but have been according to the non-discriminatory policies and procedures we have in existence at the University of Texas Medical Branch/Correctional Managed Care.

The information should be all inclusive but please feel free to contact me if you have any questions regarding our response to this complaint.

Sincerely,

Melvin Williams, Director

RECEIVED
06 AUG 15 AM11:20
HOUSTON
DISTRICT OFFICE
EEOC

PL. FISHER
H-08-01273
**P-25**

**Fisher-200329**

UNIVERSITY OF TEXAS MEDICAL BRANCH—GALVESTON
Response to:
EEOC Charge #460-2006-01987
Jacklyn L. Fisher

1.  **On or about January 4, 2006, I opposed what I believed to be discrimination.  Mr. David Watson, District Nurse Manager, had approved the rehire of a white individual who had been previously transferred due to attitude and behavior problems.  I reminded Mr. Watson that previously, when dealing with a Black employee, he stated no one with a bad attitude and problem employees would be allowed to be transferred or rehired.  I further explained that this was a different standard and we should uniformly apply policies to everyone.  In an e-mail dated January 5, 2006, Mr. Watson informed Ms. Wright that she could not hire the White individual.  My opposition to perceived discrimination began a sequence of events which can only be categorized as harassment and a hostile work environment.**

    The investigation of this allegation revealed that Ms. Lavina Wright, Cluster Nurse Manager, requested to re-hire a former employee, Ms. Ford, RN.  Initially, Mr. Watson approved the re-hire of Ms. Ford.  However, during a Nurse Manager meeting in January 2006, Ms. Fisher adamantly opposed this issue given Ms. Ford's unprofessional behavioral history from her previous employment with UTMB Correctional Managed Care (CMC).  Mr. Watson listened to Ms. Fisher's concerns, reviewed Ms. Ford's past behavior as documented in 2004 and reversed his decision to allow Ms. Ford's re-hire.  (See Attachment A)

    Ms. Fisher further reminded Mr. Watson that a few months prior he refused to allow another internal employee (Patricia Freeman) a lateral transfer due to "perceived behavioral issues".  Mr. Watson explained that his decision to deny Ms. Freeman's request for a transfer was based on her failure to provide adequate justification for transferring.

    During his tenure as District Nurse Manager, Mr. Watson has taken the position not to re-hire previous employees that had a demonstrable reputation for being unreliable or had exhibited unprofessional behavior.

2.  **On or about January 9, 2006, Ms. Gotcher, Mr. Watson's supervisor, and Ms. Milton, HR, began an investigation of alleged complaints against me.  As part of this investigation, only certain selected individuals were interviewed, I have never been provided any written complaint against me so I could properly respond.  I was informed by Ms. Gotcher and Ms. Milton that the investigation against me was conducted at Mr. Watson's request.**

    Ms. Mary Gotcher, Northern Division Director of Nursing verified she was aware of many issues surrounding the vacancy rate, turnover rate and employee complaints at the Estelle Regional Medical Facility where Ms. Fisher was the Nurse Manager.  Ms. Gotcher had many discussions with Mr. Watson regarding unsuccessful attempts to resolve these issues.  In January 2006, Ms. Gotcher offered assistance to Mr. Watson even though he did not ask her to intervene.  Ms. Gotcher then requested assistance from Ms. Georgia Melton, Senior Human Resources Manager to interview any and all staff members that wished to meet with them concerning the working environment at the Estelle Regional Medical Facility.

    On February 10, 2006, Ms. Gotcher and Ms. Melton met with Ms. Fisher to discuss the findings of their investigation.  The following concerns and observations were expressed by staff:
    *   Ms. Fisher has a lack of communication with staff

Fisher-200330

- Ms. Fisher's communication is abrupt and demeaning
- The staff fear retaliation from Ms. Fisher
- Ms. Fisher exhibits unfair leadership practices (racially discriminatory)
- Ms. Fisher does not have a good working relationship with the Assistant Nurse Managers
- Ms. Fisher does not seek advise or input from the staff prior to making changes
- Ms. Fisher lacks professional integrity with the staff

To assist in resolving some of the staff's concerns, Ms. Gotcher held three (3) meetings at the Estelle Regional Medical Facility for any staff members who wished to attend. At that meeting Ms. Gotcher expressed her expectations of all the staff at the unit.

3. **Mr. Watson continued his retaliatory actions towards me and the harassment created a hostile work environment. Consequently, I received a poor evaluation.**

Ms. Fisher received a semi-annual evaluation on March 7, 2006. This evaluation addresses the same concerns revealed during the investigation conducted by Ms. Gotcher and Ms. Melton. Ms. Fisher was given the opportunity to preset a rebuttal to this evaluation. (See Attachment B)

4. **On April 10, 2006, I filed an internal grievance alleging discrimination, harassment and a hostile work environment.**

True. (See Attachment C)

5. **On April 11 2006, I received a letter advising that I would be demoted from Cluster Nurse Manager. The letter stated I was being demoted due to continued failure to meet minimum performance expectations. I believe the demotion was in further retaliation.**

Ms. Fisher received the letter of Intent for Demotion to Nurse Clinician III dated April 11, 2006 from Mr. Watson. This letter also notified Ms. Fisher of the pre-disciplinary hearing for April 12, 2006. During this time Mr. Watson had an unexpected illness and hospitalization. In Mr. Watson's absence, the pre-disciplinary hearing was held by Ms. Carol Warren, Northeast District Nurse Manager. Ms. Fisher requested ten (10) days to provide a written response to Mr. Watson's intended action of demotion to the Nurse Clinician III position. (See Attachment D)

6. **I am aware of similar situated White employees, with staff complaints, who have not been demoted.**

Mr. Watson has received occasional complaints from staff members regarding three (3) White Nurse Managers unprofessional behavior. Mr. Watson has investigated each complaint and met with each Nurse Manager to address the issues and their behavior improved. In addition, Mr. Watson has discussed these issues with Ms. Rader, Human Resources Administrator. All of the complaints were minor and did not affect the entire staff or facility. None of the complaints warranted consideration for demotion.

