## IN THE UNITED STATES DISTRICT COURT FOR THE
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| JACKIE FISHER | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:08-CV-01273 |
| | § | |
| UNIVERSITY OF TEXAS | § | Jury Demanded |
| MEDICAL BRANCH and | § | |
| DAVID WATSON | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' TRIAL BRIEF AND MEMORANDUM OF LAW

TO THE HONORABLE NANCY F. ATLAS:

Come now Defendants, University of Texas Medical Branch, Department of Correctional Managed Care, ("UTMB") and David Watson, and file this trial brief and memorandum of law in advance of trial in this case, set to begin March 9, 2010.

## I.  Continuing Violation Doctrine And Relevant Time Period

In this case, Plaintiff asserts claims for discrimination, hostile work environment, and retaliation against UTMB pursuant to Title VII of the Civil Rights Action of 1964, and a claim for hostile work environment against Mr. Watson pursuant to Sections 1981 and 1983, 42 U.S.C. §§ 1981, 1983.  (Compl. ¶¶ 58-79.)[1]  The law is clear that Plaintiff can only assert discrimination and retaliation claims for discrete acts constituting adverse

---

[1] Plaintiff also asserted due process and first amendment claims against Mr. Watson.  The Court granted Defendants' motion for summary judgment as to those claims.  (Mem. & Order, Dkt. #49, at 13-16.)  Furthermore, at the pre-trial hearing, Plaintiff's counsel made it clear that they are only asserting a claim for hostile work environment under Section 1981 against Mr. Watson.

employment actions that occurred in the 180 days prior to her EEOC charge. *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 110-14 (2002); *see also* 42 U.S.C. § 2000e-5. As to Plaintiff's hostile work environment claim, however, the law is different. "Provided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. To be clear, this continuing violation doctrine stated in *Morgan* is applicable only to hostile work environment claims, and does not apply to discrimination or retaliation claims that are premised upon discrete adverse employment events. *See Hartz v. Administrators of Tulane Educational Fund*, 275 Fed. Appx. 281, 289 (5th Cir.2008) ("the clock starts running for charges of discrete discriminatory acts, such as the failure to hire, promote, or train, on the day that the act occurred, and if an employee does not timely file her complaint, that act is no longer actionable under Title VII.").

Furthermore, discrete adverse employment events that occurred subsequent to the filing of an EEOC complaint are irrelevant as to discrimination or retaliation claims, as plaintiff has not satisfied the statutory prerequisites with regard to such claims by allowing the EEOC the opportunity to investigate those claims. Indeed, the Court lacks jurisdiction to hear discrimination or retaliation claims premised upon discrete acts occurring outside the statutory period because the plaintiff has failed to exhaust her administrative remedies. *See Arensdorf v. Snow*, 2006 WL 3302532, at *6 (S.D. Tex. Nov. 13, 2006) (holding that subsequent adverse employment actions "were not part of the administrative investigation and [the court] lacks jurisdiction over those non-

exhausted claims.").   Moreover, discrete adverse employment events cannot form the basis of Plaintiff's hostile work environment claim.  *See Abrams v. American Airlines Inc.*, 302 Fed. Appx. 242, 244 (5th Cir. 2008) (finding discrete acts cannot support a continuing violation for hostile work environment claim); *Huckabay v. Moore*, 142 F.3d 233 (5th Cir. 1998) (concluding that plaintiff's demotion was a discrete event that should have put defendant on notice that his cause of action had accrued and that his demotion could not constitute a continuing violation).

Here, Plaintiff's discrimination and retaliation claims cannot be premised upon acts that occurred outside the 180-day statutory period prior to filing her claim (or her amended claim).  This would preclude liability based upon any adverse employment action that occurred (i) prior to December 4, 2005 (or 180 days prior to her initial complaint); (ii) between June 2, 2006 to October 5, 2006 (or the period from her initial charge to 180 days prior to her amendment); or (iii) after April 3, 2007 (or the date of her amendment).

