IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| JACKIE FISHER,<br>*Plaintiff,*<br><br>VS.<br><br>UNIVERSITY OF TEXAS MEDICAL<br>BRANCH AND DAVID WATSON,<br>*Defendants.* | §<br>§<br>§<br>§<br>§   **CIVIL ACTION NO. 4:08-CV-01273**<br>§<br>§<br>§ |

### DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION TO ENFORCE TERMS AND CONDITIONS OF SETTLEMENT AGREEMENT AND MEMORANDUM, IN SUPPORT

TO THE HONORABLE NANCY F. ATLAS:

Come now Defendants, The University of Texas Medical Branch at Galveston (UTMB) and David Watson and file this, their Response to Plaintiff's Motion to Enforce Terms and Conditions of the Settlement, and would respectfully show the court as follows:

**I.**

Regrettably, the parties have been unable, thus far, to achieve agreement on an enforceable settlement. Accordingly, the Court should deny Plaintiff's motion.

**II.**

This case was originally set for trial on March 9, 2010. In the days before that date, the parties, in good faith, attempted to agree on the material terms of a settlement agreement. Active negotiations continued up to and through Monday, March 8, 2010. The exchange of communications relevant to Plaintiff's motion follows.

### III.

On March 6, 2010, and on behalf of UTMB and David Watson, Omar Syed of The University of Texas System's Office of General Counsel e-mailed Plaintiff's co-counsel, Martin Shellist. In relevant part, Mr. Syed wrote:

> In exchange for Ms. Fisher's agreement to dismiss the pending suit and fully and finally release UTMB and Mr. Watson from all relevant claims, defendants offer a total of $[amount omitted for confidentiality], to be apportioned between Ms. Fisher and her attorneys as they, in their judgment, see fit. This offer recognizes that Fisher will remain a UTMB employee. In addition, this offer constitutes defendants' final offer for settlement before trial.

Ex. 1 (bottom e-mail on page).

On March 8 at 4:32 p.m., Mr. Shellist responded[1] with an e-mail that stated, in pertinent part:

> I have a truly final settlement figure from Ms. Fisher: [amount omitted for confidentiality]. Please know that this offer shall remain open only through and until 7 p.m. CST this evening. In exchange for the payment, Ms. Fisher will release UTMB and Watson from liability. Additionally, she will remain employed and continue to be dedicated to the success of UTMB. [...] If accepted, we'd want included in the settlement documents that UTMB (or other decision makers) will use best efforts to fund the settlement as expeditiously as possible.

Ex. 2.

At 4:51 p.m. on March 8, Mr. Syed replied with an e-mail that read, in its entirety:

> UTMB respectfully declines Ms. Fisher's offer. The offer of $[amount omitted] conveyed to you on March 6 remains UTMB's final offer for settlement.

Ex. 3 (top e-mail on page).

Apparent settlement was reached at 9:14 p.m. that evening, when Mr. Shellist replied, in pertinent part:

---

[1] Mr. Syed and Mr. Shellist exchanged two e-mails in between these two e-mails. Neither e-mail accepted or rejected the March 6 offer from Defendants. See Ex. 1 (top two e-mails).

2

> Ms. Fisher hereby accepts UTMB's offer to settle for $[amount offered in March 6 Syed e-mail]. We'll advise regarding the breakdown of the settlement for issuance of the checks.

Ex. 4 (top e-mail on page). Mr. Shellist's e-mail did not reply to Defendants' March 6 demand that Plaintiff agree to fully and finally release Defendants from all relevant claims.

### IV.

On the morning of trial, March 9, 2010, the parties and counsel appeared before the Court to relate their tentative agreement. During that hearing, the Court asked the parties "Is there a [settlement] document?" Mr. Shellist replied "[t]here **will** be" (emphasis added).

### V.

Although the parties earnestly have attempted to resolve this case, those attempts have not yet yielded an enforceable settlement agreement.[2] Accordingly, the Court should deny Plaintiff's motion.