7. **Further, prior to my opposition of perceived discrimination my performance was not an issue.**

Discussions had been held with Ms. Fisher concerning complaints that had been received regarding her professionalism prior to her evaluation.

8. **On May 2, 2006, I received a letter advising that I was going to be demoted to an Assistant Nurse Manager and not to a Nurse Clinician II as stated in Mr. Watson's April 11, 2006 letter.**

Fisher-200331

On April 24, 2006 Ms. Fisher submitted her written response to Mr. Watson's intended demotion to the Nurse Clinician III as stated in Mr. Watson's April 11, 2006 letter.

After careful review of Ms. Fisher's response, on May 2, 2006 Mr. Watson notified Ms. Fisher that she was being demoted to the position of Assistant Nurse Manager at the Wynne Unit rather than to the Nurse Clinician III position.  The position of Assistant Nurse Manager is a higher level position than the Nurse Clinician III position.  (See Attachment F)

9.   **I believe I have been discriminated against because of my race, Black, and subjected to retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended.**
UTMB takes a very proactive stance that any Title Vii issues will be thoroughly investigated. Based on the evidence gathered during our investigation, Ms. Fisher's allegations of discrimination cannot be substantiated.

# ATTACHMENT A

Fisher-200333

Date:  01/05/2006 08:34
From:  DAVID WATSON
To:  LAVINA WRIGHT(E);
Cc:  DENISE BOX K(E); SANDRA RADER J(E);
Subject:  Ford
Re:  Administrative

Ms. Wright,


As you know it has been my goal of late to strive to hire the best personnel in regard to
ability as well as attitude. In that light I confess that I had forgotten some of the reasons
that contributed to Ms. Ford's previous departure.  Having been reminded of some of
those issues yesterday, I feel that to maintain some element of consistency that I can not,
in good conscience, support her rehire at UTMB.


dw



David Watson, RN, BSN
Senior Cluster Nurse Manager
Huntsville Cluster
UTMB Correctional  Managed Care
Estelle Regional Medical Facility
264 FM-3478
Huntsville, Texas  77320

The University of Texas Medical Branch

April 22, 2004

**TO:**     Elaine Mysliwiec, RN, MHSA, Director, Facility Nursing Services

**FROM:**   David Watson, RN, BSN

**RE:**     Allegations of a Hostile Work Environment

Please find attached a copy of a resignation letter from Elizabeth Ford, RN. Ms. Ford was employed as an Assistant Nurse Manager at the Estelle RMF. She submitted her resignation today effective immediately. She states in her letter of resignation that she failed to provide the traditional two weeks notice because she felt she would be "...*working in a hostile environment*...."

Ms. Ford was involved in a verbal altercation with another ANM, Leigh Gossett on Monday 4-19-04. Ms. Ford brought this to my attention in the form of a letter delivered to my office on 4-20-04. This was the first knowledge I had of the incident. The Cluster Nurse Manager, Mary Adams, RN, is away on vacation so it was brought to my attention for resolution. I immediately began finding and interviewing witnesses to the event. I spoke with and obtained statements from all witnesses I was able to identify. Those witnesses included the following:

John Wang, PA
M. Anderson, RN
P. Thomas CO-III

I also spoke with Ms. Gossett and finally Ms. Ford herself. It seems Ms. Ford's version of events differs significantly from *all* of the witnesses. Of particular significance is that Ms. Ford alleged that Ms. Gossett was rude, aggressive and unprofessional toward her. No one else observed this. In fact, Ms. Anderson in her statement pointed out that Ms. Ford was acting unprofessionally. Mr. Wang's statement revealed, and Ms. Ford verified during our interview, that she stated to S. Barksdale during a telephone conversation that she did mention a recent surgery Ms. Gossett had undergone. I found this to be completely unprofessional and unacceptable. Even Ms. Ford admitted to me that it was unprofessional and had no excuse for her behavior. Mr. Wang also stated that he heard her say to Barksdale that she told Ms. Gossett to shut up and that may have angered her.

Ms Ford also admitted to me that when Ms. Gossett left her office after the first contact inside the office that she followed Ms. Gossett out of the office and challenged her in a very stern voice. Given that Ms. Ford admits that she provoked this incident and given the fact that no one else could support any unprofessional or aggressive behavior on the part of Ms. Gossett I have difficulty finding any support for Ms. Fords claim of a hostile work environment.

**Fisher-200335**

I would also point out that Ms. Ford was administratively moved to the Estelle facility, in part, due to allegations made against her from her subordinates at Ellis that she was creating a hostile work environment and that she was rude, aggressive and at times hateful toward employees. It was my intent to move Ms. Ford closer to my office and under the supervision of a fresh Nurse Manager, Ms. Adams, to oversee her behavior and habits from a closer and fresh perspective. I wanted to give Ms. Ford the benefit of the doubt, as it were, regarding her behavior. Due to the findings of my investigation I intended to pursue the disciplinary process with Ms. Ford and also with Ms. Gossett.

On 4-21-04, during our interview, I informed Ms. Ford of my intention to pursue a disciplinary course with her. Following my investigation I feel there is evidence to support that Ms. Ford was the provocateur in this incident and failed to make any effort to de-escalate the situation. I found her behavior failed to conform to the minimum expectations one would have for a manager. I feel this incident lends much credibility to earlier reports of her poor conduct at Ellis.

In summary I was very disappointed in Ms. Fords conduct and I find no substance to her allegations of a hostile work environment here at Estelle RMF.

I am attaching copies of all the documents I have in this case for your review. Please free to contact me if you have any questions or concerns. Thank you for your interest in this matter.