And as to Plaintiff's hostile work environment claim, the continuing violation doctrine is limited in at least three ways:  (1) plaintiff must show that the different acts are related; (2) the violation must be continuing, whereas an intervening action by the employer will sever the prior actions from those that came after it and bar liability for prior acts outside the filing window; and (3) the court may use its equitable powers to temper the continuing violation doctrine to "honor Title VII's remedial purpose 'without negating the particular purpose of the filing requirement.'" *Stewart v. Miss. Trans. Com'n*, 586 F.3d 321, 328 (5th Cir. 2009) (citing *Morgan*, 536 U.S. at 120). With respect

to the first prong, relatedness, various acts may be sufficiently "related" to earlier ones to constitute a single "practice" for purposes of 42 U.S.C. § 2000e-5(e)(1) if the incidents "involved the same type of harassment and were perpetrated by the same manager." *Stewart*, 586 F.3d at 329.

Here, any action by individuals other than Mr. Watson or acts that occurred after the resignation of Mr. Watson cannot form the basis of Plaintiff's hostile work environment claim under the continuing violation doctrine. First, actions by others would be insufficiently related to Plaintiff's allegations against Mr. Watson to constitute a continuing violation. Second, Mr. Watson's resignation constitutes an "intervening action" that severs any prior actions from those that came after. Thus, evidence regarding such actions is irrelevant and inadmissible at trial.

## II.     Evidence Regarding Other Employees

The law in the Fifth Circuit is well settled that evidence regarding allegations of discrimination by other employees (or "me-too" evidence) may be admissible only under limited circumstances – namely, where the other employees were similarly situated to plaintiff. *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302-03 (5th Cir. 2000); *Jackson v. Univ. of Tex. M.D. Anderson Cancer Center*, 172 F. Supp. 2d 860, 878 (S.D. Tex. 2001) (Atlas, J.) ("Shannon has not been shown to be in circumstances nearly identical to Jackson"). In particular, where the other employees had different supervisors than the plaintiff, worked in different parts of the company, or whose adverse employment actions were removed in time from plaintiff's, their testimony cannot be probative of whether plaintiff's adverse employment action was discriminatory. *Wyvill*,

212 F.3d at 302.  Indeed, admission of evidence regarding other employees who are not similarly situated results in "substantial prejudice" to a defendant, "forcing it to respond to each witness's claims, and creating, in effect, several 'trials within a trial.'"  *Id.* at 303. Moreover, for evidence regarding other employees to be relevant to Plaintiff's hostile work environment claim, Plaintiff must show that any harassing conduct directed at other employees "affected [her own] psychological well being."  *Collins v. Baptist Mem. Geriatric Center*, 937 F.2d 195 (5th Cir. 1991) (finding insufficient evidence to conclude that "conduct toward other female employees was sufficiently severe or pervasive to alter the psychological terms of [plaintiff's] own working environment").

Here, any evidence offered by Plaintiff regarding alleged discriminatory acts by those at UTMB other than Plaintiff's own supervisor (i.e., Mr. Watson) is not probative. Similarly, evidence regarding alleged acts against employees in other units or separate in time from Plaintiff's claims should also be excluded.  Finally, any evidence regarding allegedly discriminatory acts against other employees should be excluded unless Plaintiff first establishes that those acts affected her psychological well being.

## III.    Same-Actor Inference

Plaintiff takes offense with including the same-actor instruction in the jury charge. (Pl.'s Memo. at 21-24.)  However, the law is clear that the same-actor inference applies in cases like this one where the defendant initially hired the plaintiff:  "When the same individual makes the decisions to hire an employee and to later take an adverse action against the employee, an inference arises under the 'same actor' doctrine that discrimination was not the employer's motive in taking the adverse action." *Veal v.*

*Schlumberger Technology Corp.*, No. Civ.A. H-04-3550, 2006 WL 237006 at *10 (S.D.

Tex. Jan. 31, 2006) (Atlas, J.).  Moreover, the Fifth Circuit has made it clear that it is

appropriate to instruct the jury regarding the same-actor inference.  *Stover v. Hattiesburg*

*Public School Dist.*, 549 F.3d 985, 994-95 (5th Cir. 2008).  Indeed, the jury instruction

approved by the Fifth Circuit in *Stover* is the same instruction Defendants propose for use

in this case.  Furthermore, the same actor inference has been applied by the Fifth Circuit

to affirm summary judgment and by this Court in granting summary judgment.  *See*

*Spears v. Patterson UTI Drilling Co.*, 337 Fed.Appx. 416, 422 (5th Cir. 2009) (affirming

trial court's application of same actor inference in granting summary judgment); *Veal*,

2006 WL 237006 at *10.

Given that the evidence will show that Mr. Watson not only promoted Plaintiff to

the position of Nurse Manager, but also repeatedly defended her against criticisms by

others within UTMB, the same-actor jury instruction used in *Stover* is particularly

applicable in this case.  Plaintiff's outdated case law and novel legal arguments provide

no reason for disregarding applicable Fifth Circuit law.