A settlement agreement is, without question, a favored outcome to a lawsuit. *See, e.g., Pearson v. Ecological Sci. Corp.*, 522 F.2d 171, 176 (5th Cir. 1975). As such, a federal court possesses the inherent power to enforce agreements that settle litigation before that court. *Lee v. Hunt*, 631 F.2d 1171, 1173-74 (5th Cir. 1980). A settlement agreement is, at bottom, a contract. *Guidry v. Halliburton Geophys. Serv.*, 976 F.2d 938, 941 (5th Cir. 1992). As such, settlement agreement terms are construed according to general principles of contract interpretation. *Estate of Kokernot*, 112 F.3d 1290, 1294 (5th Cir. 1997).

---

[2] Acknowledging Plaintiff's representation that settlement negotiations did not address material terms for confidentiality and withdrawal of grievances, Defendant respectfully takes issue with Plaintiff's characterization of the parties' respective efforts to resolve this impasse. Moreover, Defendant categorically denies Plaintiff's suggestion that Defendants fraudulently induced settlement.

3

But when a federal court exercises its power to construe supposed agreements releasing Title VII employment discrimination claims, it is bound by federal common law principles. *See Fulgence v. McDermott*, 662 F.2d 1207, 1209 (5th Cir. 1981); *see also Williams v. Phillips Petroleum Co.*, 23 F.3d 930, 935 (5th Cir. 1994) ("the release of federal claims is governed by federal law"). In this context, federal common law consists of general principles of contract, as long as the particular rule appropriately effectuates the policy of the governing act. *Valle v. Johnson Controls World Svcs.*, 957 F.Supp. 1404, 1423 (S.D. Miss. 1996) (*citing DiMartino v. City of Hartford*, 636 F.Supp. 1241, 1249 (D.Conn. 1986)). Additionally, a federal court may "draw guidance from analogous state law" to ascertain the applicable federal common law. *Transitional Learning Comty. at Galveston, Inc. v. U.S. Office of Pers. Mgmt.*, 220 F.3d 427, 431 (5th Cir. 2000).

Ordinarily, a contract is formed by a bargain that features an offer, acceptance, and sufficient consideration that, taken together, evidence a "meeting of the minds." *See* Restatement (Second) of Contracts § 17 ("Requirement of A Bargain") (1981) (cited in *Grigson v. Creative Artists Agency L.L.C.*, 210 F.3d 524, 539 (5th Cir. 2000). An offer is "the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that [her] assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (1981) (cited in *Mid-South Packers, Inc. v. Shoney's Inc.*, 761 F.2d 1117, 1121 (5th Cir. 1985)). An acceptance, in turn, must mirror the terms of the offer. *See, e.g., Colorado Interstate Gas Co. v. Hufo Oils*, 802 F.2d 133, 138 (5th Cir. 1986); *Humble Oil & Refining Co. v. Westside Investment Corp.*, 428 S.W.2d 92, 94 (Tex. 1968).

On the other hand, if the factual circumstances show that a tentative agreement was merely a preliminary negotiation, then even a manifestation of assent may not conclude a

4

contract. *See* Restatement (Second of Contracts) § 27 ("Existence of Contract Where Written Memorial is Contemplated") (1981). Those circumstances may include the extent to which the parties expressly reach agreement on all the terms to be included, whether the type of contract contemplated is usually put in writing, whether the parties need a formal writing to fully express their tentative agreement, the number of details in the tentative agreement, whether the tentative agreement involves an amount that is large or small, whether the contract is common or unusual, whether a standard form is widely used in similar circumstances, and whether either party takes action to perform during negotiations. *See id.*, cmt. c.; *Foreca S.A. v. GRD Development Co.*, 758 S.W.2d 744, 746 (Tex. 1988).