Sincerely,

David Watson

# ATTACHMENT B

Fisher-200337

# ᐳᐸ UTMB

### The University of Texas Medical Branch

David Watson, RN, BSN
Huntsville District Nurse Manager

UTMB Correctional  Managed Care

March 7, 2006

**TO:**      Jackie Fisher, RN, Cluster Nurse Manager; HR File

**FROM:**   David Watson, RN, BSN, Huntsville Cluster Nurse Manager

**RE:**      Quarterly Evaluation

Prior to August of 2005 Ms. Fisher was the Cluster Nurse Manager of the FE/GR/HV cluster. During that time she was responsible for the oversight and operations of the nursing activities at those three units.  The FE unit has proven exceptionally difficult to staff.  This was also noted with security having difficulty acquiring personnel.  Short staffing there was not a problem affecting only the medical staff. It was Ms. Fisher's idea to create a special needs classification for that unit that was ultimately called a Manpower Shortage area. With this designation nursing supervised staff would receive an additional $2.00 per hour in pay on top of the existing pay for that assignment. Thus far the extra pay incentive seems to have positively affected the staffing.  Several staff members have elected to move there from other units thereby decreasing the staffing burden somewhat.

In August she was transferred to the Estelle RMF. Since that time she has been beset with more staffing shortages. This has been a problem that has historically plagued the RMF. I attribute that, in part, to the change in general.  Any new managers coming in may have experienced the same problems. This situation will continue to be watched closely and interventions made as required.

Since coming to the RMF she has established a good working relationship with both Mr. Samarneh and Dr. Vincent. There are still some problem areas that will require her focused attention. But through discussion with her team she is well aware of those areas and will continue to seek resolutions.

Her ANMs at the RMF are a mixed bag.  One is new and is experiencing the pitfalls of a new manager.  This is to be expected.  One recently resigned and one continues on in less than effective role. The lack of dependable ANM is clearly a handicap for Ms. Fisher. It will be necessary to work with her to attempt to develop effective strategies for dealing with these concerns and for her to learn to deal more effectively with existing staff.

In general I have seen marked improvements in Ms. Fisher's management style.  Early on she struggled with being seen as unapproachable by the line staff.  We discussed this (see Evaluation dated 12-10-04) previously. She continues to wrestle with balance and perspective in decision making. She has a single mindedness that is both a strength and a weakness. Ms. Fisher tends to hear part of a story and make her decision.  She doesn't always listen to the full story and sometimes proceeds down a path of action without

**Fisher-200338**

listening or fully appreciating the entire situation. By not listening to the complaint in its entirety and giving due and diligent consideration she can come across as not truly valuing the concerns of the staff. Once her decision is made she is hard pressed to change her focus and has a tendency to push through her agenda and not be able to change courses in mid stream when necessary.

Ms Fisher was at the RMF for approximately 2-3 months before holding a nursing staff meeting to share her goals for the unit with the staff. As a result at least some of the staff were left in the dark about said goals. I feel very strongly that communication with the staff and sharing goals and expectations is a key to success. When taking on a new facility this sort of information/communications should be a priority.

Ms. Fisher also tends to take full responsibility for all needs of the unit. While this is admirable she wears herself out. She tends to take on all jobs rather than use the patience that might well pay off dividends in the future by teaching and coaching her subordinates and holding them equally accountable. I think she not only forgets to share her plans but her reasons for her actions with her subordinates. In late November, at a DNM meeting I discussed alternate ways to work with staff and empower them to help solve unit problems (Change Process).

Ms. Fishers main strengths are her keen ability to evaluate a situation quickly and adjust taking swift actions as needed. (He dominant weaknesses are subtle people skills and effective communications with her staff coupled with her single minded drive toward goals. While her truly tireless dedication to work is admirable, she should also appreciate that her staff, in particular her subordinates, are a potential wealth of support and need to be developed wherever possible. Her success in her mission here is not likely with only her hard work; it will also be dependent upon eliminating undesirable elements in the workplace coupled with successful teamwork and team building.

I will be working with her over the course of the next few months to attempt to increase her awareness of weak areas and increase her areas of strength. I have confidence that if she can improve these she will be a more effective manager.

- Ms Fisher's goals need to be refocused on the one from December 2004 which is to allow more time to assimilate issues before responding to disagreements in order to increase objective and constructive responses. This will enhance her communication skills and produce better interpersonal relationships and related outcomes.

- Ms. Fisher needs to make a more pronounced effort to communicate her goals and expectations to the staff at all levels and be sensitive to the feedback this produces. I have little doubt her final judgment calls tend to be correct, but providing the feedback to the staff as to why she makes some of the decisions may help prevent issues later on.

<u>Personal/Professional goals:</u>

**Fisher-200339**

To research, plan and start on my BSN degree

Facility Goals:
To start ACA transition for SAFP and HS, e.g. labeling, retention of records, cleanliness, etc.

District Goal:
A 10% reduction of the annual overtime for nursing supervised staff

Ms. Fisher's performance is satisfactory. She continues to be a strong patient and UTMB advocate and a credit to the organization.
*****************************************************************************
Employee Comments:

| | | | |
|---|---|---|---|
| David Watson | 3-08-06 | Jackie Fisher | Date |

**Fisher-200340**

## Semi-Annual Evaluation Response

From experience, Ferguson's reputation held true. The medical department was not well liked, nor respected by Security Staff. During the struggle of making the clinical operations more efficient and rebuilding relationships with security, the turnover of nursing staff was the biggest advantage. Though it suffered in vacancies, access to care was met.

Prior to my arrival at ERMF, the vacancy rate was higher. Agency staff had already been requested and approved. ERMF has had agency approval several times within the last year. After my arrival, the turnover was still a concern. Staff resigned for various reasons: Six (6) relocated for family reasons, one (1) administratively reassigned, one (1) medical/health reason, one (1) school accommodations, etc. The last two (2) employees resigned confirmed and added veracity to "said" encouragement of staff strife and complaints.