## IV.     Availability of Affirmative Defenses

Plaintiff argues that, because the Defendants did not plead certain affirmative

defenses in according with Federal Rule of Civil Procedure 8(c), those defenses are

waived at trial.  (Pl.'s Memo. at 24, Dkt. # 62-10.)  However, failure to plead a defense

does not necessarily preclude its application at trial.  "Where the matter is raised in the

trial court in a manner that does not result in unfair surprise, ..., technical failure to

comply with Rule 8(c) is not fatal." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 856

(5th Cir.1983).  Indeed, in *Lubke v. City of Arlington*, 455 F.3d 489 (5th Cir. 2006), the
Fifth Circuit allowed the defendant to assert an affirmative defense that was not pled and
was not asserted until the trial stage:  "Regardless whether the City pled offset, however,
both parties addressed the issue in their pretrial motions in limine. Lubke was on notice
of the City's position and suffered no prejudice by the absence of a formal initial
pleading."  *Id.* at 499.

The same holds true here as to the mixed-motive defense that UTMB would have
treated Plaintiff in the same manner even if her race had not been considered.  Plaintiff
cannot show any prejudice regarding the timing of the assertion of this defense.  The
motive and justification for UTMB's and Mr. Watson's actions have been at the center of
this case from the beginning.  Plaintiff cannot reasonably contend that she failed to
pursue discovery into the motive and justification for the adverse employment actions
that underlie her claims.

Nor can Plaintiff reasonably argue she would be prejudiced by the assertion of the
*Ellerth/Faragher* defense in response to her hostile work environment claim.  To satisfy
the affirmative defense, the employer must show: "(a) that the employer exercised
reasonable care to prevent and correct promptly any [] harassing behavior, and (b) that
the plaintiff employee unreasonably failed to take advantage of any preventative or
corrective opportunities provided by the employer or to avoid harm otherwise."
*Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 765 (1998); *Faragher v. City of Boca
Raton*, 524 U.S. 775, 807 (1998).

Here, UTMB's actions in response to Plaintiff's claims and grievances, including the investigation by UTMB's own Equal Employment Opportunity office, has been the subject of extensive discovery in this case and is well-represented in Plaintiff's own exhibits.  (*See* P-23, P-43, P-44, P-45.)   Similarly, whether Plaintiff took advantage of preventive or corrective opportunities provided by UTMB, such as filing grievances and appeals, is also the subject of extensive discovery.  (*See* P-8, P-14, P-15, P-37, P-38, P-39, P-40, P-41, P-42.)

In short, Plaintiff will suffer no prejudice by the assertion of either the mixed-motive or *Ellerth/Faragher* defenses in this case.

## V.    Jury Charge Regarding Discrimination and Retaliation Claims

Finally, Defendants would like to point out certain inadvertent errors in the proposed jury charge.  In particular, Defendants' proposed questions to the jury include questions as to Mr. Watson's liability under Plaintiff's discrimination and retaliation claims.  (*See* Dkt. # 62-9 at 39, 41 -- Def's Questions 2, 2A, 7, 7A).  As Plaintiff made clear during the Pre-trial Hearing, Plaintiff is not asserting discrimination or retaliation claims against Mr. Watson.  These questions should, therefore, be removed from the jury charge.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

/s/ *David G. Halpern*_____
DAVID G. HALPERN
Attorney-in-Charge
Texas Bar No. 00790812
Southern District I.D. No. 18301
JAMES "BEAU" ECCLES
Texas Bar No. 00793668
Southern District No.  310917
DARREN G. GIBSON
Texas Bar No. 24068846
Southern District No. 1041236
Assistant Attorneys General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
(512) 463-2120
(512) 320-0667 FAX

**ATTORNEYS FOR DEFENDANTS**

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of Defendants' Trial Brief and Memorandum of Law

was served via the Court's ECF system on March 5, 2010, to:

> Jo Miller
> 505 North Main
> Carriage House
> Conroe, Texas 77301
> *Attorney for Plaintiff*

/s/ *David G. Halpern*_____
DAVID G. HALPERN
Assistant Attorney General

10