Ultimately, a putative settlement agreement is not enforceable as such unless its essential terms are set forth in the agreement, and not left to future negotiation. *Liberto v. D.F. Stauffer Biscuit Co., Inc.*, 441 F.3d 318, 323 (5th Cir. 2006). Whether a given term is "essential" to a contract is matter of law to be reviewed *de novo. Id.* at 324. That said, a contract must contain terms that "provide a basis for determining the existence of a breach and [give] an appropriate remedy." Restatement (Second) of Contracts § 33(2) (1981); *E.P. Towne Center Partners, L.P. v. Chopsticks, Inc.*, 242 S.W.2d 117. 122 (Tex. App. – El Paso, 2007); *Ski River Development, Inc. v. McCalla*, 167 S.W.3d 121, 133 (Tex. App. – Waco, 2005).

## VI.

In this case, there is no dispute that the parties agreed on a sum certain that Defendants would pay to Ms. Fisher. However, as was explained to the Court on March 9, other terms and conditions of the settlement were to be fleshed out. This is strongly indicated by the pre-March 9 settlement communications, *see* Paragraph III above, and by the custom, recognized by the Court on the March 9 record, of reducing litigation settlement agreements to writing. It is also

5

underscored by the brevity of the parties' March 5-9 communications and, in particular, by Mr. Shellist's March 8 e-mail to Mr. Syed accepting only the monetary component of the settlement offer. Further, it is evidenced by the parties' in-court discussion of the various approvals required to consummate their understanding. Finally, it is confirmed by the parties' post-March 9 conduct, which consists of various oral and written communications that belie Plaintiff's apparent belief that a final agreement was reached weeks earlier.

In the end, Defendants maintain that confidentiality and a release of grievances are material and essential terms because, without them, Defendant UTMB would not have entered into an agreement with Ms. Fisher, a current UTMB employee. As to these terms, and as admitted in Plaintiff's motion, there has been no meeting of the minds.

## CONCLUSION

Defendants join Plaintiff in preferring to resolve this matter short of trial, but the parties have yet to reach an enforceable agreement. Accordingly, Defendants respectfully request that the Court deny – as moot or otherwise – Plaintiff's motion to enforce the settlement agreement.

Respectfully submitted,

GREG ABBOTT
Attorney General of Texas

C. ANDREW WEBER
First Assistant Attorney General

DAVID S. MORALES
Deputy Attorney General for Civil Litigation

ROBERT B. O'KEEFE
Chief, General Litigation Division

>*/s/ David G. Halpern*
>DAVID G. HALPERN
>Assistant Attorney General
>Texas Bar No. 00790812
>Southern District I.D. No. 18301
>General Litigation Division
>P.O. Box 12548, Capitol Station
>Austin, Texas 78711-2548
>(512) 463-2120
>(512) 320-0667 FAX
>
>*Attorneys for Defendants University of Texas Medical Branch and David Watson*

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document has been sent by electronic notification through ECF by the United States District Court, Southern District of Texas, Houston Division, on July 26, 2010 to:

Jo Miller
505 North Main
Carriage House
Conroe, Texas 77301

>*/s/ David G. Halpern*
>DAVID G. HALPERN
>Assistant Attorney General

## VERIFICATION

BEFORE ME, the undersigned authority on this day personally appeared DAVID G. HALPERN, Assistant Attorney General, who, being duly sworn upon his oath did depose and say that he has read the above Response to Plaintiff's Motion to Enforce Terms and Conditions of the Settlement, and that the statements of fact and attachments therein are within his personal knowledge and are true and correct to the best of his knowledge.

_____
DAVID G. HALPERN

SUBSCRIBED AND SWORN TO this 26th day of July, 2010, to certify which witness my hand and seal of office..

Notary Without Bond

SYLVIA HERNANDEZ
Notary Public
STATE OF TEXAS
Commission Exp. 04-17-2013

_____
Notary Public, State of Texas