Neither Assistant Nurse Managers here are strong supervisors. The newest Assistant Nurse Manager does not understand the needs of the Pods, in regards to patient acuity versus staffing levels, so tends to not support my decisions or the messages I am trying to deliver. Neither Assistant Nurse Managers show any self-motivation to monitor or track deficiencies. Neither is consistent in identifying areas of improvement and taking initiative to correct them. Empowerment is there, but there is an obvious lack of willingness. The Assistant Nurse Manager who resigned had received a letter of expectation, was unhappy and was applying for various positions prior to my arrival.

The staff at all levels are empowered and encouraged to function in their official capacity. Unless taken advantage of, empowerment is useless. Goals and directions are discussed in every staff meeting. Positive and negative feedback is given when appropriate. Most of this staff appreciates my management-style and me, and do not have a problem with my people skills and communication.

There is a small percent of this staff that do not appreciate the fact that I am not wavered by their complaining nor easily persuaded by excuses. I do listen and hear them out, but it is still not satisfying unless the outcome is favorable to them. Shortly after I arrived at the ERMF, I met with the Assistant Nurse Managers and our goal was established to go online with the EMR. During the first 2-3 months, time and circumstances hampered me from having formal staff meetings. The reassignment did not actually take place until mid-August, September—Hurricane Rita, October—I met with HS/SAFP staff, November—meeting with RMF, HS & SAFP. I was readily accessible and available to both day and night staff on all four (4) rotations. During the first 2-4 months, I came in several nights on each rotation to train staff. The transition was in two phases. I was monitoring and providing feedback in person and via e-mail. During this time vested, staff was aware of my short-term goal to come online and standardize the processes. The long-term goal was to become paperless. As I do understand and favor formal meeting, the communication and goals were not lacking.

Fisher-200341

Besides the EMR transition, the few changes made were at the staff's request: Change in Nurse Assistant hours for better utilization, relief of weekly crash cart check by licensed staff, insulin at SAFP changed to CMA or licensed staff. Cleaning, organizing, decreasing supply and maintaining para levels have been requested, another fashion of empowerment, without any results.

While it appears to Mr. Watson that I am an inattentive listener, I do listen attentively and have an open mind. If information forth coming necessitates a change, I can make a mid-course adjustment.

I feel there is a lack of empowerment and support from you to manage the unit. Successful teamwork and team building comes with a balanced team spirit. The undesirable elements of circumventing my authority, solicitation of information from my assistants and other employees without constructive use of information and inconsistencies do not contribute to successful team building. Teamwork is a team effort and requires support from all of its members. A small percentage of my staff needs to be refocused to use proper communication etiquette as on-going issues, evident by multiple emails from various staff in multiple departments. In my opinion, the personal dissatisfaction of a few is due to my high level of expectation.

Would you please provide me, in writing, your plans and efforts to work with me?

Jackie Fisher, RN
Nurse Manager
Estelle RMF

Fisher-200342

# ATTACHMENT C

Fisher-200343

April 10, 2006

To: Sandy Rader
HV Cluster HR Administrator
Huntsville, Tx. 77340

Ref:  Hostile Working Environment

An email was sent on 1/9/06 from Mr. Watson, District NM, to Estelle's RMF, Building,
High Security and SAFP nursing staffs informing the staff Ms. Gotcher, D.O.N,. Northern
Region, would be at the Estelle's RMF on 1/17/06 and 1/18/06.  He encouraged all staff
to come by to share opinions, concerns and ideals.

On 1/17/06 and 1/18/06, Ms. Gotcher and Ms. Melton, HR Administrator of the Northern
Region, conducted interviews among the RMF staff.  Some staff stated they felt attacked
in their efforts to support my administration. The Estelle RMF, High Securiyt and SAFP
personnel are under my supervision, while Ms. Bond, RN, Facility NM, supervises the
Estelle Building staff. It should be noted that the nurses at the other locations- Estelle
High Security, SAFP and the Estelle Building were not interviwed. It is my opinion, the
meeting was requested by Mr. Watson and intentionally set up to provide disgruntled
employees the opportunity to personal attack me. It is alleged that Mr. Watson encoraged
Mr. Aguilar, ANM to ensure participation of a certain group of the RMF staff.

Ms. Gotcher and Ms. Melton met with me on 2/10/06 to report their findings of the
alleged problem areas from the above stated meetings.  Rebuttals and comments were
made on my behalf.  No factual evidence was presented.  Most of the allegations were
stated as perceptions on the behalf of the employees.  According to Ms. Gotcher, the
meeting was called due to the large turnover, high vacancy rates and staff complaints
under my supervision since the 8/05 administrative reassignment of nurse managers.  My
vacancy rates were not any higher than the other Nurse Managers in the Huntsville
Cluster. According to the facility monitoring reports, in comparsion, my vacancy rates
were lower in some months.

There are disgruntled employees with racial allegations and supervisory complaints on
most units throughout the Huntsville Cluster in which Mr. Watson is very aware.  He has
personally received staff complaints via emails from other units. To make mention, since
2/06, three licensed staff on the Wynne Unit have requested transfer to the RMF due to
dissatisfaction.  These complaints have gone without obvious attention from the District
level.

I have documentation that a Nurse from the Ellis Unit sent as an email to Mr. Watson
alleging that her work enviroment was bad and that it was hard for her to talk to her
Nurse Manager and requested to met with Mr. Watson.  In response, Mr. Watson replied
"I will speak with you only after you have met with and discussed your issues with the
ANM and/or NM. If that fails to resolve the problem then I will be happy to meet with
you. There are proper ways to address things through your chain of command".  It should
be noted, that this rule is not being enforced for the staff under my administration. My

**Fisher-200344**

staff are encouraged to circumvent the chain of command by being summoned and allowed to go directly to Mr. Watson.

I requested a meeting with Ms. Gotcher and Ms. Melton to discuss my concerns in regards to Mr. Watson. Initially it was scheduled for 2/21/06 but rescheduled for 3/7/06. I voiced my belief that this was an act of retaliation and that that he had intentionally set me up for failure. His areas of concerns that was reported to Ms. Gotcher had never been communicated to me. In my opinion, those problems and/or concerns should have been shared with me first to resolve or address at the lowest level. At that time, I also reported that Mr. Watson was creating a very uncomfortable work environment. During this meeting, Ms. Melton concluded that Mr. Watson and I needed mediation and stated arrangements would be made.

Ms. Gotcher returned to meet with the RMF staff for a follow up visit on 3/8/06. Those present were Mr. Watson, Ms. Rader, staff on duty, and I. She gave specific expectations for the staff and me. She also encouraged everyone to work together, follow their chain of command and to open the line of communications.

In a later discussion on 3/13/06 with Mr. Watson and Ms. Box, Huntsville Cluster PM, I made it known again that I felt a lack of trust and support from Mr. Watson. Mr. Watson freely acknowledged that he has a problem communicating with me. He has never disclosed a reason for not being able to communicate with me. My efforts to communicate with him remains open and respectful in an attempt to conduct professional business.

Despite all the meetings and discussions, Mr. Watson continues to allow staff to circumvent my authority, he continues to solicits information concerning my work performance from my assistant NMS and other staff members. His involvement has caused a great lack of cohesiveness on the unit level. Mr. Watson has made it known that staff does not voluntarily come to him, he calls for them. The solicitation of staff has a tendency to make the employees feel obligated to complain and they could feel at a disadvantage not to comply with his requests. Mr. Aguilar, ANM has voiced concern about Mr. Watson's behavior to me and he questioned his decision to trust Mr.Watson to another member of the management team. Ms. MacCartney, ANM has commented to me on several occassions that she feels put in between her supervisor (me) and my supervisor (Mr. Watson). Mr. Watson's behavior causes a strain our relationship. It should be noted, his solicitation of staff is of the Caucasian race only. Diversity would be a better representation and provide a greater appreciation of the staff as a whole.

There still continues to be a lack of empowerment and support from Mr. Watson to manage the unit. He has shown a lack of consistency in allowing me to provide discipline for similar occurrences. Disciplinaries written by me for policy violations (inaccurate sharp counts) and practice act issues (MH) have been denied. On my semi-annual evaluation that was due in 12/05 and presented to me on 3/13/06, Mr. Watson stated he have little doubt that my final judegement calls tend to be correct but in an email I recieved from him on 2/15/06 he instructed me to discuss and get input from my subordinates before deciding to pursue disciplinary, and if I failed to do so, my decision

Fisher-200345

would be remissed.

Prior to my approved leave, I sent an email on 3/27/06 and copied Mr. Watson summarizing the staffing issues and my attempt and plan to staff unmanned shifts when I returned on 4/11/06. During my absence, Mr. Watson requested a meeting with Mr. Aguilar and Ms MacCartney around or on 3/30/06. Mr. Aguilar was unavailable, but the meeting was conducted with Ms. MacCartney. Inspite of the email that I had previously sent addressing the staff numbers for the entire month of April 06 and my plan to cover the shifts, it was reported that Mr.Watson instructed MacCartney to prepare daily assignments sheets for the entire month of April and report my deficiencies to him. From that information, he requested the use of agency staff to fill all the vacant shifts. Despite my efforts, he shows no support for me and continues to use my subordinates to discredit my authority.

On my semi-annual evaluation, Mr. Watson stated that "there are still some problem areas that require my focused attention. But through discussion with her team she is well aware of those areas and will continue to seek resolutions." I am not aware of any problems that require my focused attention on behalf of the management team. After viewing that comment and discussing it with Mr. Samarneh and Dr. Vincent they both disclaim having any specific knowledge as related. It would be very beneficial if Mr.Watson was able to effectively communicate with me to get the whole story and fully understand the entire situation.

Mr. Watson's personal dislike for me and his continued harassment has created a hostile working environment.

Respectfully submitted,

*Jackie Fisher*

Jackie Fisher, RN, CNM

cc: file

Fisher-200346

# ATTACHMENT D

Fisher-200347



David Watson, RN
Senior Cluster Nurse Manager

Huntsville District
UTMB Correctional  Managed Care

The University of Texas Medical Branch

April 11, 2006

Jacklyn L. Fisher, RN
Cluster Nurse Manager
Estelle Regional Medical Facility
University of Texas Medical Branch at Galveston
UTMB Correctional Managed Care

Dear Ms. Fisher:

This letter is to notify you that I intend to request your demotion to Nurse Clinician III effective April 13, 2006, due to your continued failure to meet minimum performance expectations. A pattern of performance has been identified that represents significant areas of deficiencies in your performance. Those areas are:

1. Ineffective communications with subordinate staff
2. Insubordinate attitude toward your supervisor
3. Failure to follow your supervisor instructions
4. Ineffective management/leadership

The factual basis that supports my intent is as follows:

### Ineffective communication with staff:

- During your first year as a Cluster Nurse Manager for the Huntsville, Goree and Ferguson Facilities numerous complaints were received by the Senior Cluster Nurse Manager's office regarding your communications with staff. The complaints included that you spoke in loud, stern tones, failed to listen adequately and continued to interrupt them when they spoke. While you denied these allegations, you were counseled regarding your communication in 2005. During the counseling session you displayed this same behavior towards your supervisor. At that time you agreed to set a goal for the following year to improve your communication skills.
- Although some improvement in your communications skills was noticed over the next few months, you again exhibited an argumentative behavior during several nurse manager meetings. At times it became necessary for your supervisor to instruct you to stop your discussion/arguments in order to proceed with the meeting.
- When you transferred to the Estelle Regional Medical Facility (ERMF) in August 2005, the same type of complaints regarding your communication/interaction with staff were reported to your supervisor's office. Once again you denied that it was a concern. At that time, it was suggested that you set another goal to improve this area of your management style.

**Fisher-200348**

Jackie Fisher, RN
April 11,2006
Page 2

- In January 2006, Mary Gotcher, the Northern Region Director of Nurses and Georgia Melton, the Northern Region Human Resources Administrator, received similar reports of your poor communication from multiple staff members during their investigation of complaints of staff dissatisfaction.
- On March 9, 2006, a grievance was filed by one of your employees alleging that you spoke to her in a demeaning and demoralizing way in front of both patients and correctional staff.   The investigation of the allegation revealed evidence to sustain this grievance.

**<u>Insubordinate attitude toward your supervisor and Failure to follow your supervisors instructions:</u>**

- On 3-22-06, you informed your supervisor that staffing at the ERMF was so critical that you would require a minimum of three, full time agency nurses to meet mission goals.  I advised you that due to complaints about you from the contracted nursing agency, Supplemental Health Care, who supplied nurses, the representative reported that they are having problems recruiting nurses to work at the ERMF. The reason given was due to your unprofessional behavior towards the temporary nurses during their assignment(s) at the ERMF.
- At that time, you were instructed to provide an alternate contact at the ERMF for that agency's staff, however, you refused to do so.  You were unable to provide an appropriate explanation for your refusal to follow this instruction and you stated that you just would not use the agency in question.  Your refusal to cooperate indicated to your supervisor that you were willing to allow a potential disaster to befall the operations of the unit because you didn't wish to follow my instructions.
- You were then directed to contact another nursing agency to secure temporary nursing staff.  In the event that the second agency was unable to supply nurses, you were directed to appoint a contact person (other than yourself) at the ERMF to work with the representative from Supplemental. This instruction from your supervisor was very explicit that this point of contact was to be the liaison for all situations except an emergency on site.
- The name of your contact person was requested by your supervisor at least twice via email before you finally provided this information.  Upon speaking with the agency a few days later, your supervisor was informed that you instructed them (nursing agency) to contact the alternate person *only* **if you were not available**.  This is in direct violation of your supervisor's instructions.
- On March 10, 2006, during a meeting with your Assistant Nurse Managers (ANM) we discussed the need for you to improve communications with both of them.  Both of your ANM's had expressed to your supervisor that you were not keeping them informed of your actions and decisions. They frequently learned about changes you made from the staff after the fact. They felt left out and ill prepared to deal effectively with the staff as a result.  During this meeting, you were explicitly advised that you were to meet at a <u>minimum</u> of once per week or more if needed.  As of 3-27-06 both ANMs informed your supervisor that you have not met even once with them. Again, this is a direct violation of my instructions.

**Fisher-200349**

Jackie Fisher
April 11, 2006
Page 3

- In February 2006, your supervisor requested that you meet with him informally 2-3 times per week in order that he may keep abreast of problems/issues and provide assistance to you. As of this date, you have failed to adhere to your supervisor's request.
- On March 13, 2006, when your supervisor presented your semi-annual evaluation you objected to some parts of the evaluation. This document was given to you with instructions to closely review and offer alternate wording or constructive comments so that we could negotiate what you felt was fair. Ten days later you still had not returned the evaluation and your supervisor had to request it's return.
- In the last paragraph of your response to the evaluation, you accused your supervisor of circumventing your authority, soliciting information from your assistants and other employees without constructive use of information. This accusatory tone in your response displays an insubordinate attitude towards your supervisor.

### Ineffective management/leadership

- You assumed the Cluster Nurse Manager position of the Goree, Huntsville, Ferguson cluster, in August 2003. Your supervisor expressed concerns regarding the performance of your Assistant Nurse Manager, Ms. Kelly, who was assigned to the Ferguson Facility at that time. Some of the concerns were that she seemed to have a lack of time management, organization and leadership ability.
- Over the course of the next several months, this person's performance showed no improvement, however, you failed to prepare a Corrective Action Plan to address her deficiencies.
- Your supervisor allowed your ample opportunity to address the ANM's performance issues, however, after approximately another three months it was necessary for your supervisor to direct you to make such a plan. You refused to accept any accountability for your lack of action for the better part of the preceding 18 months.
- Attempts were made to implement the provider assisted sick call process at the Huntsville Facility during your assignment at the facility. You resisted the process change so intensely that your team members (The Practice Manager, Mid-Level Practitioner, a Physician and the Cluster Medical Director) requested that you be removed from the team. This issue was finally resolved when your supervisor intervened. Your resistance to this process change had a significant impact on the patient care flow and on the clinic operations. You later commented in the presence of witnesses that you were disappointed that your supervisor had intervened because you thought if the problems had lingered a little longer the entire program would have failed miserably thus supporting your original belief that provider assisted sick call was a bad idea.
- In late 2004, during the onset of the cold and flu season, the Huntsville Unit was besieged by an abnormally high number of sick call requests (70) from patients suffering from what appeared to be flu or other acute respiratory infection. Due to the absence of the Mid-Level, the Medical

Jackie Fisher
April 11, 2006
Page 4

Director agreed to see patients.  Without consultation with a Medical Director, you ordered the patients dismissed from the clinic due to only two nurses being available.  It was necessary for the Medical Director to intervene in order to proceed with patient care.  Again, you attempted to interfere with the patient care and interrupt the workflow of the clinic.

- By your own admission, you did not conduct staff meeting between August 2005 and November 2005 at the ERMF.  Your supervisor has expressed his expectations to all of his Nurse Managers regarding the need for regular staff meetings to ensure communication throughout the department

Before I ask for your demotion, you have the opportunity to tell me, whether in writing or in person, if any of my facts are incorrect or if there are any reasons why you should not be demoted.   If you wish to take advantage of this opportunity, a hearing has been scheduled at 10:00 a.m. on April 12, 2006, in Room 181 of the Health Services Building in Huntsville, Texas.   If you choose not to attend this meeting you may submit your information in writing at that time.    If I do not hear from you, I will assume you do not wish to respond and your demotion will be effective on April 12, 2005 at 5:00 PM.

Sincerely,

David Watson
Senior Cluster Nurse Manager

I am in receipt of a copy of this letter.

*I disagree with the content.*

Jackie Fisher, RN                                          4-11-06

Date

# ATTACHMENT E

Fisher-200352

April 24, 2006

Dear Mr. Watson:

This appeal is in response to your letter dated April 11, 2006, in which you indicated your intent to demote me from Cluster Nurse Manager to Nurse Clinician III.

I believe your actions toward me are discriminatory and retaliatory for me having spoken to the Estelle Regional Medical Facility (ERMF) Management Team, Huntsville (HV) Sr. Cluster Practice Manager and Northern Division's Human Resource Administrator and Director of Nursing, regarding your indifference toward me as demonstrated by your harassing behaviors, lack of communication, your intent to set me up for failure, and your behaviors that subjected me to a hostile work environment. During your discussion with the ERMF Medical Director in March 2006 and April 2006, you implied no interest in wanting to rectify any problems.

The staff complaints you mentioned in your letter can not be validated without me having first hand knowledge of the information. I have never been privileged to see an employee's written complaint against me nor have you been able to provide specific examples of me using, loud, stern, tones when I've asked. While using my communication skills as a reason for my demotion you have repeatedly received complaints, made against other non-black Nurse Managers (NM), such as Ms. Wright, NM, who historically has been cited for using vulgar, profanity language on numerous occasions and has been cited for racial discrimination in EEO complaint(s).   Ms. Adams, NM who has received numerous staff complaints for her rude and abrupt communication. Ms. Bonds, NM is regarded as irrational and unreasonable and has also receives numerous staff complaints. In March 2006, during a staff interview conducted by you, Ms. Roddey, NM was described as having poor communication skills. Ms. Roddey, NM has had four Assistant Nurse Manager resign, three resigned within a one to two year period with common complaints of her lack of management and support. Clearly, I'm being held to a different set of standards than the similarly situated non-black Nurse Mangers.

I did not receive counseling regarding my communication skills in 2005. From my June 2005 evaluation, you cited a disagreement as the basis for ineffective communication. It is usual for mangers to disagree on various personnel issues. These are normal administrative activities that managers participate in as a normal course of business. No complaints or coaching in regards to my communication was cited at that time. The HV Human Resource Administrator and Sr. Cluster Practice Manager were present for the discussion.

You have never had to stop my discussion/arguments in order to proceed with a meeting. I cite an instance in 2005 at the ERMF, when you were forced to intervene between Ms. Adams, NM and Ms. Bonds, NM but neither manager was faced demotion.

After transferring to the ERMF in August 2005, complaints that you may have received from the staff were never communicated to me, see grievance date April 10, 2006. I believe that staff complaints should be investigated to determine the veracity.

The January 17 & 18, 2006 meetings held by Ms. Gotcher, Northern Division DON and Ms. Melton, Northern Division Human Resource Administrator were by invitation and conducted in open forum. I supervised approximately forty to forty two employees at the ERMF. According to Ms. Gotcher, there were approximately twenty to twenty five staff interviewed, six to eight staff made complaints against me. Some staff that were interviewed reported they felt attacked in their efforts to support my administration. There was an additional seventeen to twenty two employees that were not interviewed and did not have complaints. This concludes that only a small percentage of the employees were dissatisfied. During Ms. Gotcher's follow up meeting with ERMF staff on March 8, 2006, she identified areas of concern on both sides.

The alleged grievance filed against me on March 9, 2006, was reported as sustained by you. I had no knowledge of the complaint nor was I allowed an opportunity to respond to the alleged charges.

**Fisher-200353**

RECEIVED

APR 2 4 2006

My evaluation for June 2005 indicates an inconsistency of what is written in this letter in regards to my communication skills. The evaluation review shows I occasionally exceeds in focusing on the situation/issue/behavior not the person. Puts the interests of other before self-interest. Does not discriminate. Avoids conflict of interest. Maintains constructive relationships. Respects others. Shares knowledge and information with others. Is successful in building long-term customer relationships. Demonstrates effective interpersonal skills, solve problems fairly and effectively, seeks staff input and serves as a role model.

As you indicated in the event that the second Agency (Elite) was unable to supply nurses, I was then to provide a contact person to the Supplemental Representative. I did not refuse to follow your instructions. There is supporting documentation on  March 28, 2006 that I complied to your request. Per my conversation with the Supplemental Representative the statement "only if I were not available" is not true.

In the March 10, 2006 meeting you did not request that I meet with the Assistant Nurse Managers (ANM) at a minimum of once per week or more if needed. Documentation between you and myself on March 24, 2006 supports  an obvious miscommunication of your expectations during the meeting.

In February 2006, I was not requested to meet with you two - three times a week to keep you abreast of problems/issues and request your assistance as needed. In March 2006, the ERMF Practice Manager, Medical Director and myself requested to met with you and the HV Sr. Cluster Practice Manager to discuss our concerns and your obvious dissatisfactions but you refused to meet with us. On March 27, 2006, I needed to speak with you and asked via email "can I give you a call" but you never responded. Despite the lack of communication, I have kept you abreast of problems/issues and requested your assistance as needed.

On March 13, 2006, some parts of my evaluation were misrepresented. When the evaluation was given to me for input, you did not provide a specific time frame for me to return it. I later responded to your email explaining why it had taken ten days to return. My tone was not accusatory. As your actions in my April 11, 2006 grievance supports my statement. In my opinion, neither of the charges display an insubordinate attitude or failure to follow your instructions.

My performance evaluation should be based on meeting established goals and behavioral expectations. According to my semi-annual evaluation presented on March 13, 2006,  you failed to cite either of your alleged charges for February 2006, failure to adhere to your request or for March 10, 2006, direct violation of your instructions. In my opinion, if those were areas of your concern, they should have been noted on my evaluation.

I did not refuse to accept any accountability for my lack of action for the better part of the preceding eighteen months. As discussed, I was interested in mentoring and providing an opportunity for the ANM to grow and  to learn in her position. She was given specific detail goals each evaluation period. You expressed concern in regards to three ANMs and instructed Ms. Adams, NM and myself to provide our respective ANMs with letters of expectation. From your point of view, and in comparison, Ms. Adams, NM showed no accountability for her lack of action for the better part of the preceding three plus years. Further comparison, the other ANMs that was under Ms. Adams' supervision, according to you, is still less than an effective. In this case, Ms. Adams showed no accountability for her lack of action for the preceding six plus years.

My communication with the HV, Ferguson (FE), Goree (GR) Cluster Practice Manager suffered after I reported him to his supervisor on June 7, 2004. The HV, FE, GR Management team was requested to met with the HV Cluster Management team regarding our communication on June 14, 2004. The Practice Manager and myself were expected to attend, the attendance of the other team members were optional.  As noted on my December 2004 evaluation, our communication improved. The Provider base sick call was implemented six to eight months later. Per your documentation dated March 9, 2006, the process itself, had a significant impact on patient care and on the flow of clinic operations. You stated "the process was pretty bogged down, staff was suffering, and the process has been less than a booming success".  I did not resist the process. In fact, I willingly coordinated the changes in the clinic flow necessary to accommodate the provider base sick call. I had

to spend an increase amount of time listening to and diffusing complaints that I received from the nursing staff. I made every effort to encourage their participation in this process. I assisted with verifying competency and helping to complete the CCA's Competency Base Orientation tools (CBO tools). I instructed my ANM to supervise the completion of the CBO tools in my absence. During this time I attended a Supervisor's Training class along with the HV Cluster HR Administrator, Medical Director, Nurse Managers and the EMR Coordinator. In support of the process, I did an presentation on its monetary advantages.

During the cold and flu season in 2004, I did not dismiss patients from the clinic. I assisted in getting the patients seen as this is verified by one of the nurses who was on duty. My involvement did not interfere or interrupt the workflow of the clinic.

In this letter you make a point to cite my failure to hold staff meetings between August 2005 and November 2005 without any consideration of the facts and circumstances that may have impacted formal meeting participation.  The reassignment did not occur until mid August 2005. Because of Hurricane Rita, formal staff meetings were not held in September 2005. However in October 2005, I met with the High Security and SAFPF nursing staff. In November 2005, I meet with the ERMF, High Security and SAFPF nursing staff. During the first two to four months at the ERMF, I was training staff on the EMR and readily accessible to all shifts day and night. The staff was made aware of my short term goals to come online and standardize the EMR process and my long-term goal to become paperless. To  mention, there were no formal, monthly staff meetings being held at the ERMF prior to my reassignment in August 2005.

A review of your comments in my evaluations for the preceding eighteen months indicates an inconsistency of ineffective management/leadership between what has been written in the letter and what occurred during those evaluation years. My evaluations states that I utilize a proactive style of management. I am supportive of staff. I am a solid professional patient advocate. Exceeded target in taking personal responsibility for handling issues and concerns. Occasionally exceeds in providing clinical and administrative supervision to facility staff using effective principles of management and leadership.

In your letter of intent, you stated "a pattern of performance has been identified that represents significant areas of deficiencies in my performance". Per UTMB Human Resource Disciplinary Policy 3.10.1, for continued failure to meet performance expectations, formal progressive disciplinary should be initiated. I have not received any levels of formal disciplinary for any of your alleged charges.

Since January 5, 2006, there has been a clear succession of your harassing behavior. Without other means of resolution, I filed a formal grievance against you on April 10, 2006. I received your letter of intent to demote me on April 11, 2006.

In closing, I believe that your intention to demote me is clearly an act of discrimination. A review of facts by a neutral fact finder will demonstrate that your reasons and rationale are based solely upon intent to subject me to different terms and conditions of employment because of my race. Further, I believe an impartial review of the facts will demonstrate that you have gone out of your way to create a humiliating, offensive and hostile work environment for me by subjecting me to different terms and conditions of employment than those enjoyed by similarly situated non-black Nurse Managers.

Mr. Watson, I believe the charges cited for this demotion are without merit. I'm asking that this proposed demotion be rescinded.

Sincerely,

*Jackie Fisher*

Jacklyn L. Fisher, RN

# ATTACHMENT F

Fisher-200356



**The University of Texas Medical Branch**

David Watson, RN
Huntsville District Nurse Manager

UTMB Correctional  Managed Care

May 2, 2006

Jacklyn Fisher, RN
Estelle Facility
University of Texas Medical Branch at Galveston
UTMB Correctional Managed Care

Dear Ms. Fisher:

I have carefully reviewed your response regarding my intent to demote.  I found nothing compelling in your response to alter the decision to demote you.

However, I have made the decision that you will be demoted to the position of Assistant Nurse Manager rather than Nurse Clinician III as originally intended.   You will be assigned to the Wynne Unit and answer directly to Cluster Nurse Manager Kim Roddey. In addition, you will be reassigned to District Nurse Manager Carol Warren. Your salary will be $65,352.00, annualized. This action will be effective on May 6, 2006.

You have the right to appeal my decision under the UTMB Human Resources Appeal Policy 3.10.2.  If you wish to do so, you must contact Sandy Rader, Human Resources Administrator within five (5) working days.

Sincerely,

David Watson, RN
District Nurse Manager

**Fisher-200357**